# EXHIBIT DD

# Trump Admin Spies on Social Media of Student Visa Holders

Ideological purge of foreign students revealed in new leaked directive

KEN KLIPPENSTEIN
MAR 28, 2025

♡ 373    💬 18    ↻ 141                                                                                     Share



Big Spying in Little Marco's State Department

[Type your email...]    [Subscribe]

The Trump administration is requiring that foreign students studying in, or seeking to study in the United States, pass an ideological test in order to obtain a visa, according to a "sensitive" State Department directive issued by Secretary of State Marco Rubio and which I obtained.

The crackdown, instituted on Tuesday, makes it "mandatory" for consular officers and State Department personnel to conduct a "social media review" — including screenshotting posts — of new and returning student visa applicants for any evidence of terrorist connections. Such connections are defined broadly to include "advocating for, sympathizing with, or persuading others to endorse or espouse terrorist activities or support" a terrorist organization. Though the document doesn't explicitly define what counts as advocacy, it mentions "conduct that bears a hostile attitude toward U.S. citizens or U.S. culture (including government, institutions, or founding principles)."

Specific reference is made to students seeking to participate "in pro-Hamas events," which is how the Trump administration has characterized student protests against the war in Gaza.

"When you apply to enter the United States and you get a visa, you are a guest," Secretary of State Marco Rubio said on March 16 in remarks quoted in the directive "If you tell us when you apply for a visa, I'm coming to the U.S. to participate in pro-Hamas events, that runs counter to the foreign policy interest of the United States ….. if you had told us you were going to do that, we never would have given you the visa."

The order to "comprehensively review and screen every visa applicant" appears directed at Palestinian and other foreign students who are "sympathetic" to Hamas, but typical of every government directive, it also opens the door for broader ideological vetting. It also directs the social media of visa applicants to be assessed for "potential security and non-security related ineligibilities [that] pose a threat to U.S. national security."

The directive, dated March 25, bears the subject line "Enhanced Screening and Social Media Vetting for Visa Applicants." It begins with a reference to two of Trump's executive orders, including [one](#) on "measures to combat anti-semitism" and [another](#) on combating foreign terrorists and other national security threats to public safety. The directive applies to F, M, and J student visa, which encompass:

- **F visa** (Academic Student): Full-time students at an accredited college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program.

- **M visa** (Vocational Student): Students in vocational or other nonacademic programs, other than language training.

- **J visa** (Exchange Visitors): Foreign nationals in the United States for educational, cultural, or work-related exchange programs, such as teaching, studying, conducting research, or receiving training.

"Evidence suggesting a student visa applicant intends to travel to the United States to engage in unlawful activities clearly calls into question whether the applicant possesses intent and/or the ability to solely pursue a full course of study," the directive also says.

The order requires visa decision-makers to take screenshots of "potentially derogatory information" to both document their decisions and to prevent visa applicants and holders from deleting or altering their previous posts.

What social media is reviewed and how that is done is governed by the State Department Foreign Affairs Handbook section 7 FAH-1 H-954.4, according to the

directive, dealing with "Social Media Review." That section of the [handbook](), though otherwise online, has not been released to the public.

I've included a copy of the leaked directive in its entirety below so you can see for yourself what you think. If you appreciate journalism that respects its readers intelligence enough to let them come to their own conclusions, do us a solid by becoming a paid subscriber.

Subscribe if you think ideological purges are bad actually

[Type your email...] [Subscribe]

— *Edited by William M. Arkin*

MRN: 25 STATE 26168

Date/DTG: Mar 25, 2025 / 251914Z MAR 25

From: SECSTATE WASHDC

Action: ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE – Immediate

E.O.: 13526

TAGS: CVIS, CMGT, PTER, KFRD

Captions: SENSITIVE

Reference: 25 STATE 5914

Subject: (U) Action Request: Enhanced Screening and Social Media Vetting for Visa Applicants

1. (U) This is an action request. **See paragraph 7.**

2. (**SBU**) **SUMMARY:** The protection of our nation and its citizens is a consular officer's first consideration. Pursuant to the implementation of Executive Order (E.O.) 14161 and E.O. 14188, known respectively as *Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats, and Additional Measures to Combat Anti-Semitism*, effective immediately, consular officers must refer certain student and exchange visitor (F, M, and J) visa applicants to the Fraud Prevention Unit (FPU) for a mandatory social media check as described below. As the Secretary stated on March 16: "We don't want people in our country that are going to be committing crimes and undermining our national security or the public safety. It's that simple. Especially people that are here as guests. That is what a visa is... It is a visitor into our country. And if you violate the terms of your

   visitation, you are going to leave." The Visa Office will host webinars for
   consular officers to discuss this guidance on April 3 and April 4, 2025. **END
   SUMMARY.**

3. (**SBU**) **Consular Officers Play a Critical Role in Protecting National Security:**
   As part of screening every case for potential ineligibilities, consular officers
   MUST ADDRESS any derogatory information indicating that a visa applicant
   may be subject to the terrorism-related ineligibility grounds of the
   Immigration and Nationality Act (INA). This includes advocating for,
   sympathizing with, or persuading others to endorse or espouse terrorist
   activities or support a DESIGNATED FOREIGN TERRORIST
   ORGANIZATION (FTO).

4. (**SBU**) **Every Visa Decision is a National Security Decision:** In Ref A, the Visa
   Office directed consular officers to maintain extra vigilance and to
   comprehensively review and screen every visa applicant for potential security
   and non-security related ineligibilities including to assess whether the
   applicant poses a threat to U.S. national security. Any nonimmigrant visa
   applicant who has not established to a consular officer's satisfaction that the
   applicant meets all standards required in that visa classification should be
   refused under 214(b), as appropriate. This includes establishing that the
   applicant does not intend to engage in activities inconsistent with the
   requested visa status. If 214(b) does not apply to the visa classification,
   consular officers should refuse any nonimmigrant or immigrant visa case
   presenting such concerns under section 221(g) of the INA for further review of
   additional ineligibility grounds, including by requesting a Security Advisory
   Opinion (SAO), as appropriate.

5. (U) This was reflected well by the Secretary's statement on March 16, that
   "when you apply to enter the United States and you get a visa, you are a
   guest...if you tell us when you apply for a visa, I'm coming to the U.S. to
   participate in pro-Hamas events, that runs counter to the foreign policy
   interest of the United States…..if you had told us you were going to do that, we
   never would have given you the visa."

6. (**SBU**) **Situations that Cast Doubt on Students' Intent or Credibility:** As
   described in 9 FAM 402,5-5(C), an applicant applying for an F-1 or M-1
   student visa must demonstrate intent to enter the United States solely to
   pursue a full course of study at an approved institution. In addition, J-1 visa
   applicants who are college, university, and other post-secondary students are
   required to pursue a full course of study as described in 9 FAM 402.5-6(E)(11).
   Evidence suggesting a student visa applicant intends to travel to the United
   States to engage in unlawful activities clearly calls into question whether the
   applicant possesses intent and/or the ability to solely pursue a full course of
   study. While many activities may not fall under the INA's definitions of
   "terrorist activity," you should otherwise consider that information in

assessing the credibility of a visa applicant's claimed purpose of travel. INA section 214(b) requires the applicant to show credibly that all activities in which he or she is expected to engage in while in the United States are consistent with the specific requirements of their visa classification.

7. (SBU) **ACTION REQUEST: Mandatory Social Media Reviews for Students and Student Exchange Visitors**. Effective immediately, consular officers must refer all new or returning F-1, M-1, or student J-1 visa applications meeting one or more of the following criteria, that the consular officer has determined is otherwise eligible for the requested nonimmigrant status, to the FPU via ECAS as described in Z FAH-1 H-945.4,_ using the SOCIAL MEDIA REVIEW category. **All** student visa case referred for social media vetting under the criteria below **must** be referred in ECAS to ensure global tracking of this work:

   a. (SBU) An applicant who is otherwise eligible and for whom you have reason to believe has openly advocated for a designated foreign terrorist organization;

   b. (SBU) An applicant who was previously in the United States in F-1, M-1, or J-1 visa status between October 7, 2023, and August 31, 2024; or

   c. (SBU) An applicant whose previous SEVIS record was terminated between October 7, 2023, and the present.

8. (SBU) **Documenting the Results of the Social Media Review:** If the social media review uncovers potentially derogatory information indicating that the applicant may not be eligible for a visa, Fraud Prevention Units are required to take screenshots of social media findings to the extent it is relevant to a visa ineligibility, to preserve the record against the applicant's later alteration of the information. Limit screenshots to information relevant to connecting the applicant, the applicant's actions, and a visa ineligibility. The screenshots must be uploaded to the applicant's case record in the CCD. Consular officers do not need to upload social media findings if the review does not reveal derogatory information, but consular officers must enter case notes stating they conducted a social media review which did not reveal derogatory information. When a social media review uncovers potentially derogatory information which may lead to INA 212(a)(3) ineligibilities, consular officers should follow the instructions in 9 FAM 304.2 to submit an SAO. Consular officers are reminded to only apply inadmissibility grounds under INA 212(a) in accordance with applicable procedures including to request an SAO or Advisory Opinion (AO) as directed in the Foreign Affairs Manual FAM).

9. (SBU) **Support for Terrorist – Grounds and Definitions for INA 212(a)(3)(B):** All consular officers should carefully review 9 FAM 302.6 to understand the grounds under which an applicant may be ineligible under 3B, including that an applicant who "endorses or espouses terrorist activity or persuades others

to endorse or espouse terrorist activity or support a terrorist organization" is ineligible. Consular officers should consider these grounds and definitions when conducting interviews and pursuing lines of inquiry. Because terms in INA 212(a)(3)(B), are broadly defined, consular officers should elicit as much pertinent information as possible from visa applicants with suspected ties to terrorist organizations or terrorist activity. This includes the names of all relevant organizations potentially involved in terrorist activity and the applicant's relationship with them (for example, by current membership or past financial contributions or other support). Evidence that an applicant advocates for terrorist activity, or otherwise demonstrates a degree of public approval or public advocacy for terrorist activity or a terrorist organization, may be indicative of ineligibility under INA 212(a)(3)(B). This may be evident in conduct that bears a hostile attitude toward U.S. citizens or U.S. culture (including government, institutions, or founding principles). Or it may be evident in advocacy or sympathy for foreign terrorist organizations. All of these matters may open lines of inquiry regarding the applicant's credibility and purpose of travel. Consular officers should inquire into the nature and activities of those organizations. If a consular officer believes an applicant may be ineligible under this provision or otherwise has any evident ties to a foreign terrorist organization, the consular officer **must** refuse the case 221(g) and request an SAO.

10. (SBU) **Intention to Engage in Unlawful Activity:** Consular officers are also reminded of guidance in 9 FAM 302.5-4 regarding the applicability of INA 212(a)(3)(A)(ii) under which a visa applicant is ineligible if the consular officer knows or has reason to believe that the applicant is traveling to the United States solely, principally, or incidentally to engage in any other unlawful activity. Consular officers should take care to enter detailed case notes regarding the specific activities expected in the United States and request an advisory opinion per 9 FAM 302.5-4(g).

11. (SBU) **Revocations of Valid Visas:** If, subsequent to visa issuance, information becomes available to post that an individual may no longer be eligible for a visa due to particularized information indicating an ineligibility under specific INA provisions, including 214(b), post should follow the procedures to revoke or request prudential revocation as described in 9 FAM 403.11 for nonimmigrant visas or 9 FAM 504.12 for immigrant visas. The Visa Office reminds posts that consular officers do not have the authority to revoke a visa based on a suspected ineligibility or based on derogatory information that is insufficient to support an ineligibility finding - other than a revocation based on driving under the influence (DUI) - and that such cases should be referred to CA/VO/SAC/RC in accordance with 9 FAM 403.11-5(B) for further review. A consular officer's revocation must be based on an actual finding that the individual is ineligible for the visa.

12. (**U**) **Additional Guidance:** The Visa Office will host webinars for consular officers to discuss this guidance on Thursday, April 3 and Friday, April 4, 2025. Invitations with links to these webinars will be sent separately. The FAM will be updated to reflect this guidance.

13. (**U**) **Inquiries:** Post must refer any U.S. media inquiries regarding E.O.s to CA-Press@state.gov and congressional inquiries regarding E.O.s to ConsularOnTheHIll@state.gov. Posts may respond to requests from international media regarding E.O.s using CA's cleared press guidance located on CA Web, copying CA-PRESS@STATE.GOV.

14. (U) Minimize considered.

This newsletter is reader-supported. To receive new posts and support my work, consider becoming a free or paid subscriber.

Type your email...  Subscribe

373 Likes • 141 Restacks

## Discussion about this post

Comments   Restacks

Write a comment...

**B C**  3d
♥ Liked by Ken Klippenstein

Love how the GOP manages to be both party of abject Israeli bootlicking AND the home for the rankest antisemitic conspiracy theorists. And all so a red calf and total war in the middle east can summon Jesus on a starship or whatever.

♡ LIKE (30)   💬 REPLY          ↑ SHARE

**StanleyTwoBrix**  3d
♥ Liked by Ken Klippenstein

Tyranny is so fucking petty.

♡ LIKE (19)   💬 REPLY          ↑ SHARE

16 more comments...

© 2025 Ken Klippenstein ∙ Privacy ∙ Terms ∙ Collection notice
Substack is the home for great culture