UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN ASSOCIATION OF <br> UNIVERSITY PROFESSORS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, in his official capacity <br> as Secretary of State, and the <br> DEPARTMENT OF STATE, ET AL., <br><br> Defendants. | Civil Action No. 1:25-cv-10685-WGY |

**DECLARATION OF JOHN ARMSTRONG IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I, John Armstrong, hereby declare under penalty of perjury:

1.    I am the Senior Bureau Official within the U.S. Department of State's Bureau of Consular Affairs. I am a career member of the Senior Foreign Service with the rank of Counselor. Prior to becoming the Senior Bureau Official, I briefly served as the Deputy Assistant Secretary for Overseas Citizen Services. I served overseas as the Consul General in Lima, Peru, as Economic Counselor in Warsaw, Poland, as Consular Section Chief and Acting Deputy Chief of Mission in Nassau, Bahamas, Deputy Consul General in Kyiv, Ukraine, and Nonimmigrant Visa Chief in Bucharest, Romania. I have also previously served domestic assignments in Washington, D.C., as Director of the Office of Eastern European Affairs, Director of the Washington Passport Agency, Senior Political Officer on the Russia Desk, and Belarus Desk Officer.

2.    As the Senior Bureau Official, I oversee the functions and responsibilities of the Bureau of Consular Affairs, including the Office of Overseas Citizen Services, the Office of Passport Services, and the Office of Visa Services ("Visa Office"), which encompasses all aspects of visa policy, procedures, and information related to U.S. visa issuance to foreign citizens who apply at more than 230 visa-issuing U.S. embassies and consulates.

3.    I am familiar with the Department's requirements and policies relating to visa revocation. I base this declaration on my review of Department of State records and discussion with other Department of State employees.

4.    The Visa Office's functions and responsibilities encompass all aspects of visa policy, procedures and information related to U.S. visa issuance to foreign citizens, who are applying at U.S. Embassies and Consulates worldwide, seeking to come to the United States. The responsibilities of the Visa Office include coordinating with other agencies to perform national security screening of foreign travelers, and providing guidance and recommendations on visa policy related to national security exclusions. Among its many functions, the Visa Office also revokes thousands of visas annually and provides guidance to the field on visa issuance, revocation and denial.

5.      On January 20, 2025, President Trump issued Executive Order 14161, Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats ("E.O. 14161"). Consistent with E.O. 14161, the Visa Office has undertaken numerous efforts to "identify all resources that may be used to ensure that all aliens seeking admission to the United States, or who are already in the United States, are vetted and screened to the maximum degree possible."

6.      On January 29, 2025, President Trump issued Executive Order 14188, Additional Measures to Combat Anti-Semitism ("E.O. 14188"). Pursuant to E.O. 14188, the Visa Office and other relevant offices at State are working with the Department of Education and the Department of Homeland Security ("DHS") on appropriate ways to "familiariz[e] institutions of higher education with the grounds for inadmissibility under 8 U.S.C. 1182(a)(3) so that such institutions may monitor for and report activities by alien students and staff relevant to those grounds and for ensuring that such reports about aliens lead, as appropriate and consistent with applicable law, to investigations and, if warranted, actions to remove such aliens."

7.      One of the tools in place to ensure maximum vetting of visa applicants and visa-holders, including students, is the Department's long-standing continuous vetting program. All visa-holders are continuously vetted by law enforcement and intelligence agencies for information that surfaces after visa issuance. Processes for coordinated security-related continuous vetting have been used by the State Department and partner agencies for over 10 years.

8.      The Department of State has the authority to revoke visas under Section 221(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(i), which states, in pertinent part: "After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." For example, the Department may revoke a visa if information arises that indicates an alien is potentially ineligible for that visa or that revocation is otherwise warranted, including, for example, if the alien poses a threat to U.S. public safety. The Visa

Office provides notice to DHS when a visa is revoked.

9. A visa is revoked only after the Department of State reviews available information to ascertain whether the visa revocation is supported by the facts and law.

10. Given the Department's commitment to, and responsibility for, national security, the Visa Office uses all available resources in its visa screening and vetting both when making the initial visa adjudication and during recurrent vetting.

11. Information on visa-holders can come directly from interagency partners, from offices within the Department of State, or from public sources. The Visa Office has long-standing relationships with U.S. law enforcement agencies who regularly send the Visa Office information when they believe derogatory information merits a revocation. This includes information from DHS and the Federal Bureau of Investigation.

12. A visa can be revoked for any potential ineligibility under U.S. law, including but not limited to potential ineligibility for a visa under one of the "Security and related grounds" of inadmissibility at section 212(a)(3) of the INA. The "Security and related grounds" include terrorism related inadmissibility grounds, such as endorsing or espousing terrorist activity or persuading others to endorse or espouse terrorist activity or support a terrorist organization, as well as engaging in terrorist activity by providing material support to a designated or undesignated terrorist organization. That section also includes an inadmissibility ground for foreign policy reasons, when the Secretary of State has reasonable ground to believe an alien's entry or proposed activities in the United States would have potentially serious adverse foreign policy consequences for the United States.

13. The Bureau of Consular Affairs, including the Office of Visa Services, does not carry out deportations. DHS's Immigration and Customs Enforcement ("ICE") is responsible for immigration enforcement in the United States, including initiating proceedings against aliens charged as removable.

14. As deportations are carried out by DHS, deportation policy is outside the purview of the Bureau of Consular Affairs. No ideological deportation policy has been developed or

implemented by the Bureau of Consular Affairs or the Visa Office.

15. I am aware of Secretary Rubio's public remarks indicating the U.S. government will revoke visas of and deport Hamas supporters. These statements are consistent with the State Department's long-standing implementation of visa and immigration laws, across administrations. Hamas has been a designated foreign terrorist organization under section 219 of the INA since it was designated by former Secretary Madeleine Albright in 1997. Support for a designated terrorist organization by statute is a basis for visa refusal and other immigration consequences: the INA provides that an alien who persuades others to support a terrorist organization, or who has afforded material support to a designated terrorist organization, is inadmissible and deportable. INA §§ 212(a)(3)(B), 237(a)(4)(B).

16. I am aware of plaintiffs' contention that the State Department and ICE have launched new social media surveillance programs aimed at identifying noncitizen students and faculty with alleged terrorist sympathies. It is true that the State Department has authored new guidance to consular officers on reviewing visa applicants' social media. However, it is misleading and false to refer to the Department's review of publicly available social media as a form of "surveillance" to root out "terrorist sympathies" among students and faculty. Rather, review of publicly available social media is a component of the extensive information-collection and vetting process foreign visitors undergo when they apply for and use U.S. visas.

17. I am aware of plaintiffs' contentions regarding Secretary Rubio's March 16, 2025, interview on the television news show *Face the Nation*. I understand Secretary Rubio's comments to refer to the ongoing work of the Visa Office to revoke visas, revocations which occur for a wide variety of reasons. Secretary Rubio did not state, and it is not true, that the Visa Office is approving visa revocations every day for "ideological deportation" reasons. This assertion is simply false.

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this 11th day of April, 2025.

*[signature]*

John Armstrong
Senior Bureau Official
Bureau of Consular Affairs
U.S. Department of State