UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS,<br><br>AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-HARVARD FACULTY CHAPTER,<br><br>AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT NEW YORK UNIVERSITY,<br><br>RUTGERS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-AMERICAN FEDERATION OF TEACHERS, and<br><br>MIDDLE EAST STUDIES ASSOCIATION,<br><br>   Plaintiffs,<br><br> v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE,<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and the DEPARTMENT OF HOMELAND SECURITY,<br><br>TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, and<br><br>UNITED STATES OF AMERICA,<br><br>   Defendants. | Civil Action No. 1:25-cv-10685-WGY<br><br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

**Table of Contents**

Table of Authorities ................................................................................................................. ii

I.   The defendant agencies have a policy of ideological deportation. ................................1

II.  The court can adjudicate Plaintiffs' claims....................................................................2

    A.   Plaintiffs have standing. ....................................................................................... 2

    B.   Section 1252(g) does not bar review of Plaintiffs' claims................................... 4

III. Plaintiffs are likely to succeed on the merits of their claims. ........................................5

    A.   The ideological-deportation policy violates the First and Fifth
         Amendments. ....................................................................................................... 5

    B.   Defendants' campaign of coercive threats also violates the First
         Amendment. ......................................................................................................... 7

    C.   The ideological-deportation policy is subject to review under the APA. .......... 7

IV.  Section 1252(f)(1) does not bar the relief sought. .........................................................8

Conclusion ...................................................................................................................................10

i

# Table of Authorities

**Cases**

*Al Otro Lado v. EOIR*, 120 F.4th 606 (9th Cir. 2024) ................................................................ 9, 10

*Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) ............................. 6

*Amadei v. Nielsen*, 348 F. Supp. 3d 145 (E.D.N.Y. 2018) ............................................................. 8

*Aracely v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) ................................................................ 2

*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) .............................................................................. 5

*Bantam Books v. Sullivan*, 372 U.S. 58 (1963) .............................................................................. 7

*Bellion Spirits, LLC v. United States*, 7 F.4th 1201 (D.C. Cir. 2021) ............................................ 7

*Berner v. Delahanty*, 129 F.3d 20 (1st Cir. 1997) .......................................................................... 2

*Bluman v. Fed. Election Comm'n*, 800 F. Supp. 2d 281 (D.D.C. 2011), *aff'd*, 565
    U.S. 1104 (2012) ......................................................................................................................... 6

*Centro Presente v. DHS*, 332 F. Supp. 3d 393 (D. Mass. 2018) .................................................... 5

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ............................................... 1

*CREW v. DOJ*, 846 F.3d 1235 (D.C. Cir. 2017) ............................................................................. 8

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ................................................................ 4

*Doe v. Trump*, 2025 WL 485070 (D. Mass. Feb. 13, 2025) ......................................................... 10

*FDA v. All. for Hippocratic Medicine*, 602 U.S. 367 (2024) ......................................................... 3

*Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022) ............................................................................. 9

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ....................................................................... 8

*Greater Bos. Legal Servs. v. DHS*, 2022 WL 138629 (D. Mass. Jan. 14, 2022) ........................ 2, 8

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952) ...................................................................... 5, 6

*Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19 (D.D.C. 2018) ............................................................. 5

*Kandamar v. Gonzales*, 464 F.3d 65 (1st Cir. 2006) ..................................................................... 4

*Kidd v. Mayorkas*, 734 F. Supp. 3d 967 (C.D. Cal. 2024) ............................................................. 9

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) .................................................................................. 4

*Kong v. United States*, 62 F.4th 608 (1st Cir. 2023) ....................................................................... 4

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) .................................................................. 7, 8

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ..................................................... 10

*Murthy v. Missouri,* 603 U.S. 43 (2024) ................................................................................... 2, 3

*Nat'l TPS Alliance v. Noem*, 2025 WL 957677 (N.D. Cal. Mar. 31, 2025) ................................. 10

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................................................... 10

*NWDC Resistance v. ICE*, 493 F. Supp. 3d 1003 (W.D. Wash. 2020) .......................................... 4

*R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ............................................................. 10

*Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020) ......................................................................................... 5

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ................................. 4, 5, 6

*Texas v. Biden*, 646 F. Supp. 3d 753 (N.D. Tex. 2022) ............................................................... 10

*Texas v. DHS*, 123 F.4th 186 (5th Cir. 2024) ................................................................................ 9

*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022) .................................................................. 10

*Turner v. Williams*, 194 U.S. 279 (1904) ...................................................................................... 5

*U.S. Telecom Ass'n v. FCC*, 825 F.3d 674 (D.C. Cir. 2016) ......................................................... 7

*Union of Concerned Scientists v. Wheeler*, 954 F.3d 11 (1st Cir. 2020) ....................................... 7

*United States v. Texas*, 599 U.S. 670 (2023) ................................................................................. 3

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) ............................................................................................................ 4

*Velesaca v. Decker*, 458 F. Supp. 3d 224 (S.D.N.Y. 2020) .......................................................... 8

*Wagner v. City of Holyoke*, 100 F. Supp. 2d 78 (D. Mass. 2000) ................................................. 7

*Webster v. Doe*, 486 U.S. 592 (1988) ............................................................................................ 5

**Statutes**

5 U.S.C. § 704 ................................................................................................................................. 8

8 U.S.C. § 1201 ............................................................................................................................ 9

8 U.S.C. § 1252 ....................................................................................................................... 4, 9

8 U.S.C. § 1357 ............................................................................................................................ 9

**Other Authorities**

Adam B. Cox, The Invention of Immigration Exceptionalism, 134 Yale L.J. 329
    (2024) ........................................................................................................................................ 6

Emergency Supplemental Appropriations Act for Defense, The Global War on
    Terror, and Tsunami Relief, 2005, Pub. L. No. 109–13, § 103, 119 Stat 231
    (2005) ........................................................................................................................................ 9

Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458,
    § 5304, 118 Stat 3638 (2004) .................................................................................................... 9

I. **The defendant agencies have a policy of ideological deportation.**

Defendants have made clear that they are revoking the visas and green cards of students and faculty who engage in pro-Palestinian advocacy. They have described this policy, defended it, and demanded political credit for it, and they have begun implementing it in full view of the public. Only now that the policy has been challenged do they say, incredibly, that it does not actually exist. The Court should reject out of hand this brazen attempt to evade accountability.

Defendants' statements leave no doubt that Defendants have adopted the policy Plaintiffs have described. For example, Secretary Rubio has stated that Defendants are "revoking the visas and/or green cards of Hamas supporters in America so they can be deported," Krishnan Decl. Ex. I, and Rubio and others have made clear that Defendants view a broad spectrum of pro-Palestinian and anti-war speech to constitute support for Hamas, *see, e.g.*, *id.* Ex. N at 4–5 (Deputy Secretary of DHS equating "pro-Palestinian activity" with support for Hamas); Suppl. Krishnan Decl. Ex. A at 2 (Rubio stating: "If they're taking activities that are counter to . . . our national interest, to our foreign policy, we'll revoke the visa"); *id.* at 2, 8 (stating that individuals meet this "standard" if they are "supportive of movements that run counter to [U.S.] foreign policy" and acknowledging that many recent visa revocations are "related to pro-Palestinian protests"). Defendants state that they are "us[ing] their existing authority to implement the President's agenda, as captured in [Executive Order 14,188]," Opp. 3, which the President subsequently announced would make good on the promise to deport "all the resident aliens who joined in the pro-jihadist protests" and to "cancel the students visas of all Hamas sympathizers on colleges campuses," Krishnan Decl. Ex. D at 2. But the fact that the policy aligns with the President's agenda should hardly come as a surprise, let alone "insulate [it] from judicial review." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996).

1

It is also plain that Defendants have begun to implement the policy. They have attempted to deport students and faculty based on their perceived pro-Palestinian advocacy. PI Br. 2–4; *see also* Supp. Krishnan Decl. Ex. E at 6 (Rubio citing Khalil's participation in "antisemitic protests" as reason for his arrest); *id.* Ex. F at 2 (confirming that Ozturk's arrest was based on an "anti-Israel" op-ed); *id.* Ex. H (reporting on new arrest of student protest leader). In addition, they have demanded that universities provide the names and nationalities of students involved in pro-Palestinian protests; told universities which students they intend to target under the policy; and launched new social media surveillance programs to identify still others to target. PI Br. 4.

Defendants' suggestion that the policy is unreviewable because it has not been "formalized," Opp. 3, is meritless. A policy need not be reduced to writing to be reviewable. *See Aracely v. Nielsen*, 319 F. Supp. 3d 110, 138–39, 145–49 (D.D.C. 2018) (collecting cases); *Greater Bos. Legal Servs. v. DHS*, 2022 WL 138629, at *7 (D. Mass. Jan. 14, 2022); *Berner v. Delahanty*, 129 F.3d 20 (1st Cir. 1997). Defendants' contrary rule would insulate a broad array of official conduct from review, which is why courts have not adopted it. *Aracely*, 319 F. Supp. 3d at 139.[1]

## II. The court can adjudicate Plaintiffs' claims.

### A. Plaintiffs have standing.

Defendants argue that Plaintiffs lack associational standing, citing *Murthy v. Missouri,* 603 U.S. 43 (2024), Opp. 8–9, but that case does not control here. First, Plaintiffs have identified specific speakers who have been silenced by the policy, and have explained with specificity how the silencing of these colleagues has injured them. The record is replete with examples of noncitizen faculty and students who, but for the policy, would engage in speech that Plaintiffs'

---

[1] The Court should reject the argument that the policy does not exist, but Plaintiffs' challenge to Defendants' coercive and retaliatory *threats* does not turn on the policy's existence in any event.

members desire to hear. Dubal Decl. ¶¶ 28, 31, 35, 39, 41, 44, 46, 49; Bâli Decl. ¶¶ 13–14, 16, 20–23, 26, 29, 31, 33. Second, in *Murthy* the plaintiffs relied on what the Supreme Court described as a highly attenuated causal chain involving "speech restrictions on different platforms, about different topics, at different times," attenuated further by the platforms' "independent incentives to moderate content." 603 U.S. at 61, 73. Here, by contrast, the record makes clear that Plaintiffs' injuries stem directly and foreseeably from the policy they challenge, and from the actions of noncitizens who "'react in predictable ways' to the defendants' conduct." *Id.* at 58–59 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)). No more is required. *Id.* at 57. Notably, Defendants do not argue that noncitizens are acting unreasonably by foregoing expression and association that might lead to deportation—and any such suggestion would be absurd.[2]

Defendants' objections to Plaintiffs' organizational standing are equally unconvincing. The record shows that the policy has deterred noncitizen faculty and students from participating in their organizations and events and has diverted resources from other projects. *See* Dubal Decl. ¶¶ 7–14; Bâli Decl. ¶¶ 36–47. These injuries are neither speculative nor incidental: noncitizens have withdrawn from the organizations specifically because they fear that participation will subject them to immigration consequences under the policy. *See* Dubal Decl. ¶¶ 7–9, 14–16; Bâli Decl. ¶¶ 36, 39. Moreover, Plaintiffs are not "spend[ing] [their] way into standing simply by expending money to gather information and advocate against the defendant's action." *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 394 (2024). Rather, the policy "directly affect[s] and interfere[s] with" their longstanding mission to protect academic freedom and foster scholarly engagement, *id.* at 395. *See* Dubal Decl. ¶¶ 7–9, 11, 13; Bâli Decl. ¶¶ 44–47.

---

[2] Defendants also cite *United States v. Texas*, Opp. 9, but that "extraordinarily unusual lawsuit" involved an effort to compel the government "to make more arrests," thus implicating the government's discretionary "non-enforcement" decisions. 599 U.S. 670, 680, 683 (2023).

**B.     Section 1252(g) does not bar review of Plaintiffs' claims.**

Defendants' reliance on Section 1252(g) is misplaced. First, Plaintiffs' claims are not brought "by or on behalf of any alien." 8 U.S.C. § 1252(g). They assert the First Amendment rights of citizen members and their own rights as U.S. organizations—rights that are "independent" of those of noncitizens. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757, n.15 (1976); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (recognizing Americans' right to hear from speaker who had no First Amendment rights).

Second, Plaintiffs' claims do not "aris[e] from" the decision to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court has emphasized that § 1252(g) eliminates jurisdiction only over challenges to those "three discrete actions." *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999) (decisions to "open an investigation" or "surveil" non-citizens are not barred); *accord Kong v. United States*, 62 F.4th 608, 617–18 (1st Cir. 2023). Here, Plaintiffs challenge Defendants' policy of ideological deportation and their campaign of threats, not any of the listed actions. *Cf. DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 13–16 (2020) (§ 1252(g) did not bar policy-level challenge to rescission of DACA, although rescission rendered DACA recipients removable); *Kandamar v. Gonzales*, 464 F.3d 65, 70–73 (1st Cir. 2006) (same for policy-level challenge to immigrant-registration program); *NWDC Resistance v. ICE*, 493 F. Supp. 3d 1003, 1011 (W.D. Wash. 2020) (same for challenge to ICE policy of retaliating against immigrants for their speech). Defendants rely on *AADC*, but the plaintiffs in that case were *noncitizens* who sued to reverse decisions to "'commence proceedings' against them." 525 U.S. at 487. Again, Plaintiffs here do not seek to intervene in any removal proceeding or to reverse any removal decision; they seek to enjoin the ideological-deportation policy itself.

4

Third, a contrary reading of § 1252(g) would foreclose meaningful judicial review of Plaintiffs' claims, thus raising a "serious constitutional question" that courts have a duty to avoid. *Webster v. Doe*, 486 U.S. 592, 603 (1988); *see also Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 31 (D.D.C. 2018) (§ 1252(g) did not apply to policy challenge for this reason). Plaintiffs cannot obtain judicial review of their claims through the INA because they cannot be parties to a removal proceeding. Any review individual noncitizens might obtain would not be an adequate substitute. Immigration judges have no authority to resolve constitutional challenges to the policy, and a court of appeals could not meaningfully address such challenges on a petition for review because doing so "would require developing a [factual] record that would not be possible or relevant in any one individual['s] removal proceeding." *Centro Presente v. DHS*, 332 F. Supp. 3d 393, 407 (D. Mass. 2018). Even if Plaintiffs could obtain *some* relief through this process, it would come entirely "too late" to address their "here-and-now" injuries. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).[3]

### III. Plaintiffs are likely to succeed on the merits of their claims.

#### A. The ideological-deportation policy violates the First and Fifth Amendments.

Defendants do not dispute that the policy reflects viewpoint discrimination that would be flagrantly unconstitutional in any other context. Instead, they argue that the First Amendment permits viewpoint discrimination here because the targets are noncitizens. Opp. 13–14. The only cases that Defendants cite for this proposition—*Turner v. Williams*, 194 U.S. 279, 283 (1904) and *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952)—predate the emergence of the modern First Amendment. *Turner* was decided when the distinction between rights and privileges meant that

---

[3] Even if § 1252(g) applied, Defendants' policy is so egregious a violation of the First Amendment that it would come within the exception recognized in *AADC* for outrageous government conduct. *See* 525 U.S. at 491; *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020).

5

"Congress could exclude immigrants on the basis of their speech"—"not because those immigrants were outside the protection of the First Amendment, but because they sought a privilege." Adam B. Cox, *The Invention of Immigration Exceptionalism*, 134 Yale L.J. 329, 363 n.122 (2024). That distinction has since eroded. *Id.* (citing, e.g., *Wieman v. Updegraff*, 344 U.S. 183, 192 (1952)). Similarly, when the Court upheld the deportation of Communist Party members in *Harisiades*, it applied then-prevailing free speech principles, under which even U.S. citizens could be punished for association with the Party. *See* 342 U.S. at 592 (citing *Dennis v. United States*, 341 U.S. 494 (1951)); *see also Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1064 (9th Cir. 1995) (endorsing this interpretation of *Harisiades*). These decades-old cases do not reflect contemporary First Amendment doctrine, PI Br. 11–12, and they cannot help Defendant here.[4]

Defendants' other arguments fare no better. They say that the Executive Orders target unlawful conduct, Opp. 12, but, whatever the merit of that argument, the policy that Plaintiffs challenge targets noncitizens based on their lawful speech. Defendants next mischaracterize Plaintiffs' claims as challenging selective enforcement, Opp. 14, but Plaintiffs do not contend that Defendants are selectively targeting pro-Palestinian speakers who are deportable for reasons other than their viewpoints; they contend that Defendants are deporting people on the basis of their viewpoints alone. Enjoining this policy would not therefore "permit and prolong a continuing violation of United States law." *AADC*, 525 U.S. at 490. Finally, Defendants misunderstand the import of the exclusion cases. Opp. 13. What these cases show is that viewpoint discrimination is

---

[4] Defendants also cite *Bluman v. Federal Election Commission*, Opp. 14, but that case stands for the narrow proposition that the government may exclude foreign citizens from activities "intimately related to the process of democratic self-government," such as making contributions to election campaigns. 800 F. Supp. 2d 281, 287 (D.D.C. 2011) (Kavanaugh, J.), *aff'd*, 565 U.S. 1104 (2012). The case cites *Bridges v. Wixon*, 326 U.S. 135 (1945), as having established that "resident aliens [are] protected by the First Amendment in the context of deportation." *Id.* at 286.

6

unconstitutional even in a context in which the government's power is at its zenith, the noncitizen speakers at issue have no First Amendment rights, and the only First Amendment rights at stake are those of U.S. listeners. PI Br. at 13. These cases are fatal to Defendants' argument here.[5]

### B. Defendants' campaign of coercive threats also violates the First Amendment.

Plaintiffs are also likely to succeed on their claim that Defendants' campaign of coercive and retaliatory threats violates the First Amendment. Defendants fail to address Plaintiffs' retaliation claim at all. PI Br. 14–15. And while Defendants contend that the *Bantam Books*/*Vullo* framework does not apply, they concede that a "*Vullo* claim is premised on the point that the Government cannot accomplish indirectly what it cannot do directly." Opp. 15. That is this case: Defendants are using the "threat of invoking legal sanctions and other means of coercion" to suppress speech they could not directly outlaw. *Bantam Books v. Sullivan*, 372 U.S. 58, 67 (1963).

### C. The ideological-deportation policy is subject to review under the APA.

Defendants offer no reason to bypass the "strong presumption" favoring judicial review of agency action under the APA. *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020). First, the policy constitutes "final agency action," *see* PI Br. 17, and Defendants' reliance on *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990), is misplaced. Opp. 16–17. In *Lujan*, the Supreme Court could not infer the existence of a coherent "program" from "individual actions . . . announcing" the Bureau of Land Management's "intent to grant requisite permission for certain activities, to decline to interfere with other activities, and to take other particular action

---

[5] Plaintiffs are also likely to succeed on their claim that the policy is unconstitutionally vague. Defendants' arguments to the contrary largely rely on mischaracterizing Plaintiffs' suit as a challenge to the Executive Orders. Opp. 16. Contrary to Defendants' assertion, courts do apply vagueness doctrine to policies of the type challenged here. *Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1214 (D.C. Cir. 2021); *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 736–37 (D.C. Cir. 2016); *Wagner v. City of Holyoke*, 100 F. Supp. 2d 78, 86–89 (D. Mass. 2000).

if requested." 497 U.S. at 892. Here, no inference is required, because Defendants have made absolutely clear that they have adopted a policy of revoking the visas and green cards of faculty and students engaged in pro-Palestinian advocacy. *See supra* pp. 1–2; *see also Amadei v. Nielsen*, 348 F. Supp. 3d 145, 165 (E.D.N.Y. 2018). That the policy has not been formalized in a regulation does not undermine its finality; numerous courts, including in this district, have explained that agency action is "final" even if it has not been reduced to writing. *See supra* p. 2.

Second, Plaintiffs lack any other adequate remedy for the harms caused by the policy. *See* 5 U.S.C. § 704. Plaintiffs' claims are not reviewable through removal proceedings, and any remedy afforded to noncitizen members who might one day be put into removal proceedings would not give Plaintiffs meaningful relief, *see supra* p. 4; *cf. Greater Bos. Legal Servs.*, 2022 WL 138629, at *5 (finding no adequate alternative remedy where plaintiff lawyers were "not parties to [individual removal proceedings]" and any review sought by noncitizens could "not address [plaintiffs'] broader injury"); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 243 (S.D.N.Y. 2020) (similar). Where "the very existence of an alternative remedy is doubtful or uncertain there is scant basis to displace APA review." *CREW v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (cleaned up).

**IV.     Section 1252(f)(1) does not bar the relief sought.**

Defendants' argument that § 1252(f)(1) forecloses Plaintiffs' motion is also incorrect.

First, § 1252(f)(1) does not bar the Court from granting relief against the policy, rather than against specific provisions of the INA. The provision prohibits only "injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out" covered provisions of the INA. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But an injunction against the policy would prohibit Defendants from implementing the policy—not any covered provision. It would not "add[] a new procedural step to the Government's operation of

8

[the] covered provisions." *Al Otro Lado v. EOIR*, 120 F.4th 606, 627 (9th Cir. 2024). At most, it would have a "collateral effect[]" on Defendants' enforcement of covered provisions, but this kind of "one step removed" effect is not sufficient to bring an injunction within § 1252(f)(1)'s scope. *Id.* (citation omitted); *Texas v. DHS*, 123 F.4th 186, 209–10 (5th Cir. 2024); *see also Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 986 (C.D. Cal. 2024) (granting injunction against ICE's "knock and talks" policies for this reason).

Second, even if § 1252(f)(1) applied to policy challenges like this one, much of Plaintiffs' requested injunction would not plausibly affect the government's operation of covered provisions—provisions contained in Part IV of the INA, as amended by Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* 8 U.S.C. § 1252(f)(1). Defendants' authority to revoke visas, for instance, lies in Part III of the INA, not Part IV. *See* 8 U.S.C. § 1201(i). Defendants also do not point to any provision of Part IV authorizing it to investigate or surveil noncitizens. *Cf.* 8 U.S.C. § 1357 (provision authorizing warrantless arrests in Part IX). Thus, at a minimum, the Court could enjoin Defendants from implementing the policy by investigating, surveilling, and revoking the visas of noncitizens based on viewpoint.[6]

Third, § 1252(f)(1) does not bar the remaining relief sought—and Defendants do not suggest otherwise. An injunction against Defendants' threats would have no effect on the

---

[6] Section 1201(i) is not a covered provision for the additional reason that § 1227(a)(1)(B)'s cross-reference to it was added after the 1996 IIRIRA amendments. *See* Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458, § 5304, 118 Stat 3638, 3736 (2004); *see also Galvez v. Jaddou*, 52 F.4th 821, 830–31 (9th Cir. 2022). The same is true for the endorse or espouse provisions, which were added to the INA in 2005. *See* Emergency Supplemental Appropriations Act for Defense, The Global War on Terror, and Tsunami Relief, 2005, Pub. L. No. 109–13, § 103, 119 Stat 231, 307 (2005). For that reason, the Court could also enjoin Defendants from implementing the policy by charging individuals with removability under § 1227(a)(1)(B) (to the extent Defendants rely on a visa revocation made pursuant to § 1201(i)), and § 1227(a)(4)(B) (to the extent they rely on the endorse or espouse provisions).

defendant agencies' operation of the covered provisions. And, as every court to consider the question has held, § 1252(f)(1) does not bar relief under § 705 or § 706 of the APA because this relief is not injunctive. *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 219–20 (5th Cir. 2022) (§ 1252(f)(1) does not apply to § 706 vacatur); *Nat'l TPS Alliance v. Noem*, 2025 WL 957677, at *11–14 (N.D. Cal. Mar. 31, 2025) (§ 1252(f)(1) does not apply to § 705 stays, collecting cases). A vacatur is a "less drastic remedy" than an injunction, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), and here Plaintiffs seek only a § 705 stay, which is merely "an interim or lesser form of [relief than] vacatur." *Texas v. Biden*, 646 F. Supp. 3d 753, 768 (N.D. Tex. 2022). As the Supreme Court has recognized in a related context, although a stay "has some functional overlap with an injunction," "a stay achieves this result by temporarily suspending the source of the authority to act . . . not by directing an actor's conduct." *Nken v. Holder*, 556 U.S. 418, 428–29 (2009).[7]

## Conclusion

Plaintiffs respectfully submit that the Court should grant the preliminary injunction and stay. It should waive the bond requirement because Plaintiffs are nonprofit organizations, they seek to vindicate important constitutional rights, and Defendants have failed to demonstrate that an injunction will expose them to financial loss. *See Doe v. Trump*, 2025 WL 485070, at *17 (D. Mass. Feb. 13, 2025).

---

[7] Defendants say an injunction against the policy would be "unjustifiabl[y]" broad, Opp. 19, but the breadth of the injunction is warranted by the breadth of the policy and by the fact that Plaintiffs have thousands of members at universities across the country. *See TPS Alliance*, 2025 WL 957677, at *45–46. The government is also wrong that an injunction would require this Court to superintend individual removal proceedings. Opp. 19–20. The injunction would run not against any individual removal proceedings, but against implementation of the policy. *See, e.g.*, *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015); *Al Otro Lado*, 120 F.4th 606.

April 18, 2025

/s/ Edwina Clarke
Edwina Clarke, BBO 699702
David Zimmer, BBO 692715
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com

Respectfully submitted,

/s/ Ramya Krishnan
Ramya Krishnan*
Carrie DeCell*
Xiangnong Wang*
Talya Nevins*
Jackson Busch*
Alex Abdo*
Jameel Jaffer*
Knight First Amendment Institute
 at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham* (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

*Counsel for Plaintiffs*

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

      I, the undersigned counsel, certify that on April 18, 2025, I electronically filed the foregoing in the United States District Court for the District of Massachusetts using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 18, 2025                                        /s/ Ramya Krishnan
                                                                                    Ramya Krishnan