# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

—————————————————————

|  |  |  |
|---|---|---|
| | ) | |
| AMERICAN ASSOCIATION OF | ) | |
| UNIVERSITY PROFESSORS, ET AL., | ) | Civil Action No. 1:25-cv-10685-WGY |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCO RUBIO, in his official capacity | ) | |
| as Secretary of State, and the | ) | |
| DEPARTMENT OF STATE, ET AL., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND MOTION TO DISPENSE WITH RULE 65(a) TRIAL ON THE MERITS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 4

    I.     DISCOVERY IS BARRED IN THIS APA CASE SO THE COURT IS
          LIMITED TO THE ADMINISTRATIVE RECORD ................................. 4

    II.    DISCOVERY IS ALSO PRECLUDED BECAUSE PLAINTIFFS' FIRST
          AMENDMENT CLAIMS ARE REVIEWED UNDER THE FACIALLY
          LEGITIMATE AND BONA FIDE STANDARD ....................................... 8

CONCLUSION............................................................................................................. 12

i

## **TABLE OF AUTHORITIES**

### **CASES**

**Page(s)**

*Alabama-Tombigbee Rivers Coal. v. Norton*,
  2002 WL 227032 (N.D. Ala. Jan. 29, 2002). ............................................................... 6

*American Ass'n of Univ. Professors, et at. v.Rubio, et al.*,
  2025 WL 1235084 ............................................................................................................ 4

*Atieh v. Riordan*,
  727 F.3d 73 (1st Cir. 2013) ..................................................................................... 4, 5, 7

*Bellion Spirits, LLC v. United States*,
  335 F. Supp. 3d 32 (D.D.C. 2018) ................................................................................. 6

*Berman v. United States*,
  264 F.3d 16 (1st Cir. 2001) ............................................................................................ 4

*Bowen v. City of New York*,
  476 U.S. 467 (1986) ..................................................................................................... 12

*Camp v. Pitts*,
  411 U.S. 138 (1973) ........................................................................................................ 4

*Carlson v. Landon*,
  342 U.S. 524 (1952) ........................................................................................................ 8

*Chang v. USCIS*,
  254 F. Supp. 3d 160 (D.D.C. 2017) ................................................................................ 6

*Charlton Mem'l Hosp. v. Sullivan*,
  816 F. Supp. 50 (D. Mass. 1993) .................................................................................... 6

*Cheney v. U.S. Dist. Court for the Dist. of Columbia*,
  542 U.S. 367 (2004) ...................................................................................................... 12

*City of Taunton v. U.S. EPA*,
  895 F.3d 120 (1st Cir. 2018) .......................................................................................... 7

*Department of State v. Muñoz*,
  602 U.S. 899 (2024) ........................................................................................................ 8

*Dep't of Com. v. New York*,
  315 F.Supp.3d 766 (S.D.N.Y 2018) ............................................................................. 11

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ........................................................................ 5

*Deukmejian v. Nuclear Regul. Comm'n*,
    751 F.2d 1287 (D.C. Cir. 1984) ...................................................... 5

*Doraiswamy v. Secretary of Labor*,
    555 F.2d 832 (D.C. Cir. 1976) ........................................................ 5

*Ducoste v. Cherry*,
    647 F. Supp. 3d 52 (D. Mass. 2022) ............................................... 4

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ........................................................................ 4

*Florida Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ........................................................................ 4

*Galvan v. Press*,
    347 U.S. 522 (1954) ........................................................................ 9

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ........................................................................ 8

*Harkness v. United States*,
    727 F.3d 465 (6th Cir. 2013) .......................................................... 6

*Harvard Pilgrim Health Care of New England v. Thompson*,
    318 F. Supp. 2d 1 (D.R.I. 2004) ............................................... 5, 6, 7

*Housatonic River Initiative v. United States Env't Prot. Agency, New England Region*,
    75 F.4th 248 (1st Cir. 2023) ........................................................... 7

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,
    58 F. Supp. 3d 1191 (D. N.M. 2014) .............................................. 6

*Kerry v. Din*,
    576 U.S. 86 (2015) ........................................................................ 10

*Ketcham v. U.S. Nat'l Park Serv.*,
    No. 16-CV-00017SWS, 2016 WL 4268346 (D. Wyo. Mar. 29, 2016) ........................ 6

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ........................................................... 1, *passim*

*Lardner v. U.S. Dep't of Justice*,
  No. 03-0180, 2005 WL 758267 (D.D.C. Mar. 31, 2005) .......................................... 12

*Lujan v. Nat'l Wildlife Federation*,
  497 U.S. 871 (1990) ...................................................................................................... 2

*Moralez v. Perdue*,
  2017 WL 2264855 (E.D. Cal. May 24, 2017) .............................................................. 6

*Murphy v. United States*,
  45 F.3d 520 (1st Cir. 1995) .......................................................................................... 4

*Norton v. Southern Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ........................................................................................................ 2

*Olsen v. U.S.*,
  414 F.3d 144 (1st Cir. 2005) ........................................................................................ 7

*Outdoor Amusement Bus. Ass'n, Inc. v. DHS*,
  2017 WL 3189446 (D. Md. July 27, 2017) ................................................................. 6

*Reno v. American-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ...................................................................................................... 9

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*,
  789 F.2d 26 (D.C. Cir. 1986) ....................................................................................... 5

*Sierra Club v. United States Army Corps of Eng'rs*,
  2023 WL 6260728 (D. Me. Sept. 26, 2023) ................................................................ 7

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950) ...................................................................................................... 4

*Tafas v. Dudas*,
  530 F. Supp. 2d 786 (E.D. Va. 2008) .......................................................................... 6

*Trump v. Hawaii*,
  585 U.S. 667 (2018) .............................................................................................. 9, 10, 11

*United States v. JG-24, Inc.*,
  478 F.3d 28 (1st Cir. 2007) .......................................................................................... 7

*United States v. Mitchell*,
  445 U.S. 535 (1980) ...................................................................................................... 4

## **STATUTES**

5 U.S.C. § 702 ................................................................................................................ 4

5 U.S.C. § 706 ................................................................................................................ 6

5 U.S.C. § 706(2)(B) .................................................................................................. 1, 6

28 U.S.C. § 1331 ............................................................................................................ 4

## **FEDERAL RULES OF APPELLATE PROCEDURE**

Fed. R. Civ. P. 26(f)(1) ................................................................................................. 5

Fed. R. Civ. P. 26(a)(1)(B)(i) ....................................................................................... 5

Fed. R. Civ. P. 65(a) ................................................................................................. 1, 3

## INTRODUCTION

Defendants respectfully request a protective order, to preclude discovery in this Federal Rule of Civil Procedure 65(a) proceeding for two reasons. First, discovery and evidentiary hearings generally are impermissible in Administrative Procedure Act ("APA") cases, even where the plaintiff includes an overlapping constitutional claim. Plaintiffs' complaint is premised on the APA's limited waiver of sovereign immunity under 5 U.S.C. § 706(2)(B), providing for judicial review of final agency action that is alleged to be contrary to law or "constitutional right." This waiver limits the review of all claims, statutory and constitutional, in accordance with the APA's "record rule," in which review is ordinarily restricted to an "administrative record" compiled by the agency; there is no discovery, and no trial. The exceptions to the rule come into play only after the record has been provided.

Second, even if review is not limited to an administrative record here, the broad discovery Plaintiffs seek into ongoing removal proceedings is not relevant or proportionate to the needs of the case and is unduly burdensome. More specifically, Plaintiffs' proposed discovery is incompatible with well-established limitations on reviewing First Amendment claims of citizens and aliens in the immigration context. Plaintiffs challenge the agencies' alleged unlawful policy of "revoking the visas of and arresting, detaining, and deporting, noncitizen students and faculty based on their [First Amendment-]protected pro-Palestinian advocacy." Transcript, April 23, 2025, at 8-9. When Executive Branch decisions to pursue immigration enforcement actions allegedly conflict with rights of aliens or citizens under the First Amendment, the Supreme Court limits review of those actions to whether they are "facially legitimate and bona fide." *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (courts may neither "look behind" the "facially legitimate and bona fide" denial of immigration waiver, nor weigh it against asserted

First Amendment interests).  The Court has asked the parties for guidance on this very question.
*See* Transcript, 5/6/25, at 13 ("I'm not clear that noncitizens have . . . I will call them the "full rights" to free speech that a citizen has.  I'm looking for guidance.").[1]  The facially legitimate and bona fide standard limits judicial review of the challenged agency actions, and it necessarily precludes, or at the very least, dramatically limits discovery into the matters that the Supreme Court admonishes courts not to "look behind." *Kleindienst*, 408 U.S. at 770.  For these reasons, Defendants respectfully request a protective order barring discovery and a "trial on the merits."

## BACKGROUND

Plaintiffs are student and faculty associations who allege that federal agencies have implemented an "ideological deportation policy," which they describe as a "large-scale" policy of "arresting, detaining, and deporting" noncitizen students and faculty engaged in "pro-Palestinian protests" and related "expression and association."  Complaint for Declaratory and Injunctive Relief, Dkt. 1 ("Compl.") ¶ 1.  Plaintiffs raise four claims:  (1) the "ideological deportation policy" violates the First Amendment; (2) Defendants' "threats to punish constitutionally protected speech" violate the First Amendment; (3) the "ideological deportation

---

[1] The Court also noted, during the same status conference, that "redressability here is a very real issue and one we're going to need to talk about."  (Transcript, 5-6-25, at 6 ln.5-8).  Indeed, a "large-scale" policy of the type alleged by Plaintiffs is generally not subject to "broad programmatic attacks" and review is only of discrete agency actions. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 891 (1990); *accord Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (holding jurisdiction is limited to discrete agency actions).  But whether Plaintiffs attack certain discrete agency actions (e.g., by stating the alleged unconstitutional policy motivates the revocation of visas, and the arrest, detention, and removal of certain aliens) on the one hand, while, on the other, alleging that the focus of their lawsuit is an unwritten "large-scale" policy or program, it is undisputed that they have never established why their lawsuit justifies discovery, despite the APA record rule, or the facially-legitimate-and-bona-fide standard of review.

2

policy" violates the Fifth Amendment; and (4) the "ideological deportation policy" violates the APA.  Compl. ¶¶ 134-39.

On April 1, 2025, Plaintiffs filed a motion for a preliminary injunction, Dkt. 13, 14, which Defendants opposed on jurisdictional grounds and on the merits.  Dkt. 65.  On April 23, the Court held a hearing on the preliminary injunction motion and indicated it was inclined to consolidate the hearing with a trial on the merits.  *See* Transcript, April 23, 2025, at 10.  The court then addressed Defendants' opposition to the preliminary injunction motion and treated it as a motion to dismiss and heard argument.  Dkt. 73 at 4 n.3; Transcript at 14-15.  On April 29, the Court dismissed Plaintiffs' Fifth Amendment claim but otherwise denied the motion to dismiss.  Dkt. 73.  The Court concluded that Plaintiffs "plausibly alleged final agency action" in the form of an ideological deportation policy.  *Id.* at 66.  At the same time, the Court invoked Fed. R. Civ. P. 65(a) to consolidate the preliminary injunction hearing with a trial on the merits. *See* Dkt. 73 at 4 n.3.  On May 6, the Court held a case management conference and encouraged the parties to discuss a discovery plan that would enable them to try the case on the merits during the week of July 7, 2025.  On May 13, Plaintiffs served their First Set of Requests for Production and their First Set of Interrogatories.  *See* Exhibit A (requests for production) and Exhibit B (interrogatories).  On May 19, 2025, Plaintiffs sent Defendants a second, revised set of the foregoing discovery requests.  *See* Exhibit C (revised requests for production), Exhibit D (revised interrogatories).  Among other things, Plaintiffs broadly request all documents concerning (1) any adverse action taken or even considered against nine particular individuals, (2) the surveillance of noncitizen social media accounts generally, and (3) proposed or actual actions taken against any non-citizen engaged in any pro-Palestinian, pro-Hamas, or pro-Jihadist speech.  Exs. A-D.

<u>**ARGUMENT**</u>

**I.    DISCOVERY IS BARRED IN THIS APA CASE SO THE COURT IS LIMITED TO THE ADMINISTRATIVE RECORD**

The United States, as sovereign, is immune from suit unless it consents to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit"). Further, "statutes waiving sovereign immunity should be strictly construed in favor of the United States." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). Thus, the party seeking to invoke the court's jurisdiction has the burden to show the application of a waiver of sovereign immunity. *See Ducoste v. Cherry*, 647 F. Supp. 3d 52, 55 (D. Mass. 2022). Here, the waiver of sovereign immunity that Plaintiffs have identified in their Complaint is the APA. Compl. ¶ 6 (citing 5 U.S.C. § 702); *see also American Ass'n of Univ. Professors, et at. v.Rubio, et al.*, 2025 WL 1235084 at *21 (holding for an agency action to be reviewable there must be no other adequate remedy).[2]

Under the APA, judicial review of agency action is confined to the administrative record compiled by the agency. *See Camp v. Pitts*, 411 U.S. 138, 141-42 (1973); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 742-745 (1985); *Atieh v. Riordan*, 727 F.3d 73, 75 (1st Cir. 2013). "APA review . . . involves neither discovery nor trial." *Atieh*, 727 F.3d at 76. The relevant inquiry is — and must remain — not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's

---

[2] While Plaintiffs' Complaint cites 28 U.S.C. § 1331 as a basis for the Court's subject matter jurisdiction, Compl. ¶ 6, that statute does not waive sovereign immunity and provides no jurisdictional basis for a claim against the federal government. *See, e.g., Berman v. United States*, 264 F.3d 16, 20 (1st Cir. 2001). Similarly, the Declaratory Judgment Act creates no independent jurisdictional basis for suits in federal court. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-74 (1950)).

decision.  *Id*.  This principle of limited review "reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided."  *Dep't of Com. v. New York*, 588 U.S. 752, 780-781 (2019) (citations omitted).

Because the APA is the waiver of sovereign immunity, judicial review depends solely on a review of an administrative record documenting the policy that the Plaintiffs allege implements Executive Orders 14161 and 14188, which Plaintiffs describe as the "ideological deportation policy."  This action is therefore exempt from the discovery requirements of Rule 26.  *See* Fed. R. Civ. P. 26(a)(1)(B)(i) (exempting from initial disclosure "an action for review on an administrative record"); Fed. R. Civ. P. 26(f)(1) (exempting for a conference of the parties and planning for discovery "a proceeding exempted from initial disclosure under Rule 26(a)(1)(B)(i)").  This exemption exists because discovery is very rarely allowed in an APA action to challenge the lawfulness of an agency action or decision and even then, only on a motion to supplement the record after it has been produced.  *See Deukmejian v. Nuclear Regul. Comm'n*, 751 F.2d 1287 (D.C. Cir. 1984), reh'g granted in part as to § III.B and vacated sub nom. *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 760 F.2d 1320 (D.C. Cir. 1985), and on reh'g sub nom. *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 789 F.2d 26 (D.C. Cir. 1986); *Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 839-42 (D.C. Cir. 1976).  Moreover, APA cases are not decided based on an evidentiary hearing or a trial.  *Atieh*, 727 F.3d at 76 ("APA review . . . involves neither discovery nor trial."); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 8 (D.R.I. 2004) (observing, in the context of an APA challenge that also raised constitutional claims, that "the

focal point of judicial review under the APA is the administrative record already in existence and not a new record made by the reviewing court").

That Plaintiffs also raise constitutional claims makes no difference. *See, e.g.*, *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993) (plaintiff's equal protection claim "cannot so transform the case that it ceases to be primarily a case involving judicial review of agency action"); *cf. Harkness v. United States*, 727 F.3d 465, 471 (6th Cir. 2013) ("the review scheme does not carve out an exception for constitutional claims"). Judicial review under the APA, after all, expressly includes claims that agency action is "contrary to constitutional right[.]" 5 U.S.C. § 706(2)(B). And the APA is explicit that when reviewing such claims, as with any APA claim, "the court shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. For decades, courts across the country have therefore recognized that Section 706, by its plain language, limits the review of constitutional claims challenging agency action to the administrative record. *See Chang v. USCIS*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (denying motion for discovery into past agency practices meant to support plaintiffs' retroactivity and equal protection claims).[3] That is especially true when, as here, the alleged constitutional violation is also the basis for plaintiffs' APA claim. Indeed, the "APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on statutory or constitutional deficiencies was entitled to broad-ranging discovery." *Harvard*

---

[3] *See also Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1232 (D. N.M. 2014); *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 44 (D.D.C. 2018); *Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, No. ELH-16-1015, 2017 WL 3189446, at *21 (D. Md. July 27, 2017); *Moralez v. Perdue*, 2017 WL 2264855, at *3 (E.D. Cal. May 24, 2017); *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-00017SWS, 2016 WL 4268346, at *1-2 (D. Wyo. Mar. 29, 2016); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 803 (E.D. Va. 2008); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D. R.I. 2004); *Alabama-Tombigbee Rivers Coal. v. Norton*, No. CIV.A.CV-01-S-0194S, 2002 WL 227032, at *5-6 (N.D. Ala. Jan. 29, 2002).

*Pilgrim Health Care of New England v. Thompso*n, 318 F. Supp. 2d 1, 10 (D. R.I. 2004).  Thus, Plaintiffs' First Amendment claims must also be reviewed based on the administrative record prepared by Defendants.  *Id.*

While there are exceptions to the record rule, they only come into play *after* the record is produced.  *See Housatonic River Initiative v. United States Env't Prot. Agency, New England Region*, 75 F.4th 248, 279 (1st Cir. 2023) ("supplementation of the administrative record is the exception, not the rule") (internal citations omitted); *City of Taunton v. U.S. EPA*, 895 F.3d 120, 127 (1st Cir. 2018) (granting government's motion to strike plaintiff's proffered supplement to the administrative record because no exception applied); *Atieh*, 727 F.3d at 77 ("when parties ignore" the "customary practice" of waiting until the government has certified that the administrative record is complete before asking a district court to reach a determination, "they undermine a court's ability to perform meaningful review of agency action").  And even then, discovery is carefully delimited.  *See, e.g., United States v. JG-24, Inc.*, 478 F.3d 28, 34 (1st Cir. 2007) ("we do not allow supplementation of the administrative record unless the proponent points to specific evidence that the agency acted in bad faith"); *see also Sierra Club v. United States Army Corps of Eng'rs*, 2023 WL 6260728, at *7 (D. Me. Sept. 26, 2023) (recognizing the "presumption of regularity" that applies to administrative records compiled by agencies). Following the record's production in this case, if Plaintiffs believe that the record is insufficient, they can raise the prospect of limited extra-record discovery with Defendants or the Court.  The general rule and the starting point in this litigation, however, is that "APA review . . . involves neither discovery nor trial."  *Atieh*, 727 F.3d at 76; *Olsen v. U.S.*, 414 F.3d 144, 155-56 (1st Cir. 2005) (rejecting plaintiff's motion to conduct discovery rather than limit review to an

administrative record).  The Court should, therefore, enter a protective order against discovery in this case.

## II.    DISCOVERY IS ALSO PRECLUDED BECAUSE PLAINTIFFS' FIRST AMENDMENT CLAIMS ARE REVIEWED UNDER THE FACIALLY LEGITIMATE AND BONA FIDE STANDARD

 Even assuming the Court were to disagree that its review is limited to an administrative record, the Court's review—and the scope of discovery—would be separately, and independently, limited by the well-established doctrine, applicable in the immigration context, requiring that First Amendment claims, such as the Plaintiffs' core attack on the alleged "ideological deportation policy," be assessed only for whether the challenged immigration enforcement policy is facially legitimate and bona fide.  Under this standard, the Court looks to the legal justification proffered by the agency and, if facially valid, "the inquiry is at an end." *Department of State v. Muñoz*, 602 U.S. 899, 908 (2024) (reviewing a U.S. citizen's constitutional challenge to visa denial for whether the agency provided a "facially legitimate and bona fide reason").  Congress has plenary authority over immigration matters, which are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."  *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952); *see also Carlson v. Landon*, 342 U.S. 524, 534 (1952) (as long as a noncitizen "fail[s] to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders").

Courts have made clear the executive and legislature's broad authority over enforcement decisions on whom to admit or remove.  *See Kleindienst*, 408 U.S. at 766 ("[o]ver no conceivable subject is the legislative power of Congress more complete than it is over the

8

admission of aliens"); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487-91 (1999) (finding no jurisdiction to enjoin deportation proceeding based on noncitizen's claim that they were selectively targeted for deportation proceedings, which they asserted had a "chilling effect" on their exercise of First Amendment rights); *Galvan v. Press*, 347 U.S. 522, 530-33 (1954) (upholding constitutionality of deportation ground over dissent's First Amendment concerns). Where First Amendment interests are asserted to block the Executive Branch's actions in immigration matters, an unbroken line of Supreme Court cases since *Kleindienst* in 1972, establishes that the deferential facially legitimate and bona fide standard of review applies. *See Kleindienst*, 408 U.S. at 754, 769-70 (considering whether the Attorney General's refusal to admit an alien scholar to enter the country to attend academic meetings violated the First Amendment rights of the U.S. citizens who had invited him). Specifically, courts must defer to the agency's facially legitimate and bona fide reasons for decisions and actions on whether to enforce the immigration laws pertaining to the admission, exclusion, and deportation of aliens, while emphasizing that courts should neither "look behind" those reasons, nor "test" them against countervailing First Amendment concerns. *Id.* at 770. So, any discovery, even assuming the record rule did not apply to preclude it, would be limited to the documents showing those reasons.

In *Trump v. Hawaii*, 585 U.S. 667 (2018), Plaintiffs challenged an Executive Order (turned Proclamation) that they claimed, "was motivated not by concerns pertaining to national security but by animus toward Islam," in violation of the First Amendment. 585 U.S. at 681. The Supreme Court examined a series of media "statements by the President and his advisors casting doubt on the official objective of the Proclamation," which the plaintiffs submitted to claim "the primary purpose of the Proclamation was religious animus." 585 U.S. at 699. It then

explained that, because the Proclamation was "neutral on its face" and concerned "a matter within the core of executive responsibility," i.e., national security and regulating the entry of aliens, it would not "probe the sincerity of the [Executive Branch's] stated justification for the policy by reference to extrinsic statements," and instead "ask[ed] only whether the policy is facially legitimate and bona fide."[4]  *Id.* at 702-04.  And a facially legitimate and bona fide explanation need only be a statutory citation.  *Id.* at 703; *see also Kerry v. Din*, 576 U.S. 86, 104-05 (2015) (Kennedy, J., concurring) (relying on *Kleindienst* to conclude that the government satisfies due process when it provides a visa applicant a facially legitimate and bona fide reason for a visa denial, which, in that case, consisted of only a citation to a subsection of the immigration code governing admissibility).

*Trump v. Hawaii*, although different in some respects, has striking similarities to some of the Plaintiffs' allegations in this case.  Here, Plaintiffs challenge an alleged policy of targeting pro-Palestinian activists that they say was created to implement Executive Orders 14161 and 14188.  Compl. ¶¶ 21-30.  They claim that this "ideological deportation policy" amounts to animus (although not necessarily the religious animus examined in *Hawaii*) directed against aliens expressing pro-Palestinian views, in violation of the First Amendment.  *Id.*  In support of their theory, Plaintiffs similarly cite media statements by President Trump and his advisors, and they rely on immigration enforcement actions against five individual aliens, which they assert were ideologically based.  Compl. ¶¶ 24, 30-34, 36-40; PI Exs. A, E, G, V, Y, Z, AA-FF.  But as the Supreme Court has made clear in *Hawaii* and its prior holdings, such First Amendment claims are, at most, subject to facially legitimate and bona fide review.  The analysis does not

---

[4] The Court nonetheless also applied rational basis review, given the government had suggested it may be appropriate, and held that the Proclamation was not inexplicable but for discriminatory animus and was instead legitimately premised on national security.  585 U.S. at 706.

change because this case concerns a First Amendment speech claim rather than a First
Amendment religion claim, or because the alleged policy involves not just denial of entry, but
also removal.  *Hawaii*, 585 U.S. at 703-04 (the facially legitimate and bona fide standard applies
"across different contexts and constitutional claims").  And here the facially legitimate and bona
fide standard applies with "particular force in admission and immigration cases that overlap with
the area of national security."  *See Hawaii*, 585 U.S. at 703-04 (cleaned up); *cf. Dep't of Com. v.
New York*, 315 F.Supp.3d 766, 810 (S.D.N.Y 2018) ("every case cited by the [Supreme] Court in
which [the facially legitimate and bona fide standard of] review was applied involved either
immigration or the admission of noncitizens").

        Neither the Government's denial of the existence of the alleged policy, nor the Plaintiffs'
allegation that it may be unwritten, vitiates the application of the foregoing review standard.
Dkt. 69 at 7.  And given the Plaintiffs' APA-based jurisdictional pleading, it is incumbent on the
Government to compile the administrative record, reflecting *its* reasoning for the initiation of the
immigration enforcement actions challenged by the Plaintiffs.  Indeed, the Supreme Court has
emphasized that the standard of review only requires the government to disclose the statutory or
constitutional basis for its actions.  *Kleindienst*, 408 U.S. at 770.  Once provided, the Court
should not look behind that statutory or constitutional basis for pretext or "test it by balancing its
justification against the First Amendment interests of" Plaintiffs.  *Id.*  Accordingly, if the Court
finds that review solely on an administrative record is not appropriate, discovery is still strictly
limited to the reasons provided by the government, and whether those reasons are facially
legitimate and bona fide.  The wide-ranging discovery proposed by Plaintiffs, *see* Exhibits A and
B, is incompatible with the framework established by *Kleindienst* and its progeny.  Furthermore,
any discovery into discrete immigration enforcement actions against individual non-parties is

both inappropriate under the facially legitimate and bona fide standard and unnecessary given that Plaintiffs' claims do not rely on a discrete agency action.  *See Bowen v. City of New York*, 476 U.S. 467, 485 (1986) (stating that a class of Social Security applicants challenging a "systemwide, unrevealed policy" did not need to individually exhaust their administrative remedies before ALJs because the challenged policy did not "depend on the particular facts of" each applicant's case, and "there was nothing to be gained from permitting the compilation of a detailed factual record" about each individual case).

## **CONCLUSION**

In sum, even assuming the APA record rule were *not* applicable in this case, the undisputedly applicable standard for reviewing the merits of Plaintiffs' constitutional claims would nevertheless bar discovery and a trial on the merits in this case.  Accordingly, the Court should grant the Government's motion for a protective order and dispense with a trial on the merits in deciding this action.[5]

---

[5] In discussions with Plaintiffs over the last two weeks, Defendants have questioned the propriety of discovery, but—having asserted that objection along with noting the possibility of seeking relief—have nevertheless collaborated with the Plaintiffs in an effort to limit discovery in the event the Court were to deny the instant motion.  To that end, Defendants note that while Plaintiffs' discovery requests are directed to *all* of the Defendants, and the President is among them, it appears that Plaintiffs are seeking discovery directed to the White House, which implicates the limitations outlined by the Supreme Court in *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 388 (2004).  *See also Lardner v. U.S. Dep't of Justice*, No. 03-0180, 2005 WL 758267, at *9 (D.D.C. Mar. 31, 2005) ("[A] court must screen a request for presidential documents to ensure that the discovery is essential to the proceedings").  Finally, the overbreadth of Plaintiffs' requests in general, and the likely application of certain Government privileges over the requested material, likely pose considerable obstacles for beginning a trial in six weeks, even in the absence of Defendants' instant motion.  Thus, should the Court deny the motion, Defendants respectfully request that the Court set a status conference to address these obstacles.

Respectfully Submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

LEAH B. FOLEY
*United States Attorney*

SHAWNA YEN
*Assistant United States Attorney*
*District of Massachusetts*

ANTHONY NICASTRO
*Acting Director*
*Office of Immigration Litigation*

*/s/ Ethan B. Kanter*
ETHAN B. KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*
*P.O. Box 878, Ben Franklin Station*
*Washington, D.C. 20001*

*Dated: May 21, 2025*

*Counsel for Defendants*

## **MEET AND CONFER CERTIFICATION**

In accordance with Local Rule 7.1(2), on May 21, 2025, Defendants' counsel met and conferred with counsel for the Plaintiffs with regard to this motion and were unable to resolve or narrow the issue.

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


*Date: May 21, 2025*                                    By: */s/ Ethan Kanter*
                                                        ETHAN B. KANTER
                                                        U.S. Department of Justice

14

Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

AMERICAN ASSOCIATION OF UNIVERSITY
PROFESSORS, ET AL.,

                  Plaintiffs,                     Case No. 1:25-cv-10685 (WGY)

       v.

MARCO RUBIO, ET AL.

                  Defendants.

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO DEFENDANTS

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rules for the District of Massachusetts 26.1, Plaintiffs American Association of University Professors, American Association of University Professors-Harvard Faculty Chapter, American Association of University Professors at New York University, Rutgers American Association of University Professors-American Federation of Teachers, and Middle East Studies Association ("Plaintiffs"), by and through their undersigned counsel hereby request that Defendants Marco Rubio, Kristi Noem, Todd Lyons, and Donald J. Trump ("Defendants") produce the following documents and things identified and listed below for inspection.

## DEFINITIONS AND INSTRUCTIONS

1. The definitions and instructions provided in Federal Rule of Civil Procedure 34(a) and Local Rules 26.5 and 34.1 are incorporated by reference.

2. Whenever reference is made to a person or legal entity, it includes any and all of such person's or entity's past and present affiliates, components, subdivisions, offices, directors, officers, agents, partners, employees, contractors, consultants, attorneys, representatives,

1

investigators, predecessors, successors, assigns and/or any other person or entity acting on, or purporting to act on, its behalf.

3.    "Adverse action" means investigating, monitoring, surveilling, revoking the visa of, terminating the status of, determining the removability of, or seizing, arresting, detaining, removing, or transferring to detention facilities in Louisiana.

4.    "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

5.    "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

6.    "Communication", as defined in Local Rule 26.5(c), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7.    "Concerning" means, as defined in Local Rule 26.5(c), referring to, describing, evidencing or constituting.

8.    The terms "document" and "documents" mean any and all items referred to as "documents" in Federal Rule of Civil Procedure 34 and as "writings" and "recordings" in Federal Rule of Evidence 1001. By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence (including by letter, by e-mail, or by SMS text message, or by iMessage), internal communications, e-mail, ledger books, log books, statements, memoranda, policies, procedures, directives, instructions, guidance, summaries of records of conversations, reports, video tapes, audio tapes, minutes or records of meetings, summaries of

interviews or investigations, maps, and photographs. The term "document" shall include data stored and organized electronically.

9.  "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each."

10. "Including" shall be construed to include the phrase "without limitation."

11. The terms "you" and "your" refer to each of the defendants individually responding to these requests.

12. The term "Targeted Noncitizen Students or Faculty Members" means the following individuals:

     a.  Mahmoud Khalil;

     b.  Mohsen Mahdawi;

     c.  Rümeysa Öztürk;

     d.  Yunseo Chung;

     e.  Efe Ercelik;

     f.  Mohammed Hoque;

     g.  Ranjani Srinivasan;

     h.  Badar Khan Suri; and

     i.  Momodou Taal.

13. To the extent a request calls for the production of documents or things you contend are subject to a privilege or immunity from discovery, your written request should so indicate, but you are requested to produce the balance of the documents or things not subject to a claim of privilege which fall within the scope of the request. Additionally, to the extent information subject to a

privilege or immunity from discovery is contained within responsive documents or things, you are requested to produce a redacted version of the document or thing containing the non-privileged information with a notation on the produced document or thing indicating that it is being produced in redacted form.

14. If you are unable to produce any file or document sought in these requests, you shall identify the file or document; state the reasons why you are unable to produce it, describe in detail the efforts you have made to obtain it, and identify its location and/or custodian.

15. Documents responsive to these requests should be produced in the order in which they are ordinarily kept and in a format sufficient to identify the files from which they have been taken. Documents from different files should not be intermingled.

16. Except as otherwise specified, these requests cover the time period January 20, 2025 to the present.

17. These discovery requests are continuing in that they may require supplemental responses. If you obtain further information or documents with respect to any request to which you have already responded, you have a continuing duty to supplement your answer pursuant to Federal Rule of Civil Procedure 26(e) at any time prior to the entry of judgment.

18. For each document or thing requested that you object to producing on the basis of any privilege or immunity from discovery, please provide the following information:

   a.   The basis for the privilege being invoked;

   b.   The date of the document;

   c.   The title of the document (if any);

   d.   The name of the person(s) authoring the document;

4

e. The name of the person(s) to whom the document and/or copies thereof were given or transmitted;

f. The name of the person(s) from whom the document and/or copies thereof were given or transmitted:

g. The present location and custodian of the document, or any copies thereof; and

h. The general subject matter dealt with in the document with reasonable specificity to allow Plaintiffs to determine whether to challenge the privilege designation.

## **DOCUMENT REQUESTS**

1. Documents and communications concerning any adverse action you have taken or considered taking against any of the Targeted Noncitizen Students or Faculty Members, including but not limited to:

a. Any document in which the Department of Homeland Security ("DHS") and/or U.S. Immigration and Customs Enforcement ("ICE") requested or recommended that the U.S. Department of State revoke the visas of or determine the removability of a Targeted Noncitizen Student or Faculty Member. *See Ozturk v. Trump*, No. 25-CV-374, 2025 WL 1145250, at *3 (D. Vt. Apr. 18, 2025) (describing request from DHS and ICE for revocation of Rümeysa Öztürk's F-1 visa);

b. Any document in which the State Department approved the revocation of a Targeted Noncitizen Student's or Faculty Members's visa. *See id.*;

c. Any document in which Secretary of State Marco Rubio determined that a Targeted Noncitizen Student or Faculty Member is removable under 8

U.S.C. 1227(a)(4)(C). *See Khalil v. Joyce*, No. 25-CV-01963, 2025 WL 1232369, at \*2 (D.N.J. Apr. 29, 2025);

d.  Any document in which the State Department informed DHS and/or ICE that it had approved the revocation of a Targeted Noncitizen Student or Faculty Member's visa or determined the removability of a Targeted Noncitizen Student or Faculty Member;

e.  A memorandum from Secretary Rubio accusing Mohsen Mahdawi of engaging in "threatening rhetoric and intimidation of pro-Israeli bystanders." *Mahdawi v. Trump*, No. 25-CV-389, 2025 WL 1243135, at \*10 (D. Vt. Apr. 30, 2025);

f.  A memorandum from Andre Watson (Senior Official, Homeland Security Investigations) to John Armstrong (Senior Bureau Official, Department of State) stating that Rümeysa Öztürk had engaged in "anti-Israel activism." John Hudson, *No Evidence Linking Tufts Student to Antisemitism or Terrorism, State Dept. Office Found*, Wash. Po. (Apr. 13, 2025) https://perma.cc/KRB2-AVXF;

g.  A March 2025 State Department memorandum finding that neither DHS nor ICE nor Homeland Security Investigations had produced any evidence showing that Rümeysa Öztürk had engaged in antisemitic activity or made public statements indicating support for a terrorist organization. *See id.*;

h.  A document dated March 21, 2025 in which the State Department informed DHS that the revocation of Öztürk's visa had been "approved." *See id.*;

i.  An April 9, 2025 memorandum from the Deputy Assistant Secretary of State for Visa Services to ICE regarding the revocation of Efe Ercelik's visa. *Ercelik v. Hyde*, No. 25-CV-11007, slip op. at 17 (D. Mass. May 8, 2025);

j. A March 22, 2025 communication from DHS/ICE to the State Department seeking the Department's determination as to whether Mohammed Hoque's visa should be revoked. *Hoque v. Trump*, No. 25-cv-01576, slip op. at 4 (D. Conn. May 5, 2025);

k. A May 23, 2025 memorandum from the State Department informing DHS/ICE that Mohammed Hoque's visa had been revoked. *See id.*; and

l. Any Notice to Appear (Form I-862), administrative arrest warrant (Form I-200), or Record of Deportable/Inadmissible Alien (Form I-213) that has been issued or drafted as to any of the Targeted Noncitizen Students or Faculty Members.

2. Documents, including memoranda, policies, procedures, and directives concerning the inspection, review, monitoring, or surveillance of noncitizens' social media accounts or activity, including but not limited to:

a. The Secretary of State's communication to State Department employees on March 25, 2025, titled "Enhanced Screening and Social Media Vetting for Visa Applicants." Ken Klippenstein, *Trump Admin Spies on Social Media of Student Visa Holders*, Substack (Mar. 28, 2025), https://perma.cc/FV5L-MUNA;

b. The State Department's new guidance to consular officers on reviewing visa applicants' social media, referred to in paragraph 16 of the declaration from John Armstrong submitted in support of the government's opposition to Plaintiffs' preliminary injunction motion.

3. Documents and communications created, referenced, or relied on by you to take any adverse action against any of the Targeted Noncitizen Students or Faculty Members.

7

4.    Documents and communications concerning the "open-source information" collected and reviewed by the Homeland Security Investigations Office of Intelligence relating to the Targeted Noncitizen Students or Faculty Members. *See* Declaration of Andre Watson, ¶ 7 (April 14, 2025), ECF 65-2; Declaration of Unit Chief Roy M. Stanley ¶¶ 5-10, ECF 30-2 (March 22, 2025), *Taal v. Trump*, 3:25-cv-00335, (N.D.N.Y.).

5.    Documents and communications concerning the identification of Targeted Noncitizen Students or Faculty Members for potential adverse actions, including identifications made by you or any third party, such as Betar US and Canary Mission.

6.    Documents and communications concerning the implementation or enforcement of Executive Orders 14,161 and 14,188, with respect to taking any adverse action against non-citizens, including but not limited to any reports issued by the Attorney General, the Secretary of State, the Secretary of Education, and the Secretary of Homeland Security pursuant to Section 3(a) of Executive Order 14,188.

7.    Documents and communications concerning any proposed or actual adverse action taken against any non-citizen engaged in any speech or activities deemed, determined to be, or suspected of being pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel.

8.    Documents and communications referencing any of the Targeted Noncitizen Students or Faculty Members by name or A-number and concerning your decision to invoke the Foreign Policy Ground (8 U.S.C. § 1227(a)(4)(C)) as to any of them.

9.    Documents sufficient to show all information that you contend provided reasonable grounds for Secretary Rubio to believe that the continued presence or activities in the United

States of any of the Targeted Noncitizen Students or Faculty Members would have potentially serious adverse foreign policy consequences for the United States.

10. Documents sufficient to show all information considered by Secretary Rubio in determining that the continued presence or activities in the United States of any of the Targeted Noncitizen Students or Faculty Members would compromise a compelling United States foreign policy interest.

11. Documents and communications concerning any request or demand, by the Department of Education or any other official or agency, requesting, demanding or requiring that any university or college provide the names, nationalities or any other identifying information of students who have been accused of or suspected of engaging in speech or activities deemed, determined to be, or suspected of being pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, or anti-Israel.

12. Documents and communications concerning your identification to colleges and universities of non-citizen students or faculty members against whom you considered taking (or are considering taking) adverse action, including but not limited to the list of students provided by DHS to Columbia University that was referenced by White House Press Secretary Karoline Leavitt on March 11, 2025.

Dated:      May 13, 2025
            New York, NY

                                SHER TREMONTE LLP

                                    By:    _/s/ Noam Biale_____
                                    Michael Tremonte
                                    Noam Biale
                                    Alexandra Conlon
                                    Courtney Gans
                                    90 Broad Street, 23rd Floor

New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com

Ramya Krishnan
Carrie DeCell
Xiangnong Wang
Talya Nevins
Jackson Busch
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

Edwina Clarke, BBO 699702
David Zimmer
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com

*Attorneys for Plaintiffs*

To:        Ethan B. Kanter, Esq. (via email)
           Harry Graver, Esq. (via email)
           Lindsay M. Murphy, Esq. (via email)
           Shawna Yen, Esq. (via email)
           Sarmad Khojateh, Esq. (via email)

           *Attorneys for Defendants*

Exhibit B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., | |
| Plaintiffs, | Case No. 1:25-cv-10685 (WGY) |
| v. | |
| MARCO RUBIO, ET AL. | |
| Defendants. | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES DIRECTED AT DEFENDANTS

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Civil Rules for the District of Massachusetts 26.1 and 33.1, Plaintiffs American Association of University Professors, American Association of University Professors-Harvard Faculty Chapter, American Association of University Professors at New York University, Rutgers American Association of University Professors-American Federation of Teachers, and Middle East Studies Association ("Plaintiffs"), by and through their undersigned counsel hereby request that Defendants Marco Rubio, Kristi Noem, Todd Lyons, and Donald J. Trump ("Defendants") answer the following interrogatories (the "Interrogatories" and each individually an "Interrogatory") under oath and serve the answers within fourteen (14) days of service of this request.

### INSTRUCTIONS

1. The instructions provided in Local Rule 33.1 are incorporated by reference.

2. Whenever an Interrogatory asks for the identity of an individual, please set forth the following information:

    a.  The individual's name;

    b.  The individual's title or occupation;

    c.  The individual's present or last known residential address; and

    d.  The individual's present or last known business address.

3.  In answering these Interrogatories, Defendants are required to furnish all information known or available to them, regardless of whether this information is possessed by Defendants or by their agents, employees, representatives, investigators, or by their attorneys or other persons who have acted on their behalf, or by any corporation, partnership, or other legal entity.

4.  If any of these Interrogatories cannot be answered in full, after exercising due diligence to secure the information to do so, answer to the extent possible, specifying the reasons for Defendants' inability to answer the remainder and stating whatever information, knowledge, or belief Defendants have concerning the unanswered portion. In addition, specify the person or persons Defendants have reason to believe may have the information and/or knowledge to answer such interrogatory or any part thereof.

5.  The Interrogatories are continuing in nature. If, after answering these interrogatories, Defendants obtain or become aware of further information responsive to these Interrogatories, Defendants are required to provide a supplemental interrogatory answer.

6.  State whether the information furnished is within the personal knowledge of Defendants and, if not, the name of each person to whom the information is a matter of personal knowledge.

7.  If Defendants believe that an Interrogatory seeks privileged information, state the grounds for the privilege assertion in sufficient detail to enable Plaintiffs to challenge your claim.

8. If Defendants object to any portion of any Interrogatory herein, identify the portion of the Interrogatory to which Defendants object and respond to the remainder of the Interrogatory.

## DEFINITIONS

1. The definitions provided in Federal Rule of Civil Procedure Rule 34(a) and Local Rule 26.5(c) are incorporated by reference.

2. "Adverse action" means investigating, monitoring, surveilling, revoking the visa of, terminating the status of, determining the removability of, or seizing, arresting, detaining, removing, or transferring to a detention facility in Louisiana.

3. "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

4. "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

5. "Communication", as defined in Local Rule 26.5(c), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6. The term "document" and "documents" mean any and all items referred to as "documents" in Federal Rule of Civil Procedure 34 and as "writings" and "recordings" in Federal Rule of Evidence 1001. By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence (including by letter, by e-mail, or by SMS text message, or by iMessage), internal communications, e-mail, ledger books, log books, statements, memoranda, policies, procedures, directives, instructions, guidance, summaries of records of conversations, reports, video tapes, audio tapes, minutes or records of meetings, summaries of

interviews or investigations, maps, and photographs. The term "document" shall include data stored and organized electronically.

7.  "Identify," when referring to a person, means to give the names, titles, organizational roles, and job descriptions of all U.S. Government officials, officers, agents, employees or contractors.

8.  "Including" shall be construed to include the phrase "without limitation."

9.  The term "Targeted Noncitizen Students or Faculty Members" means the following individuals:

    a.  Mahmoud Khalil;

    b.  Mohsen Mahdawi;

    c.  Rümeysa Öztürk;

    d.  Yunseo Chung;

    e.  Efe Ercelik;

    f.  Mohammed Hoque;

    g.  Ranjani Srinivasan;

    h.  Badar Khan Suri; and

    i.  Momodou Taal.

10.  The terms "you" and "your" refer to each of the defendants individually responding to these requests.

## INTERROGATORIES

1.  Identify the persons who are or were involved in proposing or taking adverse action against any of the Targeted Noncitizen Students or Faculty Members, including everyone from the most senior agency officials (*e.g.*, Secretary Rubio and Secretary Noem) down the chain to the most junior agency officials, officers, employees, agents, contractors, or consultants.

2.  Identify the persons who are or were involved in the inspection, review, monitoring, or surveillance of non-citizens' social media accounts or activity.

3.  Identify the persons who are or were involved in the implementation or enforcement of Executive Orders 14,161 and 14,188, as they relate to taking any adverse action against non-citizens.

4.  Identify the persons who are or were involved in proposing or taking adverse action against any non-citizen student or faculty member on the basis of, or partly on the basis of, speech or activities determined or suspected to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel.

5.  Identify the persons who are or were involved in any request or demand, by the Department of Education or any other official or agency, requesting, demanding or requiring that any university or college provide the names, nationalities or any other information of non-citizen students or faculty members believed or suspected to have engaged in speech or activities deemed to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel.

6.  Identify the persons who are or were involved in the identification of non-citizen students or faculty members targeted for any adverse action on the basis of, or partly on the basis of, speech or activities deemed to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel, including but not limited to the persons who were involved in compiling and sharing the list of students provided by the Department of Homeland Security to Columbia University referenced by White House Press Secretary Karoline Leavitt on March 11, 2025.

7.  State the basis of or for your claim, assertion, allegation, or contention that your taking adverse action against any of the Targeted Noncitizen Students or Faculty Members was lawful.

8.  State the basis of or for your claim, assertion, allegation, or contention that any of the Targeted Noncitizen Students or Faculty Members engaged in pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel speech or activities.

9.  State the basis of Secretary of State Rubio's determination that any of the Targeted Noncitizen Students or Faculty Members is removable under 8 U.S.C. § 1227(a)(4)(C).

10. Identify all documents you created, consulted, referenced, or relied on in determining whether to take any adverse action against any of the Targeted Noncitizen Students or Faculty Members.

11. Describe in detail the reasons why the agents who arrested Rümeysa Öztürk and Badar Khan Suri were wearing civilian clothes, hoods, and masks, without their official badges visible.

12. Describe in detail your transfer of Mahmoud Khalil and Rümeysa Öztürk from the location of their arrest to a detention facility in Louisiana, including your decision to transfer them, your reasons for transferring them, and your planning, coordination, and execution of the transfers.

13. Describe in detail your arrest and detention of Mohsen Mahdawi and your attempt to transfer him to a detention facility in Louisiana, including your planning and coordination of his arrest in connection with his U.S. Citizenship and Immigration Services interview in Colchester, Vermont on April 14, 2025.


Dated:       May 13, 2025
             New York, NY

                          SHER TREMONTE LLP

                          By:    _/s/ Noam Biale_____
                          Michael Tremonte
                          Noam Biale
                          Courtney Gans
                          Alexandra Conlon
                          90 Broad Street, 23rd Floor

New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com

Ramya Krishnan
Carrie DeCell
Xiangnong Wang
Talya Nevins
Jackson Busch
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

Edwina Clarke, BBO 699702
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
*edwina@zimmercitronclarke.com*

*Attorneys for Plaintiffs*

To:        Ethan B. Kanter, Esq. (via email)
        Harry Graver, Esq. (via email)
        Lindsay M. Murphy, Esq. (via email)
        Sarmad Khojateh, Esq. (via email)
        Shawna Yen, Esq. (via email)

*Attorneys for Defendants*

Exhibit C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

AMERICAN ASSOCIATION OF UNIVERSITY
PROFESSORS, ET AL.,

                   Plaintiffs,                          Case No. 1:25-cv-10685 (WGY)

       v.

MARCO RUBIO, ET AL.

                   Defendants.

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
## DIRECTED TO DEFENDANTS

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rules for the District of Massachusetts 26.1, Plaintiffs American Association of University Professors, American Association of University Professors-Harvard Faculty Chapter, American Association of University Professors at New York University, Rutgers American Association of University Professors-American Federation of Teachers, and Middle East Studies Association ("Plaintiffs"), by and through their undersigned counsel hereby request that Defendants Marco Rubio, Kristi Noem, Todd Lyons, and Donald J. Trump ("Defendants") produce the following documents and things identified and listed below for inspection.

## DEFINITIONS AND INSTRUCTIONS

1.  The definitions and instructions provided in Federal Rule of Civil Procedure 34(a) and Local Rules 26.5 and 34.1 are incorporated by reference.

2.  Whenever reference is made to a person or legal entity, it includes any and all of such person's or entity's past and present affiliates, components, subdivisions, offices, directors, officers, agents, partners, employees, contractors, consultants, attorneys, representatives,

1

investigators, predecessors, successors, assigns and/or any other person or entity acting on, or purporting to act on, its behalf.

3.    "Adverse action" means investigating, monitoring, surveilling, revoking the visa or lawful permanent residency of, determining the removability of, or seizing, arresting, detaining, removing, or transferring to detention facilities in Louisiana.

4.    "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

5.    "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

6.    "Communication", as defined in Local Rule 26.5(c), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7.    "Concerning" means, as defined in Local Rule 26.5(c), referring to, describing, evidencing or constituting.

8.    "Covered Institution" means the following colleges and universities: Arizona State University, Columbia University, Cornell University, Georgetown University, Harvard University, Minnesota State University System, Tufts University, University of California System, University of Massachusetts System, and University of Texas System.

9.    The terms "document" and "documents" mean any and all items referred to as "documents" in Federal Rule of Civil Procedure 34 and as "writings" and "recordings" in Federal Rule of Evidence 1001. By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence (including by letter, by e-mail, or by SMS text

message, or by iMessage), internal communications, e-mail, ledger books, log books, statements, memoranda, policies, procedures, directives, instructions, guidance, summaries of records of conversations, reports, video tapes, audio tapes, minutes or records of meetings, summaries of interviews or investigations, maps, and photographs. The term "document" shall include data stored and organized electronically.

10. "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each."

11. "Including" shall be construed to include the phrase "without limitation."

12. The terms "you" and "your" refer to each of the defendants individually responding to these requests.

13. The term "Targeted Noncitizen Students or Faculty Members" means the following individuals:

     a.  Mahmoud Khalil;

     b.  Mohsen Mahdawi;

     c.  Rümeysa Öztürk;

     d.  Yunseo Chung;

     e.  Efe Ercelik;

     f.  Mohammed Hoque;

     g.  Ranjani Srinivasan;

     h.  Badar Khan Suri; and

     i.  Momodou Taal.

14. To the extent a request calls for the production of documents or things you contend are subject to a privilege or immunity from discovery, your written request should so indicate, but you are requested to produce the balance of the documents or things not subject to a claim of privilege which fall within the scope of the request. Additionally, to the extent information subject to a privilege or immunity from discovery is contained within responsive documents or things, you are requested to produce a redacted version of the document or thing containing the non-privileged information with a notation on the produced document or thing indicating that it is being produced in redacted form.

15. If you are unable to produce any file or document sought in these requests, you shall identify the file or document; state the reasons why you are unable to produce it, describe in detail the efforts you have made to obtain it, and identify its location and/or custodian.

16. Documents responsive to these requests should be produced in the order in which they are ordinarily kept and in a format sufficient to identify the files from which they have been taken. Documents from different files should not be intermingled.

17. Except as otherwise specified, these requests cover the time period January 20, 2025 to the present.

18. These discovery requests are continuing in that they may require supplemental responses. If you obtain further information or documents with respect to any request to which you have already responded, you have a continuing duty to supplement your answer pursuant to Federal Rule of Civil Procedure 26(e) at any time prior to the entry of judgment.

19. For each document or thing requested that you object to producing on the basis of any privilege or immunity from discovery, please provide the following information:

    a.   The basis for the privilege being invoked;

    b.   The date of the document;

    c.   The title of the document (if any);

    d.   The name of the person(s) authoring the document;

    e.   The name of the person(s) to whom the document and/or copies thereof were given or transmitted;

    f.   The name of the person(s) from whom the document and/or copies thereof were given or transmitted:

    g.   The present location and custodian of the document, or any copies thereof; and

    h.   The general subject matter dealt with in the document with reasonable specificity to allow Plaintiffs to determine whether to challenge the privilege designation.

## DOCUMENT REQUESTS

1.   Documents and communications showing the planning, execution and implementation of your decision to take any adverse action against a Targeted Noncitizen Student or Faculty Member, including:

    a.   Documents and communications relating to the planning and execution of the arrest and detention of Mahmoud Khalil;

    b.   Documents and communications relating to the planning and execution of the arrest and detention of Mohsen Mahdawi.

    c.   Documents and communications relating to the planning and execution of the arrest and detention of Rümeysa Öztürk.

d.   Documents and communications relating to the planning and execution of the arrest and detention of Yunseo Chung.

e.   Documents and communications relating to the planning and execution of the arrest and detention of Efe Ercelik;

f.   Documents and communications relating to the planning and execution of the arrest and detention to Mohammed Hoque;

g.   Documents and communications relating to the planning and execution of the arrest and detention of Ranjana Srinivasan;

h.   Documents and communications relating to the planning and execution of the arrest and detention of Badar Khan Suri; and

i.   Documents and communications relating to the planning and execution of the arrest and detention of Momodou Taal.

2.   Documents and communications requesting or recommending the taking of, and memorializing, explaining, or justifying the decision to take any adverse action against a Targeted Noncitizen Student or Faculty Member, including:

a.   A document or documents in which the Department of Homeland Security ("DHS") and/or U.S. Immigration and Customs Enforcement ("ICE") requested or recommended that the U.S. Department of State revoke the visas of or determine the removability of a Targeted Noncitizen Student or Faculty Member. *See Ozturk v. Trump*, No. 25-CV-374, 2025 WL 1145250, at *3 (D. Vt. Apr. 18, 2025) (describing request from DHS and ICE for revocation of Rümeysa Öztürk's F-1 visa);

b. A document or documents in which the State Department approved, explained, or justified the revocation of a Targeted Noncitizen Student's or Faculty Members's visa. *See id.*;

c. A document or documents in which Secretary of State Marco Rubio determined that a Targeted Noncitizen Student or Faculty Member is removable under 8 U.S.C. § 1227(a)(4)(C), and the attachments to any such determination. *See, e.g.*, *Khalil v. Joyce*, No. 25-CV-01963, 2025 WL 1232369, at *2 (D.N.J. Apr. 29, 2025);

d. A document or documents in which the State Department informed DHS and/or ICE that it had approved the revocation of a Targeted Noncitizen Student or Faculty Member's visa or determined the removability of a Targeted Noncitizen Student or Faculty Member; and

e. Any Notice to Appear (Form I-862), administrative arrest warrant (Form I-200), or Record of Deportable/Inadmissible Alien (Form I-213) that has been issued or drafted as to any of the Targeted Noncitizen Students or Faculty Members.

3. The following documents and memoranda that Plaintiffs have reason to believe are in Defendants' possession based on the public record and that are relevant to the adverse actions taken against the Targeted Noncitizen Students or Faculty:

a. A memorandum from Secretary Rubio accusing Mohsen Mahdawi of engaging in "threatening rhetoric and intimidation of pro-Israeli bystanders." *Mahdawi v. Trump*, No. 25-CV-389, 2025 WL 1243135, at *10 (D. Vt. Apr. 30, 2025);

b. A memorandum from Andre Watson (Senior Official, Homeland Security Investigations) to John Armstrong (Senior Bureau Official, Department of State)

7

stating that Rümeysa Öztürk had engaged in "anti-Israel activism." John Hudson, *No Evidence Linking Tufts Student to Antisemitism or Terrorism, State Dept. Office Found*, Wash. Po. (Apr. 13, 2025) https://perma.cc/KRB2-AVXF;

    c.   A March 2025 State Department memorandum finding that neither DHS nor ICE nor Homeland Security Investigations had produced any evidence showing that Rümeysa Öztürk had engaged in antisemitic activity or made public statements indicating support for a terrorist organization. *See id.*;

    d.   A document dated March 21, 2025 in which the State Department informed DHS that the revocation of Öztürk's visa had been "approved." *See id.*;

    e.   An April 9, 2025 memorandum from the Deputy Assistant Secretary of State for Visa Services to ICE regarding the revocation of Efe Ercelik's visa. *Ercelik v. Hyde*, No. 25-CV-11007, slip op. at 17 (D. Mass. May 8, 2025);

    f.   A March 22, 2025 communication from DHS/ICE to the State Department seeking the Department's determination as to whether Mohammed Hoque's visa should be revoked. *Hoque v. Trump*, No. 25-cv-01576, slip op. at 4 (D. Conn. May 5, 2025); and

    g.   A May 23, 2025 memorandum from the State Department informing DHS/ICE that Mohammed Hoque's visa had been revoked. *See id.*

4.   Documents and communications with Betar US, Canary Mission, and the Heritage Foundation concerning the Targeted Noncitizen Students or Faculty Members.

5.   Communications, memoranda, policies, procedures, and directives concerning the inspection, review, monitoring, or surveillance of noncitizens' social media accounts or activity

for pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel speech or activity, including:

  a. The State Department's new guidance to consular officers on reviewing visa applicants' social media, referred to in paragraph 16 of the declaration from John Armstrong submitted in support of the government's opposition to Plaintiffs' preliminary injunction motion; and

  b. The Secretary of State's communication to State Department employees on March 25, 2025, titled "Enhanced Screening and Social Media Vetting for Visa Applicants." Ken Klippenstein, *Trump Admin Spies on Social Media of Student Visa Holders*, Substack (Mar. 28, 2025), https://perma.cc/FV5L-MUNA; and

6.  Memoranda, policies, procedures, directives or guidance concerning the implementation or enforcement of Executive Orders 14,161 and 14,188 related to the revocation of visas or green cards, or the surveillance, arrest, detention, or deportation of noncitizen students or faculty members for pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel speech or activity, including:

  a. Any reports issued by the Attorney General, the Secretary of State, the Secretary of Education, and the Secretary of Homeland Security pursuant to Section 3(a) of Executive Order 14,188; and

  b. Communications from the State Department to Covered Institutions directing them to report international students for participating in "proscribed antisemitic actions," "terrorist activity," or "endorsing or espousing terrorism." Prem Thaker, *SCOOP: Trump Admin Forcing Schools to Report International Students for*

*Protest Activity or 'Antisemitic Actions,'* Zeteo (May 16, 2025),

https://perma.cc/XD4N-BSZC.

7.  Communications with Covered Institutions concerning non-citizen students or faculty members who have been accused or suspected of engaging in speech or activities deemed or suspected to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel, including the list of students provided by DHS to Columbia University that was referenced by White House Press Secretary Karoline Leavitt in her press briefing on March 11, 2025.

Dated:      May 19, 2025
            New York, NY

SHER TREMONTE LLP

By: ____ */s/ Noam Biale* _____
Michael Tremonte
Noam Biale
Alexandra Conlon
Courtney Gans
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com

Ramya Krishnan
Carrie DeCell
Xiangnong Wang
Talya Nevins
Jackson Busch
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu


*Attorneys for Plaintiffs*

To:        Ethan B. Kanter (via email)
           Harry Graver (via email)
           Lindsay M. Murphy (via email)
           Shawna Yen (via email)
           Sarmad Khojatesh (via email)

           *Attorneys for Defendants*

# Exhibit D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

AMERICAN ASSOCIATION OF UNIVERSITY
PROFESSORS, ET AL.,

                          Plaintiffs,

        v.

MARCO RUBIO, ET AL.

                   Defendants.

Case No. 1:25-cv-10685 (WGY)

---

**PLAINTIFFS' FIRST SET OF**
**INTERROGATORIES DIRECTED AT DEFENDANTS**

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Civil Rules for the District of Massachusetts 26.1 and 33.1, Plaintiffs American Association of University Professors, American Association of University Professors-Harvard Faculty Chapter, American Association of University Professors at New York University, Rutgers American Association of University Professors-American Federation of Teachers, and Middle East Studies Association ("Plaintiffs"), by and through their undersigned counsel hereby request that Defendants Marco Rubio, Kristi Noem, Todd Lyons, and Donald J. Trump ("Defendants") answer the following interrogatories (the "Interrogatories" and each individually an "Interrogatory") under oath and serve the answers within fourteen (14) days of service of this request.

**INSTRUCTIONS**

1. The instructions provided in Local Rule 33.1 are incorporated by reference.

2. Whenever an Interrogatory asks for the identity of an individual, please set forth the following information:

a.  The individual's name;

b.  The individual's title or occupation;

c.  The individual's present or last known residential address; and

d.  The individual's present or last known business address.

3.  In answering these Interrogatories, Defendants are required to furnish all information known or available to them, regardless of whether this information is possessed by Defendants or by their agents, employees, representatives, investigators, or by their attorneys or other persons who have acted on their behalf, or by any corporation, partnership, or other legal entity.

4.  If any of these Interrogatories cannot be answered in full, after exercising due diligence to secure the information to do so, answer to the extent possible, specifying the reasons for Defendants' inability to answer the remainder and stating whatever information, knowledge, or belief Defendants have concerning the unanswered portion. In addition, specify the person or persons Defendants have reason to believe may have the information and/or knowledge to answer such interrogatory or any part thereof.

5.  The Interrogatories are continuing in nature. If, after answering these interrogatories, Defendants obtain or become aware of further information responsive to these Interrogatories, Defendants are required to provide a supplemental interrogatory answer.

6.  State whether the information furnished is within the personal knowledge of Defendants and, if not, the name of each person to whom the information is a matter of personal knowledge.

7.  If Defendants believe that an Interrogatory seeks privileged information, state the grounds for the privilege assertion in sufficient detail to enable Plaintiffs to challenge your claim.

8.  If Defendants object to any portion of any Interrogatory herein, identify the portion of the Interrogatory to which Defendants object and respond to the remainder of the Interrogatory.

## DEFINITIONS

1.  The definitions provided in Federal Rule of Civil Procedure Rule 34(a) and Local Rule 26.5(c) are incorporated by reference.

2.  "Adverse action" means investigating, monitoring, surveilling, revoking the visa or lawful permanent residency of, terminating the status of, determining the removability of, or seizing, arresting, detaining, removing, or transferring to a detention facility in Louisiana.

3.  "And" and "or" shall be construed in the conjunctive or disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

4.  "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any."

5.  "Communication", as defined in Local Rule 26.5(c), means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6.  "Covered Institution" means the following colleges and universities: Arizona State University, Columbia University, Cornell University, Georgetown University, Harvard University, Minnesota State University System, Tufts University, University of California System, University of Massachusetts System, and University of Texas System

7.  The term "document" and "documents" mean any and all items referred to as "documents" in Federal Rule of Civil Procedure 34 and as "writings" and "recordings" in Federal Rule of Evidence 1001. By way of example and without limitation, the terms "document" and "documents" include the original, all drafts, and all non-identical copies, regardless of origin or location, of the following: notes, correspondence (including by letter, by e-mail, or by SMS text

message, or by iMessage), internal communications, e-mail, ledger books, log books, statements, memoranda, policies, procedures, directives, instructions, guidance, summaries of records of conversations, reports, video tapes, audio tapes, minutes or records of meetings, summaries of interviews or investigations, maps, and photographs. The term "document" shall include data stored and organized electronically.

8. "Identify," when referring to a person, means to give the names, titles, organizational roles, and job descriptions of all U.S. Government officials, officers, agents, employees or contractors.

9. "Including" shall be construed to include the phrase "without limitation."

10. The term "Targeted Noncitizen Students or Faculty Members" means the following individuals:

    a. Mahmoud Khalil;

    b. Mohsen Mahdawi;

    c. Rümeysa Öztürk;

    d. Yunseo Chung;

    e. Efe Ercelik;

    f. Mohammed Hoque;

    g. Ranjani Srinivasan;

    h. Badar Khan Suri; and

    i. Momodou Taal.

11. The terms "you" and "your" refer to each of the defendants individually responding to these requests.

## **INTERROGATORIES**

1.   Identify the persons who are or were involved in proposing or taking adverse action against any of the Targeted Noncitizen Students or Faculty Members, including everyone from the most senior agency officials (*e.g.*, Secretary Rubio and Secretary Noem) down the chain to the most junior agency officials, officers, employees, agents, contractors, or consultants.

2.   Identify the persons who are or were involved in the inspection, review, monitoring, or surveillance of the Targeted Noncitizen Students or Faculty Members' social media accounts or activity.

3.   Identify the persons who are or were involved in taking adverse action against any non-citizen student or faculty member at a Covered Institution based in whole or in part on speech or activities deemed or suspected to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel.

4.   Identify the persons who are or were involved in communications between you and any Covered Institution concerning non-citizen students or faculty members believed or suspected to have engaged in speech or activities deemed or suspected to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel, including the persons at the Department of Homeland Security who communicated with Columbia University, as referenced by White House Press Secretary Karoline Leavitt in her press briefing on March 11, 2025.

5.   Identify the persons who are or were involved in the identification of non-citizen students or faculty members at Covered Institutions who were targeted for any adverse action based in whole or in part on speech or activities deemed or suspected to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel, including the persons who were involved in creating, compiling and sharing the list of students provided by the Department of

Homeland Security to Columbia University, as referenced by White House Press Secretary Karoline Leavitt in her press briefing on March 11, 2025.

6.  State the basis of or for your claim, assertion, allegation, or contention that your taking adverse action against any of the Targeted Noncitizen Students or Faculty Members was lawful.

7.  State the basis of or for your claim, assertion, allegation, or contention that any of the Targeted Noncitizen Students or Faculty Members engaged in pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel speech or activities.

8.  State the basis of the State Department's decision to revoke the visas of any of the Targeted Noncitizen Students or Faculty Members under 8 U.S.C. § 1201(i).

9.  State the basis of Secretary of State Rubio's determination that any of the Targeted Noncitizen Students or Faculty Members is removable under 8 U.S.C. § 1227(a)(4)(C).

10. Identify all documents you created, consulted, referenced, or relied on in determining whether to take adverse action against any of the Targeted Noncitizen Students or Faculty Members.

11. State the basis of the State Department's decision to make "silent" the revocation of any of the Targeted Noncitizen Students' or Faculty Members' visas or green cards, *i.e.*, not to notify the Targeted Noncitizen Student or Faculty Member of the revocation..

12. Describe in detail the reasons why the agents who arrested Rümeysa Öztürk and Badar Khan Suri were wearing civilian clothes, hoods, and masks, without their official badges visible.

13. Describe in detail your transfer of Mahmoud Khalil and Rümeysa Öztürk from the location of their arrest to a detention facility in Louisiana, including your decision to transfer them and your reasons for transferring them.

14. Describe in detail your decision to and reasons for arresting Mohsen Mahdawi at the time and location of his U.S. Citizenship and Immigration Services interview in Colchester, Vermont on April 14, 2025.

Dated:        May 19, 2025
                 New York, NY

SHER TREMONTE LLP

By: _____*/s/ Noam Biale*_____
Michael Tremonte
Noam Biale
Courtney Gans
Alexandra Conlon
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com


Ramya Krishnan
Carrie DeCell
Xiangnong Wang
Talya Nevins
Jackson Busch
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org


Ahilan T. Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu


Edwina Clarke, BBO 699702
Zimmer, Citron & Clarke, LLP

130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
*edwina@zimmercitronclarke.com*

*Attorneys for Plaintiffs*

To:    Ethan B. Kanter, Esq. (via email)
         Harry Graver, Esq. (via email)
         Lindsay M. Murphy, Esq. (via email)
         Sarmad Khojateh, Esq. (via email)
         Shawna Yen, Esq. (via email)

*Attorneys for Defendants*