# EXHIBIT A

1                  UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS (Boston)

3                              No. 1:25-cv-10685-WGY

4

5     AMERICAN ASSOCIATION of UNIVERSITY PROFESSORS, et al,
                Plaintiffs
6

7     vs.

8

9     MARCO RUBIO, in his official capacity as
      Secretary of State, et al,
10                Defendants

11
                              * * * * * * * * *
12

13
                        For Hearing Before:
14                    Judge William G. Young

15
                    Case Management Conference
16

17                    United States District Court
                      District of Massachusetts (Boston.)
18                    One Courthouse Way
                      Boston, Massachusetts 02210
19                    Tuesday, May 6, 2025

20
                              * * * * * * * *
21

22
                    REPORTER: RICHARD H. ROMANOW, RPR
23                      Official Court Reporter
                      United States District Court
24      One Courthouse Way, Room 5510, Boston, MA 02210
                        rhr3tubas@aol.com
25

```
 1                   A P P E A R A N C E S

 2

 3   RAMYA KRISHNAN, ESQ.
     JAMEEL JAFFER, ESQ.
 4   SCOTT WILKENS, ESQ.
        Knight First Amendment Institute at Columbia University
 5      475 Riverside Drive, Suite 302
        New York, NY 10115
 6      (646) 745-8500
        E-mail: Ramya.krishnan@knightcolumbia.org
 7   and
     MICHAEL TREMONTE, ESQ.
 8   NOAM BIALE, ESQ.
        Sher Tremonte LLP
 9      90 Broad Street, 23rd Floor
        New York, NY 10004
10      (212) 202-2600
        Email: Mtremonte@shertremonte.com
11      For Plaintiffs

12

13   SHAWNA YEN, ESQ.
        United States Attorney's Office
14      1 Courthouse Way, Suite 9200
        Boston, MA 02210
15      Email: Shawna.yen@usdoj.gov
        For Defendants
16

17

18

19

20

21

22

23

24

25
```

```
 1        P R O C E E D I N G S
 2        (Begins, 10:00 a.m.)
 3        THE CLERK:  The Court will hear Civil Case Number
 4   25-10685, the American Association of University
 5   Professors, et al vs. Marco Rubio, et al.
 6        THE COURT:  Good morning.  I'm not going to go
 7   through the routine of having everyone introduce
 8   themselves every time we may get together, but as people
 9   may change, um, today I'll ask you to do that again.
10        So would counsel for the plaintiffs introduce
11   themselves and then counsel for the defense.
12        MS. KRISHNAN:  Good morning, your Honor, Ramya
13   Krishnan for the plaintiff, and with me at the bar table
14   are Jameel Jaffer, Scott Wilkens, and we're from the
15   Knight First Amendment Institute.  We also have
16   co-counsel Noam Biale and Michael Tremonte of Sher
17   Tremonte.
18        THE COURT:  And good morning to you all.
19        And for the government?
20        MS. YEN:  Good morning, your Honor, Shawna Yen for
21   the United States.
22        THE COURT:  And good morning to you.
23        Again I have authorized internet access to this
24   hearing.  If anyone has availed themselves of the
25   internet access, I must remind you that the rules of
```

1    court remain in full force and effect, you must keep

2    your microphone muted, there is no taping, streaming,

3    rebroadcast, screen shots, or other transcription of

4    these proceedings.

5        This is a case-management scheduling conference.

6    As I have traditionally held these conferences, we could

7    go back into the lobby, sit around -- with so many of

8    you I would do it in a jury room, and we could sit

9    around the jury's table and have our coffee and, um,

10   talk.  Because that's what I want to do this morning, I

11   want to talk and flag, um, as best I can, the issues

12   that may arise.

13       But for some scheduling, orders, um, I'm going to

14   share my ruminations, as I am the factfinder here as

15   well as the case manager.  I invite you to interrupt me.

16   And you may be sure that when I'm done, I'm going to ask

17   for questions and comments.

18       I don't view this -- though in the interests of

19   transparency, I'm doing it out in open court, I have the

20   Court Reporter here, everything's being taken down, I

21   don't view myself -- except as scheduling, I don't view

22   myself as making any rulings today, substantive rulings

23   at all, and so it's not the time to argue.  Though I'm

24   not going anywhere and we may have -- we may have

25   further argument at appropriate times, and I'm going to

```
 1    have to have a final pretrial conference.  So that's
 2    the -- that's what I think this case-management
 3    scheduling conference is, a conference among counsel
 4    with the Court.
 5          Now having collapsed the further hearing for a
 6    preliminary injunction with trial on the merits and
 7    asked when plaintiffs would be ready, you said 6 weeks.
 8    That takes us to June.  I have a trial -- interestingly
 9    a trial that involves MS-13, to commence on Monday the
10    2nd of June, it will go two weeks.  I'm looking for you
11    on Monday the 16th of June.
12          If that case should resolve prior to, um -- and
13    stay close with Ms. Belmont, prior to the 16th, we'll
14    come looking for you.  I'll take witnesses out of order.
15    It's jury-waived.  I'll try to accommodate you as to
16    timing.  But we're not going to look for trial time
17    prior to, um, June since plaintiffs said 6 weeks.
18          I'm going to try the case, um -- as I view it,
19    though the case is framed significantly by the
20    plaintiffs, but as I view it I'm going to try it in two
21    parts.  Liability, that is, have any of the President or
22    these high public officials violated your client's First
23    Amendment free speech rights?  That's the first part.
24          The second part is remedy.  And I'm not assuming
25    remedy, and I'm not -- other than in the most general
```

1    way I'm not going to talk about it today, because that's
2    the second phase.
3          First, plaintiffs bear the burden of proof.  It's
4    a civil case.  The burden of proof is proof by a fair
5    preponderance of the evidence.  If that's established,
6    then the Court must consider remedy, if any, because
7    redressability here is a very real issue and one we're
8    going to need to talk about, but not today because I
9    would be getting -- well my remarks are going to focus
10   really on liability here and what I think this case
11   involves and what I think the overarching law is.  Now I
12   stand to be corrected on all of this, um, I'm trying to
13   be both transparent and helpful.
14         First, I want to make some remarks about what you,
15   as attorneys, and I, as the judicial officer, are doing
16   here together.
17         Each one of you has filed an appearance in this
18   case, so you are subject to the ethical rules of this
19   court, and I have no question about it, I simply note
20   it.  This is a trial, I think it's a trial of some
21   public significance, so let me say a couple of things
22   about that.
23         One, if any -- any of you lawyers, or your clients
24   indeed, and I include the government defendants as well,
25   if there's any threats or, um, you are approached in any

```
 1    way, clients or lawyers, about your representation in
 2    this case, the issue of obstruction of justice is
 3    raised.  This is a trial.  Trials are meant to be
 4    resolved on evidence with the cool, reflective,
 5    impartial, um, adjudication of the facts.
 6         Also, I really respect -- and I hope the opinion
 7    I've issued on standing manifests that respect.  I
 8    respect vigorous advocacy, I welcome it, I'm -- I'm fine
 9    with it.  At the same time -- and you won't take this as
10    criticism, and I don't mean it as criticism, I've
11    praised you justly -- and Mr. Graver is not here, but I
12    include him, for the advocacy so far, but ethically you
13    owe the Court absolute candor in answering the Court's
14    questions, and I'm sure I will get it.
15         It's not inappropriate to mention that in another
16    case, um, government counsel, um, suffered -- apparently
17    from what I read in the press, from absolute candor to
18    the tribunal.  I'm not going to go into that other than
19    to say, I read the newspapers.  If there's any
20    intimation of anything like that in this case -- and
21    I -- I find it hard to believe there could be, um, you
22    can be very very sure that I will draw an adverse
23    inference against that party, a severe adverse
24    inference.  I don't expect it and it's totally
25    unacceptable.
```

1         So now, um, if you'll let me talk a bit about how

2    I think the constitutional right to free speech, um, the

3    framework applies in this case.  These are not rulings.

4    I'm being transparent, I'm telling you what I'm thinking

5    going in.  So it truly is a free-speech case.

6         Now some of the speech that will be analyzed is

7    the speech of the President and high, um, government

8    officials.  That speech may be brutal, coarse,

9    demeaning, um, that makes no difference, it seems to me,

10   these officials have the right to speak.  Teddy

11   Roosevelt had it right, "The Presidency is a bully

12   pulpit."  Our President is duly-elected in a full and

13   fair election.

14        And one can draw conclusions as to why people

15   speak.  Such political speech by the powerful, um, is

16   intended to persuade, but it may also include, um,

17   speech that quite candidly is intended to bully people,

18   to frighten the opposition, to chill the opposition into

19   silence.  The First Amendment protects all of that.

20   Justice Scalia remarked once that under the First

21   Amendment a certain amount of fortitude is required."

22   He was speaking of citizens.  And that's the case.  So

23   this Court, whatever the content of pure speech by the

24   government, by these defendants, I'm starting out

25   believing that's absolutely protected by the First

1    Amendment.

2        Now, at the same time the President, these high-

3    executive public officials, are routinely mocked,

4    maligned, condemned, in equally coarse language, and

5    that's all protected under the First Amendment.  We

6    remember that as magnificent a President as President

7    Abraham Lincoln, he was routinely called a "gorilla"

8    throughout his tenure.  That's the First Amendment at

9    work, it's boisterous, rambunctious.  It can be very

10   coarse, demeaning, vitriolic.  We've survived for, um,

11   now close on -- we're talking about 250 years, with

12   that, um, approach to speech under our First Amendment.

13       Retribution, government retribution for speech is

14   prohibited by the First Amendment.  In fact, in the

15   circumstances of this case, were there to be found

16   retribution, government retribution for speech, it would

17   go to the very center or core of the concerns of the

18   First Amendment, because it would, um, it appears to be,

19   um, dealing with political speech, what's most precious

20   and must be absolutely protected under the First

21   Amendment.  And if that -- if the Court were to find

22   that action by government officials in retribution for

23   free speech, without more, the government -- the Court

24   would be warranted -- and I'm not saying I would,

25   because it's open to proof, and I'm not saying it's

1   presumed, but my view is the Court would be warranted in

2   finding that such retribution chills the speech, the

3   constitutionally-protected speech of others similarly

4   situated.  And the Court's ruling on standing as to

5   who's similarly situated here gives some idea who, I

6   think anyway, I would be warranted were I to make that

7   finding, and that -- that's the key finding I think

8   here.

9        So let me come out -- let me come down out of

10  the -- these generalities and talk about what appears to

11  be at issue in this case, at least as framed by the

12  plaintiffs, and I don't adopt their framing, that's

13  the -- that's the framing we've got here.

14       The plaintiffs claim that this is pro-Palestinian

15  speech, certainly that's political speech, protected

16  under the First Amendment.  So also within that ambit,

17  um, it would seem -- it would seem, I think, that

18  speech, however coarse, hostile, um, to the State of

19  Israel and its policies, both civil and military, um,

20  that's political speech, that's firmly protected.

21       Now the Executive Orders here -- which are not

22  challenged, and we'll get to that in a moment, speak of

23  "violent antisemitism."  Now because the government uses

24  the word "violent," and the President uses that word, I

25  can follow that, that's not challenged.  Indeed violent

```
 1   antisemitism, as I understand it, is not protected,

 2   under the First Amendment, to citizens or noncitizens

 3   alike.  But we don't have statutes against hate speech.

 4   And while I personally find antisemitism repugnant, I

 5   find Islamophobia to be repugnant.  I find the choice

 6   whether to believe or not believe, if that is the basis

 7   of animus toward an individual, I find that contrary to

 8   the American character, as I conceive of it.  And

 9   nothing that I just said has any bearing on this case.

10   You're entitled to know it, it's appropriate that I say

11   it, but that's not going to be the basis for any

12   finding.

13        I do think that under the First Amendment -- the

14   First Amendment, unlike some other countries who

15   prohibit hate speech, we don't under the First

16   Amendment, and so antisemitism, repugnant though it may

17   be, the speech itself is not prohibited.

18        Now I'm very much aware that, um, speech can

19   become threats, threats can become assault, without

20   more.  A -- a threat with the potential that it be

21   carried out, or inciting the carrying out of a threat,

22   is, I think, that's an assault at common law.  It's open

23   to state and federal authorities to criminalize that.

24   And it's certainly open to these public officials, who

25   have been sued here, to take action against it.  Even
```

1    though pure speech, certainly political speech hostile

2    to the state of Israel, antisemitism, the government --

3    our government has a justified interest in promoting

4    tolerance for all faiths, or no faith, um, that's an

5    appropriate government goal.  And just as an aside, I

6    don't know how it's squared with this hostility to what

7    is called "DEI."  Put that aside.  So enough on that.

8         Two other things I want to say going in that my

9    research has surprised me -- and you're going to want to

10   be thinking about this and I, um, candidly, um, solicit

11   further analysis and briefing.  And the first is this.

12        When first I drew this case and began to read

13   the -- to read the complaint and the associated

14   documents, I adopted a view that of course noncitizens

15   have full rights to freedom of speech under the First

16   Amendment.  The First Amendment speaks of "persons."  I

17   went to law school when the Warren court was sitting and

18   among its justices was Justice Black, who is probably

19   the most famous texualist, and I haven't got the case

20   here, but I thought it was Black as saying that

21   "'persons' means 'persons,' and that's all persons."

22   You didn't have to be a citizen.  Now I'm not saying

23   I've changed that view, what I'm saying is I'm not at

24   all clear, under the jurisprudence of the Supreme Court

25   today, that that's correct.

1           I find that that's assumed by a number of my

2     colleagues in related cases that deal with free speech

3     in the lower courts.  But, um, I'm not clear that

4     noncitizens have, um, I will call them the "full rights"

5     to free speech that a citizen has.  I'm looking for

6     guidance.  I'm looking for help.

7           And the second thing is, but this goes more to,

8     um, remedy, but we live in the real world and if we ever

9     got there, maybe we'll have to deal with it.

10          I see that the hearing officer in Mahmoud Khalil's

11    case, again just reading the papers, says, "Well he's an

12    embarrassment to the foreign policy of the United

13    States," and when I first read that I thought, "Well

14    that's not a standard, that exception squanders the

15    rule," an "embarrassment to the foreign policy of the

16    United States"?  And then I look into it and of course

17    that is a ground.  And more than that, the Supreme Court

18    has spoken to that and says I'm not, um, permitted to

19    question that.  I work for the Supreme Court.  I'm sworn

20    to give full and complete adherence and implement its

21    rulings.  And candidly -- I'm hopeful we don't get to it

22    in this case, but I don't see how that will work if a

23    noncitizen has the same rights as a citizen to speak

24    about these matters.

25          That's really everything I have to say about the

1  law.  Let's turn from those general things to, um, how
2  I -- I've tried to, in sort of the law-exam
3  issue-spotting, um, here's some of the issues as we get
4  ready for trial.  I'm not hoping that these issues
5  arise, I'm actually hoping -- and I exhort you to,
6  consistent with your duty to your clients, to cooperate,
7  to make things simple and understandable, the public
8  interests will be served, your duties as attorneys to be
9  most easily accomplished.  But, um, here's what I think
10  are the elements of the plaintiffs' case in, um -- and
11  then I'll get into some specifics.
12       The plaintiffs say, "All right, here are these
13  Executive Orders, we don't challenge them."  Here's all
14  this rhetoric by the defendant President and the high
15  Executive Orders which, pretty clear, goes well beyond
16  what the Executive Orders themselves confine to, but as
17  I see it, they have every right to say what they want to
18  say.  And then -- and this of course is where the rub
19  comes.
20       Then the plaintiffs say, "Well there has been
21  retaliation against individuals, it's not just the
22  speech which chills those who are not in office and who
23  are not as powerfully situated with the media
24  organizations and the like, there is, um -- there is
25  retribution against these individuals for their speech."

1    Denied.  I've entered an order that we're taking it that
2    all substantive allegations are denied by the defense, I
3    take that very seriously, that's a factual difference.
4    So we're going to have to figure out what happened and
5    what is it that the plaintiffs say is actual retribution
6    against speakers.  And then -- I think of things
7    chronologically, then the plaintiffs are going to have
8    to prove the effects.

9          My ruling on standing, um, is you're going to have
10   to have some evidence.  I pointed out that a single
11   person can be sufficient for standing for an
12   organization, but I've got to have some evidence of the
13   specific person.

14         Now that's the overview.  I think those are the
15   elements.  Prove those things by a fair preponderance,
16   then in my view there is liability.  I'm not at all sure
17   what that means, but I do think it means, um, it means a
18   declaration of rights.  Prove that, it would be my
19   obligation so to declare.

20         And I have no, um -- no inflated view of my role
21   in the firmament here, but I have every sensibility of
22   the responsibility that devolves on me and my obligation
23   to discharge that responsibility.  So at minimum there's
24   a declaration of rights.  Whether there's any more,
25   we'll see.

1    Now I'm not -- I'm anticipating an expedited

2    narrow-focused run-up to the trial in this case.  Here's

3    what I mean.  Again we're just talking.  So these aren't

4    orders, but this is what I expect, um, I'm trying to

5    flag issues.  I'm not saying this is how I'll rule, but

6    I'm simply trying to be helpful.

7    So I am not expecting full discovery.  We don't

8    have much time, we only have less than a month, if the

9    case in front of you were to fold and, um, a little more

10   than a month if that goes to two weeks.  So I don't

11   expect depositions of certain -- I'm not going to permit

12   any direct discovery of the President or the high

13   executive officials that you have named and sued in

14   their official capacity.  I'm not going to require that

15   they answer interrogatories or, um, submit themselves to

16   discovery at all, um, they're busy and they have many

17   other things to do besides deal with this case.  The, um

18   -- well having said that, I'm not preventing any of the

19   high executive officials from coming forward and

20   submitting testimony, they have every right to do all

21   that.  But I'm not requiring any of it.

22   It seems to be proof would follow pretty much the

23   following form.  The Executive Orders are there, I can

24   take judicial notice of them and I'm prepared to,

25   they're not challenged, but they set the framework.

1         On reflection I think -- I want to refine a little
2    bit what I said at the initial hearing.  I said to the
3    plaintiffs, "Well you haven't got the evidence here,
4    these -- these newspaper clippings are insufficient
5    because maybe they're not complete."  Actually I think
6    the default is the other way.  Prove -- and I'm talking
7    plaintiffs now.  Prove that these clippings are in fact
8    authentic, then they are admissions, under the Federal
9    Rules of Evidence, by the specific defendant.  If
10   they're not complete -- and of course the defense may
11   raise under Article I the fact of the Rules of Evidence,
12   that they're not complete, then it falls upon the
13   defendants, you've got to come up with the complete
14   interview, you've got to come up with the complete
15   outtakes, um, whatever qualifications are not in them,
16   the rhetoric.  And I -- I don't think that's going to
17   take as much time and, um, I don't think that's the
18   purpose.
19        Then we come to this whole issue of government
20   retribution, which is what I think the case turns on,
21   because I don't think it would be hard to prove a
22   chilling effect, at least as I've cast standing.  And as
23   to that, um, I really do expect the government --
24   plaintiffs may have to frame a request for production,
25   but I expect every contemporaneous document that exists

1  up and down the chain of command within the government

2  bureaucracy that bears on that evidences -- but don't

3  make a request that says, "I want all the documents

4  related to the" -- that's silly, all life is related to

5  other life, so I routinely deny those requests.  But

6  seriously now, because I'm hopeful for complete

7  cooperation by the government here, by these executive

8  officials, um, as to or --

9        And candidly I think this is your case to try, but

10  on the retribution issue I would expect the plaintiffs

11  to focus on the -- well I've identified three

12  individuals who are the ones that I read about most in

13  the papers, and that would be Mahmoud Khalil, this

14  Rumeysa Ozturk, and, um, Mohsen Madawi.  Because since

15  this is a case about chilling, if the government -- and

16  the government isn't acting secretly here, one thing

17  that can be said is the government's pretty forthright

18  about what it's doing, so in fact part of the

19  plaintiffs' case is that's all intended to chill,

20  that's -- and I won't get into specifics, but I could

21  imagine what evidence we will get to show how

22  frightening it is.

23        I want to -- so I'm asking the plaintiffs -- I'm

24  expecting a limited focus on retribution.  If the

25  plaintiffs make that limited focus on retribution, then

1    I expect the government to be absolutely fulsome in its

2    disclosure of contemporaneous documents.  And if I'm

3    going to hear from people, if I'm going to hear from --

4    hear from people, um, as witnesses, if subpoenas go out

5    here, the people I -- and I'm just thinking if those

6    were the three, I'd like to hear from the lower-level

7    person or persons who organized the actual apprehension

8    of these three and what instructions they had and why

9    and work back up from there.

10         Now understand I think the government has these

11   high public officials -- and certainly the President of

12   the United States, have, um, various grounds that they

13   may serve to withhold such documents, or some of them,

14   and I want to address those now just to try to head it

15   off.

16         The government has a deliberative privilege.  I

17   must honor it and I must honor it without any cost to

18   the defendants, that is drawing any adverse conclusions.

19   But a deliberative privilege just doesn't throw a

20   blanket over the lie.  Let me give an example.

21         At some level -- and I'm making all this up just

22   as I -- (Coughs.)  At some level, um, let's assume that

23   one or more of the defendants identified here, um, says,

24   within the government, "We should do something about the

25   protests at Columbia, all right, and, um, give me a memo

1    on that," to somebody else.  Well that's privileged, it

2    seems to me.  But now saying that there's a deliberative

3    privilege doesn't mean the government can't come forward

4    with that, maybe that helps them.  But again, it's not

5    for me to say.  And something happens within the

6    bureaucracy, someone responds, "Here's a plan, what do

7    you think of that?"  Well that's privileged under the

8    deliberative privilege.  Meetings at which things were

9    kicked around, um, privileged.  But the memo which says

10   "Approved," "Executed," or "Approved, except for

11   Paragraph 6," that's not, that's the directive.  The

12   decision's made then.  Government works as a

13   bureaucracy.  There's nothing wrong with a bureaucracy,

14   a bureaucracy works.

15        And here, when we get down to the level of ICE

16   enforcement agents, they work in -- and again I don't

17   mean this to be pejorative, but in a sort of quasi-

18   military style and they get instructions.  All those

19   instructions are not in any way privileged, and I want

20   to know about it.  What was going on?  Why were they

21   armed or masked or not or identified or not?  All of

22   that.  What was going on?  And why?  Who set that out?

23   Who set up this business with the Madawi in Vermont?

24        Now a caution here, and the caution is, um, by

25   identifying these three -- I'm trying to deal with my

1   case, which is a chilling case.  I imagine there are

2   documents and documents have been produced and the like.

3   This Court in no way is going to retry immigration

4   proceedings or judicial proceedings in another district,

5   I just want to know what happened.  It's the what

6   happened which I imagine the plaintiffs are going to say

7   is the retaliation.  And my identifying these three

8   doesn't cabin the plaintiffs in, there may be others,

9   there may be a better.  But, um, the fact I haven't

10  heard about them, well that's more evidence that, um, in

11  the community of people who have standing, if they've

12  heard about them, that that's what's going around.  We

13  need to know at some stage.  But I've heard about these

14  and I'm just the average newspaper-reader.  Um, that's

15  one thing, deliberative privilege.

16       It's possible that there's state secrets here, the

17  government has some sort of intelligence about terrorist

18  organizations or the like, and as to this my remarks are

19  directed to the government.  If that figures in -- in --

20  well you people are going to have to cooperate.

21       First of all, you're going to have to -- I'm

22  looking at the plaintiffs.  You're going to have to

23  limit what you think is the retribution and let the

24  government know, and then the government will be able to

25  answer the question that I now put to the government,

1    and it's an important one.

2        If there's any state secrets issue here, um, I

3    know how to handle those cases, I've handled genuine

4    terrorist cases.  I presided over the **Richard Reid** case,

5    the **David Daoud Wright** case.  I am aware that there is

6    a -- a rather complete protocol for protecting

7    governmental secrets in the course of litigation, and

8    the government's going to have to do something.

9        You're going to have to -- assuming that's going

10   to be a part of this case, you're going to have to get

11   the proper officer who understands that protocol to

12   advise this Court.  I'm going to need a secret clearance

13   for Ms. Belmont and one of my law clerks.  I've been

14   there, done that.  I don't mean in any way to be blase

15   about it, I take it very seriously.  But it doesn't

16   prevent me, as the judicial officer, from knowing what

17   they are.

18       As I understand the protocol, and I have followed

19   it before, is I'm entitled to see them.  And the

20   plaintiffs will understand they do not in any way get

21   disclosed in the course of these civil proceedings.  But

22   I need to know.  Because I very much want to go to

23   trial, as I've described.

24       Lastly is the attorney-client privilege.  We're

25   all familiar with that.  Understand that under Rule 502,

1    um -- 502 does take some of its coloration from where

2    you sit.  Here in Massachusetts, if you, um, claim

3    attorney-client privilege, um, in the state courts, I'm

4    entitled to draw an adverse inference from that, that

5    you're hiding someone.  Um, I've always thought that

6    worked in federal court too.  I'm not sure of it.  My

7    experience has been, over the years, that, um, by

8    telling lawyers that, they're skittish about claiming

9    the attorney-client privilege.  And usually what the

10   lawyers have to say -- and I mean no disrespect, I honor

11   lawyers, but it doesn't amount to much anyway.  But be

12   aware, coming into the case, with that in mind.

13        Okay, let's see.  I don't see -- oh, I want to --

14   I'm surfing back now though, it's basic to the

15   plaintiffs' case, um, to standing.  We're going to have

16   to have somebody to establish the standing of each of

17   the associations or entities, um, to the distance that I

18   was willing to accept standing, and nobody's going to

19   testify by pseudonym or anything, it's got to be an

20   actual person.  And the sooner they're disclosed, the

21   better off we are, because the defendants, they need to

22   know who that person or persons is.

23        I'm also open to -- I know I didn't go so far, but

24   I don't think the citizen professors have standing, I

25   think that's too far away, but that doesn't mean I

1    wouldn't accept one or two witnesses, um, brief, as to

2    effects on, um, their functioning, as I've seen in the

3    moving papers.  But absent standing, um, I'm not giving

4    advisory opinions.  So, yes, I think there should be a

5    trial, yes, I think -- and certain noncitizen professors

6    have standing, but it's got to be proved, plaintiffs

7    have to prove it and make disclosures so that the

8    defendants can meet it.

9         Now experts.  I don't see experts in this case.

10   I'm not foreclosing any, but I don't see experts in this

11   case.  But, you know, I'm -- I think that's for

12   argument.  But if someone wanted to propose an expert,

13   and you know what the rules are, and, um, I follow this

14   idiosyncratic rule, that you know you have to produce an

15   expert report.  I like to say, in the usual product

16   liability case, that the expert report has to be "to the

17   level of exquisite detail of a patent claim."  No

18   expert's going to testify to anything that's not in the

19   report.  But actually I just don't see it.

20        Summary judgment prior to trial.  It's open to the

21   parties.  I don't see it.  The -- I can't see how the

22   plaintiffs could get summary judgment, because they bear

23   the burden of proof, and even if things were, um --

24   unless things were actually stipulated, I would accept

25   them.  But anything that wasn't stipulated, as the

1    factfinder, I'm open to reject it.  So the fact that

2    they don't, um, line by line oppose it, doesn't, um -- I

3    just don't see how you can get there.

4         For any of the defendants to seek summary judgment

5    because the plaintiffs' proof, as you work it up for

6    trial, is inadequate, um, there's this real tension

7    between the right under the First Amendment and this

8    exception for the government to say, "Well they're not

9    citizens and it embarrasses our foreign policy."  I

10   don't think that's likely to happen because then these

11   defendants -- that's a really interesting constitutional

12   issue, but it's not my job -- constitutional avoidance

13   is my job.  The Supreme Court or any higher court is not

14   going to be happy if you just serve up an interesting

15   constitutional issue.  I'm not going to permit that.

16   And it would have to be absolutely stipulated that, um,

17   clearly, um, these high public officials, and the

18   President -- or the President, were, um, violating the

19   First Amendment rights of these people who have

20   standing.  I can't conceive that the defense defendants

21   would want to say that, and so I don't see that we're --

22   we're not going to get any, um, "We don't admit it, but

23   if it were true, it makes no difference, because we have

24   the right to say a person can be excluded because it

25   embarrasses our foreign policy."

1    You've all sat mute.  No one interrupted me.  I
2    really would rather sit around a table and, um, drink
3    coffee -- but I drink tea.  But in all honesty now, I
4    anticipate a final pretrial conference.  I'm looking
5    forward to a trial.  I didn't spot anything else.  You
6    see the tenor of my concerns.
7        Questions or comments from the -- and not just to
8    mechanical things.  (Laughs.)  And this always happens,
9    I start and then I think of something else.
10        (Laughter.)
11        I think that -- you're going to find trouble from
12    me if you're going to tell me this is going to take more
13    than two weeks, I think we can get this case tried in
14    two weeks -- and less maybe, hopefully less.  It doesn't
15    mean these are of any less importance, these are, um, of
16    extraordinary importance, but I've got to get some
17    focus.  And then I would be helped going in -- well the
18    first day of trial, if not even before, with requested
19    findings and rulings, even though we haven't had the
20    trial, um, because that gives me a basis to rule, to
21    find and rule as soon after the close of evidence as
22    it's possible.
23        This is, after all, the start of, um -- with the
24    plaintiffs' claim that they needed a preliminary
25    injunction for irreparable harm, I take that very very

 1   seriously.  But now I'll try to be quiet and answer
 2   questions and listen to comments.  I want your help.
 3        Yes?
 4        MS. KRISHNAN:  Thank you, your Honor.  And I
 5   appreciate everything that you've shared with us.
 6   You've given us a lot to digest.  I wonder if you'd give
 7   us a few minutes to --
 8        THE COURT:  I'll do better than that, I'll take a
 9   recess and we'll come back after a half an hour or maybe
10   20 minutes.
11        Does that make sense?
12        MS. KRISHNAN:  Yes.
13        THE COURT:  How about the defense, the same?
14        MS. YEN:  The same, your Honor.  Thank you.
15        THE COURT:  Yes, one last thing.  Come to the
16   sidebar, and this does not need to be on the record.
17        (Sidebar off the record.)
18        THE COURT:  We'll stand in recess for one half
19   hour.
20        (Recess, 11:00 a.m.)
21        (Resumed, 11:30 a.m.)
22        THE COURT:  Taking a half hour allowed me to think
23   of one thing I had not said, and I'll say it now.
24        I could also anticipate -- and I get this from
25   reading articles about new computer systems that allow

the government to search the social media visa holders.
I've had cases where the government, quite properly
says, "We're not going to disclose because it will
reveal law-enforcement techniques," and that's a
perfectly appropriate thing for the government to say.
And the way I have always dealt with it, and the way I
believe it should be dealt with, is the government, if
it says that, I still get to see the data -- and again
I'm making it up, say the adherence to a terrorist
organization or something, "But we're going to not tell
you how we know."  Well I'm not going to buy that.  But
I will allow an ex-parte filing, and I will review the
material myself in camera.  That's different from the
state secrets where I must, under law, absolutely
preserve the state secrets, in this case it's up to me.
And I'm not going to reveal anything that in fact is not
generally known -- well I might make use of the data to
ground a finding.  That's the one additional thing that
I had not said.

        Yes, questions and comments?  Let's start with the
plaintiffs.

        MS. KRISHNAN:  Thank you, your Honor.  I'd like to
address four things.

        The first is that, you know, just to say that we
appreciate this Court's willingness to move quickly in

1    this case for the reasons your Honor described.

2         The second is we think this can be a short trial,

3    we're committed to pursuing it in a narrow and focused

4    way, as your Honor previewed.  We don't think it will

5    take longer than a week.

6         The third is just on timing.  In some respects

7    we'd like to move more quickly and in some respects we'd

8    like to build in a few more weeks at the back end.

9    There are some scheduling conflicts that a couple of our

10   key witnesses have, they are scholars and they have been

11   granted international travel in connection with their

12   academic work from mid June onwards.  They're the two

13   key representatives of MESA and the AUP.

14        THE COURT:  It's jury-waived.  Not a problem.

15        MS. KRISHNAN:  Okay.

16        THE COURT:  I have tailored my scheduling to your

17   requests.  Now you're not the only one who has an

18   interest, the President and the high public officials

19   have -- but if they agree, I will move it.

20        Again, um, I usually take vacation in August.  My

21   vacation is not as important as this trial and I've

22   drawn other cases of I think significance, so I want to

23   get this done.  A two-week continuance is fine, if

24   that's what you want.

25        Go ahead.

```
 1          MS. KRISHNAN:  Thank you.
 2          THE COURT:  And you were talking, the Clerk tells
 3    me --
 4          Does that make sense?
 5          MS. YEN:  Well, yes, sure, your Honor.  Thank you
 6    so much for the guidance that you provided earlier in
 7    this hearing.
 8          I think at this point we're waiting to hear from
 9    the plaintiffs as to how they plan to put on their case.
10    It's really difficult for us to gauge timing until we
11    hear more.
12          THE COURT:  Understood.
13          So we interrupted you, and go ahead.
14          MS. KRISHNAN:  Thank you.
15          So for those two individuals we're wondering if,
16    um, this Court would take their testimony out of turn in
17    the first couple of weeks of June, but to have the
18    balance of the trial scheduled for the last couple of
19    weeks of July.
20          THE COURT:  The last couple of weeks of July?
21          MS. KRISHNAN:  Or earlier in July.
22          THE COURT:  Yeah, how about the first couple of
23    weeks, and here's why.
24          MS. KRISHNAN:  Yes, your Honor.
25          THE COURT:  Just talking back and forth is fine,
```

```
 1   but this -- win lose or draw, this needs some written,
 2   um, conclusions, even as to the first part, and I'm not
 3   thinking about a second part.  But as to the first part.
 4        So the first two weeks of July?  Yes.  Taking
 5   witnesses out of order?  Yes.  Um, again, subject to the
 6   defendants' proper concerns.
 7        Go ahead.
 8        MS. KRISHNAN:  Thank you.  I've just had a note
 9   passed to me.
10        The week of July 7th, if that's convenient to the
11   Court, um, I think would work on our end.  One of our
12   co-counsel has a commitment earlier on in July.
13        THE COURT:  Well understand that this is a civil
14   case, I'm responsible for trying criminal cases as well.
15   But, yes, I'll work with you.  And it's jury-waived.  I
16   normally sit on trial from 9:00 in the morning until
17   1:00 in the afternoon and do everything else in the
18   afternoon.  If worst comes to worse, I can sit on trial
19   in the afternoon, though I would reserve Friday
20   afternoons to try to do everything else.  That's a hard
21   schedule.  I've been able to do that.  I'd rather not.
22   But to the extent I can accommodate you, I will do it.
23        So that's sufficient for you?
24        MS. KRISHNAN:  Yes, that is.
25        THE COURT:  All right.  Thank you.
```

```
 1          MS. KRISHNAN:  If I could just mention one more
 2     thing, your Honor?
 3          THE COURT:  Yes.
 4          MS. KRISHNAN:  Which is that we would like to come
 5     back to this Court in two weeks to address any issues
 6     that have surfaced in the course of discovery.  It may
 7     be that the government, as you've previewed, raises
 8     various privileges.  Given the schedule we welcome the
 9     Court's close supervision in this case and we would
10     welcome a --
11          THE COURT:  Well the Clerk will suggest a date.
12     But let me turn to defense counsel.
13          All of this is agreeable to you?
14          MS. YEN:  Well, your Honor, we don't know what the
15     government's -- no, I'm sorry, what the plaintiffs' case
16     will be yet, and we certainly have not seen their
17     discovery request.  So realistically I guess what I
18     would ask the Court is if we can have a few days?  I
19     think when they are able to share with us their
20     discovery request, quite shortly, if we could have a few
21     days to digest those requests, then I can go back to my
22     clients and see when we can respond to all those
23     requests before --
24          THE COURT:  Well I'm not hearing -- I'm not
25     hearing anything, um, different than what they suggest.
```

```
 1   Having heard from the plaintiffs, here's what I'm
 2   thinking.
 3         The Clerk will suggest a status conference two
 4   weeks out.
 5         MS. YEN:  Yes.
 6         THE COURT:  The -- at that time I will be
 7   interested to know who, um, because they know, they want
 8   to take early on out of turn and about how long that's
 9   going to take, just the logistics of it, and see when I
10   can schedule that in June or maybe towards the end of
11   May.  I'll further talk about trial, and you'll be in a
12   better position to talk about trial, early in July.
13         So does that make sense?
14         MS. YEN:  That does make sense, your Honor.
15         THE COURT:  And in that time, um, I'm so gratified
16   that you're talking, because I expect them to be fully
17   forthcoming with what they want, and I'll be interested
18   to know what your response is, so that I can be guided
19   in how to deal with it.
20         And back to the plaintiffs.  Have we taken care of
21   the issues?
22         MS. KRISHNAN:  I'm sorry, your Honor, I missed
23   that question?
24         THE COURT:  Are we done?
25         MS. KRISHNAN:  Oh, yes, we are.
```

```
 1          THE COURT:  And the defense, are we done?

 2          MS. YEN:  Just one housekeeping matter, your

 3     Honor.

 4          THE COURT:  Sure.

 5          MS. YEN:  At the end of the last hearing you

 6     mentioned that the government -- that you were taking

 7     the government as having denied the substantive

 8     allegations of the complaint, which is absolutely

 9     correct, and that we did not need any more formal

10     briefing.  So we're taking up the Court's indication to

11     not file a formal answer in this case, if that's okay?

12          THE COURT:  It's perfectly okay.

13          MS. YEN:  Okay.

14          THE COURT:  I knew exactly what I was saying.

15     This isn't the first time I've combined a preliminary

16     injunction with trial on the merits.  It's meant to be a

17     fair but expeditious procedure.  But fair.

18          No, I want it to be expeditious.  You've denied

19     all the substantive allegations of the complaint, and

20     I'm very sensitive to that.  I've now placed it on the

21     record twice.

22          MS. YEN:  Yes, thank you, your Honor.

23          THE COURT:  All right.

24          The Clerk will suggest a time for a status

25     conference.  It will be in the afternoon.  And it may
```

1   not be long.

2          THE CLERK:  Tuesday, May 20th at 2:00 p.m.

3          THE COURT:  Is that satisfactory to the

4   plaintiffs?

5          (Pause.)

6          MS. KRISHNAN:  Would Thursday the 22nd work?

7          THE CLERK:  Yes.

8          MS. KRISHNAN:  Thank you.

9          THE COURT:  There's five of you now, um, sitting

10  here, so, um, I try to accommodate.

11         How does defense counsel feel about that, Thursday

12  the 22nd at 2:00 p.m.?

13         MS. YEN:  That's fine, your Honor.  Thank you.

14         THE COURT:  (To Clerk.)  Did you say 2:00?

15         THE CLERK:  Yes.

16         THE COURT:  Thursday the 22nd at 2:00 p.m. for a

17  status conference.

18         Thank you very much.  It's good to see you.

19         We'll stand in recess until that time.

20         (Ends, 11:45 a.m.)

21

22

23

24

25

1                    C E R T I F I C A T E

2

3        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

4   hereby certify that the forgoing transcript of the

5   record is a true and accurate transcription of my

6   stenographic notes, before Judge William G. Young, on

7   Tuesday, May 6, 2025, to the best of my skill and

8   ability.

9

10

11

12

/s/ Richard H. Romanow 05-08-25
13   _____
RICHARD H. ROMANOW   Date
14

15

16

17

18

19

20

21

22

23

24

25