# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| AMERICAN ASSOCIATION OF ) | |
| UNIVERSITY PROFESSORS, ET AL., ) | Civil Action No. 1:25-cv-10685-WGY |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **CERTIFIED** |
| ) | **ADMINISTRATIVE RECORD** |
| ) | |
| MARCO RUBIO, in his official capacity ) | |
| as Secretary of State, and the ) | |
| DEPARTMENT OF STATE, ET AL., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**INDEX**

Declaration of John Armstrong ............................................................................. 1

Declaration of Andre Watson ............................................................................... 7

Department of State Cable 26168 ...................................................................... 12

████  Notification of Removability Determination under INA 237(a)(4)(C) ............................ 18

████  Notice to Appear ........................................................................................ 20

████  Form I-261 ............................................................................................... 23

████  Warrant for Arrest of Alien ............................................................................ 25

████  Notification of Deportability Determination under INA 237(a)(4)(C) ......................... 26

████  Notice to Appear ........................................................................................ 28

████  Warrant for Arrest of Alien ............................................................................ 32

████  Notice of Custody Determination ..................................................................... 33

████  Visa Revocation – Memo for ICE ..................................................................... 34

████  Notice to Appear ........................................................................................ 36

████  Warrant for Arrest of Alien ............................................................................ 40

████  Notification of Removability Determination under INA 237(a)(4)(C) ......................... 41

████  Unserved Warrant for Arrest of Alien .............................................................. 43

████  Notification of Deportability Determination under INA 237(a)(4)(C) ................... 44

████  Notice to Appear ........................................................................................ 46

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., | ) ) ) | Civil Action No. 1:25-cv-10685-WGY |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) | **CERTIFICATION OF ADMINISTRATIVE RECORD** |
| MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., | ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

I, Larry W. Talbott, hereby declare under penalty of perjury:

1. I am employed by the United States Department of State, Bureau of Consular Affairs, Visa Office, Office of Information Management and Liaison. The facts attested to herein are based upon my personal knowledge and upon information provided to me in my official capacity.

2. Noting that this is not a traditional Administrative Record, because it is addressing the *absence* of a policy alleged to exist in litigation, and is further compiled for purposes of non-traditional review in a Rule 65(a) expedited proceeding, I certify that the following documents annexed hereto constitute the Department of State's administrative record in this matter, which consists of the declaration of John Armstrong, dated April 11, 2025, previously submitted to this Court (Dkt.# 65-1), describing the Department of State's requirements and polies relating to visa revocation and affirming that it is not true that the

1

Department is approving visa revocations for "ideological deportation" reasons, a true and correct version of the Department of State Cable 26168, redacted for Law Enforcement Privilege, and the following documents related to five individuals, filed in separate litigation:

a. ▮▮▮▮ Notification of Removability Determination under INA 237(a)(4)(C)

b. ▮▮▮▮ Notification of Removability Determination under INA 237(a)(4)(C)

c. ▮▮▮▮ Visa Revocation – Memo for ICE

d. ▮▮▮▮ Notification of Removability Determination under INA 237(a)(4)(C)

e. ▮▮▮ Notification of Removability Determination under INA 237(a)(4)(C)

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1476, that the foregoing is true and correct to the best of my knowledge.

*Larry W. Talbott*

_____
Larry W. Talbott
Deputy Director
Office of Information Management and Liaison
Visa Office, Bureau of Consular Affairs
U.S. Department of State

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

———————————————————

|  |  |  |
|---|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., | ) ) ) | Civil Action No. 1:25-cv-10685-WGY |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CERTIFICATION OF ADMINISTRATIVE RECORD** |
| MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., | ) ) ) ) ) | |
| Defendants. | ) ) | |

I, Akil Baldwin, hereby declare under penalty of perjury:

1. I am the Deputy Assistant Director for the National Security Division of Homeland Security Investigations (HSI). Prior to becoming the Deputy Assistant Director, I served as the Division Chief for the HSI Office of International Operations. I have additionally served as the HSI Attache in Hong Kong; Assistant Special Agent in Charge in New York, N.Y., and Assistant Attache in Brussels, Belgium. The facts attested to herein are based upon my personal knowledge and upon information provided to me in my official capacity.

2. Noting that this is not a traditional Administrative Record, because it is addressing the *absence* of a policy alleged to exist in litigation, and is further compiled for purposes of non-traditional review in a Rule 65(a) expedited proceeding, I certify that the declaration of HSI National Security Division Assistant Director Andre Watson, dated April 11,

1

2025, previously submitted to this Court (Dkt.# 65-2), describing the Department of

Homeland Security's processes for identifying, disrupting and dismantling transnational

criminal enterprises and terrorist organizations that threaten the security, and confirming

that the Department has no official or unofficial "ideological deportation policy," is part

of the U.S. Immigration and Customs Enforcement's administrative record in this matter.

3. In good faith, I certify the document that was put before me.  There's a separate

certification pertaining to other U.S. Immigration and Customs Enforcement documents

and a separate certification pertaining to U.S. Department of State's documents reflected

in the index and record.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1476, that the foregoing is true and

correct to the best of my knowledge.

AKIL R
BALDWIN

Digitally signed by AKIL R
BALDWIN
Date: 2025.05.29 12:11:47
-04'00'

_____

_____

Akil Baldwin
Deputy Assistant Director
National Security Division
Homeland Security Investigations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| AMERICAN ASSOCIATION OF<br>UNIVERSITY PROFESSORS, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>MARCO RUBIO, in his official capacity<br>as Secretary of State, and the<br>DEPARTMENT OF STATE, ET AL.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:25-cv-10685-WGY


**CERTIFICATION OF
ADMINISTRATIVE RECORD**

I, William S. Walker, hereby declare under penalty of perjury:

1. I am the Acting Assistant Director for Domestic Operations at Homeland Security Investigations ("HSI") at U.S. Immigration and Customs Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS"). As the Acting Assistant Director, I am responsible for oversight of 30 HSI Special Agents in Charge, ensuring all field operations are working to efficiently execute the agency mission.

2. I began my career with the U.S. Government as an Inspector with the former U.S. Customs Service at the Port of Philadelphia. Over 26 years, I have served as Deputy Special Agent in Charge, Assistant Special Agent in Charge, and Supervisory Special Agent with HSI. Most recently, I served as the Special Agent in Charge of HSI's New York Field Office where I oversaw over 700 investigators whose mission was investigating, disrupting, and dismantling transnational criminal organizations and

1

terrorist networks. In my capacity as Acting Assistant Director, I now oversee 237

Domestic Field Offices and more than 7,100 Special Agents.

3. In good faith, I certify the documents that were put before me.  There's a separate

certification pertaining to the U.S. Department of State's documents reflected in the index

and record.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1476, that the foregoing is true and

correct to the best of my knowledge.

WILLIAM S WALKER
Digitally signed by
WILLIAM S WALKER
Date: 2025.05.29
12:24:12 -04'00'

William S. Walker
HSI Acting Assistant Director for Domestic Operations
U.S. Immigration and Customs Enforcement

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS, ET AL.,

        Plaintiffs,

v.

MARCO RUBIO, in his official capacity
as Secretary of State, and the
DEPARTMENT OF STATE, ET AL.,

        Defendants.

Civil Action No. 1:25-cv-10685-WGY

## DECLARATION OF JOHN ARMSTRONG IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

I, John Armstrong, hereby declare under penalty of perjury:

1.    I am the Senior Bureau Official within the U.S. Department of State's Bureau of Consular Affairs. I am a career member of the Senior Foreign Service with the rank of Counselor. Prior to becoming the Senior Bureau Official, I briefly served as the Deputy Assistant Secretary for Overseas Citizen Services. I served overseas as the Consul General in Lima, Peru, as Economic Counselor in Warsaw, Poland, as Consular Section Chief and Acting Deputy Chief of Mission in Nassau, Bahamas, Deputy Consul General in Kyiv, Ukraine, and Nonimmigrant Visa Chief in Bucharest, Romania. I have also previously served domestic assignments in Washington, D.C., as Director of the Office of Eastern European Affairs, Director of the Washington Passport Agency, Senior Political Officer on the Russia Desk, and Belarus Desk Officer.

2.    As the Senior Bureau Official, I oversee the functions and responsibilities of the Bureau of Consular Affairs, including the Office of Overseas Citizen Services, the Office of Passport Services, and the Office of Visa Services ("Visa Office"), which encompasses all aspects of visa policy, procedures, and information related to U.S. visa issuance to foreign citizens who apply at more than 230 visa-issuing U.S. embassies and consulates.

3.    I am familiar with the Department's requirements and policies relating to visa revocation. I base this declaration on my review of Department of State records and discussion with other Department of State employees.

4.    The Visa Office's functions and responsibilities encompass all aspects of visa policy, procedures and information related to U.S. visa issuance to foreign citizens, who are applying at U.S. Embassies and Consulates worldwide, seeking to come to the United States. The responsibilities of the Visa Office include coordinating with other agencies to perform national security screening of foreign travelers, and providing guidance and recommendations on visa policy related to national security exclusions. Among its many functions, the Visa Office also revokes thousands of visas annually and provides guidance to the field on visa issuance, revocation and denial.

1

5.    On January 20, 2025, President Trump issued Executive Order 14161, Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats ("E.O. 14161"). Consistent with E.O. 14161, the Visa Office has undertaken numerous efforts to "identify all resources that may be used to ensure that all aliens seeking admission to the United States, or who are already in the United States, are vetted and screened to the maximum degree possible."

6.    On January 29, 2025, President Trump issued Executive Order 14188, Additional Measures to Combat Anti-Semitism ("E.O. 14188"). Pursuant to E.O. 14188, the Visa Office and other relevant offices at State are working with the Department of Education and the Department of Homeland Security ("DHS") on appropriate ways to "familiariz[e] institutions of higher education with the grounds for inadmissibility under 8 U.S.C. 1182(a)(3) so that such institutions may monitor for and report activities by alien students and staff relevant to those grounds and for ensuring that such reports about aliens lead, as appropriate and consistent with applicable law, to investigations and, if warranted, actions to remove such aliens."

7.    One of the tools in place to ensure maximum vetting of visa applicants and visa-holders, including students, is the Department's long-standing continuous vetting program. All visa-holders are continuously vetted by law enforcement and intelligence agencies for information that surfaces after visa issuance. Processes for coordinated security-related continuous vetting have been used by the State Department and partner agencies for over 10 years.

8.    The Department of State has the authority to revoke visas under Section 221(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(i), which states, in pertinent part: "After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation." For example, the Department may revoke a visa if information arises that indicates an alien is potentially ineligible for that visa or that revocation is otherwise warranted, including, for example, if the alien poses a threat to U.S. public safety. The Visa

2

AAUP C.A.R.003

Office provides notice to DHS when a visa is revoked.

9.    A visa is revoked only after the Department of State reviews available information to ascertain whether the visa revocation is supported by the facts and law.

10.    Given the Department's commitment to, and responsibility for, national security, the Visa Office uses all available resources in its visa screening and vetting both when making the initial visa adjudication and during recurrent vetting.

11.    Information on visa-holders can come directly from interagency partners, from offices within the Department of State, or from public sources. The Visa Office has long-standing relationships with U.S. law enforcement agencies who regularly send the Visa Office information when they believe derogatory information merits a revocation. This includes information from DHS and the Federal Bureau of Investigation.

12.    A visa can be revoked for any potential ineligibility under U.S. law, including but not limited to potential ineligibility for a visa under one of the "Security and related grounds" of inadmissibility at section 212(a)(3) of the INA. The "Security and related grounds" include terrorism related inadmissibility grounds, such as endorsing or espousing terrorist activity or persuading others to endorse or espouse terrorist activity or support a terrorist organization, as well as engaging in terrorist activity by providing material support to a designated or undesignated terrorist organization. That section also includes an inadmissibility ground for foreign policy reasons, when the Secretary of State has reasonable ground to believe an alien's entry or proposed activities in the United States would have potentially serious adverse foreign policy consequences for the United States.

13.    The Bureau of Consular Affairs, including the Office of Visa Services, does not carry out deportations. DHS's Immigration and Customs Enforcement ("ICE") is responsible for immigration enforcement in the United States, including initiating proceedings against aliens charged as removable.

14.    As deportations are carried out by DHS, deportation policy is outside the purview of the Bureau of Consular Affairs. No ideological deportation policy has been developed or

3

implemented by the Bureau of Consular Affairs or the Visa Office.

15.    I am aware of Secretary Rubio's public remarks indicating the U.S. government will revoke visas of and deport Hamas supporters. These statements are consistent with the State Department's long-standing implementation of visa and immigration laws, across administrations. Hamas has been a designated foreign terrorist organization under section 219 of the INA since it was designated by former Secretary Madeleine Albright in 1997. Support for a designated terrorist organization by statute is a basis for visa refusal and other immigration consequences: the INA provides that an alien who persuades others to support a terrorist organization, or who has afforded material support to a designated terrorist organization, is inadmissible and deportable. INA §§ 212(a)(3)(B), 237(a)(4)(B).

16.    I am aware of plaintiffs' contention that the State Department and ICE have launched new social media surveillance programs aimed at identifying noncitizen students and faculty with alleged terrorist sympathies. It is true that the State Department has authored new guidance to consular officers on reviewing visa applicants' social media. However, it is misleading and false to refer to the Department's review of publicly available social media as a form of "surveillance" to root out "terrorist sympathies" among students and faculty. Rather, review of publicly available social media is a component of the extensive information-collection and vetting process foreign visitors undergo when they apply for and use U.S. visas.

17.    I am aware of plaintiffs' contentions regarding Secretary Rubio's March 16, 2025, interview on the television news show *Face the Nation*. I understand Secretary Rubio's comments to refer to the ongoing work of the Visa Office to revoke visas, revocations which occur for a wide variety of reasons. Secretary Rubio did not state, and it is not true, that the Visa Office is approving visa revocations every day for "ideological deportation" reasons. This assertion is simply false.

4

AAUP C.A.R.005

I declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this 11th day of April, 2025.

John Armstrong
Senior Bureau Official
Bureau of Consular Affairs
U.S. Department of State

5

AAUP.C.A.R.006

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS., *et al.*,


Plaintiffs,

v.

MARCO RUBIO, *et al.*,


Defendants.

No. 1:25-CV-10685

## DECLARATION OF ANDRE WATSON

I, Andre Watson pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

      1.      I am the Senior Official within the National Security Division (NSD) for Homeland Security Investigations (HSI).  I am a career member of the Senior Executive Service with the rank of Assistant Director.  Prior to becoming the Assistant Director of NSD, I served on a detail assignment to the U.S. Department of Homeland Security in the capacity of Principal Deputy Assistant Secretary for the Countering Weapons of Mass Destruction Office.  I served as the HSI Special Agent in Charge in Baltimore, M.D., Deputy Special Agent in Charge in Washington, D.C., Assistant Special Agent in Charge in Houston, T.X., and Supervisory Special Agent in Blaine, W.A.  I have also previously served in Headquarters assignments as Chief of Staff to the Deputy Director of U.S.  Immigration and Customs Enforcement (ICE), Chief of Intelligence for the U.S. Department of Justice, International Organized Crime and Intelligence Operations Center, and various supervisory positions within NSD.

2.    As the Senior Official within NSD, I oversee the National Security as well as Student and Exchange Visitor Programs functions in support of ICE efforts to identify, disrupt and dismantle transnational criminal enterprises and terrorist organizations that threaten the security of the United States.  These efforts encompass all investigations and aspects of terrorism, special interests involving state and non-state actors, human rights violators and war criminals as well as compliance and oversight functions for over 6,900 academic institutions, 45,000 designated school officials, and over 1.2 million foreign students studying in the United States.

3.    HSI is a component of ICE that conducts significant and complex criminal investigations into individuals and international criminal networks that violate U.S. laws. HSI focuses its efforts on combating the transnational criminal networks that pose the greatest threats to the security of the United States. HSI has more than 10,000 employees stationed in more than 235 U.S. cities and more than 50 countries worldwide. The HSI workforce is made up of special agents, criminal analysts, intelligence analysts, and support personnel who live and work in the communities they are sworn to protect and serve.

4.    The Student and Exchange Visitor Program (SEVP), a component of HSI's National Security Division, was created in the wake of 9/11 to provide integrity to the immigration system by collecting, maintaining and analyzing information so only legitimate nonimmigrant students or exchange visitors can gain entry in the U.S. Through a database housing information pertaining to schools and students, the Student and Exchange Visitor Information System (SEVIS), SEVP manages and tracks nonimmigrants in the F, M, and J categories. To eliminate vulnerabilities related to the nonimmigrant visa program, Congress first introduced statutory language mandating the development of a program to collect data and improve tracking of foreign students in the Illegal Immigration Reform and Immigrant Responsibility Act of (IIRIRA) of 1996. In 2001, Congress

expanded the foreign student tracking system when it enacted PATRIOT ACT, and in 2002 Congress strengthened the tracking system yet again, through the Enhanced Border Security and Visa Entry Reform Act, noting concerns with national security and emphasizing the need to carefully track student status and information. Accordingly, these laws and regulations demonstrate a clear congressional directive that ICE closely monitor foreign students and the schools in which they enroll by vigorously enforcing statutory and regulatory requirements.

5.      I am aware of the above-captioned lawsuit. I provide this declaration based on my personal knowledge, reasonable inquiry, and information obtained from various records, systems, databases, other Department of Homeland Security (DHS) employees, and information portals maintained and relied upon by DHS in the regular course of business.

6.      On January 29, 2025, President Trump issued Executive Order 14188, *Additional Measures to Combat Anti-Semitism* (E.O. 14188). ICE remains steadfast in its commitment to enforcing E.O. 14188 prohibiting anti-Semitism and safeguarding national security by applying existing authorities consistent with the priorities set forth in the E.O. 14188.

7.      In applying existing authorities,, HSI Office of Intelligence proactively reviews open-source information to identify individuals within the parameters of E.O. 14188. Open-source information is defined as unclassified information that has been published or broadcast in some manner to the general public, could be lawfully seen or observed by a casual observer, is made available at a meeting open to the public, or is obtained by visiting any place or attending any event that is open to the public.

8.      The U.S. Department of State (DOS) has broad discretion under 8 U.S.C. § 1201(i) to revoke visas and make determinations of whether an alien's present or activities in the United States would have potentially serious adverse foreign policy consequences. ICE does not make

those determinations. Upon notification of DOS determination, ICE may take subsequent enforcement actions such as placing the alien in removal proceedings under the Immigration and Nationality Act (INA). HSI's Counter Threat Lead Development Unit (CTLD) is specifically responsible for analyzing alien nonimmigrant status violators, lawfully admitted to the United States, who violate the terms of their admission and pose a threat to national security, public safety and/or are involved in criminal activity for field referral and further investigation. Since 2003, the National Security Division has overseen this mission. Currently, CTLD receives over one million alien violator records each year, primarily from U.S. Customs and Border Protection (CBP) Arrival and Departure Information System (ADIS), as well as from SEVIS. CTLD generates viable, investigative leads on nonimmigrant overstays with national security and public safety concerns and/or criminal activity to HSI field offices for further action. CTLD may also provide information to DOS for possible visa revocation if appropriate. .

9.      Procedurally, once DOS notifies ICE of its decisions concerning whether to revoke a visa or make certain determinations that would render a alien removable, the determination is then disseminated to the local field office for additional enforcement actions against the student (e.g., issuing a Notice to Appear in removal proceedings) if appropriate.

10.     Enforcement actions carried out against aliens within the purview of E.O.14188 occur pursuant to ICE's existing civil immigration authorities under the INA. There is no official or unofficial "ideological deportation policy." Aliens may be charged with any deportation ground under the INA supported by fact and law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of April 2025.

ANDRE R WATSON

Digitally signed by
ANDRE R WATSON
Date: 2025.04.11
18:22:22 -04'00'

Andre Watson, Assistant Director
National Security Division
Homeland Security Investigations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

UNCLASSIFIED
SBU



| | |
|---|---|
| **MRN:** | 25 STATE 26168 |
| **Date/DTG:** | Mar 25, 2025 / 251914Z MAR 25 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *Immediate* |
| **E.O.:** | 13526 |
| **TAGS:** | CVIS, CMGT, PTER, KFRD |
| **Captions:** | SENSITIVE |
| **Reference:** | 25 STATE 5914 |
| **Subject:** | (U) Action Request:  Enhanced Screening and Social Media Vetting for Visa Applicants |

1. (U) This is an action request.  **See paragraph 7**.

2. **(SBU) SUMMARY:**  The protection of our nation and its citizens is a consular officer's first consideration.  Pursuant to the implementation of Executive Order (E.O.) 14161 and E.O. 14188, known respectively as *Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats* and *Additional Measures to Combat Anti-Semitism*, effective immediately, consular officers must refer certain student and exchange visitor (F, M, and J) visa applicants to the Fraud Prevention Unit (FPU) for a mandatory social media check as described below.  As the Secretary stated on March 16, "We don't want people in our country that are going to be committing crimes and undermining our national security or the public safety.  It's that simple.  Especially people that are here as guests.  That is what a visa is…It is a visitor into our country.  And if you violate the terms of your visitation, you are going to leave."  The Visa Office will host webinars for consular officers to discuss this guidance on April 3 and April 4, 2025.  **END SUMMARY.**

3. **(SBU) Consular Officers Play a Critical Role in Protecting National Security:**  As part of screening every case for potential ineligibilities, consular officers MUST ADDRESS any derogatory information indicating that a visa

applicant may be subject to the terrorism-related ineligibility grounds of the Immigration and Nationality Act (INA).  This includes advocating for, sympathizing with, or persuading others to endorse or espouse terrorist activities or support a DESIGNATED FOREIGN TERRORIST ORGANIZATION (FTO).

4. **(SBU) Every Visa Decision is a National Security Decision:**  In Ref A, the Visa Office directed consular officers to maintain extra vigilance and to comprehensively review and screen every visa applicant for potential security and non-security related ineligibilities including to assess whether the applicant poses a threat to U.S. national security.  Any nonimmigrant visa applicant who has not established to a consular officer's satisfaction that the applicant meets all standards required in that visa classification should be refused under 214(b), as appropriate.  This includes establishing that the applicant does not intend to engage in activities inconsistent with the requested visa status.  If 214(b) does not apply to the visa classification, consular officers should refuse any nonimmigrant or immigrant visa case presenting such concerns under section 221(g) of the INA for further review of additional ineligibility grounds,                        **LE**
            **LE**          as appropriate.

5. (U) This was reflected well by the Secretary's statement on March 16, that "when you apply to enter the United States and you get a visa, you are a guest…if you tell us when you apply for a visa, 'I'm coming to the U.S. to participate in pro-Hamas events,' that runs counter to the foreign policy interest of the United States…if you had told us you were going to do that, we never would have given you the visa."

6. **(SBU) Situations that Cast Doubt on Students' Intent or Credibility:**  As described in 9 FAM 402.5-5(C), an applicant applying for an F-1 or M-1 student visa must demonstrate intent to enter the United States solely to pursue a full course of study at an approved institution.  In addition, J-1 visa applicants who are college, university, and other post-secondary students are required to pursue a full course of study as described in 9 FAM 402.5-6(E)(11).  Evidence suggesting a student visa applicant intends to travel to

the United States to engage in unlawful activities clearly calls into question whether the applicant possesses intent and/or the ability to solely pursue a full course of study.  While many activities may not fall under the INA's definitions of "terrorist activity," you should otherwise consider that information in assessing the credibility of a visa applicant's claimed purpose of travel.  INA section 214(b) requires the applicant to show credibly that all activities in which he or she is expected to engage in while in the United States are consistent with the specific requirements of their visa classification.

7. **(SBU) ACTION REQUEST:  Mandatory Social Media Reviews for Students and Student Exchange Visitors.**  Effective immediately, consular officers must refer all new or returning F-1, M-1, or student J-1 visa applications meeting one or more of the following criteria, that the consular officer has determined is otherwise eligible for the requested nonimmigrant status, to the FPU via ECAS as described in 7 FAH-1 H-945.4,  using the SOCIAL MEDIA REVIEW category.

**LE**

**LE**

**LE**
ᴇ

**LE**

8. **(SBU) Documenting the Results of the Social Media Review:**  If the social media review uncovers potentially derogatory information indicating that the applicant may not be eligible for a visa, Fraud Prevention Units are required to take screenshots of social media findings to the extent it is relevant to a visa ineligibility, to preserve the record against the applicant's later alteration of the information.  Limit screenshots to information relevant to connecting the applicant, the applicant's actions, and a visa ineligibility.

**LE**

**LE**

9. **(SBU) Support for Terrorist Organizations - Grounds and Definitions for INA 212(a)(3)(B):**  All consular officers should carefully review 9 FAM 302.6 to understand the grounds under which an applicant may be ineligible under 3B, including that an applicant who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization" is ineligible.  Consular officers should consider these grounds and definitions when conducting interviews and pursuing lines of inquiry.  Because terms in INA 212(a)(3)(B) are broadly defined, consular officers should elicit as much pertinent information as possible from visa applicants with suspected ties to terrorist organizations or terrorist activity.  This includes the names of all relevant organizations potentially involved in terrorist activity and the applicant's relationship with them (for example, by current membership or past financial contributions or other support).  Evidence that an applicant advocates for terrorist activity, or otherwise demonstrates a degree of public approval or public advocacy for terrorist activity or a terrorist organization, may be indicative of ineligibility under INA 212(a)(3)(B).  This may be evident in conduct that bears a hostile attitude toward U.S. citizens or U.S. culture (including government, institutions, or founding principles).  Or it may be evident in advocacy or sympathy for foreign terrorist organizations.  All of these matters may open lines of inquiry regarding the applicant's credibility and purpose of travel.  Consular officers should inquire into the nature and activities of those organizations.                **LE**

**LE**

10. **(SBU) Intention to Engage in Unlawful Activity:**  Consular officers are also reminded of guidance in 9 FAM 302.5-4 regarding the applicability of INA 212(a)(3)(A)(ii) under which a visa applicant is ineligible if the consular officer knows or has reason to believe that the applicant is traveling to the United States solely, principally, or incidentally to engage in any other unlawful activity.  Consular officers should take care to enter detailed case notes regarding the specific activities expected in the United States and request an advisory opinion per 9 FAM 302.5-4(C).

11. **(SBU) Revocations of Valid Visas:**  If, subsequent to visa issuance, information becomes available to post that an individual may no longer be eligible for a visa due to particularized information indicating an ineligibility under specific INA provisions, including 214(b), post should follow the procedures to revoke or request prudential revocation as described in 9 FAM 403.11 for nonimmigrant visas or 9 FAM 504.12 for immigrant visas.  The Visa Office reminds posts that consular officers do not have the authority to revoke a visa based on a suspected ineligibility or based on derogatory information that is insufficient to support an ineligibility finding - other than a revocation based on driving under the influence (DUI) - and that such cases should be referred          **LE**          in accordance with 9 FAM 403.11-5(B) for further review.  A consular officer's revocation must be based on an actual finding that the individual is ineligible for the visa.

12. **(U) Additional Guidance:**  The Visa Office will host webinars for consular officers to discuss this guidance on Thursday, April 3 and Friday, April 4, 2025.  Invitations with links to these webinars will be sent separately.  The FAM will be updated to reflect this guidance.

13. **(U) Inquiries:**  Post must refer any U.S. media inquiries regarding E.O.s to CA-Press@state.gov and congressional inquiries regarding E.O.s to ConsularOnTheHill@state.gov.  Posts may respond to requests from

international media regarding E.O.s using CA's cleared press guidance located on CA Web, copying CA-PRESS@STATE.GOV.

14. (U) Minimize considered.

**MINIMIZE CONSIDERED**

| | |
|---|---|
| **Signature:** | RUBIO |
| **XMT:** | BASRAH, AMCONSUL; CARACAS, AMEMBASSY; CHENGDU, AMCONSUL; KABUL, AMEMBASSY; MINSK, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; YEKATERINBURG, AMCONSUL |

**UNCLASSIFIED**
SBU

██████ **Notification of Removability Determination under INA 237(a)(4)(C)**

# Filed Under Seal

 **Notice to Appear**

# Filed Under Seal

 **Form I-261**

# Filed Under Seal

 **Warrant for Arrest of Alien**

# Filed Under Seal

███████ **Notification of Deportability Determination under INA 237(a)(4)(C)**

# Filed Under Seal

 **Notice to Appear**

# Filed Under Seal

 **Warrant for Arrest of Alien**

# Filed Under Seal

 **Notice of Custody Determination**

# Filed Under Seal

 **Visa Revocation – Memo for ICE**

# Filed Under Seal

 **Notice to Appear**

# Filed Under Seal

 **Warrant for Arrest of Alien**

# Filed Under Seal

██████ **Notification of Removability Determination under INA 237(a)(4)(C)**

# Filed Under Seal

 **Unserved Warrant for Arrest of Alien**

# Filed Under Seal

██ **Notification of Deportability Determination under INA 237(a)(4)(C)**

# Filed Under Seal

 **Notice to Appear**

# Filed Under Seal