# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., <br><br>Plaintiffs, <br><br>v. <br><br>MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., <br><br>Defendants. | Civil Action No. 1:25-cv-10685-WGY |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO PRECLUDE DISCOVERY THAT CONTRADICTS LIMITATIONS SET BY THE COURT**

This Court has clearly identified the factual issues to be tried beginning on July 7, 2025. In the May 6, 2025 hearing, it instructed that the trial will have "a limited focus on retribution." May 6, 2025 Tr. at 18. The Court was equally clear that discovery leading up to trial would be narrow and limited. *Id.* at 16 ("I'm anticipating an expedited narrow-focused run-up to the trial in this case.") & ("I am not expecting full discovery."). At the hearing on June 2, 2025, the Court expanded upon its prior admonitions, explicitly setting forth the parameters of what evidence in the Government's possession should be disclosed (1) to the plaintiffs, and (2) to the Court, *in camera*. June 2, 2025 Tr. at 31-33. The Court reiterated that the additional discovery it authorized beyond what the government already produced would be "[l]imited." *Id.* at 35.

Prior to the June 2, 2025 hearing, the parties engaged in good faith to exchange discovery pursuant to the Court's instruction – *e.g.*, the Government has made available for deposition next week the two witnesses requested by plaintiffs. However, after the June 2, 2025 hearing, plaintiffs conveyed their intent to ask questions in deposition relating to subjects that exceed and contradict the discovery authorized by the Court – including privileged communications that the Court expressly forbade, and information pertaining to decision-making underlying proceedings for the five subject noncitizens selected by plaintiffs (Five Subject Aliens).

Plaintiffs' discovery requests exceed the boundaries set by the Court's orders and the Court's elaboration on the proper scope of discovery at the June 2, 2025 hearing. So the Government now seeks a protective order precluding further discovery of these *ex-cathedra* subjects, as they (1) violate the Court's clear directive about the facts to be tried and the scope of permissible discovery; (2) risk interfering with ongoing Federal district court litigation; and (3) are otherwise unnecessary and burdensome, especially in light of the narrow focus of trial and the compressed time frame within which the parties must prepare.

I.      **The Court's Orders And Instructions Regarding Triable Issues Of Fact**

The trial beginning July 7, 2025, will address two facts in dispute: whether the Government agency defendants have an "ideological deportation policy," and if it exists, whether such policy reasonably chilled the speech of the remaining plaintiffs – *i.e.*, the noncitizen plaintiffs named in the complaint. *See* May 6, 2025 Tr. at 15 ("plaintiffs are going to have to prove the effects."); June 2, 2025 Tr. at 33-34 (the Court clarifying that "the noncitizen AAUP plaintiffs have standing" and that "the citizen AAUP plaintiffs do not have standing").

The Court has acknowledged that plaintiffs' allegations present a challenge, because the Five Subject Aliens that plaintiffs aver were targets of this alleged policy are not parties to these proceedings, and are currently engaged in litigation in separate district courts across the country. The Court recognized the perils that attend interfering with the conduct of these separate Federal court proceedings. May 6, 2025 Tr. 20-21 ("This Court in no way is going to retry immigration proceedings or judicial proceedings in another district"); *see Merle Norman Cosms. v. Martin*, 705 F. Supp. 296, 298 (E.D. La. 1988) (warning of "inconsistent rulings between courts of coordinate jurisdiction and equal power, wasteful duplicative litigation and piecemeal resolution of disputes"). Accordingly, the Court instructed that trial will focus upon the extant policies and protocols at the Departments of State and Homeland Security in place at the time of the arrests of the Five Subject Aliens identified by plaintiffs. *E.g.*, June 2, 2025 Tr. at 28.

The Court also made clear that it would not require the Government to produce to plaintiffs discovery that would undermine the Government's law enforcement and deliberative process privileges. May 6, 2025 Tr. at 19-20 (discussing deliberative process privilege); 27-28 (discussing law enforcement privilege). The deliberative process privilege "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each

2

remark is a potential item of discovery and front page news.'" *States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 531 U.S. 1, 8-9 (2001)). Similar dangers manifest with respect to sensitive law enforcement information. *See Morrissey v. City of New York*, 171 F.R.D. 85, 88 (S.D. N.Y. 1997) ("the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed"). The Court has recognized the primacy of these privileges and has ensured that it would protect law enforcement-privileged information by reviewing privileged documents *in camera*: "I'll get to see that. But nobody else gets to see that. Because I'm certainly not going to compromise in any way the law enforcement, internally in the United States or externally. Absolutely not." June 2, 2025 Tr. at 33.

  The Court also aided the parties by clearly demarcating the difference between Government statements that were deliberative and those that were not:

> And something happens within the bureaucracy, someone responds "Here's a plan, what do you think of that?" Well that's privileged under the deliberative privilege. Meetings at which things were kicked around, um, privileged. But the memo which says "Approved," "Executed," or "Approved, except for Paragraph 6," that's not, that's the directive.

May 6, 2025 Tr. at 20; June 2, 2025 Tr. at 32 (communications relating to "work[ing] out a plan" are privileged; when the planning is over, "[t]his is what we're going to do," and statements of "[t]his is why we're going to do it" are not privileged). The Court elaborated that it would review privileged documents surrounding the implementation of these policies *in camera*, with the understanding that these documents would not be divulged to plaintiffs. May 6, 2025 Tr. at 28 ("I still get to see the [privileged information] . . . I will allow an *ex-parte* filing, and I will review the material myself in camera."); June 2, 2025 Tr. at 33. Pursuant to this instruction, the Government is marshalling these privileged documents to provide them to the Court *in camera*.

3

At the June 2, 2025 hearing, given the narrow focus of trial and the significant burden of collecting materials from multiple agency components, the Government sought clarity on what documents would be discoverable, so that it could dedicate resources to those materials. The Court responded by supplying the parties with explicit instruction, consistent with its prior guidance that it was interested in the final decisions and protocols and procedures, rather than the merits of individual decisions that are the subject of other district court proceedings:

> I'm not interested at all in the grant or denial of any particular visa, but I've already expressed my interest in what's the protocol that was sent to these consular officers? "When you're looking at social media, look for this, look for that." I'd be interested to see that.

June 2, 2025 Tr. at 33; *see also id.*, Tr. at 29 ("I'd like to see what instructions are today being given, um, in order to enforce the law, because it's relevant to the issues – the issues of intent, among other things, that are germane in this case."). Indeed, the Court particularly emphasized that it was interested in protocols and procedures rather than case-specific deliberations:

> Why so many officers? Why masked? . . . [I]s it protocol to handcuff people with their hands behind their backs? Maybe. Why is that? Is there a manual that says to do that? Is there a manual that says something about these people wearing these masks that cover their faces?

June 2, 2025 Tr. at 32; *Id.* at 28 (on agency review of social media: "I would like to see the protocol that has been issued to these consular officers as to what they are looking for.").

The Court's explanation left no ambiguity about what was to be produced in discovery and what was not. At the conclusion of this hearing, the Court whether the parties had residual questions, and plaintiffs had none. June 2, 2025 Tr. at 29. Plaintiffs did not otherwise reveal that two days later, they would announce their intent to ask deposition questions relating to privileged information and otherwise pursue discovery that exceeded the scope of triable facts in this case.

4

## II.  Plaintiffs' Intend To Seek Privileged, Deliberative Materials That Exceed The Scope Of Limited Discovery Authorized By The Court

Notwithstanding the clarity of the Court's instruction, two days after this hearing, on June 4, 2025, plaintiffs e-mailed Government counsel indicating that at deposition, they would seek discovery of "agency deliberations that culminated in the decisions to revoke the visas or green cards of, or to arrest, detain, or deport non-citizen students or faculty based on their speech." *See* Ex. A, June 4, 2025 E-mail from Noam Biale.  Plaintiffs also declared that the deliberative process privilege –which the Court two days before said would not be compromised – "does not apply," and "cannot be invoked at the depositions to prevent the witnesses from answering questions about agency deliberations[.]" *Id.*

Plaintiffs' desire to seek discovery beyond that permitted by the Court is also reflected in their written discovery requests.  Below are examples of discovery requests that violate the Court's narrowly contoured discovery orders.  Among other things, plaintiffs demand:

- Government deliberations and planning records and communications, including those "showing the planning, execution and implementation of your decision to take any adverse action against a Targeted Noncitizen Student or Faculty Member," Ex. B, Request for Production (RFP) 1;
- Records and communications relating to all nine of the subject aliens identified in the complaint; *id.*
- "Documents and communications requesting or recommending the taking of, and memorializing, explaining, or justifying the decision to take any adverse action against a Targeted Noncitizen Student or Faculty Member." *Id.*, RFP 2.
- Pre-decisional documents and communications "with Betar US, Canary Mission, and the Heritage Foundation concerning the Targeted Noncitizen Students or Faculty Members." *Id.*, RFP 4;
- Communications and memoranda concerning the inspection, review, monitoring, or surveillance of noncitizens' social media accounts or activity for pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel speech or activity;" *Id.*, RFP 5;
- "Communications with Covered Institutions concerning non-citizen students or faculty members who have been accused or suspected of engaging in speech or activities deemed or suspected to be pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel." *Id.* RFP 7.

Plaintiffs' interrogatories also seek information that plainly exceeds to scope of permissible discovery. For example, plaintiffs demand that the Government:

- "State the basis of the State Department's decision to revoke the visas of any of the Targeted Noncitizen Students or Faculty Members under 8 U.S.C. § 1201(i)." Ex. C, Interrogatory 8;
- "State the basis of Secretary of State Rubio's determination that any of the Targeted Noncitizen Students or Faculty Members is removable under 8 U.S.C. § 1227(a)(4)(C)." *Id.*, Interrogatory 9;
- "State the basis of the State Department's decision to make 'silent' the revocation of any of the Targeted Noncitizen Students' or Faculty Members' visas or green cards, *i.e.*, not to notify the Targeted Noncitizen Student or Faculty Member of the revocation." *Id.*, Interrogatory 11;
- "Describe in detail your decision to and reasons for arresting Mohsen Mahdawi at the time and location of his U.S. Citizenship and Immigration Services interview in Colchester, Vermont on April 14, 2025." *Id.*, Interrogatory 14.

## III. The Court Should Quash All Discovery Requests That Exceed The Scope Of Discovery Previously Ordered By The Court

Federal Rule of Civil Procedure 26(b)(1) stipulates that, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's clam or defense." The rule is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Nonetheless, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . unless the information sought is otherwise relevant to the issues in the case." *U.S. ex rel. Banigan v. Organon USA Inc.*, No. 07-12153-RWZ, 2013 WL 4736844, at *1 (D. Mass. Aug. 30, 2013) (quoting *Oppenheimer*, *id.* at 352).

It is well understood that, "[q]uestions of scope and conduct of discovery are committed to the discretion of the trial court." *Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). If good cause exists, a party may seek entry of a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden

6

or expense." Fed. R. Civ. P. 26(c)(1); *e.g.*, *In re Grand Jury Subpoena,* 220 F.R.D. 130, 150 n.10 (D. Mass. 2004) ("courts can . . . issue protective orders under Rule 26(c) to prevent discovery").

Given the compressed discovery schedule and the imminent depositions of Government and private witnesses, the Government respectfully requests that the Court strike, quash, or otherwise limit plaintiffs' discovery requests and deposition examination to matters the Court has deemed are relevant to the narrow issues of fact to be tried. That plaintiffs believe the Court's instruction relating to the deliberative process privilege may be disregarded, or that the privilege does not apply, is largely immaterial to this motion. The Government will instruct its witnesses and agencies not to answer any questions, interrogatories, or requests that seek the Government's pre-decisional deliberations. However, as described above, good cause exists to issue a protective order because plaintiffs have requested other non-privileged information that the Court has already explained may not be pursued in discovery.

Specifically, the Government respectfully requests that the Court strike, quash, and preclude, any discovery, including deposition questions, relating to three areas:

(1) subject aliens other than the Five Subject Aliens identified by plaintiffs;

(2) pre-decisional records, memoranda, decisions, and communications, including with outside entities (other than the final Government directives, policies and protocols ordered produced by the Court), that precede the Government's final removal decisions/orders relating to the Five Subject Aliens; and,

(3) documents and communications relating to the Five Subject Aliens that have not been produced by the Government in the ongoing Federal judicial proceedings relating to those aliens.

Such a limited order would allow the remaining plaintiffs to pursue records and communications relevant to the question of whether the alleged "ideological deportation policy"

exists, while at the same time dedicating discovery to the matters that the Court has deemed relevant to a trial. It would further allow and encourage all parties, operating under a highly compressed time frame and with trial now only 30 days away, to dedicate their limited resources to seeking, marshalling, and producing relevant evidence, rather than wasting time collecting irrelevant detritus that will have no bearing upon the Court's assessment of the facts in dispute.

Such a prophylactic order will also lessen the risk of disclosure of information that could impede or interfere with other ongoing Federal litigation relating to the subject aliens, avoiding the hazards of "inconsistent rulings between courts of coordinate jurisdiction and equal power, wasteful duplicative litigation and piecemeal resolution of disputes." *Merle Norman Cosms.*, 705 F. Supp. at 298.

WHEREFORE, the Government respectfully requests that the Court issue this protective order delimiting the scope of discovery in the manner identified above.

Respectfully Submitted,

| | |
|---|---|
| YAAKOV M. ROTH<br>*Acting Assistant Attorney General* | <u>*William Kanellis*</u><br>WILLIAM KANELLIS |
| DREW C. ENSIGN<br>*Deputy Assistant Attorney General* | ETHAN B. KANTER<br>*Chief, National Security Unit*<br>*Office of Immigration Litigation* |
| LEAH B. FOLEY<br>*United States Attorney* | *P.O. Box 878, Ben Franklin Station*<br>*Washington, D.C. 20001* |
| SHAWNA YEN<br>*Assistant United States Attorney*<br>*District of Massachusetts* | PAUL F. STONE<br>*Deputy Chief,*<br>*National Security Unit*<br>*Office of Immigration Litigation*<br>*Counsel for Defendants* |

*Dated: June 7, 2025*

## MEET AND CONFER CERTIFICATION

In accordance with Local Rules 7.1(2) and 37.1, on June 5, 2025, Government counsel met and conferred with counsel for the Plaintiffs with regard to this motion. The parties discussed Plaintiffs' position that the deliberative process privilege could not be invoked at the forthcoming depositions of Government witnesses John Armstrong and Andre Watson. Government counsel noted their disagreement and expressed their intention to invoke the deliberative process privilege at the depositions and to instruct their witnesses not to answer questions implicating deliberative information. Counsel further discussed the discovery parameters set by the Court, but did not come to accord on this issue, and the parties were unable to resolve or narrow their dispute.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

| | |
|---|---|
| *Date: June 7, 2025* | By: */s/ William Kanellis*<br>WILLIAM KANELLIS<br>U.S. Department of Justice |