

475 Riverside Drive, Suite 302
New York, NY 10115

(646) 745-8500
info@knightcolumbia.org

May 22, 2025

**Via ECF**

The Honorable William G. Young
United Stated District Judge
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

      Re:   *American Association of University Professors v. Rubio*, No. 25-cv-10685-WGY

Dear Judge Young,

    Plaintiffs write in response to Defendants' Motion for a Protective Order and Motion to Dispense with Rule 65(a) Trial on the Merits, filed yesterday evening. ECF No. 94 ("Defs.' Mot."). The Court should summarily deny both motions at today's case management conference for the reasons that follow.

    *First*, Defendants' argument that this case is limited to the administrative record and that discovery is barred is entirely without merit. To start, Defendants flatly deny the existence of the ideological-deportation policy Plaintiffs challenge. *See, e.g.*, ECF No. 65, at 12. On their theory, there is no relevant administrative record to produce. It is therefore unsurprising that they have yet to file one or to commit to filing one—and when Plaintiffs asked Defendants in a meet and confer what they believed constituted the administrative record, Defendants were unable to answer. Moreover, because Defendants deny the existence of the policy that Plaintiffs challenge, any administrative record they do file will be unresponsive to Plaintiffs' claims.[1]

---

[1] Defendants cite no authority for their assertion that "[b]ecause the APA is the waiver of sovereign immunity, judicial review depends solely on a review of an administrative record," Defs.' Mot. 5, and any such rule would be nonsensical. As the First Circuit has recognized, the APA's waiver of sovereign

Defendants' filing of an administrative record should not in any event affect Plaintiffs' right to take discovery on their First Amendment claims, which arise directly under the Constitution. *See, e.g.*, *Grill v. Quinn*, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) ("A direct constitutional challenge is reviewed independent of the APA. As such the court is entitled to look beyond the administrative record into this claim." (citing *Porter v. Califano*, 592 F.2d 770 (5th Cir. 1979)); *accord Texas v. Biden*, 2021 WL 4552547, at *3–4 (N.D. Tex. July 19, 2021); *Bolton v. Pritzker*, 2016 WL 4555467, at *4 (W.D. Wash. Sept. 1, 2016); Order Granting Motion for Leave to Conduct Discovery and Set a Discovery Plan, *Jordan v. Wiley*, No. 7-CV-00498 (D. Colo. Nov. 10, 2008), Docket No. 71 (finding no legal basis for defendants' effort to stay discovery on constitutional claims pending the adjudication of overlapping APA claims, and allowing discovery to proceed "[i]n the interest of a speedy and fair resolution of Plaintiff's constitutional claims"); *see also Jordan v. Wiley*, 2009 WL 980313 (D. Colo. Apr. 8, 2009) (granting motion to compel discovery on constitutional claims). And limiting Plaintiffs to the administrative record would be particularly inappropriate here because Plaintiffs' First Amendment claims turn, in part, on Defendants' intent. *See Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Human Servs.*, 557 F. Supp. 3d 224, 245 (D. Mass. 2021) ("[L]imiting the scope of review to the administrative record makes little sense in the context of an inquiry into illicit animus."); *Saget v. Trump*, 375 F. Supp. 3d 280, 368 (E.D.N.Y. 2019) ("If this case were limited to the administrative record, as the Government suggests, it would be impossible to conduct the full analysis of direct and circumstantial evidence *Arlington Heights* demands."); *see also* ECF No. 73 ("MTD Op."), at 59 n.9 (acknowledging that Plaintiffs "allege intent").[2]

---

immunity applies to "*all* equitable actions for specific relief against a federal agency or officer acting in an official capacity, and thus applies to any suit whether under the APA or not." *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 58 (1st Cir. 2007) (cleaned up). In any event, this case could proceed even without the APA's waiver of sovereign immunity, because it seeks injunctive relief against ongoing unconstitutional conduct by the federal government. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015); *see also Doe v. Trump*, No. 25-CV-10135-LTS, 2025 WL 485070, at *6 (D. Mass. Feb. 13, 2025).

[2] Defendants' assertion that discovery is necessarily limited to the administrative record, even in cases raising independent constitutional claims, is belied even by the cases they cite. As these cases make clear, courts routinely consider the degree of overlap between APA and constitutional claims and whether the discovery sought would facilitate adjudication of the constitutional claims in deciding whether extra-record discovery is warranted. *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1205, 1237 (D.N.M. 2014) (plaintiffs' APA and constitutional claims overlapped entirely); *Chang v. USCIS*, 254 F. Supp. 3d 160, 161–62 (D.D.C. 2017) (similar); *Alabama-Tombigbee Rivers Coal. v. Norton*, No. 01-cv-0194, 2002 WL 227032,

Further, there are a number of circumstances in which discovery is justified even in cases raising only APA claims. Particularly here, where Defendants deny that the challenged policy exists, Plaintiffs will be entitled to discovery to determine the proper scope of, and to complete, the administrative record. *See, e.g.*, Order Granting in Part Motion for Leave to Conduct Limited Discovery in Order to Complete and/or Supplement the Administrative Record, *Greater Bos. Legal Servs. v. DHS*, No. 21-cv-10083 (D. Mass. Feb. 2, 2024), Docket No. 115 (allowing document discovery and depositions of agency officials in these circumstances). Moreover, as this Court has explained, discovery may be necessary "when bad faith is claimed[,] . . . when the evidence indicates that the agency relied on secret sources unavailable for public scrutiny, or when the plaintiff presents previously available evidence that the agency should have considered but did not." *City of Waltham v. U.S. Postal Serv.*, 786 F. Supp. 105, 117 (D. Mass. 1992) (citations omitted). Extra-record discovery is also permitted where an agency has "fail[ed] to explain administrative action as to frustrate effective judicial review." *Housatonic River Initiative v. U.S. Envtl. Prot. Agency, New England Region*, 75 F.4th 248, 279 (1st Cir. 2023) (citation omitted). One or more of these exceptions is almost certain to apply here.

Plaintiffs' independent challenge to Defendants' campaign of threats should not be limited to the administrative record even if Plaintiffs' challenge to the ideological-deportation policy is so limited. The campaign of threats encompasses not only public statements, but also the retaliatory arrests and detentions of students like Mahmoud Khalil, Rümeysa Öztürk, and Mohsen Mahdawi, which appear to have been carried out in a manner intended to cause maximum chill on university campuses. Not even Defendants argue that the APA limits judicial review to an administrative record where a plaintiff does not challenge agency action, as the APA defines it. *See* Defs.' Mot. at 6 (stating that Section 706 "limits the review of constitutional claims challenging *agency action*").

*Second*, Defendants are also flat wrong in asserting that *Kleindienst v. Mandel* and *Trump v. Hawaii* limit the Court's review and, therefore, discovery in this case. The "facially legitimate and bona fide" standard articulated in *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972), and discussed in *Trump v. Hawaii*, 585 U.S. 667 (2018), applies only where

---

at *6 (N.D. Ala. Jan. 29, 2002) (similar); *Moralez v. Perdue*, No. 16-cv-00282, 2017 WL 2264855, at *3 (E.D. Cal. May 24, 2017) (similar); *Olsen v. United States*, 414 F.3d 144, 155–56 (1st Cir. 2005) (plaintiff failed to show how the discovery they sought would support their legal claims); *Housatonic River Initiative v. EPA*, 75 F.4th 248, 279 (1st Cir. 2023) (similar); *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51–52, 54 (D. Mass. 1993) (similar); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10–13 (D.R.I. 2004) (similar); *Outdoor Amusement Bus. Ass'n, Inc. v. DHS*, No. 16-cv-1015, 2017 WL 3189446, at *21 (D. Md. July 27, 2017) (similar).

plaintiffs challenge the government's decisions to *deny admission to noncitizens seeking entry* to this country—not, as here, where plaintiffs challenge the government's policy to *deport noncitizens already residing* in this country. "The distinction between an alien who has effected an entry into the United States and one who has never entered" is crucial, because "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The *Mandel* standard therefore has no application here. *See id.* at 684–86, 690 (applying standard Fifth Amendment doctrine because plaintiffs had already entered the United States); *Am.-Arab Anti-Discrimination Comm. v. Reno* ("*AADC*"), 70 F.3d 1045, 1063–66 (9th Cir. 1995) (explaining that it is well-settled that noncitizens living in the United States "are entitled to the full panoply of First Amendment rights"); *see also Bridges v. Wixon*, 326 U.S. 135, 148 (1945); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953); *Parcham v. INS*, 769 F.2d 1001, 1004 (4th Cir. 1985); *Ragbir v. Homan*, 923 F.3d 53, 73 (2d Cir. 2019).

In *Mandel*, U.S. citizens challenged the denial of a visa to a Belgian Marxist who had been invited to speak at a U.S. conference. 408 U.S. at 756–57. That case "c[ame] down to [a] narrow issue": whether, because plaintiffs "wish[ed] to hear, speak, and debate with Mandel in person," the First Amendment "confer[red] upon [them] . . . the ability to determine that Mandel should be permitted to enter the country." *Id.* at 762. Reasoning that the authority Congress had delegated to the executive to render visa decisions would "become[] a nullity" if U.S. citizens could simply obtain court orders compelling noncitizens' admission, the Court determined that it would not "look behind" the executive's visa decision so long as there was a "facially legitimate and bona fide" reason for it. *Mandel*, 408 U.S. at 768–70. *Mandel* is rooted in the doctrine of consular nonreviewability, under which "visa denials are ordinarily unreviewable by courts." *Dep't of State v. Munoz*, 602 U.S. 899, 903 (2024); *see also id.* at 906, 908. The case created a "narrow exception to th[at] bar," *id.* at 908, permitting a "circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Hawaii*, 585 U.S. at 703.

*Hawaii* also dealt with the admission of noncitizens who had not yet entered the United States. In *Hawaii*, the Supreme Court addressed President Trump's decision to deny admission to individuals from certain Muslim-majority countries, exercising statutory authority that "exudes deference . . . in every clause" and "vests the President with 'ample power' to impose entry restrictions in addition to those elsewhere enumerated in the INA." *Id.* at 684 (citation omitted). The Court invoked *Mandel* but ultimately conducted rational basis review at the government's invitation. *Id.* at 703–05; *see State v. U.S. Dep't of Com.*, 315 F. Supp. 3d 766, 810 (S.D.N.Y. 2018) ("[T]he deferential review referenced by the Court in *Hawaii* is that established by *Kleindienst v. Mandel* . . .

4

for challenges to the exclusion of foreign nationals from the country.") (cited at Defs.' Mot. 11).

Because this case does not challenge the denial of admission to any noncitizen not already present in this country, *Mandel* and *Hawaii* do not apply, and Defendants cite no case to the contrary.[3] In fact, Plaintiffs know of no case in which a court has applied *Mandel*'s "facially legitimate and bona fide" standard or rational basis review to a First Amendment challenge to a deportation policy. To the extent courts have applied deferential standards in the deportation context, they have done so only to equal protection claims of selective enforcement against people who were concededly deportable on independent grounds, as in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471 (1999). *See, e.g.*, *Kandamar v. Gonzales*, 464 F.3d 65, 74 (1st Cir. 2006) ("emphasizing that the decision to remove Petitioner was based on the fact that he had overstayed his visa, not based on his national origin," and that "a claim of selective enforcement based on national origin is virtually precluded by *Reno*"); *cf. AADC*, 70 F.3d at 1064–65 (holding that the *Mandel* standard is inapplicable in the deportation context).

*Finally*, Defendants have failed to raise their objections in a timely manner. Defendants should have raised their objection to discovery and trial at the first case management conference, which took place nearly two weeks after the Court consolidated Plaintiffs' preliminary injunction motion with a trial on the merits, and a full week after the Court's ruling on the motion to dismiss. The Court discussed discovery and the trial at length at that conference, but Defendants' counsel did not object to discovery and trial. Moreover, since that conference, the parties have had multiple meet-and-confers at which Defendants could have put Plaintiffs and the Court on notice of their objections. Defendants' eleventh-hour assertion of arguments they should have raised weeks ago should not be permitted to derail or delay discovery to which Plaintiffs are entitled and that the Court has already recognized to be appropriate.

---

[3] Contrary to Defendants' suggestion, *see* Defs.' Mot. 8, whatever plenary authority the government may have to determine "who shall be admitted" to the country, *Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977), that authority does not cordon off all immigration policy from ordinary constitutional review. *See Zadvydas*, 533 U.S. at 695 (explaining that immigration powers are "subject to important constitutional limitations"); *INS v. Chadha*, 462 U.S. 919, 941–42 (1983) (requiring Congress to choose "a constitutionally permissible means of implementing" its immigration power); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (concluding that "broad congressional power over immigration" does not categorically alter the demands of the Fourth Amendment); *United States v. Witkovich*, 353 U.S. 194 (1957) (applying canon of constitutional avoidance to INA provision for expedited deportation); *Dent v. Sessions*, 900 F.3d 1075, 1081 (9th Cir. 2018) (explaining that "[a] challenged law does not receive minimal scrutiny merely because it is related to immigration").

\* \* \*

The Court should deny Defendants' Motion for a Protective Order and Motion to Dispense with a Rule 65(a) Trial on the Merits. To the extent formal briefing on Defendants' motion would aid in the Court's resolution of it, Plaintiffs propose the following schedule: Plaintiffs' opposition due May 27; Defendants' reply due May 28; and a hearing, if necessary, on May 29 or as soon as possible thereafter at the Court's convenience.

/s/ *Ramya Krishnan*
Ramya Krishnan
Carrie DeCell
Xiangnong Wang
Talya Nevins
Jackson Busch
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Noam Biale
Michael Tremonte
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr.
East Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

Edwina Clarke, BBO 699702
David Zimmer, BBO 692715
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive

Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com