**fUNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, ET AL., <br><br> Defendants. | Case No. 1:25-cv-10685 (WGY) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO PRECLUDE DISCOVERY THAT CONTRADICTS LIMITATIONS SET BY THE COURT**

Less than a week after the Court denied their request to limit discovery in this matter to the administrative record, Defendants move for a second bite at the apple, seeking yet another protective order to preclude discovery on issues at the very heart of this case. In effect, Defendants ask the Court to reconsider its denial of their first motion for a protective order, by seeking to prevent further discovery into their decisions to revoke the visas and green cards of the five targeted noncitizens, and to arrest, detain, and deport them. Defendants' motion, if granted, would prevent discovery into topics the Court has specifically asked about, such as the government's plans for arresting Rümeysa Öztürk and Mohsen Madawi. *See* May 6, 2025 Tr. at 20:15–23; June 2, 2025 Tr. at 32:3–33:4. Defendants also seek to prevent discovery into the bases for these actions, including plainly ciprivileged discussions with third parties, based on a flawed and inapposite construction of the deliberative process privilege. Mot. at 1, 7. The Court should deny the motion, preclude Defendants from lodging written objections to Plaintiffs' discovery requests, and order

1

Defendants to file weekly status reports detailing the actions they have taken to comply with the Court's directions to provide Plaintiffs with fulsome discovery.

First, the motion cherry-picks statements from the Court in an effort to relitigate issues on which the Court has provided clear guidance. The Court has already stated that it expects Plaintiffs to "focus [discovery] on retribution," and that it expects "the government to be absolutely fulsome in its disclosure of contemporaneous documents," including the production of "every contemporaneous document that exists up and down the chain of command within the government bureaucracy that bears on [the issue of government retribution]." May 6 Tr. 17:19–18:2, 18:23–19:2. Plaintiffs heeded this guidance and served narrow discovery requests that the Court deemed "in order" after limiting the number of targeted noncitizens from nine to five. May 22, 2025 Tr. at 7:15–8:8; *see also id.* (describing the Court's review of Plaintiffs' discovery requests and determining that they were "not inappropriate"). Thus, Defendants' request that the Court preclude discovery of "documents and communications relating to the [f]ive [targeted noncitizens] that have not been produced by the Government in the ongoing Federal judicial proceedings relating to those aliens," Mot. at 7, is a transparent effort to subvert the Court's guidance. As explained below, this discovery is necessary because it goes to key questions in this case—specifically, the ideological-deportation policy's existence and implementation, and the government's retributive motive.

Second, well-settled law makes clear that the deliberative process privilege does not apply when the agencies' decision-making process is the very subject matter of the suit. *See, e.g., In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003).[1] This precedent makes

---

[1] Contrary to Defendants' suggestion, Plaintiffs have not delayed in raising this issue with the Court. Mot. at 1, 4–5. Plaintiffs wrote to Defendants shortly after the Court denied their prior

clear that the deliberative process privilege cannot be invoked to prevent discovery regarding the bases on which the government made its decisions to revoke the visas and green cards of the targeted noncitizens, and to arrest, detain, and deport them, or about agency decision-making that culminated in the agencies' threats to take such actions. At a minimum, and as Defendants concede the Court is empowered to do, the Court should review *in camera* documents Defendants claim are privileged. Mot. at 3; *see also* June 2 Tr. at 28:25–29:6 (Court discussing *in camera* review of privileged material).

I.  **The Court should deny Defendants' motion because Plaintiffs' discovery requests are appropriate, as this Court has already observed.**

Plaintiffs' discovery seeks, among other things, information about the government's decisions to target specific individuals for adverse immigration decisions based on the individuals' constitutionally protected speech. For instance, Plaintiffs seek records relating to the "planning, execution and implementation" of the government's decisions to target these individuals. Mot. Ex. B. at 5–6. They also seek records "requesting or recommending the taking of, and memorializing, explaining, or justifying" these decisions. *Id.* at 6–7. These requests are carefully tailored to elicit relevant evidence of the ideological-deportation policy's existence and implementation, the government's retributive motive, and its intent to chill the speech of other noncitizen students and

---

protective order motion, which would have limited discovery to the administrative record. *See* Declaration of Scott Wilkens ("Wilkens Decl.") ¶ 6 (attached as Exhibit A). Given the Court's order that discovery proceed, Plaintiffs sought to ripen the likely dispute regarding the deliberative process privilege sufficiently in advance of this week's depositions so that it could be presented to and ruled on by the Court. *Id.* The Court has asked the parties to raise discovery disputes by motion, which the Court has said will be handled on an emergency basis. *See* June 2 Tr. at 30:12–31:8. Plaintiffs did not file a motion with the Court sooner because it would not have been ripe. Indeed, Defendants have not served written objections to Plaintiffs' discovery requests asserting any privilege, and they have informed Plaintiffs that they did not withhold any documents from the administrative record based on the deliberative process privilege. *See* Wilkens Decl. ¶ 5.

faculty. They also track precisely what the Court has repeatedly stated it expects to hear at trial. *See, e.g.*, June 2 Tr. at 8:15–18.

Defendants cherry-pick statements from this Court in an attempt to distort its clear guidance on discovery. Most notably, they fail to mention the Court's admonition at each of the three hearings that it expects Defendants to provide fulsome discovery, and they fail to mention the Court's assessment that Plaintiffs' narrow discovery requests are appropriate.

To make Defendants' omissions plain, at the May 6 case management conference, the Court stated:

> Then we come to this whole issue of government retribution, *which is what I think the case turns on*. . . . And as to that, . . . I really do expect the government . . . *I expect every contemporaneous document that exists up and down the chain of command within the government bureaucracy that bears on that* . . . .
> May 6 Tr. at 17:19–18:2 (emphasis added).
>
> I'm asking the plaintiffs—I'm expecting a limited focus on retribution. If the plaintiffs make that limited focus on retribution, *then I expect the government to be absolutely fulsome in its disclosure of contemporaneous documents*.
> May 6 Tr. at 18:23–19:2 (emphasis added).

At the May 22 hearing, the Court said:

> Fortunately I have the . . . interrogatories and requests for . . . production and I've reviewed them. . . . [I]t is open to the defense to . . . interpose written objections, *but I will say in general the discovery requests are not inappropriate*, but as [to the] "targeted noncitizens[,]" . . . [t]he Court orders that you get 5 of these, not the number you want, but only 5. In other respects, it appears that . . . *these requests are in order*, and while the Court must rule on any objections that there may be . . . I will decide the motion for a protective order before answers and production is due. But to the extent I deny the motion . . . , *I expect full production* and timely, I don't expect to give extensions of these discovery requests."
> May 22 Tr. at 7:15–8:8 (emphasis added).
>
> But everything I said in the case-management conference governs. *I expect full compliance and fulsome discovery* of all these matters.
> May 22 Tr. at 9:20–22 (emphasis added).

And last week, at the June 2 hearing, the Court said:

> [T]he government's motion . . . is denied, and the case will proceed to trial *allowing the discovery, which I have allowed*, and maintaining the trial date that we have.
> June 2 Tr. at 28:3–6 (emphasis added).
>
> I think, given the nature of the case, there must be extra-record discovery and I authorized it. Limited. . . . *But within the limitations, and I'm repeating myself, I expect fulsome discovery and cooperation*.
> June 2 Tr. at 35:12–16 (emphasis added).

Contrary to the Court's guidance, Defendants have not made genuine efforts to provide fulsome discovery—they have provided only a meager administrative record and have not even served written objections to Plaintiffs' discovery requests.[2] Instead, their strategy appears to be to make repeated motions instead of complying with the discovery process. Their latest motion does nothing more than list "examples" of requests they claim "violate the Court's narrowly contoured discovery orders." Mot. at 5–6. That does not even amount to a boilerplate objection. *Cf. Brown v. Wal-Mart Assocs., Inc.*, 616 F. Supp. 3d 137, 141–42 (D. Mass. 2022) (admonishing defendant for "irrelevant, boilerplate objections . . . indicative of stonewalling tactics that only frustrate the processes of discovery and litigation," and advising defendant "to cease such evasive tactics and engage meaningfully and truthfully with Plaintiff to complete discovery").

Defendants now ask the Court to preclude discovery of "documents and communications relating to the [f]ive [targeted noncitizens] that have not been produced by the Government in the ongoing Federal judicial proceedings relating to those aliens." Mot. at 7. Those cases have not

---

[2] On the same day that the government filed the administrative record under provisional seal, counsel for Plaintiffs informed the government that several of the documents referenced in the administrative record were missing from the administrative record. In particular, Defendants did not include the various documents that were explicitly cited as attachments to those produced. *See, e.g.*, AAUP CAR 19, 27, 42, 45. *See* Wilkens Decl. ¶ 3. At the parties' meet and confer on June 3, the government still equivocated on whether it would be producing those documents, *see id.* ¶ 5— documents which plainly should have been included even on the government's narrow view of the relevant record, since the administrative record is meant to comprise "all documents and materials directly or indirectly considered by agency decision-makers[.]" *City of Waltham v. U.S. Postal Serv.*, 786 F. Supp. 105, 116 (D. Mass. 1992), *aff'd*, 11 F.3d 235 (1st Cir. 1993).

proceeded to discovery, and it is unclear why Plaintiffs' discovery in this case should be limited to documents the government deemed it in their interest to produce in those cases—particularly since this case is not focused narrowly on whether the government retaliated against the five targeted noncitizens. *See* June 2 Tr. at 8:15–18. Defendants' sole authority for this request is a *forum non conveniens* case involving the "first to file" rule. Mot. at 2, 8 (citing *Merle Norman Cosms. v. Martin*, 705 F. Supp. 296, 298 (E.D. La. 1988)). Defendants make no effort to explain why the discovery the Court has authorized in this case risks "inconsistent rulings between courts of coordinate jurisdiction and equal power, wasteful duplicative litigation and piecemeal resolution of disputes[.]" Mot. at 2 (quoting *Merle*, 705 F. Supp. at 298). Plainly, and as the Court has recognized, this case is not about relitigating those individual cases. Rather, it is about whether Defendants' policy of ideological deportation—which is evidenced through the public statements of government officials and the adverse actions taken against the targeted noncitizens—violates the First Amendment. *See* May 6 Tr. at 17:19–18:22. The narrow discovery Plaintiffs seek is appropriate and limited to that issue, as this Court has already indicated. And, as noted above, the relief Defendants seek would prevent discovery into matters this Court has expressly asked about, such as the government's operational plans for arresting certain of the targeted noncitizens, including Ms. Öztürk and Mr. Mahdawi. *See* May 6 Tr. at 20:15–23; June 2 Tr. at 32:3–33:4.

II. **The Court should deny Defendants' motion insofar as it seeks to use the deliberative process privilege to block discovery into decisions that are central to Plaintiffs' claims.**

Defendants' motion also rests on a view of the deliberative process privilege that is unsupported by precedent. To be sure, agency deliberations that meet certain threshold criteria are presumptively protected from disclosure by the deliberative process privilege. *See, e.g., Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 884–85 (1st Cir. 1995). But the privilege is qualified, not absolute, and is subject to a reviewing court's balancing of competing interests

6

and *in camera* review of the documents at issue. *See id*. More fundamentally, the privilege does *not* apply to discovery into a decision-making process where that process is *itself* the subject of the suit. Although Plaintiffs raised this argument with Defendants and provided authority for it, *see* Wilkens Decl. ¶ 6 & Ex. A. Defendants do not even mention, much less address, it in their motion. Instead, they rest entirely on the assertion that the Court has already decided this issue in their favor. Mot. at 5, 7. That is not so. The Court has made clear that it does not "give advisory opinions," June 2 Tr. at 34:20, and the applicability of the deliberative process privilege has not been put squarely before the Court in a motion until now.

It is well-settled that the deliberative process privilege shields from disclosure information "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). As this Court has explained, the privilege is "grounded on the proposition 'that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl.'" *Gen. Elec. Co. v. E.P.A.*, 18 F. Supp. 2d 138, 140 (D. Mass. 1998) (quoting *Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)). The privilege thus "distinguishes between predecisional, deliberative [material], which [is] exempt from disclosure, and [material] reflecting a final agency decision and the reasons supporting it, which [is] not." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021).

To successfully invoke the privilege, the "government must show that the material sought to be withheld is both 'predecisional' and 'deliberative.'" *Mass. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 727 F.Supp. 35, 43 (D. Mass. 1989) (quoting *Wolfe*, 839 F.2d at 774). Information is "predecisional" if it was "generated before the agency's final decision on the

matter," and is "deliberative" if it was "prepared to help the agency formulate its position." *Sierra Club*, 592 U.S. at 268. Because the privilege is "restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded." *Texaco*, 60 F.3d at 884–85.

The deliberative process privilege, like the law enforcement privilege, is "qualified," not "absolute," and thus, once properly invoked, is subject to a court's "discretionary" balancing of competing interests. *Id.*; *see also Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984) (explaining that the privileges "are essentially similar in their underlying rationales and principles of application," that "[t]hey are qualified rather than absolute," and that "a trial court is thus obliged to balance conflicting interests on a case-by-case basis in ruling on particular claims of privilege"). Once the party seeking disclosure makes a "threshold showing of need, amounting to more than mere speculation," *in camera* review is warranted. *Hall*, 734 F.2d at 66 (cleaned up). The First Circuit has emphasized that

> [t]he scope of a privilege is limited by its underlying purpose, and should not be applied where that purpose would not be served. Thus, where it is possible for a court to make the innocuous portions of documents containing privileged information available, by excising the privileged sections, by editing or summarizing the documents, or by permitting discovery subject to a protective order, this may be an adequate accommodation of the moving party's interest in disclosure.

*Id.* (internal citations omitted). In exercising its "discretion" in balancing the parties' interests, "an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Texaco*, 60 F.3d at 885.

In this case, however, the Court has "no need to engage in the balancing test applied in deliberative process privilege cases," because where, as here, the government's intent is directly at issue, "the privilege does not enter the picture at all." *In re Subpoena Duces Tecum*, 145 F.3d at 1425. As the D.C. Circuit explained:

> The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. . . . [I]f either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur.

*Id.* at 1424 (internal citations omitted) (emphasis in original). Numerous courts within the First Circuit and across the country agree. *See, e.g., Williams*, 213 F.R.D. at 102; *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004); *Dorce v. City of New York*, No. 19-cv-2216, 2023 WL 7545345, at *4 (S.D.N.Y. Nov. 14, 2023) (collecting cases); *Est. of LeRoux v. Montgomery Cnty., Md.*, No. 8:22-cv-00856, 2024 WL 1703939, at *4 (D. Md. Apr. 19, 2024) (collecting cases); *Gudkovich v. City of Chicago*, No. 17-cv-8714, 2022 WL 252716, at *9 (N.D. Ill. Jan. 27, 2022) (collecting cases).

Although the First Circuit has not directly addressed this issue, it has made clear, as noted above, that the privilege should not be applied where its purpose would not be served. *Hall*, 734 F.2d at 66. Furthermore, the First Circuit has observed in an analogous context that "where the [material] sought may shed light on alleged government malfeasance, the [deliberative process] privilege is routinely denied," because "the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process." *Texaco*, 60 F.3d at 885 (cleaned up).

9

Particularly noteworthy here is *Montrevil v. Decker*, a case in which a habeas petitioner sued ICE officials for allegedly arresting and deporting him in retaliation for his First Amendment protected activities—speaking at protests against U.S. immigration policy. No. 20-264, 2021 WL 11690690, at *1–2 (E.D.N.Y. July 19, 2021). The court held that "[t]o the extent petitioner seeks information that speaks to the government's reasons for and actions taken in connection with his removal from the United States, respondents may not shield this information from disclosure by the deliberative process privilege." *Id.* at *5. The government's "decision-making process about petitioner's case and his removal," the court reasoned, "are central to petitioner's claims." *Id.*; *see also id.* ("respondents' motivation to remove petitioner . . . is the crux of petitioner's claim"). As a result, the court ordered the government to produce unredacted versions of emails between ICE officials regarding petitioner's removal. *Id.*

Similarly here, Defendants' intent and decision-making process in revoking the visas and green cards of noncitizen students and faculty members, and in arresting, detaining, and deporting them, are clearly relevant to Plaintiffs' claims. *See Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (discussing centrality of "retaliatory motive" to establishing First Amendment retaliation); *NRA v. Vullo*, 602 U.S. 175, 180 (2024) ("[A] government entity's 'threat of invoking legal sanctions and other means of coercion' against a party 'to achieve the suppression' of disfavored speech violates the First Amendment." (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)); *see also* ECF No. 73 at 59 n.9 (noting that "some showing of intent on the part of government officials" may be relevant to Plaintiffs' challenge to Defendants' policy or practice of ideological deportation (quoting *McGuire v. Reilly*, 386 F.3d 45, 63 (1st Cir. 2004)). Indeed, this Court observed as much at the May 6 case management conference, noting that "government retribution for speech" is what this case "turns on." May 6 Tr. 9:13–16, 17:19–20. Moreover, Defendants have put these issues

squarely in play: in a sworn declaration submitted to this Court, John Armstrong, a State Department official Plaintiffs will depose this week, made clear the importance of the agencies' deliberations. He stated that "[n]o ideological deportation policy *has been developed* or implemented by the Bureau of Consular Affairs or the Visa Office." ECF No. 65-1 at 4 (emphasis added). Plaintiffs are entitled to test that assertion through document demands and questions at Armstrong's deposition.

Even if the deliberative process privilege applies to some of the documents in this case, in the circumstances presented here the privilege is easily overcome. Preventing the disclosure of agency deliberations concerning the arrest, detention, and removal of noncitizen students and faculty members based on their speech would not serve the purpose of the deliberative process privilege. To the contrary, given the First Amendment rights at stake, disclosure would serve the "public's interest in honest, effective government." *Texaco*, 60 F.3d at 885. Indeed, it is difficult to imagine a case in which the balancing of interests would weigh more decisively in favor of disclosure.

In light of the foregoing, Defendants' request that the Court preclude all discovery of pre-decisional, deliberative materials is without merit. Defendants even go so far as to request that the Court quash discovery into the government's deliberative discussions "with outside entities." Mot. at 7. But, of course, the deliberative process privilege is "waived under certain circumstances if the documents have been disclosed to a third party that is not an agency." *Gen. Elec.*, 18 F. Supp. 2d at 141–42. Thus, the breadth of Defendants' invocation of the privilege make clear their aim to use it improperly to block all discovery beyond the scant administrative record they have already produced.

Accordingly, the Court should deny Defendants' motion in its entirety, and should make clear that the deliberative process privilege does not apply to the discovery Plaintiffs seek and does not permit Defendants to withhold written discovery or instruct witnesses not to answer questions about the agency deliberations that culminated in the decisions at issue in this case. Those deliberations are central to Plaintiffs' First Amendment claims and thus are not shielded from discovery by the deliberative process privilege. And, in any event, the balancing of the factors favors disclosure. That Defendants state that they are gathering and will submit to the Court for *in camera* review documents withheld on the basis of the deliberative process and law enforcement privileges, Mot. at 3, is not a substitute for the fulsome discovery this Court has already deemed appropriate based on the nature of Plaintiffs' claims.

Given that Defendants filed the instant motion even though they have not served written objections to Plaintiffs' discovery requests, have engaged in a pattern of motion practice meant to stymie and delay discovery, and have failed even to acknowledge, let alone comply with, their obligation to provide fulsome discovery, the Court should preclude Defendants from lodging written objections to Plaintiffs' requests and order Defendants to file weekly status reports detailing the actions they have taken to comply with the Court's directions to provide Plaintiffs with fulsome discovery.

June 9, 2025                                     Respectfully submitted,

                                                 /s/ Scott Wilkens
Edwina Clarke (BBO 699702)                       Scott Wilkens
David Zimmer (BBO 692715)                        Ramya Krishnan
Zimmer, Citron & Clarke, LLP                     Carrie DeCell
130 Bishop Allen Drive                           Xiangnong Wang
Cambridge, MA 02139                              Talya Nevins
(617) 676-9423                                   Jackson Busch
edwina@zimmercitronclarke.com                    Alex Abdo

Noam Biale
Michael Tremonte
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

*Counsel for Plaintiffs*