# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., <br><br> Defendants. | Civil Action No. 1:25-cv-10685-WGY |

## DEFENDANTS' ASSENTED-TO MOTION FOR ATTORNEY EYES ONLY PROTECTIVE ORDER

Defendants respectfully request a protective order allowing certain personally identifiable information ("PII"), including but not limited to identities, to be designated attorneys' eyes only ("AEO"), thereby restricting its disclosure to counsel for the parties and counsel's staff, the Court and its staff, and videographers and court reporters who have read the order and signed an "Acknowledgment and Agreement to Be Bound."  Specifically, Defendants seek to use this designation to protect the PII, including but not limited to the identities, of agents and employees of the Department of Homeland Security ("DHS") with knowledge of and/or involvement in the arrest plans for the identified allegedly "targeted noncitizens."  On June 16, 2025, Plaintiffs' counsel indicated by email that they consent to this request.

This Court has the legal authority to enter such an order.  Rule 26(c) provides that a party may seek a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding inquiry into certain matters, limiting the scope of disclosure or discovery to certain matters" or by requiring certain confidential information "not be revealed or be revealed only in a specified way."  In considering such requests, the Court considers whether the request for protection "warrant[s] conferral of any special consideration," including the injury that disclosure portends, and "the type and kind of protection the law affords."  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714, 716 (1st Cir. 1998).  Within the context of a protective order, the party moving for AEO disclosure "has the initial burden to describe the alleged harm it will suffer from any disclosure with a particular and specific demonstration of fact."  *Does 1-6 v. Mills*, --- F. Supp. 3d ---, 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021).  AEO disclosure is appropriate in limited circumstances, including where significant security concerns are present.  *See, e.g.*, *Reese v. Liberty*, --- F. Supp. 3d ---, 2019 WL 5549219, at *3 (D. Me. Oct. 25, 2019) (observing that "courts have approved attorneys' eyes

1

only designations as a means of balancing prison security concerns against an inmate's right of access to relevant discovery").

Defendants meet the standard here. First, release of the PII would compromise the personal safety of DHS agents and employees, as well as that of their families and friends. DHS has reported a 413% increase in assaults against its enforcement officers in the last calendar year. Marni Rose McFall, *Public Database of ICE Agents' Personal Details Sparks Backlash*, NEWSWEEK (June 11, 2025);[1] DHS, *DHS Releases Statement on Violent Rioters Assaulting ICE Officers in Los Angeles, CA and Calls on Democrat Politicians to Tone Down Dangerous Rhetoric About ICE* (June 7, 2025) ("*DHS Statement on Violet Rioters*");[2] DHS, *DHS Debunks Fake News Narratives About Law Enforcement During Police Week* (May 16, 2025);[3] Maria Papadopoulos, *Assaults against ICE officers up 400 percent since last year, ICE director says* (May 20, 2025).[4] As well, DHS has reported that its agents have been doxxed—that is, their private or personally identifying information was exposed publicly without their consent—and agents, as well as their family members, have also been targeted and threatened. *DHS Statement on Violent Rioters*; Maria Papadopoulos, *ICE agents 'doxed' on social media, wear masks after receiving death threats, director says* (June 2, 2025);[5] *see* H.R. Res. 1048, 115th Cong. (2018)

---

[1] https://www.newsweek.com/ice-agents-personal-details-database-los-angeles-protests-deportation-2083277.
[2] https://www.dhs.gov/news/2025/06/07/dhs-releases-statement-violent-rioters-assaulting-ice-officers-los-angeles-ca-and#:~:text=Our%20ICE%20enforcement%20officers%20are,doxed%20and%20targeted%20as%20well.
[3] https://www.dhs.gov/news/2025/05/16/dhs-debunks-fake-news-narratives-about-law-enforcement-during-police-week.
[4] https://www.boston25news.com/news/local/assaults-against-ice-officers-up-400-percent-since-last-year-ice-director-says/RN74A7UCYJAQTLYN5PWUZACG74/.
[5] https://www.boston25news.com/news/local/ice-agents-doxed-social-media-wear-masks-after-receiving-death-threats-director-says/2NIC6OZ6XRGMXDRYLWLIKJ66GU/.

(opposing and condemning the harassment and other threatening behavior aimed at DHS employees and summarizing the "doxxing and violent threats after…social media profiles, phone numbers, and home addresses were posted on the internet"); Alysha Palumbo, Marc Fortier & Kaitlin Flanigan, *Cambridge Man Accused of Threatening ICE Agents, Police, US Sen. John McCain*, NCEN (Aug. 9, 2018) (reporting that a person was arrested after posting on social media that he would "give $500 to anyone who kills an ICE agent," among other threatening posts).[6]

In fact, the circumstances and threats against federal law enforcement officials, including DHS agents and employees, have become so dire that they have captured the attention of Congress, with Senator Blackburn recently introducing a bill to criminalize doxxing of federal law enforcement agents.  Protecting Law Enforcement from Doxxing Act, S. 1952, 119th Congress (2025) (introduced in the Senate and referred to the Committee on the Judiciary on June 4, 2025); *Blackburn Introduces Legislation to Protect Federal Law Enforcement Officers from Doxxing*, Marsha Blackburn, U.S. Senator for Tennessee (June 4, 2025);[7] Austin Honrbostel, *Sen. Marsha Blackburn introduces bill making it illegal to 'dox' federal law enforcement*, THE TENNESSEAN (June 5, 2025).[8]  The Protecting Law Enforcement from Doxxing Act would, upon a finding of guilt, impose a fine or a sentence of imprisonment of up to five years, underlining the substantial concern created by the revelation of the identities of law and immigration enforcement officials.  S. 1952 at § 2(a)(2).

---

[6] https://www.ncen.com/news/new-england/Massachusetts-Man-Federal-Threat-Charge-Arrest-Authorities-490458851.html.
[7] https://www.blackburn.senate.gov/2025/6/immigration/national%20security/blackburn-introduces-legislation-to-protect-federal-law-enforcement-officers-from-doxxing.
[8] https://www.tennessean.com/story/news/local/davidson/2025/06/05/blackburn-bill-criminalizing-doxxing-federal-law-enforcement-oconnell-ice/84048878007/.

In sum, protecting the safety and security of DHS agents and/or employees, as well as that of their families and friends, is a legitimate and compelling reason for the grant of a protective order designating the PII of DHS agents and/or employees involved in particular cases as AEO. *Accord Collens v. City of N.Y.*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) ("[P]olice officers play a significant role in law enforcement that may subject them [to] danger, and they have a justifiable fear that disclosing their home addresses could jeopardize their safety.")

Second, release of the PII would compromise and obstruct the operational security of ongoing immigration enforcement and removal operations. Any agents and employees that DHS identifies as responsive to Plaintiffs' interrogatories are involved in ongoing immigration enforcement and removal operations beyond the arrests of the identified allegedly "targeted noncitizens." Release of their PII, including but not limited to their identities, may require the DHS to take drastic responsive action to protect its agents and employees, as well as their families and friends, from harm in the ongoing operations, including but not limited to reallocation of personnel and resources and changes to action and arrest plans for ongoing investigations. Protecting the operational security and integrity of ongoing immigration enforcement and removal operations is a legitimate and compelling reason for the grant of a protective order designating the PII, including but not limited to identities, as AEO. *Accord In re Micro Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 10 (D.D.C. 2010) (the law-enforcement privilege is "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement"); *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988) ("the purpose of [the law-enforcement] privilege is to…protect witnesses and law enforcement personnel [and] to safeguard the privacy of individuals involved in an investigation….").

Finally, Defendants' request for a protective order is proper and not overly burdensome on Plaintiffs. The AEO designation would not prevent Plaintiffs' counsel from accessing PII nor would it prevent the relevant DHS agents and/or employees from being deposed or providing relevant testimony at trial. Defendants' request is based on the need to protect the safety of DHS agents and/or employees, as well as their families and friends, and prevent compromise and obstruction of operational security—especially in light of the substantial increase in assaults and threats against and doxxing of DHS agents and/or employees and their families. Plaintiffs have no comparable compelling need to obtain the PII in order to participate meaningfully in their case, which notably does not include the identified allegedly "targeted noncitizens" as plaintiffs. *See Reese*, 2019 WL 5549219, at *5 (considering the balance of the parties' interests, observing the strong interest in protecting "sensitive information that could be used to thwart corrections officers' efforts to maintain security at the Prison and/or pose a risk to officer safety" and the comparatively weak interest of the plaintiff, as opposed to plaintiff's counsel, in viewing the information).

In sum, Defendants have provided substantial justification of their strong interest in the designation of such PII as AEO. Accordingly, the Court should grant Defendants' motion for a protective order and designate the PII, including but not limited to identities, of identified DHS agents and/or employees that have knowledge of or involvement in the arrest plans for the identified allegedly "targeted noncitizens" as AEO.

//

//

//

//

Respectfully Submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

LEAH B. FOLEY
*United States Attorney*

SHAWNA YEN
*Assistant United States Attorney*
*District of Massachusetts*

WILLIAM KANELLIS

<u>/s/ Ethan B. Kanter</u>
ETHAN B. KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*
*P.O. Box 878, Ben Franklin Station*
*Washington, D.C. 20001*

*Counsel for Defendants*

*Dated: June 16, 2025*

6

## MEET AND CONFER CERTIFICATION

In accordance with Local Rules 7.1(2), on June 16, 2025, Government counsel conferred with Plaintiffs' counsel by email with regard to this motion.  Counsel for Plaintiffs indicated that they consent to the Government's request.

*/s/ Ethan B. Kanter*
ETHAN B. KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*
*P.O. Box 878, Ben Franklin Station*
*Washington, D.C. 20001*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I electronically filed the foregoing via the CM/ECF system for the United States District Court for the District of Massachusetts, in accordance with Local Rule 5.2. I further certify that counsel for all parties are registered with the Court's CM/ECF system and service will be accomplished by that system.

*/s/ Ethan B. Kanter*
ETHAN B. KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*
*P.O. Box 878, Ben Franklin Station*
*Washington, D.C. 20001*