### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF UNIVERSITY
PROFESSORS, ET AL.,

                    Plaintiffs,

      v.

MARCO RUBIO, ET AL.,

                  Defendants.

Case No. 1:25-cv-10685 (WGY)

## PLAINTIFFS' MOTION TO COMPEL COMPLETE ANSWERS TO PLAINTIFFS' INTERROGATORIES, PRODUCTION OF DOCUMENTS, AND DISCLOSURE OF INFORMATION IMPROPERLY WITHHELD AS PRIVILEGED

With only two weeks left before trial, Defendants have produced a total of 25 documents to Plaintiffs, some heavily redacted; they have omitted many documents from their productions that should have been included; they have provided grossly inadequate answers to Plaintiffs' interrogatories more than ten days past the deadline provided in the Federal Rules; and they have improperly withheld highly relevant documents and answers to interrogatories and have instructed their witnesses not to answer crucial questions at depositions based on overbroad and improper assertions of privilege. In short, Defendants are blocking discovery at every turn, despite this Court's expectation that Defendants produce "every contemporaneous document that exists up and down the chain of command" bearing on retribution. May 6, 2025 Tr. 17:19–18:2.

Accordingly, pursuant to Rules 30, 33, 34, and 37 of the Federal Rules of Civil Procedure and Rules 33.1, 34.1, and 37.1 of the Local Rules, Plaintiffs move to compel (1) the production of documents that Plaintiffs have identified as missing from Defendants' productions, (2) complete answers to Plaintiffs' interrogatories, with all objections deemed waived due to Defendants'

untimely and deficient responses, which have caused substantial prejudice to Plaintiffs, (3) the production of documents improperly withheld as privileged, and (4) the reappearance of John Armstrong, a State Department official who was previously deposed, for a continued deposition on questions that he was instructed not to answer based on improper assertions of privilege. The Court's guidance is urgently needed in advance of additional depositions of government witnesses this week and the week before trial.

## I.    Defendants should be compelled to produce highly relevant documents that are missing from their productions.

From the outset of this case, the Court has made clear that it expects Plaintiffs to "focus [discovery] on retribution," and that it expects "the government to be absolutely fulsome in its disclosure of contemporaneous documents." May 6, 2025 Tr. 18:23–19:2. Plaintiffs heeded this guidance and served narrow discovery requests on May 13, 2025. *See* Declaration of Scott Wilkens ("Wilkens Decl."), attached hereto as **Exhibit A**, Exs. 1 & 2. The Court deemed these requests "in order" after limiting the number of targeted noncitizens from nine to five. May 22, 2025 Tr. at 7:15–8:8; *see also id.* (describing the Court's review of Plaintiffs' discovery requests and determining that they were "not inappropriate").

Contrary to the Court's guidance, however, Defendants have not made genuine efforts to provide fulsome discovery. They assert that they have "operated with deliberate speed" in responding to Plaintiffs' document requests, which "has required a review across Federal agencies of thousands of records to find responsive materials, then filtering those materials through multiple levels of agency review to redact for multiple privileges." ECF No. 136, at 2. Plaintiffs do not doubt the diligent efforts of Defendants' counsel. Yet to date, Defendants have produced a meager *25 documents*, many of which are heavily redacted based on assertions of the law enforcement privilege. Wilkens Decl. ¶¶ 4, 6, 9. Defendants have submitted only *15 additional documents* to

the Court for *in camera* review based on assertions of the deliberative process privilege, presidential communications privilege, and law enforcement privilege. *Id.* ¶ 5; ECF No. 131.[1]

Defendants produced documents on May 29, 2025 as part of the certified administrative record (CAR). Wilkens Decl. ¶ 4. Defendants produced additional documents on June 13 in response to Plaintiffs' document requests. *Id.* ¶ 6. Two days later, Plaintiffs wrote to Defendants and identified numerous documents missing from Defendants' productions, some of which are referenced in the documents Defendants already produced (and should have been turned over with those documents) and some of which Plaintiffs only learned of during the depositions of Andre Watson, a Department of Homeland Security official, and Mr. Armstrong on June 11 and 12, respectively. *Id.* ¶ 7 & Ex. 3. Plaintiffs requested that Defendants produce the missing documents by June 17, but Defendants failed to do so. *Id.* Ex. 3. After Plaintiffs followed up on this request, Defendants' counsel stated on June 18 that they were "still running down most of the documents on [Plaintiffs'] list," but did not give an indication of how long it would take them. *Id.* Ex. 4, at 1. Plaintiffs are forced to move to compel the production of the missing documents given the upcoming depositions, the shortness of time until trial, and Defendants' prior discovery delays.

The Court should order Defendants to produce the missing documents identified in **Exhibit B**, which is the same as the list Plaintiffs sent to Defendants on June 16, except that several documents have been removed from the list.[2] The documents identified in Exhibit B are responsive

---

[1] Notably, Defendants have not produced a single email to Plaintiffs, and it does not appear that any of the documents submitted to the Court for *in camera* review are emails. That alone raises serious concerns about the adequacy of Defendants' document productions.

[2] Defendants informed Plaintiffs that two documents on the June 16 list were among those submitted to the Court for *in camera* review, and that one document on the list was produced to Plaintiffs on June 13, 2025. Wilkens Decl. Ex. 4, at 1. Accordingly, those documents are not listed as missing in Exhibit B.

to Plaintiffs' document requests and are highly relevant to Plaintiffs' claims. *See, e.g., Close v. Account Resolution Servs.*, 557 F. Supp. 3d 247, 250 (D. Mass. 2021) (the party moving to compel discovery responses "bears the initial burden of showing that the discovery requested is relevant," and once the moving party does so, the opposing party "bears the burden of showing that a discovery request is improper" (cleaned up)). Exhibit B identifies several categories of missing documents that are responsive to RFPs 1-2, which seek records relating to the "planning, execution and implementation" of the government's decisions to target five noncitizens, and records "requesting or recommending the taking of, and memorializing, explaining, or justifying" these decisions. Exhibit B; Wilkens Decl. Ex. 1, at 6. These categories of missing documents include:



---

[3] "A Security Advisory Opinion (commonly referred to as an 'SAO') is a U.S. Government mechanism to coordinate third-agency checks on visa applicants about whom the State Department have security-related concerns. Applicants identified for an SAO require in-depth review by multiple federal agencies." DHS, *Privacy Impact Assessment for the Visa Security Program Tracking System* (Aug. 27, 2009), https://perma.cc/6MVB-VBJV.

Exhibit B. Each of these categories of documents is directly relevant the ideological-deportation policy's existence and implementation, the government's retributive motive, and its intent to chill the speech of other noncitizen students and faculty.

Exhibit B also identifies numerous missing documents that are responsive to RFP 5, which seeks communications, memoranda, and other documents concerning the government's social media surveillance of noncitizens for "pro-Palestinian, anti-Semitic, anti-Zionist, pro-terrorist, pro-Hamas, pro-Jihadist, or anti-Israel speech." Exhibit B; Wilkens Decl. Ex. 1, at 8–9. Defendants object that these terms are "vague and ambiguous," Wilkens Decl. Ex. 2, at 20, but Defendants use those terms in documents they have produced, and the objection only underscores the First Amendment violations at issue.[4] The missing documents Plaintiffs have specifically identified include State Department cables, nonpublic Foreign Affairs Manual and Foreign Affairs Handbook provisions, and State Department policy materials, guidance, or instructions related to this social media surveilance. *See* Exhibit B.

Finally, Exhibit B identifies a category of documents that Plaintiffs expressly asked for in RFP 6(b): communications from the State Department to specific colleges and universities "directing them to report international students for participating in 'proscribed antisemitic actions,' 'terrorist activity,' or 'endorsing or espousing terrorism,'" as reported in news media. Exhibit B; Wilkens Decl. Ex. 1, at 9. These communications are highly relevant because they, too, would provide evidence of the ideological deportation policy and the government's intent.

---

[4] Defendants object to the request on the grounds that it "does not identify the persons/parties who allegedly directed" the surveillance, Wilkens Decl. Ex. 2, at 20, but that is Defendants' obligation, not Plaintiffs', and underscores Defendants' failure to identify relevant individuals in response to Plaintiffs' interrogatories in a timely manner. *See infra* Part II.

## II.    Defendants Should Be Compelled to Provide Complete Answers to Plaintiffs' Interrogatories, With All Objections Deemed Waived.

Plaintiffs served Defendants with their First Set of Interrogatories on May 13, 2025, and, as noted above, the Court deemed them "in order." *See supra* Part I. Given the short discovery period and Plaintiffs' need to identify relevant government officials in order to notice depositions, Plaintiffs repeatedly urged Defendants to respond in advance of the 30-day deadline set forth in Fed. R. Civ. P. 30(b)(2). Wilkens Decl. ¶ 11. Rather than provide that information on an expedited basis, however, Defendants did not answer Plaintiffs' interrogatories until June 22, 2025, *40 days* after the interrogatories were served, and did not ask Plaintiffs or the Court for an extension. *Id.* ¶ 12 & Ex. 10. And even then, Defendants provided deficient responses.

With respect to Interrogatories 1–3, which seek the identification of relevant government officials, Defendants failed to identify *any State Department officials,* not even Secretary Rubio, and also failed to identify numerous DHS officials Plaintiffs asked Andre Watson to identify in his deposition, but whose names he could not recall. *Id* ¶ 14. Defendants refused to answer Interrogatories 4–5, which ask them to identify persons involved in communications between Defendants and specified colleges and universities concerning non-citizen students or faculty who engaged in pro-Palestinian or anti-Semitic speech, and persons involved in identifying non-citizen students or faculty members at the same colleges and universities who were targeted for visa revocation or other adverse actions based on their pro-Palestinian or anti-Semitic speech. Wilkens Decl. ¶ 15 & Ex. 10 at 10–12. And Defendants provided very limited information in response to Interrogatories 6–10 and 12–14 based on assertions of the deliberative process and law enforcement privileges. Wilkens Decl. ¶ 15 & Ex. 10 at 12–23.

Defendants' failure to provide any information in response to Plaintiffs' interrogatories until two weeks before trial has prejudiced Plaintiffs' ability to prepare their case. Plaintiffs noticed

the depositions of Mr. Watson and Mr. Armstrong—the only relevant officials Plaintiffs knew about because they filed declarations in support of Defendants earlier in the case—and had to spend substantial portions of those depositions attempting to obtain the information sought by the interrogatories. And because the witnesses were relying on memory, they were unable to identify many officials about whom Plaintiffs asked.[5] Defendants' interrogatory responses do not rectify the situation, because they do not identify a single State Department official with relevant knowledge—not even Secretary Rubio—and fail to identify many Department of Homeland Security officials with relevant knowledge. They do not even include some of the individuls that Defendants' own declarants testified at their depositions have relevant knowledge. It is difficult to view these omissions as anything other than bad faith.

The Court should accordingly order Defendants to answer the interrogatories in full, deeming as waived Defendants' objections. Their failure to timely object to Plaintiffs' interrogatories is itself grounds to deem the objections waived. *See, e.g.,* Fed. R. Civ. P. 33(b)(4); L. R. 33.1(c)(1); *Katz v. Liberty Power Corp.*, Case No. 1:18-cv-10506, 2021 WL 3616073, at *1 (D. Mass. Mar. 29, 2021) (finding that objections to interrogatories based on attorney-client privilege and work product privilege were waived because "the objections were provided more than 30 days after service"). And although "a court can decline to deem late objections waived when '[the discovery] request far exceeds the bounds of fair discovery,'" *Katz*, 2021 WL 3616073, at *1 (quoting *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988)), that is decidedly not the case here, as the Court noted at the May 22 and June 2, 2025 hearings. May 22, 2025 Tr. 7:15–

---

[5] Defendants tout the fact that they made these "two high-level witnesses who plaintiffs noticed" available for depositions, ECF No. 136, at 2, but, as noted, Plaintiffs knew about the officials' relevance to this case only because they submitted declarations in support of Defendants' opposition to Plaintiffs' motion for a preliminary injunction. *See* ECF Nos. 65-1 & 65-2.

8:8; June 2, 2025 Tr. 28:3–6. Furthermore, although a showing of prejudice is not required, Plaintiffs have suffered prejudice as a result of Defendants' dilatory response, and accordingly are now two weeks out from trial with virtually none of the information the Court directed Defendants to produce.

**III.    Defendants Should Be Compelled to Disclose Information Improperly Withheld as Privileged.**

As noted above, Defendants have have withheld 15 documents in full and have heavily redacted several additional documents based on assertions of the deliberative process privilege, presidential communications privilege, and law enforcement privilege. And at the depositions of Mr. Watson and Mr. Armstrong on June 11 and 12, respectively, Defendants' counsel instructed the witnesses not to answer numerous questions based on assertions of these privileges. Wilkens Decl. ¶ 14 & Exs. 8, 9. And in their belated and deficient answers to Plaintiffs' interrogatories, Defendants asserted these privileges numerous times. Wilkens Decl. ¶ 15 & Ex. 10.

The withheld information is highly relevant to Plaintiffs' First Amendment claims. The 15 documents withheld in full and submitted to the Court for *in camera* review can be described as follows:

- One document, titled "Report on Department of State Authorities to Counter Anti-Semitism and Recommendations for Familiarizing Institutions of Higher Education with the Security and Related Grounds for Visa Inadmissibility," is being withheld under the deliberative process and presidential communications privileges.[6] ECF No. 131.

- Ten documents—"Department of Homeland Security documents that relate to specific individuals"—are being withheld as "law enforcement sensitive." *Id.* ███████ ███████████████████████████████████████████████████████████ █

---

[6] Defendants describe this document elsewhere as ███████████████████ ████████████████████████████████████████████████████



- Four documents—"Department of State documents that relate to specific individuals" —are being withheld under the deliberative process privilege. ECF No. 131. Three are "Action Memos for the Secretary" concerning "Removal" or "Determinations of Deportability" of specific individuals, and one is an "Action Memo for Senior Bureau Official John Armstrong" concerning a visa revocation. *Id.*

The four documents with heavy redactions, which apparently have not been submitted to the Court

for *in camera* review, *see* ECF No. 131, can be described as follows:



At the deposition of John Armstrong on June 12, 2025, Defendants' counsel instructed the

witness not to answer questions about the following topics, among others.





Similarly, in answering Plaintiffs' interrogatories, Defendants objected on grounds of the deliberative process privilege or law enforcement privilege to almost every interrogatory other than those asking Defendants to identify relevant government officials.[8] Wilkens Decl. Ex. 10 at 12–23 (responses to Interrogatories 6–10, 12–14). In answering four of these interrogatories, Defendants stated that they "will not provide . . . details about the" the documents they have withheld in their entirety that concern the Five Targeted Noncitizens:

---

[7] At the deposition of Andre Watson, Defendants' counsel similarly instructed the witness not to answer questions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs do not seek to redepose Mr. Watson at this time, because it appears that other Department of Homeland Security officials who have been noticed for depositions are likely to have more information on this topic than he does.

[8] The only exception is Interrogatory 11, which asks Defendants to state the basis for making a "silent" visa or green card revocation—i.e. failing to provide notice of the revocation—with respect to any of the Five Targeted Noncitizens. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Even if Defendants can show that the information described above qualifies for the asserted privilege, all three privileges at issue—the deliberative process privilege, the presidential communications privilege, and the law enforcement privilege—are qualified rather than absolute and thus are subject to the Court's balancing of interests to determine whether material should be disclosed. *See Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 884–85 (1st Cir. 1995) (deliberative process privilege); *Gulluni v. Levy*, 85 F.4th 76, 85 (1st Cir. 2023) (law enforcement privilege); *Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 885–86 (D.C. Cir. 2021) (presidential communications privilege). The balancing of interests clearly favors disclosure given the constitutional violations at issue, the central relevance of the withheld information, and the unavailability of the information from other sources.

**Deliberative process privilege.** The deliberative process privilege does not apply to the documents, deposition testimony, and interrogatory responses at issue for two reasons. First, the privilege does not apply where, as here, the government's decision-making process is the very subject matter of the suit. Second, even if it did apply, it is a qualified privilege, and the balance of interests here tips in favor of production.

The deliberative process privilege shields from disclosure information "'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 50 (1975)). As this Court has explained, the privilege is "grounded on the proposition 'that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl.'" *Gen. Elec. Co. v. E.P.A.*, 18 F. Supp. 2d 138, 140 (D. Mass. 1998) (quoting *Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)).

11

The deliberative process privilege thus "distinguishes between predecisional, deliberative [material], which [is] exempt from disclosure, and [material] reflecting a final agency decision and the reasons supporting it, which [is] not." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). The privilege does not shield "post-decisional documents explaining or justifying a decision already made," *Texaco*, 60 F.3d at 884–85, or "material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

Defendants bear the burden of showing that the withheld material is predecisional and deliberative. As an initial matter, it seems doubtful that the four documents being withheld in full—State Department "Action Memos" regarding the removal or deportability of five individuals—do not contain relevant, purely factual information that is segregable. *See* ECF No. 131, Exhibits L–O; Wilkens Decl. ¶ 5. For example, these documents presumably contain summaries of factual information regarding these individuals' participation in campus protests and engagement in pro-Palestinian, anti-Semitic, or pro-Hamas speech, if any. Such factual information is not protected by the deliberative process privilege and should be disclosed. The same is true with respect to Defendants' refusal to include in their answers to interrogatories any of the information contained in these Action Memos. Wilkens Decl. Ex.10 at 13, 15, 17, 18 (responses to Interrogatories 6, 7, 9, 10).

Even if Defendants meet their burden of showing that the withheld material is predecisional and deliberative, the deliberative process privilege does not bar the material's disclosure. First, the deliberative process privilege does not apply where, as here, the agencies' decision-making process is the very subject matter of the suit. *See, e.g., In re Subpoena Duces Tecum Served on*

12

*Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003); *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004). As the D.C. Circuit explained:

> The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. . . . [I]f either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur.

*In re Subpoena Duces Tecum*, 145 F.3d at 1424 (internal citations omitted) (emphasis in original).[9]

Particularly noteworthy here is *Montrevil v. Decker*, a case in which a habeas petitioner sued ICE officials for allegedly arresting and deporting him in retaliation for his First Amendment protected activities—speaking at protests against U.S. immigration policy. No. 20-264, 2021 WL 11690690, at *1–2 (E.D.N.Y. July 19, 2021). The court held that "[t]o the extent petitioner seeks information that speaks to the government's reasons for and actions taken in connection with his removal from the United States, respondents may not shield this information from disclosure by the deliberative process privilege." *Id.* at *5. The government's "decision-making process about petitioner's case and his removal," the court reasoned, "are central to petitioner's claims." *Id.*; *see also id.* ("respondents' motivation to remove petitioner . . . is the crux of petitioner's claim"). As a result, the court ordered the government to produce unredacted versions of emails between ICE officials regarding petitioner's removal. *Id.*

---

[9] *See also Dorce v. City of New York*, No. 19-cv-2216, 2023 WL 7545345, at *4 (S.D.N.Y. Nov. 14, 2023) (collecting cases); *Est. of LeRoux v. Montgomery Cnty., Md.*, No. 8:22-cv-00856, 2024 WL 1703939, at *4 (D. Md. Apr. 19, 2024) (collecting cases); *Gudkovich v. City of Chicago*, No. 17-cv-8714, 2022 WL 252716, at *9 (N.D. Ill. Jan. 27, 2022) (collecting cases).

Similarly here, Defendants' intent and decision-making process in revoking the visas and green cards of non-citizen students and faculty members, and in arresting, detaining, and deporting them, are clearly relevant to Plaintiffs' claims. *See Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (discussing centrality of "retaliatory motive" to establishing First Amendment retaliation); *NRA v. Vullo*, 602 U.S. 175, 180 (2024) ("[A] government entity's 'threat of invoking legal sanctions and other means of coercion' against a party 'to achieve the suppression' of disfavored speech violates the First Amendment." (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)); *see also* ECF No. 73 at 59 n.9 (noting that "some showing of intent on the part of government officials" may be relevant to Plaintiffs' challenge to Defendants' policy or practice of ideological deportation (quoting *McGuire v. Reilly*, 386 F.3d 45, 63 (1st Cir. 2004)). Indeed, this Court observed as much at the May 6 case management conference, noting that "government retribution for speech" is what this case "turns on." May 6 Tr. 9:13–16, 17:19–20. Moreover, Defendants have put these issues squarely in play: in a sworn declaration submitted to this Court, John Armstrong made clear the importance of the agencies' deliberations. He stated that "[n]o ideological deportation policy *has been developed* or implemented by the Bureau of Consular Affairs or the Visa Office." ECF No. 65-1 at 3–4 (emphasis added). Yet during his deposition, Defendants' counsel instructed Mr. Armstrong not to answer any questions about the development of such a policy based on the deliberative process privilege.

Second, even if the privilege is not categorically inapplicable in this case and instead requires a balancing of interests, that makes no difference to the outcome, because "[w]here the deliberative or decisionmaking process is the 'central issue' in the case, the need for the deliberative documents will outweigh the possibility that disclosure will inhibit future candid debate among agency decision-makers." *In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011)

(cleaned up); *see also Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 14 (E.D.N.Y. 2013) ("Both approaches tend to yield the same result."); *Montrevil*, 2021 WL 11690690, at *5. The Court should order the material to be disclosed based on a balancing of "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Texaco*, 60 F.3d at 885. Preventing the disclosure of agency deliberations concerning the arrest, detention, and removal of noncitizen students and faculty members based on their speech would not serve the purpose of the deliberative process privilege. To the contrary, given the First Amendment rights at stake, disclosure would serve the "public's interest in honest, effective government." *Id*. Indeed, it is difficult to imagine a case in which the balancing of interests would weigh more decisively in favor of disclosure.

   ***Presidential communications privilege.*** Defendants' assertions of the presidential communications privilege are also unavailing. The privilege is "limited to communications 'in performance of (a President's) responsibilities,' 'of his office,' and made 'in the process of shaping policies and making decisions.'" *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977) (quoting *United States v. Nixon*, 418 U.S. 683, 711 (1974)). "At core, the presidential communications privilege is rooted in the President's need for confidentiality in the communications of his office, in order to effectively and faithfully carry out his Article II duties and to protect the effectiveness of the executive decision-making process." *Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 885 (D.C. Cir. 2021) (cleaned up). Thus, the privilege "extends beyond communications made directly to the President to include communications solicited and received by the President's 'immediate White House advisers' or even certain members of their staffs, but 'should not extend to staff outside the White House in executive branch agencies." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1111 (D.C. Cir. 2004) (quoting *In re Sealed Case,* 121 F.3d at 744). The

presidential communications privilege should be construed as "narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected." *In re Sealed Case,* 121 F.3d at 752.[10]

Here, the presidential communications privilege does not apply for two reasons. First, Defendants have not followed the proper procedure for invoking it, which requires that the privilege "be claimed by the president or an official authorized to speak for the president." *Dellums v. Powell*, 561 F.2d 242, 248 (D.C. Cir. 1977); *Dairyland Power Co-op v. United States*, 79 Fed. Cl. 659, 669 (2007) (requiring White House to submit an affidavit formally invoking the privilege). Defendants have not done so here. Second, even if Defendants had properly invoked the privilege, it would be overcome because Plaintiffs have a substantial need for the information at issue, which is directly relevant to "the substantial violations of constitutional rights sought to be vindicated," and is not available elsewhere. *Dellums*, 561 F.2d at 249; *see also Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (the privilege "may give way in the face of other strong constitutional values" (cleaned up)). Testimony from Mr. Armstrong about ███████████████████ ████████████████████████████ is "directly relevant to issues that are expected to be central to the trial." *In re Sealed Case*, 121 F.3d at 754.

**Law enforcement privilege.** Defendants' assertions of the law enforcement privilege are also ineffective, for two independent reasons. First, much of the information Defendants seek to shield from disclosure does not fall within the scope of the privilege. Second, even as to information covered by the privilege, the balance of interests favors disclosure—even more so

---

[10] Unlike the deliberative process privilege, which covers "only pre-decisional and deliberative material, the presidential privilege covers documents in their entirety, including post-decisional and factual material within a record." *Protect Democracy*, 10 F.4th at 885–6 (cleaned up).

given that, as many courts recognize, the potential harms of disclosure of law enforcement sensitive information can be mitigated by a protective order.

The purpose of the law enforcement privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 63 (1st Cir. 2007). "An investigation need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed." *Walsh v. Tara Constr., Inc.*, No. 19-10369-LTS, 2021 WL 12094216, at *2 (Apr. 18, 2021) (cleaned up). If the government shows that the privilege applies by, for example, demonstrating that the information at issue constitutes "law enforcement techniques and procedures," the disclosure of which would "jeopardize future criminal investigations," then the court must "balance[e] the government's interest in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure. *Commonwealth of Puerto Rico*, 490 F.3d at 64. In balancing these interests, the court "must consider the effect of a protective order restricting disclosure to the plaintiff and the plaintiff's attorney, or to the plaintiff's attorney alone," which "can mitigate many if not all of the oft-alleged injuries to . . . law enforcement." *Floyd v. City of N.Y.*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010).

Defendants have asserted the law enforcement privilege to shield information about their reasons for arresting, detaining, and deporting the Five Targeted Noncitizens—but that information is not covered by the privilege. It would not, if disclosed, reveal law enforcement techniques or procedures or impair the ability of the Department of Homeland Security to conduct

future investigations. As noted above, in Mr. Armstrong's deposition, Defendants' counsel instructed him not to answer any questions about the basis for the State Department's determinations that the Five Targeted Noncitizens were deportable. The "ICE referral memos" and "HSI Profiles" regarding the Five Targeted Noncitizens, which Defendants have withheld in full, *see* ECF No. 131, Exs. B–K, also address the reasons why Defendants decided to arrest, detain, and deport the Five Targeted Noncitizens. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████     █████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████    The reasons why Defendants decided to arrest, detain, and deport the Five Targeted Noncitizens are not law enforcement sensitive—they would not reveal any law enforcement techniques or compromise future investigations. They accordingly should be released. Defendants also must answer the interrogatories that call for this information.

*Montrevil*, the case discussed above involving a noncitizen's First Amendment challenge to his deportation, again is instructive. In that case, the court distinguished between materials that "relate to law enforcement techniques and procedures, namely the logistics of a removal operation," which qualify for the law enforcement privilege, and materials that "relate to [ICE's] rationale for petitioner's removal," which do not. 2021 WL 11690690, at *8. The court also

concluded that "case summary information about petitioner's criminal and immigration history" did not qualify for the law enforcement privilege. *Id.* at *6–7. The same is true here.

Even if the information being withheld is covered by the law enforcement privilege, the balancing of interests strongly favors disclosure. As noted, information about Defendants' reasons for arresting, detaining, and deporting the Five Targeted Noncitizens is highly relevant to Plaintiffs' First Amendment claims. It is also unavailable from other sources. *See, e.g., Lunn v. Smith*, No. 17-10938, 2019 WL 569828, at *5 (D. Mass. Feb. 12, 2019) (holding that the plaintiff's need for information relevant to his constitutional claims outweighed ICE's interest in keeping confidential information used in executing orders of removal). And any potential harm to law enforcement interests can be mitigated by a protective order. *See Floyd*, 739 F. Supp. 2d at 381.

A balancing of interests should also result in the disclosure of the information Defendants have redacted from the State Department cables and webinar slides referenced above. One of these cables was leaked to the public, and a review of the redacted material from the leaked version shows that the State Department mandated the review of the social media accounts of student-visa applicants who were present in the U.S. on a student visa from October 7, 2023 to August 31, 2024. *Compare* Wilkens Decl. Ex. 6, *with id.* Ex. 7. That the State Department specifically identified this category of student visa applicants for social media vetting is relevant to Plaintiffs' claims and should be released, as should any other relevant information.

## CONCLUSION

For the foregoing resons, Plaintiffs respectfully request that the Court order Defendants to produce the identified documents it has failed to produce; to provide complete answers to Plaintiffs' interrogatories, with all objections deemed waived; and to produce in full the 19 documents identified above that are being withheld in whole or in part as privileged. Plaintiffs

further request that the Court order Defendants to make Mr. Armstrong available for a 4-hour deposition to answer questions on the topics identified above, including the discussions and deliberations of the interagency task force on the revocation of student visas. This Court should also instruct Defendants' counsel to refrain from similar invocations of privilege in upcoming depositions of Defendants' witnesses.

June 23, 2025                                    Respectfully submitted,

                                                 /s/ *Scott Wilkens*
                                                _____
Edwina Clarke (BBO 699702)                       Scott Wilkens
David Zimmer (BBO 692715)                        Ramya Krishnan
Zimmer, Citron & Clarke, LLP                     Carrie DeCell
130 Bishop Allen Drive                           Xiangnong Wang
Cambridge, MA 02139                              Talya Nevins
(617) 676-9423                                   Jackson Busch
edwina@zimmercitronclarke.com                    Alex Abdo
                                                 Jameel Jaffer
Noam Biale                                       Knight First Amendment Institute
Michael Tremonte                                   at Columbia University
Sher Tremonte LLP                                475 Riverside Drive, Suite 302
90 Broad Street, 23rd Floor                      New York, NY 10115
New York, New York 10004                         (646) 745-8500
(212) 202-2603                                   scott.wilkens@knightcolumbia.org
mtremonte@shertremonte.com
nbiale@shertremonte.com                          Ahilan T. Arulanantham (SBN 237841)
                                                 Professor from Practice
                                                 UCLA School of Law
                                                 385 Charles E. Young Dr. East
                                                 Los Angeles, CA 90095
                                                 (310) 825-1029
                                                 arulanantham@law.ucla.edu

                                                 *Counsel for Plaintiffs*

## MEET AND CONFER CERTIFICATION

In accordance with Local Rule 7.1(a)(2), Plaintiffs' counsel have met and conferred with counsel for Defendants with regard to the areas of dispute raised in this motion, and notwithstanding the various communications identified in the motion and accompanying declaration, were unable to resolve or narrow the issues.

June 23, 2025

/s/ *Scott Wilkens*
Scott Wilkens

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I filed Plaintiffs' Motion to Compel Complete Answers to Plaintiffs' Interrogatories, Production of Documents, and Disclosure of Information Improperly Withheld as Privileged, and that service will be accomplished by the CM/ECF system.

June 23, 2025                                           /s/ *Scott Wilkens*
                                                       Scott Wilkens

                                                       *Counsel for Plaintiffs*