# EXHIBIT 6



| | |
|---|---|
| **MRN:** | 25 STATE 26168 |
| **Date/DTG:** | Mar 25, 2025 / 251914Z MAR 25 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *Immediate* |
| **E.O:** | 13526 |
| **TAGS:** | CVIS, CMGT, PTER, KFRD |
| **Captions:** | SENSITIVE |
| **Reference:** | 25 STATE 5914 |
| **Subject:** | (U) Action Request:  Enhanced Screening and Social Media Vetting for Visa Applicants |

1. (U) This is an action request.  **See paragraph 7**.

2. **(SBU) SUMMARY:**  The protection of our nation and its citizens is a consular officer's first consideration.  Pursuant to the implementation of Executive Order (E.O.) 14161 and E.O. 14188, known respectively as *Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats* and *Additional Measures to Combat Anti-Semitism*, effective immediately, consular officers must refer certain student and exchange visitor (F, M, and J) visa applicants to the Fraud Prevention Unit (FPU) for a mandatory social media check as described below.  As the Secretary stated on March 16, "We don't want people in our country that are going to be committing crimes and undermining our national security or the public safety.  It's that simple.  Especially people that are here as guests.  That is what a visa is…It is a visitor into our country.  And if you violate the terms of your visitation, you are going to leave."  The Visa Office will host webinars for consular officers to discuss this guidance on April 3 and April 4, 2025.  **END SUMMARY.**

3. **(SBU) Consular Officers Play a Critical Role in Protecting National Security:**  As part of screening every case for potential ineligibilities, consular officers MUST ADDRESS any derogatory information indicating that a visa

applicant may be subject to the terrorism-related ineligibility grounds of the Immigration and Nationality Act (INA).  This includes advocating for, sympathizing with, or persuading others to endorse or espouse terrorist activities or support a DESIGNATED FOREIGN TERRORIST ORGANIZATION (FTO).

4. **(SBU) Every Visa Decision is a National Security Decision:**  In Ref A, the Visa Office directed consular officers to maintain extra vigilance and to comprehensively review and screen every visa applicant for potential security and non-security related ineligibilities including to assess whether the applicant poses a threat to U.S. national security.  Any nonimmigrant visa applicant who has not established to a consular officer's satisfaction that the applicant meets all standards required in that visa classification should be refused under 214(b), as appropriate.  This includes establishing that the applicant does not intend to engage in activities inconsistent with the requested visa status.  If 214(b) does not apply to the visa classification, consular officers should refuse any nonimmigrant or immigrant visa case presenting such concerns under section 221(g) of the INA for further review of additional ineligibility grounds,           **LE**           **LE**      as appropriate.

5. (U) This was reflected well by the Secretary's statement on March 16, that "when you apply to enter the United States and you get a visa, you are a guest…if you tell us when you apply for a visa, 'I'm coming to the U.S. to participate in pro-Hamas events,' that runs counter to the foreign policy interest of the United States…if you had told us you were going to do that, we never would have given you the visa."

6. **(SBU) Situations that Cast Doubt on Students' Intent or Credibility:**  As described in 9 FAM 402.5-5(C), an applicant applying for an F-1 or M-1 student visa must demonstrate intent to enter the United States solely to pursue a full course of study at an approved institution.  In addition, J-1 visa applicants who are college, university, and other post-secondary students are required to pursue a full course of study as described in 9 FAM 402.5-6(E)(11).  Evidence suggesting a student visa applicant intends to travel to

the United States to engage in unlawful activities clearly calls into question whether the applicant possesses intent and/or the ability to solely pursue a full course of study.  While many activities may not fall under the INA's definitions of "terrorist activity," you should otherwise consider that information in assessing the credibility of a visa applicant's claimed purpose of travel.  INA section 214(b) requires the applicant to show credibly that all activities in which he or she is expected to engage in while in the United States are consistent with the specific requirements of their visa classification.

7. **(SBU) ACTION REQUEST:  Mandatory Social Media Reviews for Students and Student Exchange Visitors.**  Effective immediately, consular officers must refer all new or returning F-1, M-1, or student J-1 visa applications meeting one or more of the following criteria, that the consular officer has determined is otherwise eligible for the requested nonimmigrant status, to the FPU via ECAS as described in 7 FAH-1 H-945.4,  using the SOCIAL MEDIA REVIEW category.    **LE**

**LE**

**LE**                         E

**LE**

8. **(SBU) Documenting the Results of the Social Media Review:**  If the social media review uncovers potentially derogatory information indicating that the applicant may not be eligible for a visa, Fraud Prevention Units are required to take screenshots of social media findings to the extent it is relevant to a visa ineligibility, to preserve the record against the applicant's later alteration of the information.  Limit screenshots to information relevant to connecting the applicant, the applicant's actions, and a visa ineligibility.                         **LE**

LE

**9. (SBU) Support for Terrorist Organizations - Grounds and Definitions for INA 212(a)(3)(B):** All consular officers should carefully review 9 FAM 302.6 to understand the grounds under which an applicant may be ineligible under 3B, including that an applicant who "endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization" is ineligible.  Consular officers should consider these grounds and definitions when conducting interviews and pursuing lines of inquiry.  Because terms in INA 212(a)(3)(B) are broadly defined, consular officers should elicit as much pertinent information as possible from visa applicants with suspected ties to terrorist organizations or terrorist activity.  This includes the names of all relevant organizations potentially involved in terrorist activity and the applicant's relationship with them (for example, by current membership or past financial contributions or other support).  Evidence that an applicant advocates for terrorist activity, or otherwise demonstrates a degree of public approval or public advocacy for terrorist activity or a terrorist organization, may be indicative of ineligibility under INA 212(a)(3)(B).  This may be evident in conduct that bears a hostile attitude toward U.S. citizens or U.S. culture (including government, institutions, or founding principles).  Or it may be evident in advocacy or sympathy for foreign terrorist organizations.  All of these matters may open lines of inquiry regarding the applicant's credibility and purpose of travel.  Consular officers should inquire into the nature and activities of those organizations. **LE**

LE

10. **(SBU) Intention to Engage in Unlawful Activity:** Consular officers are also reminded of guidance in 9 FAM 302.5-4 regarding the applicability of INA 212(a)(3)(A)(ii) under which a visa applicant is ineligible if the consular officer knows or has reason to believe that the applicant is traveling to the United States solely, principally, or incidentally to engage in any other unlawful activity. Consular officers should take care to enter detailed case notes regarding the specific activities expected in the United States and request an advisory opinion per 9 FAM 302.5-4(C).

11. **(SBU) Revocations of Valid Visas:** If, subsequent to visa issuance, information becomes available to post that an individual may no longer be eligible for a visa due to particularized information indicating an ineligibility under specific INA provisions, including 214(b), post should follow the procedures to revoke or request prudential revocation as described in 9 FAM 403.11 for nonimmigrant visas or 9 FAM 504.12 for immigrant visas. The Visa Office reminds posts that consular officers do not have the authority to revoke a visa based on a suspected ineligibility or based on derogatory information that is insufficient to support an ineligibility finding - other than a revocation based on driving under the influence (DUI) - and that such cases should be referred LE in accordance with 9 FAM 403.11-5(B) for further review. A consular officer's revocation must be based on an actual finding that the individual is ineligible for the visa.

12. **(U) Additional Guidance:** The Visa Office will host webinars for consular officers to discuss this guidance on Thursday, April 3 and Friday, April 4, 2025. Invitations with links to these webinars will be sent separately. The FAM will be updated to reflect this guidance.

13. **(U) Inquiries:** Post must refer any U.S. media inquiries regarding E.O.s to CA-Press@state.gov and congressional inquiries regarding E.O.s to ConsularOnTheHill@state.gov. Posts may respond to requests from

international media regarding E.O.s using CA's cleared press guidance located on CA Web, copying CA-PRESS@STATE.GOV.

14. (U) Minimize considered.

**MINIMIZE CONSIDERED**

| | |
|---|---|
| **Signature:** | RUBIO |
| **XMT:** | BASRAH, AMCONSUL; CARACAS, AMEMBASSY; CHENGDU, AMCONSUL; KABUL, AMEMBASSY; MINSK, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; YEKATERINBURG, AMCONSUL |

**UNCLASSIFIED**
SBU