## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL.,<br><br>               Plaintiffs,<br><br>   v.<br><br>MARCO RUBIO, ET AL.,<br><br>               Defendants. | Case No. 1:25-cv-10685 (WGY) |

### MOTION TO PERMIT REMOTE TESTIMONY

Plaintiffs seek an order permitting Plaintiffs to present testimony by videoconference at trial from three witnesses who are unable to appear in person in Boston the week of July 7, 2025. Each of the three witnesses who cannot appear in person the week of July 7, 2025 is already outside of the United States on a trip that was planned well before the Court scheduled this trial. For professional and personal reasons, none of the witnesses have been able to reschedule their travel. All of the witnesses can testify remotely by videoconference if the Court allows it. In the alternative, Plaintiffs seek an order from the Court permitting two of Plaintiffs' witnesses who can appear in Boston the week of July 14 or 28 to testify out of order, as the Court's schedule permits.

### FACTUAL BACKGROUND

Plaintiffs intend to present testimony from members of the American Association of University Professors ("AAUP") and the Middle Eastern Studies Association ("MESA") to address the claims in the Complaint, ECF No. 1. All but three of Plaintiffs' anticipated witnesses are available to testify in person during trial.

1

Before the Court set the July 7, 2025 trial date in this matter, Plaintiffs' counsel asked for a trial date in late July and alerted the court to "some scheduling conflicts that a couple of [Plaintiffs'] key witnesses have" in early July, explaining "they are scholars and they have been granted international travel in connection with their academic work from mid-June onwards." Declaration of Noam Biale ("Biale Decl.") (June 24, 2025), Ex. A at 29. The Court noted that the trial is jury-waived and indicated that witnesses can testify out of order, "subject to the defendants' proper concerns." *Id.* at 30–31. Plaintiffs later asked whether the Court would entertain remote testimony by some of Plaintiff's witnesses. *See* Biale Decl. Ex. B at 12–13. The Court encouraged the parties to reach agreement concerning whether Plaintiffs' witnesses may testify out of order and/or whether they may testify remotely during trial. *See* Biale Decl. Ex. B at 12–13; *see also* Biale Decl., Ex. C at 34–35.

Once Plaintiffs determined that three important witnesses are not available to appear in person the week of July 7, 2025, Plaintiffs sought agreement from the Defendants to permit those witnesses to testify remotely. Defendants opposed Plaintiffs' request. *See* Biale Decl. ¶ 3.

The three witnesses Plaintiffs seek to present out of order or remotely (the "Remote Witnesses") are each uniquely positioned to address Plaintiffs' claims and unable to travel to Boston for the trial, as explained below.

1.  Veena Dubal

Veena Dubal is a professor of law at University of California Irvine School of Law. Biale Decl. ¶ 4. She is also the general counsel for the AAUP. *Id.* She submitted a declaration in support of Plaintiffs' Motion for a Preliminary Injunction which details the effects of the Trump Administration's ideological deportation policy on the AAUP, the AAUP's campus chapters, and the AAUP's citizen and noncitizen members. *See gen.* Dubal Decl. (April 1, 2025), ECF No. 14-

1.    Because of her role as counsel to the AAUP, Ms. Dubal is best able to describe the manner in which her time and efforts have been diverted from supporting AAUP's work to fielding inquiries from noncitizen AAUP members seeking legal advice in response to the government's actions as described in the Complaint.  Ms. Dubal is the officer and member of AAUP who is best positioned to testify with firsthand knowledge about the enormous diversion of AAUP's resources caused by the Trump Administration's actions.  Biale Decl. ¶ 6.  Ms. Dubal is also uniquely situated to testify about the events, trainings, and discussions she helped organize to respond to AAUP noncitizen members' concerns about the ideological deportation policy.  *Id.*

Ms. Dubal is currently in London.  Biale Decl. ¶ 7.  Soon she will travel to Italy, where she will participate in and be the keynote speaker for an academic conference in Florence on June 26 and June 27, 2025.  *Id.*  Ms. Dubal will remain in Italy until July 24, 2025, when she will fly back to California, where she lives.  *Id.*  While in Italy, Ms. Dubal—a scholar of labor law—will be meeting with foreign workers who are union members as part of her ongoing academic research concerning the implementation of the Platform Work Directive recently passed by the European Union.  *Id.*  From July 12 to July 24, 2025, Ms. Dubal will have family support to assist her with childcare while she performs research for her scholarly work.  *Id.*  But the week of July 7, 2025, when the trial will take place, Ms. Dubal will be working and caring for her children in Italy by herself.  *Id.*  There is no other family member or familiar adult available to care for Ms. Dubal's children in Italy the week of July 7.  *Id.*

Ms. Dubal is available to testify remotely during trial the week of July 7 or in person on July 28, 2025.  Biale Decl. ¶ 8.

2.  <u>Cinzia Arruzza</u>

Cinzia Arruzza is a professor of philosophy and the Maria Stata Professor of Classical Greek Studies at Boston University.  Biale Decl. ¶ 9.  She is a noncitizen member of the AAUP. *Id.*  Ms. Arruzza has been a vocal supporter of Palestinians and critic of Israel in her public-facing advocacy.  *Id.*  Plaintiffs must present testimony from at least one noncitizen member from the AAUP and one noncitizen member from the MESA to establish associational standing for each organization, as outlined in the Court's Memorandum and Opinion denying Defendants' Motion to Dismiss.  *See* Mem. & Op. (April 29, 2025), 47 ("Although Plaintiffs may be required to name at least one of these would-be speakers . . . these chilled noncitizen members of the Plaintiffs' organizations would have standing to assert their First Amendment rights on their own behalf, so the associations of which they are members also have standing to sue").  Ms. Arruzza is one of the few noncitizen AAUP members willing to testify at trial about the effects of the government's ideological deportation policy on their speech.  Biale Decl. ¶10.

Unfortunately, Ms. Arruzza's travel schedule makes it extremely difficult for her to appear in person in Boston to testify the week of July 7, 2025.  Biale Decl. ¶ 11.  Ms. Arruzza is currently in Beijing for work and will be there until June 30, 2025.  *Id.*  From Beijing, Ms. Arruzza will be traveling to Italy where she will arrive on July 2.  She will remain in Italy until July 11, 2025.  *Id.* On July 11, 2025, Ms. Arruzza will travel to Poland.  *Id.*  Ms. Arruzza will be in Poland until she returns to Boston on July 16, 2025.  *Id.*

Ms. Arruzza is available to testify remotely the week of July 7, 2025, or in person after July 16, 2025. Biale Decl. ¶ 12.

3. <u>Nadia Abu El-Haj</u>

Nadia Abu El-Haj is a professor of anthropology at Barnard College, Columbia University and Co-Director of the Center for Palestine Studies ("CPS") at Columbia University.  Biale Decl. ¶ 13.  Ms. Abu El-Haj is a U.S. citizen member of AAUP and MESA.  Her scholarship focuses on Zionism, Israel, and Palestine.  *Id.*

In her work for the CPS, Ms. Abu El-Haj regularly collaborates with noncitizen scholars and students.  *Id.*  As a Co-Director of CPS, she is uniquely positioned to testify about how the ideological deportation policy has affected her ability to hear from and associate with noncitizen scholars and students, including from two of the targeted noncitizens who are the focus of discovery in this case—Mahmoud Khalil and Mohsen Mahdawi.  *Id.*  Ms. Abu El-Haj is also singularly positioned to describe how she has changed her speech and activity, including by cancelling CPS events, to avoid drawing negative attention to her vulnerable noncitizen students and colleagues, demonstrating that the government's actions have harmed citizens' right to hear and to speak.  *Id.*

Ms. Abu El-Haj is currently a visiting scholar at the German Orient Institute in Beirut, Lebanon.  Biale Decl. ¶ 14.  She is in Beirut with her spouse, who has recently become a cabinet member of the Lebanese government under Prime Minister Nawaf Salam and with their daughter. *Id.*  She is expected to remain in Beirut until mid-August to complete her term as a visiting scholar at the German Orient Institute.  *Id.*

Because of ongoing instability and volatility in Beirut, Ms. Abu El-Haj cannot change her travel plans to return to the United States for trial.  Biale Decl. ¶ 15.  The United States Department of State has a level-four travel advisory directing Americans not to travel to Lebanon "due to *crime, terrorism, civil unrest, kidnapping, unexploded landmines, and the risk of armed*

*conflict*."      *See*    Lebanon    Travel    Advisory    (June    24,    2025),

https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/lebanon-travel-

advisory.html (emphasis in original).  Last week, on June 16, 2025, the U.S. Embassy in Beirut

issued a security alert urging Americans to continue to exercise increased caution and to monitor

for flight disruptions.  *See* Security Alert – U.S. Embassy Beirut (June 16, 2025) – Continue to

Exercise Increased Caution in the Region: Flight Disruptions, https://lb.usembassy.gov/security-

alert-u-s-embassy-beirut-june-16-2025-continue-to-exercise-increased-caution-in-the-region-

flight-disruptions/.  The June 16, 2025 travel advisory notes that "[o]ver the past several days, the

U.S. Embassy notes some airlines have suspended or cancelled flights; however, Lebanese

airspace and Beirut Airport are currently open and commercial transportation options to leave

Lebanon remain available but limited."  Moreover, on June 22, 2025, the U.S. Department of State

"ordered the departure of family members and non-emergency U.S. government personnel from

Lebanon due to the volatile and unpredictable security situation in the region."  *See* STEP Alert –

U.S. Embassy Beirut (June 22, 2025) – Ordered Departure for Family Members and Non-

Emergency U.S. Government Personnel, https://lb.usembassy.gov/step-alert-u-s-embassy-beirut-

june-22-2025-ordered-departure-for-family-members-and-non-emergency-u-s-government-

personnel/.

     Given the precarious and evolving situation in Lebanon and the logistical difficulties and

security concerns relating to departing from and returning to Beirut, Ms. Abu El-Haj cannot leave

her husband and daughter, and terminate her role as a visiting scholar at the German Orient

Institute, to appear in Boston the week of July 7.  However, she can testify remotely by

videoconference, if the Court allows it.

## LEGAL STANDARD

Federal Rule of Civil Procedure 43(a) empowers courts to permit testimony at trial by "contemporaneous transmission from a different location" for "good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a). "[C]ontemporaneous transmission" by videoconference "is now equally incorporated as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past." *In re Actos (Pioglitazone) Prod. Liab. Litig.*, 2014 WL 107153, at *9 (W.D. La. January 8, 2014); *see Flores v. Town of Islip*, No. 18-cv-3549, 2020 WL 5211052, at *2 (E.D.N.Y. September 1, 2020) ("Indeed, well before the pandemic, it had been increasingly the case that witnesses would appear via some form of video or electronic technology, particularly in bench trials."); *Castillo Frias v. Martinez*, No. 19-cv-2792, 2021 WL 2661093, at *1 (E.D.N.Y. June 28, 2021) ("Videoconference technology allows for live synchronized audio and visual feeds, and the risk of prejudice from remote testimony is minimal in a bench trial."). "The decision whether to permit remote trial testimony rests within the sound discretion of the court . . . [and] is supplemented by [the court's] wide latitude in determining the manner in which evidence is to be presented under the Federal Rules of Evidence." *Savinova v. Nova Home Care, LLC*, No. 20-cv-01612, 2025 WL 1279076, at *3 (D. Conn. May 4, 2025) (cleaned up); *accord Rodriguez v. Gusman*, 974 F.3d 108, 114 (2d Cir. 2020) (same).

## ARGUMENT

There is good cause, and compelling circumstances, sufficient to permit the Remote Witnesses to testify by videoconference at trial.

## I. Good cause and compelling circumstances justify remote testimony.

*First*, good cause and compelling circumstances exist because all three of the Remote Witnesses are currently abroad and scheduled to remain abroad until after the trial concludes and

cannot return before then without great difficulty. Courts in this Circuit and District have found good cause and compelling circumstances exist to justify remote testimony from a witness located far from the trial court, particularly when traveling to the trial court would be especially burdensome. For example, in *Bochart v. City of Lowell*, No. 13-cv-11753, ECF No. 311(D. Mass., Feb. 11, 2017), the trial court permitted a witness located in Virginia to testify remotely because the burden of driving to Boston to testify in person, particularly given anticipated inclement weather, satisfied the good cause and compelling circumstances requirement in Rule 43(a). *See* Order (Feb. 11, 2017), ECF No. 311. "[U]nder the circumstances, the snowstorms, the question of witness safety, and the actual and potential disruption to the trial schedule has created an unusual set of circumstances that takes this issue outside mere witness inconvenience. When coupled with a lack of obvious prejudice to the defendant, the Court finds 'good cause in compelling circumstances' to permit the witness to appear by video." *Id.* Some courts in this Circuit have permitted remote testimony based solely on a witness's distance from the trial court, whether or not traveling to the trial court presented particular challenges. *See Walsh v. Tara Construction, Inc.*, No. 19-cv-10369, 2022 WL 1913340, at *1 (D. Mass. June 3, 2022) (finding good cause where the witness resided out of state, and further than 100 miles from the site of trial); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424 (D.P.R. 1989) (permitting testimony via satellite transmission where the witnesses were beyond the 100 mile subpoena power of the court); *Souza v. United Parcel Serv., Inc.*, No. 18-cv-11292 (WGY) (D. Mass. May 9, 2019), ECF No. 61 (granting uncontested motion to permit two witnesses to testify remotely because, among other things, the witnesses were located more than 600 miles away from the courthouse).

Courts in other jurisdictions also routinely find good cause and compelling circumstances exist when, as here, a material witness is located outside the country and would face hardship in

returning to the United States to testify at trial. In some cases, courts have found the mere distance and cost of a witness's travel sufficient to establish good cause and compelling circumstances for remote testimony. *See e.g.*, *Junjiang Ji v. Jling Inc.*, No. 15-cv-4194, 2017 WL 6501865, at *3 (E.D.N.Y. Dec. 19, 2017) (permitting plaintiff bringing FLSA claim to testify remotely from China because of the "extreme expense and related inconvenience involved in having to travel from China to the United States"); *Salguero v. Argueta*, No. 17-cv-12, 2017 WL 1113334, at *1 (E.D.N.C. Mar. 23, 2017) (finding good cause for permitting remote testimony where petitioner was abroad, could not afford to travel to the U.S., and could not timely obtain visa to enter U.S.); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010) (permitting Honduran plaintiffs to testify from Honduras because travel to the U.S. trial court "would impose substantial inconvenience and cost on persons with strikingly few financial resources" but requiring in person testimony from witnesses located in nearby states). Other courts have found good cause and compelling circumstances for remote testimony based on a witness's location abroad, the witness's status as a non-party, and the nature of the proceeding—where the court, rather than a jury, would act as the fact finder. *See e.g.*, *United States v. Thrift*, No. 214-cr-0308, 2023 WL 5672862, at *2 (E.D. Cal. Sept. 1, 2023). Similarly, some courts have found "international travel considerations, legitimate business concerns, and cost as rationales for allowing witnesses to testify via telephone instead of appearing in the courtroom," especially where the testimony sought is critical to the proponent's case. *Dagen v. CFC Grp. Holdings Ltd.*, No. 00-cv-5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003).

Numerous courts in other jurisdictions have permitted remote testimony based solely on a witness's distant location, without any additional hardship. *See e.g.*, *Virtual Architecture, Ltd. v. Rick*, No. 08-cv-5866, 2012 WL 388507, at *2 (S.D.N.Y. Feb. 7, 2012) (finding good cause for

remote testimony from witness located in the Seychelles who would have had to travel more than 20 hours to appear in person in New York). Some courts have gone further still, permitting remote testimony based solely on a witness's location, even when the witness and trial court were both located in the United States. *See Beltran-Tirado v. I.N.S.* 213 F.3d 1179, 1186 (9th Cir. 2000) (permitting the use of telephonic testimony where the witness lived in Missouri, the hearing was in San Diego, and witness was subject to cross examination); *F.T.C. v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (finding good cause "shown by the serious inconvenience that will arise in requiring Mr. Cross, a resident of Oklahoma, to appear as a witness in the hearing in Washington, DC"); *In re Rand Int'l Leisure Prods., LLC*, No. 10-71497, 2010 WL 2507634, at *4 (Bankr. E.D.N.Y. June 16, 2010) (finding that requiring creditors to travel to New York from locations abroad and from Kansas City, Missouri, Buena Park, California "would be an undue burden on them and is a compelling circumstance"); *Warner v. Cate*, No. 12-cv-1146, 2015 WL 4645019, at *2 (E.D. Cal. Aug. 4, 2015) ("Fresno's distance from Texas, and the associated cost and inconvenience [the witness] would incur to travel between them, amount to good cause and compelling circumstances justifying [the witness's] testimony by video . . . ."). *Aoki v. Gilbert*, No. 11-cv-02797, 2019 WL 1243719, at *2 (E.D. Cal. Mar. 18, 2019) (finding the "general inconvenience of traveling" and that witnesses live "more than 100 miles from the courthouse and therefore cannot be compelled by subpoena to testify" was sufficient basis to permit remote testimony).

Here, the Remote Witnesses' distance from the trial court alone would warrant permitting remote testimony, but the additional challenges they would face if they attempted to return to the country compel it. All three of the Remote Witnesses are outside of the country on a temporary basis engaged in travel they planned long before the Court set the trial date. All three of the Remote

Witnesses are traveling in support of their academic work to conduct research that can only be performed abroad, such as interviewing sources located outside of the United States, and to collaborate with scholars who are located outside the country. Additionally, two of the Remote Witnesses, Ms. Dubal and Ms. Abu El-Haj, would face additional barriers, beyond the personal burden and disruption of their professional work, if they return to the United States for trial.

During the week of July 7, 2025, Ms. Dubal will be the sole available caregiver for her three minor children while she and her children are in Italy for her academic work. Ms. Dubal cannot leave her children alone in Italy to return to Boston to testify, nor can she, without great difficulty and expense, bring her children to Boston for her to testify (without childcare for them in Boston), and then ferry them back to Italy for her to complete her work.

Ms. Abu El-Haj is currently located in Beirut and not scheduled to return until mid-August, when her term ends as a visiting scholar at the German Orient Institute in Beirut. Because of the extraordinary volatility in Beirut and attendant security concerns, Ms. Abu El-Haj cannot safely leave Beirut without her family, nor can she be certain that she would be able to return to Beirut if she leaves.

The Remote Witnesses' testimony is essential to Plaintiffs' case. Ms. Dubal's testimony is essential as she is the witness for AAUP who can testify as to the institutional harms of the organization. Ms. Arruza's testimony is important because she is one of a very small number of noncitizens who are willing to testify in this case. Ms. Abu El-Haj's testimony is likewise important because she is Plaintiffs' only current U.S. citizen witness willing to testify about the impact that the ideological deportation policy has had on both her right to speak to and hear from noncitizens chilled by the policy. (Many other U.S. citizen members have been similarly impacted but are unwilling to testify for fear of identifying the noncitizens chilled by the policy.) And, given

the nature of this case, it is unsurprisingly difficult for Plaintiffs to identify any witnesses, especially noncitizen witnesses, who are willing to publicly testify about the chilling effects of the government's ideological deportation policy (to which they may be subjected). When deciding whether good cause and compelling circumstances exist to merit remote testimony, courts often give particular consideration to the importance of the proposed remote witness's testimony. *See e.g.*, *Walsh v. Tara Construction, Inc.*, No. 19-cv-10369, 2022 WL 1913340, at *1 (D. Mass. June 3, 2022) (finding good cause where the witness led the investigation which formed the basis for plaintiff's complaint); *In re: 3M Combat Arms Earplug Products Liability Litigation*, No. 20-cv-39, 2021 WL 2605957, at *4 (N.D. Fla May 28, 2021) (finding good cause where a witness was key to both parties). The importance of the Remote Witnesses' testimony militates in favor of permitting them to testify remotely.

Finally, remote testimony is appropriate given the posture and nature of these proceedings. This matter is set for a bench trial, which minimizes any concern about assessing witness credibility via video. In addition, the expedited nature of the trial schedule has left the witnesses with limited ability to arrange travel in accordance with the trial schedule. Under these circumstances, allowing testimony to be taken remotely will serve the interests of efficiency and fairness.

## II.    Appropriate safeguards exist for the contemporaneous transmission of testimony

Appropriate safeguards are available to ensure that remote testimony offered in this case is the functional equivalent of live testimony, as required by Fed. R. Civ. P. 43(a). "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately." *Warner v. Cate*, No. 12-cv-1146, 2015 WL 4645019, at *1 (E.D. Ca. August 4, 2015);

*see also F.T.C. v. Swedish Match North America, Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (noting that "there is no practical difference between live testimony and contemporaneous video transmission"); *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n,* 470 F. Supp. 3d 735, 739 (E.D. Mich. 2020) (noting that "testimony by videoconference can satisfy the functional goals that Rule 43(a) was designed to achieve.") Contemporaneous video-teleconferencing technology has been considered as satisfying the dual purposes of the "appropriate safeguards" requirement of Rule 43(a), which are: "(1) to ensure that the witness testimony may be tested by cross-examination, and (2) to allow the trier of fact to observe the demeanor of the witness." *Liu v. State Farm Mutual Automobile Ins. Co.*, 507 F. Supp. 3d 1262, 1265 (citing *In re Adair*, 965 F.2d 777, 780 (9th Cir. 1992)).

As this Court noted when granting permission for witnesses in another case to testify remotely, the critical issue is whether the Court can "get the visage of the person on the screen in th[e] courtroom." Tr. Hr'g (July 25, 2014), *In re: Nexium (Esomeprazole) Antitrust Litig,* No. 12-MD-02409, ECF No. 968, 26: 15-25 (granting plaintiff's contested motion to present remote testimony from witnesses outside the jurisdiction). Because all of the Remote Witnesses have suitable videoconferencing capabilities and because the Court can issue an order with additional safeguards, as it has done in other cases, to ameliorate any of the Court's concerns regarding remote testimony, there are appropriate safeguards under Fed. R. Civ. P. 43(a) to ensure the integrity of remote testimony in this case.

Accordingly, the Court should grant Plaintiffs' request to call the Remote Witnesses remotely, or, in the alternative, to call Ms. Dubal and Ms. Arruzza to testify out of order.

June 25, 2025                          Respectfully submitted,

/s/ Noam Biale
_____

Edwina Clarke (BBO 699702)                    Noam Biale
David Zimmer (BBO 692715)                     Michael Tremonte
Zimmer, Citron & Clarke, LLP                  Courtney Gans
130 Bishop Allen Drive                        Alexandra Conlon
Cambridge, MA 02139                           Sher Tremonte LLP
(617) 676-9423                                90 Broad Street, 23rd Floor
edwina@zimmercitronclarke.com                 New York, New York 10004
                                              (212) 202-2603
Ramya Krishnan                                mtremonte@shertremonte.com
Carrie DeCell                                 nbiale@shertremonte.com
Xiangnong Wang
Talya Nevins                                  Ahilan T. Arulanantham (SBN 237841)
Jackson Busch                                 Professor from Practice
Scott Wilkens                                 UCLA School of Law
Alex Abdo                                     385 Charles E. Young Dr. East
Jameel Jaffer                                 Los Angeles, CA 90095
Knight First Amendment Institute              (310) 825-1029
  at Columbia University                      arulanantham@law.ucla.edu
475 Riverside Drive, Suite 302
New York, NY 10115                            *Counsel for Plaintiffs*
(646) 745-8500
ramya.krishnan@knightcolumbia.org

## CERTIFICATE OF SERVICE

I, the undersigned counsel, certify that on June 25, 2025, I electronically filed the foregoing

motion in the United States District Court for the District of Massachusetts using the CM/ECF

system. I certify that all participants in the case are registered CM/ECF users and that service will

be accomplished by the CM/ECF system.

Dated: June 25, 2025                          /s/ Noam Biale
                                             _____
                                              Noam Biale