UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, ET AL., <br><br> Defendants. | Case No. 1:25-cv-10685 (WGY) |

**JOINT PRE-TRIAL MEMORANDUM**

Pursuant to Local Rule 16.5(d) of the Local Rules of the United States District Court for the District of Massachusetts and the Court's Procedural Order, dated June 3, 2025 (ECF. No. 113), Plaintiffs American Association of University Professors ("AAUP"), American Association of University Professors-Harvard Faculty Chapter, American Association of University Professors at New York University, Rutgers American Association of University Professors-American Federation of Teachers, and Middle East Studies Association ("MESA") (collectively "Plaintiffs"), and Defendants Marco Rubio, Kristi Noem, Todd Lyons, and Donald J. Trump (collectively "Defendants") respectfully submit this Joint Pre-trial Memorandum.

1. **A Concise Summary of the Evidence Which Will Be Offered By the Parties.**

   A. **Plaintiffs' Position**

   Shortly after taking office President Trump issued Executive Order No. 14,161, "Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats," and Executive Order No. 14,188, "Additional Measures to Combat Anti-Semitism." The evidence will show that Defendants Department of State and Department of

1

Homeland Security ("DHS") responded to these executive orders by adopting a policy of revoking the visas and green cards of, and arresting, detaining, and deporting noncitizen students and faculty based on their participation in pro-Palestinian protests and other related expression and association (the "ideological deportation policy" or the "policy").  Starting in March 2025, the State Department and DHS, as well as senior officials at those agencies, described that policy in a series of public statements made in press conferences, in news interviews, and on social media.

The evidence will show that the State Department and DHS have implemented and enforced the ideological deportation policy.  The agencies have implemented the policy in a variety of ways, including by issuing guidance and establishing processes related to identifying, monitoring, and revoking the visas and green cards of those engaged in activity deemed "antisemitic," "pro-Hamas," or "pro-terrorist."  The agencies have enforced the ideological deportation policy by arresting, detaining, and revoking or attempting to revoke the visas and green cards of multiple noncitizen students and faculty based on their pro-Palestinian advocacy. These noncitizens include Mahmoud Khalil, Rümeysa Öztürk, Mohsen Mahdawi, Yunseo Chung, and Badar Khan Suri (collectively, the "Targeted Noncitizens"). The evidence will show that the defendant agencies have sought to deport these individuals based on, and in retribution for, their protected political speech.

The evidence will show that the defendant public officials have engaged in a campaign of coercive threats against noncitizen students and faculty engaged in constitutionally protected pro-Palestinian advocacy.  The evidence will show that after issuing Executive Order 14,188, President Trump announced that his administration would find "all the resident aliens who join in the pro-Jihadist protests" and "deport [them]."  The President has repeated that threat in the

months since, as have officials at the State Department and DHS. The arrests and detentions of the Targeted Noncitizens have themselves functioned as threats to noncitizen students and faculty who would otherwise engage in pro-Palestinian advocacy.

The evidence will show that the ideological deportation policy and Defendants' campaign of coercive threats have harmed AAUP, MESA, and their members. The evidence will show that Plaintiffs' noncitizen members have been forced to self-censor, including by abstaining from public writing, avoiding political protests, and withdrawing from other expressive and associational activities that touch on Israel and Palestine. Plaintiffs' citizen members have also been harmed because they have been deprived of the insights and engagement of their noncitizen colleagues and students, including students who have been arrested and detained pursuant to the ideological deportation policy. Finally, AAUP and MESA have themselves been harmed because they are no longer able to learn from and engage with noncitizen members to the extent they once did, and because they have had to divert resources from other projects to address the danger that their noncitizen members will be arrested, detained, and deported for engaging in protected political and academic speech.

### B. Defendants' Position

On January 20, 2025, the President signed Executive Order 14161: Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats ("EO1"). 90 Fed. Reg. 9451. The EO declares the United States' policy to "protect its citizens from aliens who intend to commit terrorist attacks, threaten our national security, espouse hateful ideology, or otherwise exploit the immigration laws for malevolent purposes." EO1, Sec. 1(a). On January 29, 2025, the President signed Executive Order 14188, Additional Measures to Combat Anti-Semitism ("EO2"). 90 Fed. Reg. 8847. EO2 calls for stepped up federal enforcement in the wake

of an "unprecedented wave" of antisemitic "discrimination, vandalism, and violence" against citizens and "especially in our schools and on our campuses." EO2, Sec. 1. EO2 directs executive agencies to use "all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence." *Id.*, Sec. 2. Both EOs make express that any such action must be taken consistent with applicable law, and affirms that "agencies shall not diminish or infringe upon any right protected under Federal law or under the First Amendment." *Id.*, Sec. 4(b); Executive Order 13899, Sec. 2(b), 84 Fed. Reg. 68779 (affirmed in EO2, Sec. 1); EO1, Sec. 4(a)(i)-(ii).

Plaintiffs allege that federal agencies have "implemented" an "ideological deportation policy," which they describe as a "large-scale" policy of "arresting, detaining, and deporting" noncitizen students and faculty engaged in "pro-Palestinian protests" and related "expression and association." Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, Dkt. 14 ("PI Mem.") at 1; Complaint for Declaratory and Injunctive Relief, Dkt. 1 ("Compl.") ¶ 1. Plaintiffs do not locate this "policy" in any statute, rule, regulation, or directive. They do not allege it is written down or explain how it possesses the force of law. Plaintiffs do not allege that this supposed policy has been enforced against them or any of their members. Rather, they claimed that they have been harmed by the policy because it has chilled the speech of some of their members, who plaintiffs claim would have made certain statements, attended certain protests, or participated in certain events, but for the specter of immigration enforcement. Plaintiffs thus claim that this clandestine policy violates the First Amendment.

The Government expects that plaintiffs will not meet their burden at trial. It expects that plaintiffs will not establish that an "ideological deportation policy" exists or implicates protected First Amendment interests. The Government also expects that Plaintiffs will not credibly

4

demonstrate that noncitizen members of their organizations had their First Amendment rights "chilled" by any such policy.

The Government also expects to present evidence regarding the policies and protocols of arrests of four noncitizens. This evidence will demonstrate that the arrests of these four noncitizens relied upon protocols and practices rooted in long-standing law enforcement protocols and public safety measures. These four noncitizens are litigating the facts and circumstances of these arrests in separate Federal tribunals.

Finally, evidence will show that Plaintiffs' claims are not redressable. Although they seek to enjoin the government from instituting this alleged policy against a class of people, namely all noncitizen students and faculty, this runs afoul of 8 U.S.C. § 1252(f)(1), which strips this court of jurisdiction to enjoin or restrain operations of provisions of the INA governing inspection, apprehension, examination, and removal of aliens.

**2.     Facts Established by Pleadings or by Stipulations or Admissions of Counsel.**

The Parties stipulate to the authenticity and admissibility of the government-generated documents in the Certified Administrative Record, without waiving any hearsay objections that may apply to any statements in the Certified Administrative Record attributed to individuals who are not government officials. The parties also stipulate to a list of statements made by public officials. *See* June 11, 2025 Stipulation and Order at ECF No. 130.

3.  **Contested Issues of Fact.**

    A.  **Plaintiffs' Position**[1]

        i.  In response to Executive Order Nos. 14,161 and 14,188, Defendants adopted a policy of revoking the visas and green cards of, and arresting, detaining, and deporting noncitizen students and faculty based on their participation in pro-Palestinian protests and other related expression and association (the "ideological deportation policy").

        ii. Defendants implemented the ideological deportation policy through, among other things, the vetting and screening of speech Defendants deemed to be "pro-Palestinian," "anti-Israel," "pro-Hamas," or antisemitic.

        iii. Defendants implemented the ideological deportation policy by adopting internal policies and programs to otherwise identify and take action against noncitizen students and faculty who had engaged in speech Defendants deemed to be "pro-Palestinian," "anti-Israel," "pro-Hamas," or antisemitic.

        iv. Defendants enforced the ideological deportation policy against the Targeted Noncitizens Students and Faculty, including by revoking the visas and green cards of, and arresting, detaining, and attempting to deport them.

        v.  The statements of government officials, including those contained in the above-referenced stipulation, are evidence of, or reflect, the ideological deportation policy.

        vi. The ideological deportation policy targets speech on the basis of viewpoint.

---

[1] Plaintiffs understand the trial beginning on July 7 to be limited to the question of liability, and so have limited their submissions in this memo to the facts and legal questions relevant to liability, not remedy.

    vii.    Defendants' coercive speech and actions were designed to and/or did in fact chill the speech of noncitizen faculty and students.

    viii.    AAUP members—both noncitizen members and citizen members—suffered harm to their First Amendment rights.

    iv.    MESA members—both noncitizen members and citizen members—suffered harm to their First Amendment rights.

    x.    AAUP suffered harm to its expressive and associational rights and also by virtue of having to divert resources from its mission to respond to the ideological deportation policy.

    xi.    MESA suffered harm to its expressive and associational rights and also by virtue of having to divert resources from its mission to respond to the ideological deportation policy.

    xii.    Plaintiffs' injuries are caused by the ideological deportation policy and would be redressed by the relief Plaintiffs seek.

**B.    Defendants' Position**

All other facts contested.

**4.    Jurisdictional Issues.**

**Plaintiffs:** Plaintiffs are not aware of any jurisdictional questions that were not resolved by the Court's ruling on the government's motion to dismiss.

**Defendants**: None, other than the standing and venue issues previously litigated and discussed above in Section 2.

**5.    Any Questions Raised by Pending Motions.**

**A.    Plaintiffs' Position**

i. Plaintiffs have filed the following motions which are pending with the Court:

- Motion to compel the production of documents, responses to interrogatories, and for a ruling on Defendants' improper invocation of various privileges (ECF No. 153);

- Motion to permit remote testimony or to take witnesses out of order (ECF No. 157);

ii. Plaintiffs also anticipate orally moving or filing the following motions *in limine*:

- To preclude Defendants from questioning witnesses in open court as to the identities of third parties that have been designated as Attorneys' Eyes Only under the Court's order of June 23, 2025 (ECF No. 148);

- To permit witnesses to testify about expressions of fear and concern from non-testifying noncitizens under certain exceptions to the hearsay rule and to show the effect on the listener.

- To make certain adverse inferences in the event that the Court grants Plaintiffs' motion to compel and Defendants do not promptly comply.

B. **Defendants' Position**

i. Defendants have moved for reconsideration of the court's order granting the entry of a protective order for the production of documents and exchange of confidential information. Plaintiffs' proposed protective order included unnecessary and unduly burdensome provisions at Paragraphs 6(h) and 7 that have slowed the pace of document production and will interfere with the Government's ability to efficiently litigate this case. Additionally, Plaintiffs' justification for paragraph 7 is moot given this Court's orders protecting witnesses and nonparties.

  ii. Defendants have moved for a motion in limine to exclude evidence based on the Court's statement that he will not retry immigration or judicial proceedings in another district. Specifically, Defendants ask the Court to bar the introduction of evidence involving the facts underlying the arrests and detentions of the 4 "targeted noncitizens" when those facts should be litigated and found in the four district court proceedings in the first instance.

  iii. Defendants have moved to compel communications between Veena Dubal and other witnesses testifying in support of Plaintiffs in this case. To the extent Ms. Dubal will testify at trial about the harm allegedly suffered by AAUP members, and consequently by AAUP as an organization, the substance of her communications with such AAUP members about such harm are not legal advice protected by the attorney-client privilege or any other privilege. Alternatively, because Ms. Dubal's testimony in support of Plaintiffs' claims in this lawsuit will rely upon such communications, as a matter of fairness, the attorney-client privilege over such communications has been implicitly waived.

  iv. Plaintiffs have moved to compel Defendants to produce additional documents and other information they claim has been improperly withheld as privileged. Defendants assert that they have properly complied with Plaintiffs' discovery requests and appropriately withheld information as privileged.

**6. Issues of Law, Including Evidentiary Questions, Together With Supporting Authority.**

  **A. Plaintiffs' Position**

Plaintiffs' issues of law include those incorporated into Plaintiffs' Statement of Contested Facts, *supra*. Plaintiffs also plan to file a pretrial brief, which will summarize the factual and legal

questions at issue in greater detail, one week before trial. In brief, Plaintiffs' issues of law include the following:

  1.  Plaintiffs have associational standing because the interests Plaintiffs seek to protect are germane to their scholarly and academic missions; because neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members as parties in the lawsuit; and because Plaintiffs' noncitizen and citizen members "would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 110 F.4th 295, 309 (1st Cir. 2024). Plaintiffs' noncitizen members have standing to sue in their own right because the ideological deportation policy chills their speech and expressive activities; and because their injuries are fairly traceable to the policy and would likely be redressed by Plaintiffs' requested relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs' citizen members likewise have standing to sue in their own right because the policy burdens their right to hear from and associate with specific noncitizens and directly injures their own expressive interests; and because their injuries are fairly traceable to the policy and would likely be redressed by Plaintiffs' requested relief.

  2.  Plaintiffs also have organizational standing because the ideological deportation policy has caused a "concrete and demonstrable injury to [their] activities" by burdening their expressive and associational engagement with their members and by forcing them to divert resources away from other projects to address the policy. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

  3.  The ideological deportation policy violates the First Amendment because it suppresses speech on the basis of its viewpoint. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech

based on its substantive content or the message it conveys."); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994) (stating that viewpoint discrimination is presumptively unconstitutional because it "pose[s] the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas" or to "manipulate the public debate").

4. The ideological deportation policy also violates the First Amendment because it amounts to retaliation against constitutionally protected speech. Specifically, the policy targets a category of individuals engaged in constitutionally protected conduct; the policy constitutes an adverse action taken against that category of individuals; and the constitutionally protected conduct motivated the policy. *Cf. Gattineri v. Town of Lynnfield, Massachusetts*, 58 F.4th 512, 514 (1st Cir. 2023)

5. Defendants' coercive threats and actions to surveil, arrest, detain, and deport noncitizens for engaging in protected speech and association violate the First Amendment rights of Plaintiffs and their members. See *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (finding that a government agency's "threat of invoking legal sanctions and other means of coercion" to indirectly "achieve the suppression" of protected speech violates the First Amendment); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024).

6. Plaintiffs are entitled to APA review of the ideological-deportation policy because it is final agency action, *see* 5 U.S.C. § 704, and because their claims fall within the relevant zone of interests, *see Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, 123 F.4th 1, 20 (1st Cir. 2024). The ideological-deportation policy violates the APA because it is contrary to constitutional right, and because it is arbitrary and capricious and an abuse of discretion.

7. Plaintiffs' harms are traceable to the ideological deportation policy and would be redressed by the relief Plaintiffs seek. The Court has previously said that it will address the

11

question of whether 8 U.S.C. § 1252(f)(1) applies to Plaintiffs' relief only at the remedy stage. *See* MTD Op. at 27, ECF No. 73 (in addressing § 1252(f)(1), concluding that "the motion to dismiss based on this Court's subject matter jurisdiction is DENIED without prejudice, subject to renewal as to the issue of authorized remedies if—and only if—liability is first established"). Plaintiffs agree that the scope of § 1252(f)(1) need not be reached at the liability phase. To the extent the Court nevertheless addresses it, as Defendants appear to propose, Plaintiffs contend that § 1252(f)(1) is not a bar to the relief Plaintiffs seek and that, at the very least, Plaintiffs' injuries would be redressed by the APA and declaratory relief they seek.

    **B.**    **Defendants' Position**

        i.    Defendants object to Plaintiffs' motion to compel additional factual disclosures for the reasons set forth in its response to Plaintiffs' motion to compel.

        ii.    Defendants object to Plaintiffs' invocations of privilege regarding communications between Veena Dubal and other witnesses testifying in support of Plaintiffs in this case for the reasons set forth in Defendants' motion to compel.

        iii.    Defendants have filed a motion in limine to bar the introduction of evidence involving the facts underlying the arrests and detentions of the 5 "targeted noncitizens" when those facts should be litigated and found in the four district court proceedings in the first instance

**7.**    **Any Requested Amendments to the Pleadings.**

The Parties are not currently seeking to amend any pleadings.

**8.**    **Any Additional Matters to Aid in the Disposition of the Action.**

None.

**9.**    **The Probable Length Of The Trial.**

**Plaintiffs:** Plaintiffs estimate that the trial will take five days. Plaintiffs request an opportunity to make a brief opening statement.

**Defendants:** Two weeks.

10. **List of the Names And Addresses Of Witnesses Who Will Testify at Trial and the Purpose of The Testimony**

    A.   **Plaintiffs' Fact Witnesses (Expected to Testify)**

    1. Jeffrey Reger – Executive Director, MESA

    2. Veena Dubal – General Counsel, AAUP

    3. Bernhard Nickel – Professor of Philosophy, Harvard University

    4. Nadje Al-Ali – Professor of International Studies, Watson Institute for International & Public Affairs

    5. Megan Hyska – Professor of Philosophy, Northwestern University

    7. Nadia Abu El-Haj – Professor of Anthropology, Barnard College

    8. Cinzia Arruzza – Professor of Philosophy, Bostun University

    9. John Armstrong – U.S. Department of State's Bureau of Consular Affairs

    10. Pete Hatch

Plaintiffs have requested certain stipulations from Defendants to introduce the op-ed written by Ms. Öztürk in the *Tufts Daily* and the video of her arrest in Somerville, MA, on March 25, 2025. Defendants have declined to stipulate to these facts. Accordingly, Plaintiffs may call briefly between two and three witnesses for the purpose of introducing these exhibits and authenticating that the video is of Ms. Özturk. Plaintiffs are also actively deposing other government officials and may supplement the list of witnesses here, if appropriate.

B. **Defendants' Witnesses (Expected to Testify)**

    i.    John Armstrong (fact witness)
           Department of State, Washington, DC

    ii.    ASAC Crogan (fact witness)
           Department of Homeland Security, Homeland Security Investigations, New England

    iii.    ASAC Cunningham (fact witness)
           Department of Homeland Security, Homeland Security Investigations, Boston, MA

    iv.    Acting ASAC Heck (fact witness)
           Department of Homeland Security, Homeland Security Investigations, Washington, DC

    v.    DSAC McCormack (fact witness)
           Department of Homeland Security, Homeland Security Investigations, New York

    vi.    Jessica Norris (fact witness)
           Department of State, Washington, DC

    vii.    Andre Watson (fact witness)
           Department of Homeland Security, Homeland Security Investigations, Washington, DC

    viii.    Mohamed Maklad (summary witness)
           Department of Homeland Security, Homeland Security Investigations
           Washington, DC

    ix.    Edward J. Ramotowski (fact witness)
           Department of State, Visa Office, Bureau of Consular Affairs, , Washington, DC

    x.    Brian Howell (summary witness)
           Department of Homeland Security, Homeland Security Investigations
           Washington, DC

    xi.    Maureen Smith (summary witness)
           Department of State, Bureau of Consular Affairs
           Washington, DC

    xii.    Alessandro Gomez (fact witness)
           AAUP Executive Committee

      xiii.    Daniel HoSang (fact witness)
               AAUP Executive Committee

Defendants reserve the right to call additional witnesses in response to new information supplied by Plaintiffs.

**11.**    **The Proposed Exhibits**.

**Plaintiffs:** The parties are still actively engaging in discovery, and so the list of proposed exhibits is still to be determined.

**Defendants:** As discovery remains ongoing in this case, the list of proposed exhibits is still to be determined.

**12.**    **Parties' Positions on any Remaining Objections to Evidence Identified in Pre-Trial Disclosure Required by Fed. R. Civ. P. 26(a)(3)**

None.

June 25, 2025

Respectfully submitted,

Edwina Clarke (BBO 699702)
David Zimmer (BBO 692715)
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com

Ramya Krishnan
Carrie DeCell
Xiangnong Wang
Talya Nevins
Jackson Busch
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302

/s/ Noam Biale
Noam Biale
Michael Tremonte
Alexandra Conlon
Courtney Gans
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

15

New York, NY 10115  
(646) 745-8500  
ramya.krishnan@knightcolumbia.org

*Counsel for Plaintiffs*

BRETT A. SHUMATE  
Assistant Attorney General

DREW C. ENSIGN  
Deputy Assistant Attorney General

LEAH B. FOLEY  
United States Attorney

WILLIAM KANELLIS

ETHAN B. KANTER  
*Chief, National Security Unit*  
*Office of Immigration Litigation*  
*P.O. Box 878, Ben Franklin Station*  
*Washington, D.C. 20001*

*Counsel for Defendants*

Dated: June 25, 2025