1              UNITED STATES DISTRICT COURT

2              DISTRICT OF MASSACHUSETTS (Boston)

3                        No. 1:25-cv-10685-WGY

4

5    AMERICAN ASSOCIATION of UNIVERSITY PROFESSORS, et al,
               Plaintiffs

6

7    vs.

8

9    MARCO RUBIO, in his official capacity as
     Secretary of State, et al,
10               Defendants

11                      * * * * * * * * *

12

13

                        For Hearing Before:
14              Judge William G. Young

15

                        Final Pretrial
16

17                      United States District Court
                        District of Massachusetts (Boston.)
18                      One Courthouse Way
                        Boston, Massachusetts 02210
19                      Thursday, June 26, 2025

20

                        * * * * * * * *
21

22

                 REPORTER: RICHARD H. ROMANOW, RPR
23                    Official Court Reporter
                   United States District Court
24       One Courthouse Way, Room 5510, Boston, MA 02210
                        rhr3tubas@aol.com

25

```
 1              A P P E A R A N C E S

 2

 3   CAROLINE DeCELL, ESQ.
     ALEXANDER ABDO, ESQ.
 4   SCOTT B. WILKENS, ESQ.
         Knight First Amendment Institute at Columbia
 5       University
         475 Riverside Drive, Suite 302
 6       New York, NY 10115
         (646) 745-8500
 7       E-mail: Carrie.decell@knightcolumbia.org
     and
 8   COURTNEY GANS, ESQ.
     NOAM BIALE, ESQ.
 9       Sher Tremonte LLP
         90 Broad Street, 23rd Floor
10       New York, NY 10004
         (212) 540-0675
11       Email: Cgans@shertremonte.com
         For Plaintiffs
12

13   ETHAN B. KANTER, ESQ.
     WILLIAM KANELLIS, ESQ.
14   VICTORIA M. SANTORA, ESQ.
     JESSICA An. STROKUS, ESQ.
15       DOJ-Civ
         P.O. 878
16       Ben Franklin Station
         Washington, DC 20044
17       (202) 616-9123
         Email: Ethan.kanter@usdoj.gov
18   and
     SHAWNA YEN, ESQ.
19       United States Attorney's Office
         1 Courthouse Way, Suite 9200
20       Boston, MA 02210
         Email: Shawna.yen@usdoj.gov
21       For Defendants

22

23

24

25
```

1              P R O C E E D I N G S

2         (Begins, 11:30 a.m.)

3         THE CLERK:  The Court will hear Civil Action

4    Number 25-10685, the American Association of University

5    Professors, et al versus Marco Rubio, et al.

6         THE COURT:  Good morning.  Again I've allowed

7    internet access to this proceeding.  That being so, it's

8    appropriate that I say that if you are viewing the

9    proceeding via the internet, you must keep your

10   microphone muted, the rules of court remain in full

11   force and effect, and that means there's no taping,

12   streaming, rebroadcast, screen shots, or other

13   transcription of these proceedings.

14        Rather than have everyone introduce themselves, so

15   that we may have a accurate record, when you speak for

16   the first time, would you again introduce yourself.  But

17   otherwise it's not necessary to introduce yourself.

18        This is a final pretrial conference under Federal

19   Rule of Civil Procedure 16.  Normally I conduct these

20   conferences in the lobby, um, but in the interests of

21   complete transparency, I believe that this conference

22   ought be conducted on the record.  But I would hope that

23   we can have a relaxed interchange such that, if I say

24   something that's problematic, don't hesitate to, um,

25   point it to my attention and we'll try to work through

1    it.

2          Let me start by saying I welcome your efforts to

3    submit the joint pretrial memorandum, it's in the form

4    with which the Court is familiar, and addresses those

5    issues that are of most concern to the Court.  It's, I

6    think, easiest to work from the back forward, and that's

7    how I'm going to proceed.

8          So, um, I don't have an exhibit list, I understand

9    that, and that's not a problem.  Before we start, I want

10   one.  And absent some surprise to the litigants that I

11   -- with which I concur, um, nothing more is going to be

12   proffered but what is proffered in that exhibit list.

13   Now sit down together and work it out.  The exhibit list

14   should consist of the certified administrative record

15   and the other materials that either side wishes to place

16   before the Court.

17         The, um, -- those things that are not disputed,

18   and I would urge you not to -- well you're zealous

19   advocates, go ahead and dispute.  But to the extent you

20   reasonably can agree that a document ought be in the

21   record, give it a number -- not a plaintiff's number or

22   a defendant's number, just give it a number.  Numbers go

23   on to infinity.

24         Where there's any objection, give it a letter.

25   And once you've run out of letters, there's only 26,

1    start again AA, AB, AC, not AA, BB, CC.  I once got up

2    to 8Qs, the Court Reporter couldn't follow it, it makes

3    for a lousy record.

4        When you object to the other side's proposed

5    exhibit, it is not necessary -- I really am trying to

6    keep the costs down here, to tell me, um, the grounds of

7    the objection, unless it's authenticity.  If you think

8    the document is not an authentic document, or a

9    photograph or news report or whatever you think it may

10   be, it's not authentic, it's not what it purports to be,

11   call that out, because then I'll want the foundation

12   turned very square.  But otherwise I'm going in assuming

13   that what's before me are authentic documents.

14       I've read this, and I hope with some care, I

15   understand the government's -- well the government has

16   reasons, for instance, um, to object to videos of the

17   taking into custody of Ms. Ozturk.  I would hope that

18   that could be worked out, because it seems to me the

19   fact, whatever it is, is a fact.

20       And let me say as to things such as videos, um,

21   they -- they will be received in evidence, but I'm not

22   taking Court time to view them.  Before I enter findings

23   and rulings, you will understand that I have viewed

24   them.  Likewise depositions, I see you're taking

25   depositions, and that's fine, and maybe you want to

```
 1    designate portions of those depositions.  Just do so.
 2    Again, see if you can't agree as to whether I may
 3    receive the depositions in the record or not, and, um, I
 4    will -- I will rule on those.  And my practice is to
 5    take the deposition -- this is jury-waived, and rule
 6    right on the deposition with an "O" or an "S,"
 7    "Overruled" or "Sustained," so the record, for any
 8    appellate court, is clear what I have received at least
 9    in evidence, or refused to receive.  The, um -- but
10    we're not taking any time in open court to read
11    deposition testimony.  I can read.  And it's my duty to
12    have read these things.
13         Um, now let's work -- so that's what I expect on
14    exhibits, a single exhibit list marked as I've
15    designated.
16         MR. BIALE:  Your Honor?
17         THE COURT:  Yes?
18         MR. BIALE:  Two quick questions.
19         THE COURT:  That's why I'm doing this.
20         MR. BIALE:  Okay, great.  I'm Noam Biale for the
21    plaintiffs.
22         THE COURT:  Yes.
23         MR. BIALE:  The first question is about the
24    videos.
25         THE COURT:  Yes.
```

1          MR. BIALE:  So I anticipate we will seek to

2    introduce the video of Ms. Ozturk's arrest and

3    potentially the video of Mr. Khalil's arrest.  I totally

4    understand that we don't need to play that in open

5    court.  However, to the extent we want to ask our

6    witnesses whether they saw the video around the time

7    that it was released and what they thought about it,

8    would you like us to -- should we play it for them or

9    should we --

10          THE COURT:  It depends upon their recollection.

11          MR. BIALE:  Okay.  Um --

12          THE COURT:  This is a very well-equipped courtroom

13    and working with Ms. Belmont, if you have an AV person,

14    or persons, she can teach how the audio/visual in this

15    courtroom works.  So again it's your case to try, but my

16    expectation is I would have made the ruling that a video

17    is admissible.  Then if you think you need to refresh

18    your witness or point out some specific thing to a

19    witness, we can go right to that point in the video.

20          Does that answer your question?

21          MR. BIALE:  It does.  I mean I think there may be

22    witnesses who we want to say, you know, "Is Exhibit X

23    the video that you saw at the time?"

24          THE COURT:  Right.

25          MR. BIALE:  I think it's a fairly short video, so

1    we won't belabor the point.  But understood.

2         THE COURT:  It isn't a show, it's a trial, it's a

3    jury-waived trial, I take my duty very seriously, and I

4    want to be very clear as to what the record is.

5         So one other thing on exhibits.  The government

6    has proffered, or I have in my hand some documents that

7    I understand the government takes the position that

8    these are, um, privileged under the law enforcement

9    privilege.

10        Right?

11        MR. KANELLIS:  Yes, sir.

12        THE COURT:  And I want to put on the record how

13   I'm going to deal with them and how I'm going to deal

14   with them at trial, while we're talking about exhibits.

15   I said I would honor that privilege, and I do, and I

16   would examine those materials in camera.

17        Now "in camera," in the operations of this Court,

18   means I'm the only one who's going to look at them, not

19   law clerks, no one else.  And at least by the time we

20   get into this trial, I will have looked at them all, and

21   we've got them secure and will keep them secure.

22        If you refer to them, um, let's say in a 30,000

23   foot view, and say, there is no evidence of some

24   specific conduct, let's say, and you have every -- in

25   other words you're in control here, you can not refer to

1  them at all and, um, I anticipate that if I have to

2  then, I would give notice if it makes some difference to

3  the Court's determination.  But if you say, in argument

4  or otherwise, there's no evidence of X, and within these

5  materials there is evidence of X, I feel it's perfectly

6  okay for me, at the same level of generality, either in

7  the written decision or in open court, to say, "Well,

8  yes, there is," but I won't go any further.

9       Does that -- is that helpful, is that -- I want to

10 give you that guidance.

11      MR. KANELLIS:  That is somewhat helpful, your

12 Honor.  I think the problem is --

13      THE COURT:  Introduce yourself.  I'm sorry.

14      MR. KANELLIS:  Oh, my apologies.  William Kanellis

15 for the United States -- well for the government

16 defendants.

17      THE COURT:  Yes, Mr. Kanellis.

18      MR. KANELLIS:  I think that is somewhat helpful,

19 but obviously the devil's in the details --

20      THE COURT:  They always are in a trial.

21      MR. KANELLIS:  -- um, and I think it would depend

22 upon not only the witness's answer given, but I would be

23 interested in understanding perhaps the reason why the

24 Court would disagree with the witness.  But I don't

25 think that's going to be an issue.

1          THE COURT:  I'm not saying -- the Court, at least

2     sitting here in open court, is not going to disagree

3     with the witness, it may be, upon reflection, I would

4     find the witness not credible, but I understand how to

5     do that.

6          MR. KANELLIS:  Of course.

7          THE COURT:  I'm just not going to have, um, people

8     who refer conclusory to things -- privileges can't be

9     used as a sword and a shield, that's the general

10     proposition I'm following.

11          MR. KANELLIS:  Yes, your Honor.

12          THE COURT:  If you're going to use it as a sword,

13     you're waiving the privilege, because you're saying,

14     "We've got evidence of this," and if we've got the

15     specific evidence, well you've waived it, and now we've

16     got the evidence, it is what it is, and we'll deal with

17     it.  I've been in that -- I can't tell you any more than

18     that.

19          But that leads me -- I was working from the back,

20     but it leads me to -- in your witness list, which is

21     fine, you call certain people "summary witnesses."  Let

22     me tell you what I think that means.  That means that

23     where there are voluminous materials, a witness who has

24     gone over those materials summarizes them.  The

25     underlying materials have to be made available to the

1    other side.  But you're in agreement, so I don't have a

2    problem.

3           MR. KANELLIS:  Yes, sir, we merely do what I've

4    done in other District Courts, 1006(6)(11)(a), we will

5    make available the underlying, um -- the underlying data

6    to the other side, they're welcome to question the

7    witness --

8           THE COURT:  And that's satisfactory to the Court.

9           MR. KANELLIS:  Thank you, your Honor.

10           THE COURT:  Perfectly satisfactory.  And that's

11    what I thought you meant when you said a "summary list."

12           MR. KANELLIS:  Your Honor, while I'm standing, I

13    do have a follow-up question.

14           THE COURT:  Go ahead.

15           MR. KANELLIS:  So in other trials we usually --

16    obviously we want to inform the Court with respect to

17    exhibits that everybody can agree on.  Oftentimes though

18    we can't anticipate, Number 1, documents we will need to

19    refresh a witness's recollection or, Number 2, documents

20    needed to impeach a particular witness, if something

21    goes in a way we don't expect.

22           THE COURT:  That's what I meant by "surprise."

23           MR. KANELLIS:  I'm anticipating, your Honor, that

24    you don't expect us to name every potential document

25    that we -- that's fair game, but we can't introduce them

1    --

2         THE COURT:  It's fair game but they better fit

3    into one of those boxes.

4         MR. KANELLIS:  Um, just -- which boxes?

5         THE COURT:  Refreshing the witness or impeaching

6    him.

7         MR. KANELLIS:  Of course.  Of course.  I just

8    wanted to make sure that we don't have to present 1,000

9    exhibits --

10        THE COURT:  You don't have to present impeaching

11   evidence, though -- you've tried cases.  I don't want,

12   and will not accept, end runs around my orders.  I want

13   to have an exhibit list and have it work.

14        MR. KANELLIS:  Yes.

15        THE COURT:  I understand what impeachment is.

16        All right.  Now let's talk timing now.

17        MR. BIALE:  Sorry, your Honor, and I apologize for

18   --

19        THE COURT:  No apology is necessary.

20        MR. BIALE:  Okay, I withdraw the apology.

21        (Laughter.)

22        MR. BIALE:  When would you like the exhibit list,

23   your Honor, the joint exhibit list?

24        THE COURT:  The morning of trial.

25        MR. BIALE:  Okay, perfect.

1          And then the second question I have is, um, you

2     know I'd like to -- and we may get into this later, as

3     we reference in our motion to compel, but we've received

4     a very small number of documents from the government and

5     your Honor has received some additional documents.

6     They're not -- they're certainly not so voluminous that

7     --

8          THE COURT:  Let's --

9          MR. BIALE:  Well I just want to ask with respect

10    to if they're calling summary witnesses to summarize the

11    data that Mr. Kanellis was just talking about, it would

12    be helpful to when we are going to receive that data so

13    we can prepare to cross-examine those witnesses?

14         MR. KANELLIS:  The rule states, your Honor, within

15    a reasonable time.

16         THE COURT:  What do you think is a reasonable

17    time?

18         MR. KANELLIS:  I think sometime next week.

19         THE COURT:  I think that's true.  Before the

20    holiday.

21         MR. BIALE:  Thank you, Judge.

22         THE COURT:  All right.

23         The time for the trial.  The defense has estimated

24    it's going to take 2 weeks.  I'm prepared to give 9

25    days.  I have a doctor's appointment on the 16th.  I sit

1    from 9:00 in the morning till 1:00 in the afternoon.

2    Yes, there will be opening -- or maybe opening

3    statements no longer than 15 minutes a side.  There may

4    be closing arguments, no longer than 1 half hour per

5    side.  I would appreciate, at least by the close of the

6    trial, proposed findings and rulings.

7        I understand that the plaintiffs are --

8    Ms. Belmont said you've got some problem with the second

9    week of trial?

10       MR. BIALE:  Yes, your Honor, so there's a couple

11   of issues.

12       One is, um, so I have a conflict the 14th, 15th,

13   and 16th that will require me to be in New York.

14       THE COURT:  Well I'm looking at this battalion of

15   lawyers here.

16       MR. BIALE:  I thought that you might say that,

17   your Honor, so let me quickly get to the other issue,

18   which is, um, we do have now, that the government has

19   identified for us, um, 12 witnesses, only two of which

20   we've had an opportunity to depose, and time is short

21   between now and the trial.  We have 6 depositions, um,

22   both offensive and defensive, scheduled in the six

23   business days remaining before the trial.  It would be

24   helpful to us certainly to have a brief pause where we

25   could depose these additional witnesses that the

1    government has noticed.

2        THE COURT:  Look -- look, when I collapsed your

3    motion for a preliminary injunction with trial on the

4    merits, the urgency with which you supported a

5    preliminary injunction was not lost on the Court and I

6    have followed the schedule that you people have adopted.

7    You asked that the trial start on the 7th.  I'm ready to

8    have the trial start on the 7th.

9        Now this case is going to require a written

10    opinion.  I take some time in August.  The truth is,

11    because I'll move other things, I have for trial between

12    the 7th of July and the 31st of July.  So I know I'm not

13    going to be here on the 30th of July.  If you're content

14    to wait until sometime in September for an order --

15    remember we're only talking liability in this phase, so

16    maybe the full opinion need not come out.  But as I

17    looked at this case, I thought that if we could get it

18    done in the first two weeks -- 9 days, not 10 -- but if

19    you're all here at 9:00, then we will certainly start on

20    the dot of 9:00, and then there might well be at least

21    an order, conclusory perhaps, in July.  One would think

22    you'd want that.

23        But if you don't, and you want to say, "Well let's

24    go to the next week, the 21st, we'll take a pause," then

25    you can take depositions.  I've had people call my

1    bluff, when I collapsed it with trial on the merits, and

2    the other side said, "Well we need depositions," and I

3    say "There isn't a constitutional right to depositions."

4    Put out subpoenas.  Trial's work.  People focus.

5        You tell me.  What do you want to do?

6        MR. BIALE:  I think I'm going to listen to what

7    the Court said and I'm going to sit down.

8        THE COURT:  All right.

9        Counsel?

10       MR. KANELLIS:  Just a couple of comments, your

11   Honor.

12       We have endeavored to bring witnesses who have,

13   um, they have national security concerns they're dealing

14   with on a daily basis, and they've set aside this time,

15   and we've made them at great cost, um, okay --

16       THE COURT:  Respectfully I'm under the gun too.  I

17   accept that absolutely as you state it, and we'll hear

18   it.

19       MR. KANELLIS:  And let me add this.  Look,

20   depositions, that's a nice thing to have.  We don't need

21   them.  You Honor tries cases every day where there are

22   no depositions.  We understand we may have to go to

23   trial where witnesses have not been deposed.  Those are

24   the breaks.

25       THE COURT:  I'm sure you do.  All right, now let's

1    see.

2         So it's 9 days of trial.  I'm keeping time.  It

3    includes the openings and closings.  And working back,

4    um, well some of these objections we can deal with.  I

5    guess now is the time to work through these issues, some

6    I can handle, some I can't.

7         MR. KANWIT:  Your Honor, I apologize, one final

8    question?

9         THE COURT:  Yes.

10        MR. KANELLIS:  Closing arguments.  Do you expect

11   closing arguments at the very close -- which is fine, as

12   soon as the last witness has taken the stand, we have a

13   30-minute closing?

14        THE COURT:  Well usually I take a recess, but,

15   yes.

16        MR. KANELLIS:  Thank you, your Honor.

17        THE COURT:  I mean the truth is that I expect this

18   to go faster than we've estimated.  I would have given

19   you the 10 days, but I have to take the 16th.

20        It's always, um, an appropriate correction for

21   judges, who can set their own schedules, to be at the

22   mercy of doctors who set theirs.  (Laughter.)  So I have

23   to do it, um, not sit on the 16th.  9 days will do it.

24   But it may well go faster than that, um, and the like.

25        So let me deal with the outstanding matters to the

1  extent that I can, and I'll try to refer, because your

2  joint memorandum has been very helpful.  All right,

3  questions really raised by pending motions.

4      The plaintiffs have filed motions pending with the

5  Court, motions to compel.  The first one is under

6  advisement.  I'll rule on it.

7      Remote testimony?  Now, look, since we're going

8  two weeks, they'll even put them in on the second week,

9  can't you?

10      MR. BIALE:  So, yes, your Honor.  As to two of

11  them there's one that we would not be able to put on --

12      THE COURT:  Where's he or she?

13      MR. BIALE:  She is the one who is in Beirut, so

14  it's most difficult for her to travel.  So we'd ask just

15  to have that one --

16      THE COURT:  Who is she?  Just so I know.

17      MR. BIALE:  Sure.  So her name is Nadia Abu

18  El-Haj, she's a professor at Barnard College, Columbia

19  University.  She's an AAUP member.

20      THE COURT:  You may call her remote.

21      MR. BIALE:  Thank you, Judge.

22      THE COURT:  And all the arrangements are on you,

23  there's time-zone differences and the like.

24      MR. BIALE:  Okay.

25      And just to preview for the Court the two other

```
 1   witnesses who we mentioned in the, um, motion for remote
 2   testimony, they will certainly be able to testify by
 3   Friday the 18th.  It may be difficult to get them to do
 4   it earlier, but that is within the two weeks that --
 5          THE COURT:  Well it's not like you get one week
 6   and they get another week, it's -- the cross-examination
 7   comes out of your time.  I mean you're not taking up
 8   five full days.
 9          MR. BIALE:  Understood, your Honor.
10          THE COURT:  All right.  Okay.
11          MR. KANELLIS:  Your Honor, before you move on to
12   the next, if you're going to allow remote testimony,
13   we'd ask that all our witnesses be available.  We have
14   one witness who is moving to pursue an attache position
15   in London.  If you're going to allow remote testimony,
16   we would ask that that witness be allowed to testify
17   from London on, um --
18          THE COURT:  Well work it out with them when, but
19   fair is fair and you may.
20          MR. KANELLIS:  It's the second Tuesday, the
21   Tuesday of the second week.
22          MR. BIALE:  We have no objection to that, your
23   Honor.
24          THE COURT:  Fine.  That's done.
25          All right.  "Preclude the defendants
```

1  from questions as to the identities of" -- um, these
2  issues come up during the course of the trial.  I -- I
3  don't decide that in limine, I'm not going to preclude
4  anything.  We'll see.
5       "Permit witnesses to testify about" -- that's an
6  evidentiary ruling, I'll make evidentiary rulings when I
7  have to.
8       "Draw certain adverse inferences" -- well at the
9  trial, we'll see how the trial goes.
10      The defense.  "Reconsideration of the Court's
11 order entering a protective order."  In one respect, um,
12 the motion is allowed, the, um -- the, um -- I've
13 allowed this, um, a record to be made of the people that
14 look at the information.  It's without limit of time.
15 It's with a limit of 5 years following the close of the
16 trial.  In all other respects, the protective order
17 remains as the Court has, um, ruled on it.
18      "Exclude evidence based on" --
19      MS. SANTORA:  Your Honor?
20      THE COURT:  Yes?
21      MS. SANTORA:  This is Victoria Santora for the
22 government, may it please the Court.
23      THE COURT:  Yes.
24      MS. SANTORA:  I do have a question about, um, the
25 ruling that you just issued on the protective order.

```
1          THE COURT:  Yes.

2          MS. SANTORA:  Plaintiffs gave their response to

3     our motion for reconsideration and suggested amendments

4     to the paragraph you were just referring to.

5          THE COURT:  If you work it out, you work it out.

6     Give them to me.  But those are the Court's orders.

7          MS. SANTORA:  Yes, okay, thank you, your Honor.

8          THE COURT:  "Exclude evidence based upon, um, not

9     retrying other immigration or judicial proceedings."

10    The breathe here -- and I'm also on Page 9, Subparagraph ii,

11    is to more.  I'm not going to make any findings of fact

12    in anybody else's case, whether the case is wholly

13    administrative or whether it's pending in some other

14    court.  But we're certainly going to take evidence with

15    respect to what was known about what's going on in those

16    cases.  So I'm going to allow that.

17          This business about Veena Dubal, waiving the

18    attorney-client privilege.  I'm sensitive to that.  If

19    she's going to testify about communications -- and maybe

20    the government, um -- the defendants will allow that and

21    then turn around in cross-examination and say, "Well

22    you've waived it," there might be something to that.

23          The last point is about, um, additional documents.

24          MR. KANELLIS:  Your Honor, I'm sorry -- I'm sorry

25    to keep interrupting, but on the, um --
```

1          THE COURT:  It's not interrupting, I'm just

2     precluding argument, but not interrupting.

3          Go ahead.

4          MR. KANELLIS:  This issue cannot wait until trial

5     and here's why.

6          Ms. Dubal is testifying strictly in the capacity

7     as General Counsel for AAUP, yet, she is testifying as a

8     fact witness.  That's unusual, yes.  But we need a

9     ruling from the Court prior to trial because they've

10    been withholding documents on the basis of a privilege

11    that we need to see in advance of trial.  It's not

12    something that we can wait until she testifies and I

13    make an objection.  We need to see those records.

14         THE COURT:  I've made my ruling.  We'll start the

15    trial.  You won't be disadvantaged insofar as the, um,

16    exercise of the attorney-client privilege.  We'll have

17    to see how it works out.

18         You should understand that I come from a state

19    court system where, um, it, um, allows the drawing of a

20    -- the state court system, that's where I learned how to

21    be a judge, which allows the drawing of an adverse

22    inference from the assertion of an attorney-client

23    privilege.  Just have that in mind.  I've made my

24    ruling.

25         MR. BIALE:  Your Honor, can I just briefly, for

1  the record --

2          THE COURT:  You know --

3          MR. BIALE:  Okay.

4          THE COURT:  And I don't mean to be brusque, but

5  you know when you tell me "for the record," you're

6  trying to convince me.  There are higher courts.  You

7  may get to them.

8          All right, let's see here.  I'll see that everyone

9  has an adequate record.

10         All right, discovery.

11         Now that, um, that takes care of what I, um,

12 wanted to do in this Rule 16 conference.  I have some,

13 um, comments that I think are appropriate as we go into

14 this case, and then I'll stop and take questions briefly

15 because I do want to call you to the sidebar before we

16 conclude.  So let me make these comments.

17         Much has been made of the term "antisemitism" in

18 government-issued documents.  A concern to minimize,

19 ameliorate antisemitism is -- antisemitism now, standing

20 alone, without the adjective "violent" antisemitism or

21 the like, but the government has a legitimate concern

22 trying to ameliorate antisemitism as it has an equally-

23 legitimate concern to ameliorate islamophobia, or any

24 other sectarian, um, expression of hate.

25         I take antisemitism to be the expression of hate

1   or dislike to a person or a group of people based upon

2   their faith, their Jewish faith, or -- or and, perhaps

3   an ethnicity based upon national origin or some

4   geographic position.  And it is the legitimate purpose

5   of government to seek to minimize that -- and again I'll

6   say islamophobia or any sectarian disapproval, um, based

7   upon race or faith or lack of faith.

8        But none of that, as I understand the law, and as

9   I understand the First Amendment, none of that is

10  illegal.  A simple expression, however -- however

11  uncomfortable, however repugnant, that's not against the

12  law, nor can it be in, um, a society dedicated, as our

13  society is, to the First Amendment.  And having said

14  that, um, statements concerning the policies of the

15  State of Israel are political expression and are among

16  the most protected statements under the First Amendment.

17       Now I fully recognize, going in, that these are

18  not, um -- there's not a firm line here, expression can

19  turn into, um, threats, which at a certain level of

20  extremity are properly, um -- and going back to Holmes,

21  that you cannot "cry fire in a crowded theater."  I

22  understand the lines are blurred.  But it's appropriate

23  to say that.

24       Political expression is, um, it seems to this

25  Court, truly protected under the First Amendment, no

1  matter how uncomfortable, no matter how disfavored by

2  the government.  Whereas pure speech, hostile to one's

3  faith or the lack of faith, is I think inconsistent with

4  American values, but it is not the subject of our

5  criminal laws.

6      Now I've talked enough.  A few moments for your

7  questions and then I do want to see you at the sidebar.

8  And we'll start with the plaintiffs.

9      Any questions about what I've said or taken under

10 advisement?

11     MR. BIALE:  No, your Honor, thank you.

12     THE COURT:  All right.

13     And, sir?

14     MR. KANELLIS:  I do have a question to an issue

15 that relates to -- actually partly to the plaintiffs'

16 earlier motion.

17     We have, um, an ample audience here and in high-

18 profile trials I've been involved with in the past,

19 there have been concerns, as there are in this case,

20 regarding the, um, I guess prophylactic measures taken

21 to protect the identify of witnesses.  We've explained

22 that some of our agents have been, um, in other

23 litigation have been the subject of doxxing, agents have

24 been attacked.  Likewise your Honor has -- and we agree,

25 we think it's appropriate to protect the identify of

1    witnesses so that their identities don't prevent fulsome

2    and honest testimony.

3        My question, or actually my recommendation to the

4    Court, is in other trials that I've been in, that

5    sometimes we allow the anonymization of witnesses by

6    using pseudonyms, like "Agent A" or "Ms.", and using

7    somebody's initials, in lieu of their real names, so

8    that, um -- to protect the witnesses from both parties

9    from being doxxed and that sort of thing.

10       THE COURT:  See if you can work it out.  And to

11   the extent you can work it out, the Court, um, will be

12   supportive of it, pretty clearly.  But I need to be

13   clear on who is who, in other words tying it, the record

14   all together, because I have a separate duty.  But so

15   long as I know what we're doing, that should not be a

16   problem.  But no one is going to be in this courtroom

17   masked or otherwise concealed from a public courtroom.

18   The law is pretty clear on that.  But your suggestion is

19   not a bad suggestion.  See if you can work it out.

20       MR. KANELLIS:  Fair enough, your Honor.  And one

21   last concern.

22       Your Honor last week, last Wednesday, I believe,

23   issued an order regarding the identify of the opposing

24   party's witnesses.  We still do not have discovery from

25   the plaintiffs that we've requested even though they

1   have this order in their possession, and the clock's

2   ticking.

3           THE COURT:  I understand.

4           MR. KANELLIS:  So I would ask that --

5           THE COURT:  I'm only going to rule on motions, and

6   the motions I have, I've ruled on them.

7           All right, let's go off the record.  Come up to

8   the sidebar.

9           (Sidebar, off the record.)

10          THE COURT:  And we'll recess.

11          THE CLERK:  All rise.

12          (Ends, 12:30 p.m.)

```
1                    C E R T I F I C A T E

2

3

4          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

5     hereby certify that the forgoing transcript of the

6     record is a true and accurate transcription of my

7     stenographic notes, before Judge William G. Young, on

8     Thursday, June 26, 2025, to the best of my skill and

9     ability.

10

11

12

13
      /s/ Richard H. Romanow 06-27-25
14    _____
      RICHARD H. ROMANOW  Date
15

16

17

18

19

20

21

22

23

24

25
```