UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS, ET AL.,

                Plaintiffs,

     -v-

MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL.,

                Defendants.

Civil Action No. 1:25-cv-10685-WGY

Declaration of William S. Walker

## DECLARATION OF WILLIAM S. WALKER

I, William S. Walker, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. Todd Lyons, Acting Director of ICE, has delegated to me the authority to assert the deliberative process privilege and law enforcement privilege on his behalf regarding the documents at issue in this litigation.

2. I am the Acting Deputy Executive Associate Director for Homeland Security Investigations (HSI) at U.S. Immigration and Customs Enforcement (ICE) within the U.S. Department of Homeland Security (DHS). This is a career position, not political, and is the second-highest ranking position at HSI. In this role, I oversee a workforce of more than 10,000 employees, including special agents, criminal analysts, mission support personnel and contract staff assigned to more than 237 offices throughout the United States and more than 56 countries around the world.

3. I previously served as the Acting Assistant Director ((A) AD) for Domestic Operations at HSI. As the (A) AD, I was responsible for oversight of 30 HSI Special Agents in

Charge, 237 domestic field offices, and more than 7,100 special agents, ensuring all field operations are working to efficiently execute the agency mission. I began my career with the U.S. Government as an Inspector with the former U.S. Customs Service at the Port of Philadelphia. Over a career that spans 26 years, I have served as a Deputy Special Agent in Charge, an Assistant Special Agent in Charge, and a Supervisory Special Agent with HSI. Prior to my time as (A) AD for Domestic Operations, I served as the Special Agent in Charge of HSI's New York Field Office, where I oversaw more than 700 investigators whose mission was investigating, disrupting, and dismantling transnational criminal organizations and two terrorist networks.

4. This declaration is based on my personal knowledge and experience as a law enforcement officer and information provided to me in my official capacity.

5. I am aware of the instant lawsuit been filed in the U.S. District Court for the District of Massachusetts. I understand that ICE is a named defendant.

6. I submit this declaration to explain the assertion of the law enforcement privilege (LEP) and deliberative process privilege (DPP) with respect to highly sensitive information that Plaintiffs seek the court to compel be publicly released. Specifically, Plaintiffs attempted to elicit such information during the June 11, 2025, deposition of Andre Watson, the Assistant Director (AD) of HSI's National Security Division (NSD). The material sought is subject to the law enforcement privilege (LEP) and deliberative process privilege (DPP). ICE's equities would be harmed by the release of this information, as discussed in greater detail below, because public release of this information would undermine ICE's law enforcement efforts.

7. Based upon my personal review and knowledge of the information solicited by Plaintiffs, I am formally asserting LEP and DPP over the answers to following questions, which the government withheld as privileged:

**Material Subject to the LEP:**

a. <u>June 11, 2025 Deposition of AD Watson, page 244:16 through page 245:11</u>:

   i. "Q: Do you recall whether there was any -- do you recall the kinds -- well, this will draw an objection, but do you recall whether there was any evidence attached to the report of analysis that you received?" [Answer withheld as privileged.]

   ii. "Q: Were you provided any primary source information regarding Mr. Khalil's activities?" [Answer withheld as privileged.]

   iii. "Q: Were you provided, for example, with any flyers from protests that Mr. Khalil allegedly led?" [Answer withheld as privileged.]

b. <u>June 11, 2025 Deposition of AD Watson, page 260:11 through page 263:12</u>:

   i. "Ms. Conlon:  Okay. So before I continue questioning, I'm just going to make a record of the topics that I would cover with Mr. Watson with respect to the four other targeted noncitizens . . . First, the content of any referral made under this new process to the Department of State, including its basis; second, the content of the accompanying letter; third, the HSI profile of the targeted noncitizen; fourth, the report of analysis concerning the targeted noncitizen; fifth, communications with anyone concerning the decision to take action against the targeted noncitizen and the nature of the actions that was discussed. I've lost count of the number, but next, communications concerning the manner in which any subsequent action would be taken against a targeted noncitizen, including with respect to the manner of their arrest and detention … to complete it, and more generally and most

importantly, the basis of the referral determinations, the reason these noncitizens were referred."

[Withholding as privileged any information beyond the "practices, policies, and protocols, generally in play at the time" of the enforcement actions in question.]

**Material Subject to the LEP and DPP:**

c. June 11, 2025 Deposition of AD Watson, page 249:22-24 through page 250:2:

   i. "[Q]: If, in your estimation, Mr. Khalil had sided with terrorists, would the paperwork that you sent to the Department of State have invoked a terrorism-related ground for his removal?" [Answer withheld as privileged.]

8. HSI, the largest investigative arm of DHS and component of ICE, holds broad criminal and administrative investigative authorities, which it employs to disrupt national security and transnational criminal threats to the United States. HSI is authorized to conduct, and does conduct, both criminal and administrative investigations into national security and public safety threats related to immigration and transnational crime. In many cases, the final disposition of an investigation depends on the evidence gathered, and it can be impossible to know in the early stages whether the ultimate result will be criminal prosecution, administrative proceedings, both, or neither. Public disclosure of protected information could also harm the collaborative relationship between ICE and other federal government agencies, counterparts by inhibiting the current willingness – and even creating a disincentive – to share information between and among federal agencies. The post-9/11 model of "need to share" with respect to investigative information has permitted front-line agents and officers to make informed decisions at critical junctures. When agencies and departments work in isolation, such achievements simply are not possible. Any

degradation of information-sharing relationships could lead to poor coordination of investigative efforts, potentially harming public safety and national security.

9. The release of the information that Plaintiffs seek would reveal sensitive information subject to LEP. This includes information regarding the evidence considered in deciding whether to take enforcement action against specific individuals. The revelation of such information could undermine the efforts of HSI to carry out its mission of identifying criminal and national security activities and eliminating vulnerabilities that pose a threat to our nation's borders, as well as ensuring economic, transportation, infrastructure, and national security.

10. In carrying out its mission, ICE depends on the use of law enforcement and investigative techniques, methods, and procedures not widely known to the public; this information is LEP. Put simply, the release of information Plaintiffs seek would compromise ICE's ability to perform its mission and is properly designated LEP. Disclosure of law enforcement privileged information could provide those who wish to harm the United States with valuable information about how the U.S. Government detects, investigates, and thwarts activity that impacts public safety and national security and violates U.S. laws. Disclosure of any such existing information related to investigative processes, coordination with law enforcement partners, or insight into the types of information contained in law enforcement checks could significantly undermine future law enforcement efforts. As described in this declaration, disclosing information that could ultimately provide bad actors with the information they need to evade, or otherwise thwart, U.S. law enforcement efforts has potentially grave consequences for national security and public safety.

11. In addition to the threat posed by general release, if subjects of investigations were to obtain LEP related to the investigations into their activities, should any exist, they could identify

what behaviors are of interest to federal law enforcement, the sources of the information, and/or the methods that the U.S. Government used to gather the information. Such knowledge could allow bad actors to change their behavior in order to evade law enforcement. Hypothetically, even the date on which an investigation began provides valuable insight, in that it can alert an individual to an event that may have triggered the interest of law enforcement. Further, even information regarding closed investigations could provide awareness of investigative techniques that can aid bad actors in avoiding detection by law enforcement agencies or could alert them to potential methods the government has used to obtain specific derogatory information. Disclosure of such types of information increases the likelihood that subjects and potential subjects of investigations will develop methods to obscure or alter such information and behavior and thereby circumvent the agency's efforts to collect information and evidence to thwart serious violations that may affect the national security.

   12. The information withheld under the deliberative process privilege includes the considerations ICE made in deciding the type of enforcement action that would be appropriate with regard to a specific individual.  To create a coordinated and cohesive Executive Branch policy, ICE employees routinely communicate not only with each other, but also with other DHS components, and other federal agencies. Such communications are part of a larger strategic decision-making process, often to effectuate polices programs, executive orders, or other documents. It is crucial that these pre-decisional and deliberative communications be protected because informed and frank discourse among federal officials ensures that ideas, even those that are unpopular, are fully and properly considered by decisionmakers prior to making final decisions.

   13. If disclosed, the release of information ICE has withheld here as DPP could chill an exchange of information between federal agencies, other DHS components, and ICE offices

and employees, thus impeding their decision-making process. This is especially true where, as here, the opinions, proposals, and recommendations of ICE employees may concern controversial approaches to the government's border security and immigration enforcement and ICE's priorities. If ICE employees are aware that their opinions, deliberations, and recommendations may be subject to public disclosure–and the scrutiny and critics that may follow, the candor of their views could be chilled. This chilling effect is magnified when those opinions, deliberations, and recommendations are taken out of context. It is thus critical that pre-decisional and deliberative communications and procedures be protected from disclosure based on DPP.

14. Given the sensitive and privileged nature of the information, there are no precautions that would allow ICE to safely release this information to Plaintiffs or the public at large.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th Day of June 2025.

WILLIAM S WALKER
Digitally signed by WILLIAM S WALKER
Date: 2025.06.27 11:40:31 -04'00'

_____
William S. Walker
Acting Deputy Executive Associate Director
Homeland Security Investigations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security