Exhibit A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| AMERICAN ASSOCIATIONS OF UNIVERSTIY PROFESSORS, ET AL., |
| *Plaintiffs*, |
| v. |
| MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., |
| *Defendants*. |

No. 1:25-cv-10685-WGY

## DEFENDANTS' MOTION TO PARTIALLY RECONSIDER THE COURT'S ORDER HOLDING THE GOVERNMENT WAIVED ALL PRIVILEGES OTHER THAN THE LAW ENFORCEMENT PRIVILEGE OVER IN CAMERA SUBMISSIONS

Defendants respectfully ask this Court to partially reconsider its bench order of July 7, during the 2 p.m. housekeeping conference, determining that Defendants waived all privileges for the documents produced to the Court in camera, ex parte and directing Defendants to submit a detailed privilege log limited to the law enforcement privilege for all documents produced in camera, ex parte. *See* Electronic Order, Dkt. # 184.

(1)     After briefing by the parties on Plaintiffs' June 24 motion to compel, this Court declined to order Defendants to produce the documents that Defendants had submitted in camera on June 11th. *See Am. Ass'n of Univ. Professors v. Rubio*, No. CV 25-10685-WGY, 2025 WL 1796322, *1 (D. Mass. June 30, 2025), Dkt. # 174. Defendants request that the Court reaffirm its determination that they need not produce those documents. Included in that first in camera submission are some of the documents the Court identified in a packaged provided to Defendants on Tuesday, July 8th: the first document of the package (a letter authored by Andre Watson, numbered at pages 15-16

1

of 337), and the last two documents of the package (State Department action memos, which are deliberative documents).

(2)    Defendants request that the Court reconsider its decision that they waived all privileges as to the first in camera submission, as they did timely assert appropriate privileges and provided relevant declarations including, among others, from the White House.

(3)    Defendants request that the Court reconsider its decision that they waived all privileges over the second in camera submission, filed on July 2nd, Dkt. # 181, because Defendants reasonably relied on authority holding that the privilege is not waived for documents produced in camera.

## I.    Three Groups of Documents at Issue

There are three groups of documents at issue. The **first** is the set the Defendants provided the Court for its in camera review on June 11th. *See* Exh. A, Notice of Manual Filing, Dkt. # 131 (unsealed version). These are the documents litigated in a motion to compel following which the Court declined to order produced to Plaintiffs. *See AAUP*, 2025 WL 1796322, *1, Dkt. # 174.

Defendants provided the Court the **second** assemblage of documents on July 2nd for review in camera. *See* Dkt # 181. Defendants are preparing a privilege log for those documents as the Court required by Friday at noon. But there is one document from the first submission that was duplicated in the second in camera submission, which can be found on pages: 15-16, 20-21, 52-53, & 56-57 (the same document appears in the second in camera submission four separate times). This document is duplicative of Exhibit B to Defendants' first in camera submission, litigated over privileges claimed (as described above), and which the Court included in the subset of documents it handed to Defendants on July 8. (Pages 15-16).

Finally, the Court, in its July 7 remarks, referenced a **third** in camera ex parte submission of documents, but Defendants have only made two such submissions. Defendants did submit a third

2

group of documents to the Court in camera on June 27, 2025, *see* Dkt. # 167, but that submission consisted of unredacted versions of documents that had been produced to Plaintiffs with privilege redactions, and which were subject to Plaintiffs' June 24, 2025, Motion to Compel, *see* Dkt. ## 153, 155. The Court denied that motion, *see* Dkt # 174. Additionally, the documents in the June 27 submission relate to the vetting and management of visa issues, which this Court expressly excluded from its July 7 bench order.

## II.    <u>Discussion</u>

**1. Defendants submitted the in camera documents in good faith, without believing they waved any privileges, and the Court has already ruled that the Defendants may withhold certain documents.** In response to the Court's invitation to submit documents for in camera review, Defendants produced several to the Court on June 11th and identified the items that were withheld from Plaintiffs in full due to being law enforcement sensitive and not having been produced or litigated in the individual proceedings of the noncitizens they concerned, and identified additional items that were privileged including under the presidential communications and deliberative process privileges. *See* Exh. A, Notice of Manual Filing, Dkt. # 131 (unsealed version). Defendants did not propose to rely on the material produced in camera to present their case and defend against Plaintiffs' claims but sought only to provide the Court with information it requested about enforcement actions taken in individual cases, while also protecting the law enforcement sensitivities of the documents undisclosed in the individual noncitizens' proceedings (particularly in the absence of a case protective order at the time) and preserving applicable privileges over them. Defendants likewise did not intend to rely on the second set of documents provided to the Court on July 2nd. As Defendants said in their notice of filing, the documents had only recently come to their attention and counsel received them the day before they provided them to the Court. *See* Notice of Submission, Dkt. # 181. Because Defendants wanted to immediately provide the

3

documents given the Court's emphasis on expedition in this Rule 65(a)(2) proceeding, a proper privilege review was not possible.

Defendants believed they were not waiving applicable privileges by providing the documents in camera. *See United States v. Zolin*, 491 U.S. 554, 568-569 (1989) (holding that providing privileged materials in camera does not have the legal effect of terminating the privilege). The in camera process the Court described made particular sense here given there was little time in this expedited Rule 65(a)(2) proceeding for the careful, multi-level review of potential privileges to assert, as well as briefing and arguing privilege issues. And given that in camera review is typically used to determine whether privileges apply, Defendants had believed they would at least be given the opportunity to formally assert the relevant privileges should the Court deem their production to Plaintiffs necessary. *See Logue v. Rand Corp.*, 610 F. Supp. 3d 399, 401 (D. Mass. 2022) (noting that "in camera reviews should be encouraged" and when "the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened") (quoting *In re Grant Jury Subpoena*, 662 F.3d 65, 70 (1st Cir. 2011)); *see also* May 6, 2025, Dkt. # 87, Tr. at 19 ("The government has a deliberative privilege. I must honor it.").

Indeed, it appeared that the Court agreed when, after full briefing, it denied Plaintiffs' June 23 motion to compel production of all the documents provided in camera up to that point. *See* Motion to Compel, Dkt. 153 (sealed); Order, Dkt. 174 at 1. But the Court's July 7th bench order reversed course. Thus, Defendants request that the Court reconsider its bench order to give effect to the issues already litigated and decided — that Defendants did not have to produce those documents.

**2. Additionally, Defendants did timely assert privileges over the June 11 in camera filing.** First, Defendants identified which documents were subject to privilege in the Notice of Manual Filing of the in camera materials. *See* Exh. A. Then, Defendants formally invoked those

4

privileges in response to Plaintiffs' motion to compel by providing agency declarations detailing the bases for its deliberative process and presidential communications privilege assertions. *See* Opp'n to Mot. to Compel, Dkt. 170; *see also Huntleigh USA Corp. v. United States*, 71 Fed. Cl. 726, 727 (2006) (requirements for privilege assertion are satisfied through production of a declaration or affidavit by the agency head in response to a motion to compel); *accord Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1306 (Fed. Cir. 2006) (following majority in holding that the head of department need not invoke the privilege). This included a declaration from John Armstrong, Senior Bureau Official of the U.S. Department of State's Bureau of Consular Affairs, who is authorized to assert the deliberative process and law enforcement privileges, Exhs. B at ¶ 6 & C at ¶ 6.

Defendants also provided a declaration from Gary Lawkowski, Deputy Assistant and Deputy Counsel to the President, who is responsible for matters involving the invocation of the presidential communications privilege. *See* Exh. D at ¶ 1. A finding that the presidential communications privilege is waived is especially troubling given that *before* the White House needs to formally invoke the privilege, the party making the discovery request must show "a heightened need for the information sought." *See Dairyland Power Co-op. v. United States*, 79 Fed. Cl. 659, 662 (2007) (citing *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004) and *In re Sealed Case*, 121 F.3d 729 (D.C. Cir.1997)). There has yet to be such a showing and concomitant finding. Nevertheless, the White House, before it needed to, provided a declaration asserting the privilege. So, Defendants timely asserted the privileges over documents in the first in camera production.[1]

---

[1] In their response to Plaintiffs' motion to compel, Defendants also noted that they had learned on the filing date of their response that one document in their June 11 in camera submission also contained third-party agency information that was law enforcement privileged. *See* Dkt. 170 at 11, n.2. Defendants asked the Court for permission to supplement their opposition to formally invoke

Because Defendants timely asserted the privileges, the parties litigated the privileges' validity, and the Court already declined to pierce the privileges, Defendants respectfully request that the Court reconsider its July 7 order that they waived all privileges for the documents produced in the first in camera submission, and that it not require the government to produce them or create a privilege log limited to the law enforcement privilege.

Also included in this request for reconsideration is a document provided to the Court as part of the second in camera submission because it is duplicative of one the Court already declined to order produced in the first submission. *See, supra*, § I.  Defendants included the document in the second submission for context and completeness because it was attached to multiple emails being newly provided in the second in camera filing, not because it differs in any way or because Defendants intended to rely on it. The Court declined to order this document produced in its June 30th decision. *See AAUP*, 2025 WL 1796322 *1, Dkt. 174.

**3. The Court should reconsider its ruling that Defendants have waived all privileges over the second in camera submission.** The waiver includes information subject to the attorney client privilege, the deliberative process privilege, and the law enforcement privilege. Exhibit E is an example of the type of privileges the Court has decided the government has waived. This is the privilege log Defendants have prepared for the subset of in camera documents the Court indicated on Tuesday, July 8, that it intended to give to Plaintiffs excepting the Government's objections. The log also shows the Defendants do not intend to be over inclusive in their assertions of privilege. *See* Dkt. # 189. Defendants reasonably expected that they were not waiving the privilege by providing the documents for in camera review where they had no intention of relying on them at trial and

---

that privilege should the Court deem such an invocation necessary. *Id.* Because the act of invoking the privilege over that information would reveal the underlying information subject to the privilege assertion, Defendants will submit a supporting declaration to the Court in camera and ex parte on Friday in response to the Court's order.

provided them because the Court had expressed an interest in seeing such information. *See* June 2, 2025, Tr. at 32 (expressing interest in seeing the arrest plans). In this case, the consequences of waiver are significant because it involves not only the deliberative process privilege but also the attorney client privilege.

Should the Court deny this motion, Defendants respectfully request a stay of any order the Court may issue to produce the documents so that the Solicitor General can evaluate whether to seek mandamus relief before the privileges are irretrievably lost.

In any event, Defendants are preparing a privilege log for the documents in the second in camera submission and will file it by Friday.


Respectfully Submitted,

BRETT A. SHUMATE                          WILLIAM KANELLIS
Assistant Attorney General

DREW C. ENSIGN                            *Ethan B. Kanter*
*Deputy Assistant Attorney General*       ETHAN B. KANTER
                                          *Chief, National Security Unit*
                                          *Office of Immigration Litigation*
                                          *Civil Division, U.S. Department of Justice*
                                          *P.O. Box 878, Ben Franklin Station*
                                          *Washington, D.C. 20001*

                                          PAUL F. STONE
                                          *Deputy Chief, National Security Unit*
                                          *Office of Immigration Litigation*

Dated: July 8, 2025                       *Counsel for Defendants*

## MEET AND CONFER CERTIFICATION

In accordance with Local Rules 7.1(2) and 37.1, the parties previously met and conferred concerning these documents as they were already the subject of Plaintiffs June 24 Motion to compel.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


Date: July 8, 2025

By: *Ethan B. Kanter*
ETHAN B. KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*
*P.O. Box 878, Ben Franklin Station*
*Washington, D.C. 20001*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATIONS OF UNIVERSTIY PROFESSORS, ET AL.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL.,<br><br>*Defendants.* | No. 1:25-cv-10685-WGY<br><br>**NOTICE OF SEALED SUBMISSION OF DOCUMENTS FOR** ***IN CAMERA, EX PARTE* REVIEW** |

## <u>INDE   RELATING TO THE SEALED, *IN CAMERA, EX PARTE* SUBMISSION OF DOCUMENTS</u>

Pursuant to the Court's invitation to submit documents for *in camera* inspection, the Government respectfully submits the following:

**E  hibit A.**     Report on Department of State Authorities to Counter Anti-Semitism and Recommendations for Familiarizing Institutions of Higher Education with the Security and Related Grounds for Visa Inadmissibility. This document is subject to the deliberative process privilege and the presidential communications privilege and therefore has been withheld from Plaintiffs in full.

Exhibits B-K are Department of Homeland Security documents that relate to specific individuals. These documents are law enforcement sensitive and have not been filed in any other proceedings or otherwise shared with the individuals discussed therein. They have therefore been withheld from Plaintiffs in full.

**E  hibit B.**     Letter to Andrea Toll Whiting, Director of Field Operations, U.S. State Department on ████████████ ;

1

**E hibit C.**     HSI Report of Analysis on ██████████;

**E hibit D.**     Letter to Andrea Toll Whiting, Director of Field Operations, U.S. State Department on ██████████;

**E hibit E.**     HSI Report of Analysis on ██████████;

**E hibit F.**     Letter to John L. Armstrong, Senior Bureau Official Bureau of Consular Affairs, U.S. State Department on ██████████;

**E hibit G.**     HSI Report of Analysis on ██████████;

**E hibit H.**     Letter to John L. Armstrong, Senior Bureau Official Bureau of Consular Affairs, U.S. State Department on ██████████;

**E hibit I.**     HSI Report of Analysis on ██████████;

**E hibit J.**     Letter to John L. Armstrong, Senior Bureau Official Bureau of Consular Affairs, U.S. State Department on ██████████;

**E hibit  .**     HSI Report of Analysis on ██████████.

The following are Department of State documents that relate to specific individuals. These documents are subject to the deliberative process privilege and have not been filed in any other proceedings or otherwise shared with the individuals discussed therein. They have therefore been withheld from Plaintiffs in full.

**E hibit L.**     Action Memo for the Secretary -- Removal of ██████████ and ██████████ under INA 237(a)(4)(C);

**E hibit M.**     Action Memo for the Secretary -- Determination of Deportability of ██████████ under INA 237(a)(4)(C);

**E hibit N.**     Action Memo for the Secretary -- Determination of Deportability of ██████████ under INA 237(a)(4)(C);

**E hibit O.**    Action Memo for Senior Bureau Official John Armstrong -- ████

Visa Revocation.

Respectfully Submitted,

BRETT A. SCHUMATE                           WILLIAM KANELLIS
*Assistant Attorney General*

                                            *Ethan B. Kanter*
YAAKOV M. ROTH                              ETHAN B. KANTER
*Principal Deputy Assistant Attorney General*   *Chief, National Security Unit*
                                            *Office of Immigration Litigation*
DREW C. ENSIGN                              *P.O. Box 878, Ben Franklin Station*
*Deputy Assistant Attorney General*         *Washington, D.C. 20001*

LEAH B. FOLEY
*United States Attorney*

SHAWNA YEN                                  *Counsel for Defendants*
*Assistant United States Attorney*
*District of Massachusetts*


*Dated  June 11, 202*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS, ET AL.,

                Plaintiff,

      -v-

MARCO RUBIO, in his official capacity as
Secretary of State, and the DEPARTMENT OF
STATE, ET AL.,

                Defendant.

Civil Action No. 1:25-cv-10685-WGY

Declaration of John Armstrong

## DECLARATION OF JOHN ARMSTRONG
## ASSERTING DELIBERATIVE PROCESS PRIVILEGE

I, John Armstrong, hereby declare under penalty of perjury:

1. I am the Senior Bureau Official within the U.S. Department of State's Bureau of Consular Affairs. I am a career member of the Senior Foreign Service with the rank of Counselor. Prior to becoming the Senior Bureau Official, I briefly served as the Deputy Assistant Secretary for Overseas Citizen Services. I served overseas as the Consul General in Lima, Peru; as Economic Counselor in Warsaw, Poland; as Consular Section Chief and Acting Deputy Chief of Mission in Nassau, Bahamas; Deputy Consul General in Kyiv, Ukraine; and Nonimmigrant Visa Chief in Bucharest, Romania. I have also previously served domestic assignments in Washington, D.C., as Director of the Office of Eastern European Affairs, Director of the Washington Passport Agency, Senior Political Officer on the Russian Desk, and Belarus Desk Officer.

2. As the Senior Bureau Official, I play a central role in formulating and implementing

policies related to the protection of U.S. citizens abroad, visa and passport issuance, and consular operations globally. In this capacity, I routinely participate in internal deliberations with Department officials and interagency partners concerning complex policy issues, operational planning, and diplomatic strategy.

3. This declaration is based on my personal knowledge and vast professional experience. In my official capacity as Senior Bureau Officer, I have exercised oversight over matters involving United States citizen services abroad. These matters all encompass the sensitive deliberative process of the Department.

4. I am aware of the instant lawsuit that has been filed in the U.S. District Court for the District of Massachusetts. I understand that Marco Rubio in his official capacity as Secretary of State, in addition to the Department of State are named defendants.

5. I submit this declaration to explain the assertion of the deliberative process privilege (DPP) with respect to highly sensitive information that Plaintiffs seek the court to compel be publicly released.

6. The authority to assert the deliberative process privilege in judicial and administrative proceedings for the Department of State has been delegated to me in Department Delegations of Authority No. 479 and No. 577, as published in the Federal Register.

7. Based upon my personal review and knowledge of the information solicited by Plaintiffs, I am formally asserting DPP over the documents and information identified below, which the government withheld as privileged:

**Material Subject to the DPP:**

    i. Report on Department of State Authorities to Counter Anti-Semitism and Recommendations for Familiarizing Institutions of Higher Education with

the Security and Related Grounds for Visa Inadmissibility

ii. Portions of the deposition of Senior Bureau Official John Armstrong, related to interagency and Presidential communications, based upon the rough transcript of that deposition that is currently available (Defendants have not yet had an opportunity to identify/request any necessary corrections to the transcript)

iii. Portions of the deposition of Senior Bureau Official John Armstrong related to the draft report, prepared for the White House concerning a "catch and revoke" policy implementing Executive Orders No. 14161 and No. 14188, based upon the rough transcript of that deposition that is currently available

iv. Portions of the deposition of Senior Bureau Official John Armstrong related to Department of State decisions involving the Five Targeted Noncitizens, based upon the rough transcript of that deposition that is currently available

v. Department of State action memoranda to the Secretary of State concerning Removal or Determinations of Deportability (three) and to Senior Bureau Official John Armstrong concerning a visa revocation (one)

vi. Interrogatory responses related to the above

8. As the lead federal agency for United States foreign affairs, the Department of State is responsible for advancing American interests abroad, promoting peace and security, and implementing the President's foreign policy. The Department engages with foreign governments, global organizations, and domestic agencies on a broad range matters pertaining to human rights, counterterrorism, immigration, and U.S. citizen protection abroad. Mission fulfilment is reliant upon candid internal deliberations and robust

interagency coordination to develop effective strategies, perform adequate risk assessment, and respond to complex global issues.

9. With regard to the report named in this declaration and identified in the Government's Index as Exhibit A, it was prepared to support internal agency deliberations within the Department, across interagency partners, and with the President and his advisors. This document is both pre-decisional and deliberative in nature. It reflects internal agency assessments, legal and policy interpretations, and potential courses of action that have not been finalized or adopted. Sensitive foreign policy and national security matters are contained within this report.

10. The release of the information that Plaintiffs seek would reveal sensitive information subject to DPP.  This includes information pertaining to diplomatic engagement strategies, policy proposals, and interagency coordination. The revelation of such information could undermine the efforts of the Department to carry out its mission of promoting peace and security through robust and candid internal deliberations.

11. In carrying out its mission, the Department of State depends on candid internal deliberations and the ability of its personnel to provide frank assessments without the fear of premature and improper disclosure. Put simply, the release of the information Plaintiffs seek would compromise the Department's ability to perform its mission and is properly designated DPP. Disclosure of deliberative process privileged information could provide those who wish to harm the United States with valuable information in the form of a roadmap to the government's internal decision-making processes. This roadmap would reveal strategic priorities, vulnerabilities, or areas of uncertainty that our adversaries could exploit.

12. If disclosed, the release of information the Department has withheld here as DPP could chill an exchange of information between federal agencies, thus impeding their decision-making process. This is especially true where, as here, the opinions, proposals, and recommendations of Department employees may concern controversial approaches to the government's foreign affairs priorities. If Department employees are aware that their opinions, deliberations, and recommendations may be subject to public disclosure –and the scrutiny, potential misinterpretation and critics that may follow, the candor of their views could be chilled. It is thus critical that pre-decisional and deliberative communications and procedures be protected from disclosure based on DPP.

13. Given the sensitive and privileged nature of the information, there are no precautions that would allow the Department of State to safely release this information to Plaintiffs or the public at large.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th Day of June 2025.

John Armstrong
Senior Bureau Official
Bureau of Consular Affairs
U.S. Department of State

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS, ET AL.,

                    Plaintiff,

        -v-

MARCO RUBIO, in his official capacity as
Secretary of State, and the DEPARTMENT OF
STATE, ET AL.,

                    Defendant.

Civil Action No. 1:25-cv-10685-WGY

Declaration of John Armstrong

## DECLARATION OF JOHN ARMSTRONG
## ASSERTING LAW ENFORCEMENT PRIVILEGE

I, John Armstrong, hereby declare under penalty of perjury:

1. I am the Senior Bureau Official within the U.S. Department of State's Bureau of Consular Affairs. I am a career member of the Senior Foreign Service with the rank of Counselor. Prior to becoming the Senior Bureau Official, I briefly served as the Deputy Assistant Secretary for Overseas Citizen Services. I served overseas as the Consul General in Lima, Peru; as Economic Counselor in Warsaw, Poland; as Consular Section Chief and Acting Deputy Chief of Mission in Nassau, Bahamas; Deputy Consul General in Kyiv, Ukraine, and Nonimmigrant Visa Chief in Bucharest, Romania. I have also previously served domestic assignments in Washington, D.C., as Director of the Office of Eastern European Affairs, Director of the Washington Passport Agency, Senior Political Officer on the Russian Desk, and Belarus Desk Officer.

2. As the Senior Bureau Official, I routinely engaged with matters directly involving United States and foreign law enforcement. In this role, I oversee issues related to the arrest,

detention, or welfare of United States citizens abroad. This often requires coordination with agencies such as the Federal Bureau of Investigation, Department of Homeland Security, and foreign police authorities. I also work closely with interagency partners on efforts to detect and prevent passport and visa fraud. These investigations often require sensitive investigative information.

3. This declaration is based on my personal knowledge and vast professional experience. In my official capacity as Senior Bureau Officer, I have exercised oversight on matters involving United States citizen services abroad. These matters include law enforcement coordination.

4. I am aware of the instant lawsuit that has been filed in the U.S. District Court for the District of Massachusetts. I understand that Marco Rubio in his official capacity as Secretary of State, in addition to the Department of State are named defendants.

5. I submit this declaration to explain the assertion of the law enforcement privilege (LEP) with respect to highly sensitive information that Plaintiffs seek the court to compel be publicly released.

6. The authority to assert the law enforcement privilege in these proceedings for the Department of State has been delegated to me in Department Delegation of Authority No. 577, as published in the Federal Register, and a Delegation of Authority approved on June 27, 2025, and pending publication in the Federal Register.

7. Based upon my personal review and knowledge of the information solicited by Plaintiffs, I am formally asserting LEP over the documents and information identified below, which the government withheld as privileged:

**Material Subject to the LEP:**

i. Department of State Guidance to the field (posts worldwide involved in providing visa services) in the form of cables, memoranda, and webinar presentations relating to implementation of Executive Orders No. 14161 and No. 14188, social media vetting, security in visa adjudications, visa ineligibilities, visa applicant qualifications, including for students and exchange visitors, and visa revocations

ii. Portions of the deposition of Senior Bureau Official John Armstrong related to Department of State decisions involving the Five Targeted Noncitizens, based upon the rough transcript of that deposition that is currently available (Defendants have not yet had an opportunity to identify/request any necessary corrections to the transcript)

iii. Nonpublic versions of the Foreign Affairs Manual/Foreign Affairs Handbook dealing with visa ineligibilities, visa applicant qualifications, including for students and exchange visitors, and visa revocations

iv. Interrogatory responses related to the above

8. The Department of State, particularly the Bureau of Consular Affairs, performs security vetting, in collaboration with interagency law enforcement and other partners, of millions of U.S. visa applicants and visa holders annually. That security vetting involves law enforcement, intelligence, and national security resources and equities.

9. The documents and information withheld contain law enforcement and national security terminology, techniques, processes, procedures, and other information compiled for law enforcement and intelligence purposes, including fraud prevention. Disclosure of this

information would reveal highly sensitive screening and vetting techniques that are used by law enforcement and intelligence partners and could allow visa applicants to avoid fraud detection or national security review and reasonably be expected to risk circumvention of the immigration, criminal, and/or anti-terrorism laws.

10. The release of the information that Plaintiffs seek would reveal sensitive information subject to LEP. This includes information related to how potential visa ineligibilities are assessed throughout the visa application process and throughout the period of the visa's validity. The revelation of such information could undermine Department of State and U.S. Government to uphold U.S. immigration laws and identify national security and public safety threats.

11. Visa security vetting techniques, methods, and procedures are not widely known to the public because the release of such LEP information would compromise the U.S. Government's ability to continue properly vetting visa applicants and visa holders. Disclosure of law enforcement privileged information could provide those who wish to harm the United States with valuable information about how the U.S. Government detects, investigates, and thwarts activity that impacts public safety and national security and violates U.S. laws. Disclosure of any such existing information related to investigative processes, coordination with law enforcement partners, or insight into the types of information contained in law enforcement checks could significantly undermine future law enforcement efforts.

12. As described in this declaration, disclosing information that could ultimately provide bad actors with the information they need to evade, or otherwise thwart, U.S. law enforcement and national security efforts has potentially grave consequences for national security and

public safety.

13. Given the sensitive and privileged nature of the information, there are no precautions that would allow the Department of State to safely release this information to Plaintiffs or the public at large.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th Day of June 2025.

John Armstrong
Senior Bureau Official
Bureau of Consular Affairs
U.S. Department of State

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., | ) ) ) | Civil Action No. 1:25-cv-10685-WGY |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., | ) ) ) ) |  |
| Defendants. | ) ) ) ) |  |

## DECLARATION OF GARY M. LAWKOWSKI

I, Gary Lawkowski, declare:

      1.      I currently hold the position of Deputy Assistant to the President and Deputy Counsel to the President. I joined the White House Counsel's Office as a deputy on January 20, 2025. In this capacity, I am responsible for, among other things, providing legal advice to White House staff, including advice on matters involving the invocation of the presidential communications privilege.

      2.      I submit this declaration formally invoking the presidential communications privilege with respect to several documents and communications requested in discovery by Plaintiffs, including a document submitted for *in camera* review. I base this declaration on my personal knowledge, information made available to me in the performance of my duties, and my knowledge of the issues being litigated in the above-captioned case.

1

3.      I am aware that, upon consultation with the Office of the Counsel to the President, the United States has withheld certain documents and communications on the basis of the presidential communications privilege.

4.      On behalf of the Office of the President, I hereby assert the presidential communications privilege with respect to all portions of one document identified in the Government's Index as Exhibit A.  The assertion of privilege is based on my personal review of this document.  In making this declaration, I have also relied on the description of the document provided by my staff and on the description of the document contained in the Government's Index.

5.      I understand that the Department of State is also asserting the deliberative process privilege with respect to this document.  The fact that my assertion is limited to the presidential communications privilege is in no way intended to suggest that this document or portions of this document is not protected in whole or in part by other privileges.

6.      The document as to which the presidential communications privilege is being asserted consists of a report from the Department of State that was solicited by the President of the United States in Section 3 of Executive Order 14,188, *Additional Measures to Combat Anti-Semitism.*  It was transmitted to a Deputy Assistant to the President for circulation and consideration by White House advisers with broad and significant responsibility for investigating and formulating confidential advice to the President. In particular, the withheld document is a March 2025 report entitled "Report on Department of State Authorities to Counter Anti-Semitism and Recommendations for Familiarizing Institutions of Higher Education with the Security and Related Grounds for Visa Inadmissibility," to Julie M. Stufft, Deputy Assistant to the President and Executive Secretary, National Security Council, from Lisa D. Kenna,

2

Executive Secretary, Department of State.  The report includes a "recommendations" section, as requested by the President, regarding actions and authorities withn the jurisdiction of the Department of State to combat anti-semitism as well as for familiarizing institutions of higher education with the security and related grounds for visa inadmissibility to inform confidential deliberations.  The document addresses potential policies and guidance for the Government to pursue regarding combatting anti-semitism and familiarizing insitutitons of higher education with the security and related grounds for visa inadmissibility.

7.      Additionally, I hereby assert the presidential communications privilege with respect to all portions of communications from the White House, including Assistant to the President and Deputy Chief of Staff for Policy and Homeland Security Advisor Stephen Miller and counsel from the Office of White House Counsel, alluded to and discussed in part in the deposition of Senior Bureau Official John Armstrong.  The assertion of privilege is based on my personal review of the transcript for SBO Armstrong's deposition.  In making this declaration, I have also relied on the description of the communications provided by my staff.

8.      I understand that the Department of State is also asserting the deliberative process privilege with respect to these communications.  The fact that my assertion is limited to the presidential communications privilege is in no way intended to suggest that these communications or portions of these communications are not protected in whole or in part by other privileges.

9.      These communications as to which the presidential communications privilege is being asserted consists of interagency telephonic meetings regarding immigration policy.  In particular, the withheld communications occurred primarily in and around March 2025 and included senior White House and cabinet-level officials, such as Assistant to the President and

Deputy Chief of Staff for Policy and Homeland Security Advisor Stephen Miller and counsel from the Office of the White House Counsel. The communications addressed ongoing efforts and potential policies and guidance for the Government to pursue regarding immigration policy, including the specific discussion of one or more executive order issued by the President.

10.     These communications were solicited and received by senior presidential advisors or their staff, including Assistant to the President and Deputy Chief of Staff for Policy and Homeland Security Advisor Stephen Miller and counsel from the Office of the White House Counsel. Mr. Miller is a high-ranking White House staff member who provides support and advice to the President and his senior adivsors. The Office of White House Counsel advises the President, the Executive Office of the President, and the White House staff on legal issues pertaining to the President and the White House.

11.     The document and communications as to which the presidential communications privilege is being asserted were solicited and received by immediate presidential advisors or their staff who have broad and significant responsibility for investigating and formulating advice to be given to the President with respect to decision-making on the subject of immigration policy. I believe that, without the protection of the presidential communications privilege over the communications described above, presidential advisors and their staffs would be chilled from having candid conversations with senior officials in cabinet agencies, gathering relevant information, exploring alternatives, and providing fully informed recommendations regarding the performance of the President's duties.

12.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27 day of June 2025.

Deputy Counsel to the President

Defendants' Privilege Log for Subset of In Camera Documents Identified by the Court on July 8, 2025

| Beg. Bates Number | En. Bates Number | Custodian | Document Title | Document Date | From | To | Email CC | Email/Memo Subject | Privilege Designation | Privilege Description | Filing Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00001 | 00002 | | | 03/07/2025 | Watson, Andre | Whiting, Andrea Toll | | | none | none | Filed with June 11, 2025 In Camera Submission as law enforcement sensitive, with protective order not yet entered, and regarded as outside the scope of this case as an unresolved issue in the subject's case (a point since clarified), and has not been disclosed publicly, but Defendants would be willing to share it subject to an Attorneys Eyes Only restriction. |
| 00003 | 00003 | William Walker | | 03/09/2025 05:56:44 PM | **LE/PII** @hsi.dhs.gov] | **LE/PII** Walker, William S [William.S.Walker@hsi.dhs.gov] | | Re: Draft Statement/Response | Law Enforcement, Personally Identifiable Information | LEP, PII - Contains names and contact information of non-public facing Homeland Security Investigations law enforcement personnel which, if disclosed, could compromise the safety of such individuals | Filed with July 2, 2025 In Camera Submission |
| 00004 | 00004 | William Walker | | 03/09/2025 06:48:29 PM | **LE/PII** @hsi.dhs.gov] | **LE/PII** Walker, William S [William.S.Walker@hsi.dhs.gov] | | RE: Draft Statement/Response | Law Enforcement, Personally Identifiable Information | LEP, PII - Contains names and contact information of non-public facing Homeland Security Investigations law enforcement personnel which, if disclosed, could compromise the safety of such individuals | Filed with July 2, 2025 In Camera Submission |
| 00005 | 00010 | **LE/PII** | | 03/23/2025 07:35:37 PM | **LE/PII** @ice.dhs.gov] | **LE/PII** @ice.dhs.gov] | **LE/PII** @ice.dhs.gov]; **LE/PII** @ice.dhs.gov]; **LE/PII** @ice.dhs.gov]; **LE/PII** @ice.dhs.gov] | FW: Signed memo | Law Enforcement, Personally Identifiable Information, Attorney-Client Privilege, Attorney Work Product | LEP, PII - Contains names and contact information of non-public facing Homeland Security Investigations law enforcement personnel which, if disclosed, could compromise the safety of such individuals; ACP/AW: consists of correspondence between attorneys for ICE's Office of the Principal Legal Advisor (OPLA) and employees of ICE Homeland Security Investigations (HSI) and Enforcement and Removal Operations (ERO) about questions surrounding the applicability of a particular removability charge under the Immigration and Nationality Act; updates from ERO to OPLA attorneys regarding issues with arresting a person of interest; ERO employee discussing the use of law enforcement systems and databases to conduct investigations with OPLA attorneys; and conversations between OPLA attorneys discussing HSI investigation results and issues surrounding that person of interest. | Filed with July 2, 2025 In Camera Submission |
| 00011 | 00015 | | Action Memo for the Secretary | 3/8/2025 | Armstrong, John | U.S. Secretary of State | | Removal of [specific individual LPRs], under Section 237(a)(4)(C) of the Immigration and Nationality Act | Deliberative Process, Personally Identifiable Information | DP: contains candid, internal deliberations assessing pre-decisional recommendations on enforcement actions regarding a specific non-citizen (see Armstrong Declaration at Dkt. # 170-8]; PII: DOB of non-party individuals on p. 00011 | Filed with June 11, 2025 In Camera Submission, withheld from Plaintiffs in full; Privilege declaration filed in support of opposition to Plaintiffs' motion to compel and upheld on June 30, 2025 when the Court denied the motion to compel (Dkt. # 174) |
| 00016 | 00019 | | Action Memo for Senior Bureau Official John Armstrong | 3/21/2025 | Wilson, Stuart | Armstrong, John | | (SBU) Revocation of F1 Visa for Rumeysa OZTURK | Deliberative Process, Personally Identifiable Information | DP: contains candid, internal deliberations assessing pre-decisional recommendations on enforcement actions regarding a specific non-citizen (see Armstrong Declaration at Dkt. # 170-8]; PII: DOB of non-party individual on p. 00016 | Filed with June 11, 2025 In Camera Submission, withheld from Plaintiffs in full; Privilege declaration filed in support of opposition to Plaintiffs' motion to compel and upheld on June 30, 2025 when the Court denied the motion to compel (Dkt. # 174) |