```
 1                 UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS (Boston)

 3                          No. 1:25-cv-10685-WGY

 4

 5   AMERICAN ASSOCIATION of UNIVERSITY PROFESSORS, et al,
             Plaintiffs

 6

 7   vs.

 8

 9   MARCO RUBIO, in his official capacity as
     Secretary of State, et al,

10             Defendants

11                       * * * * * * * * *

12

13

14                    For Bench Trial Before:
                      Judge William G. Young

15

                             EXCERPT
16

17                    United States District Court
                      District of Massachusetts (Boston.)

18                    One Courthouse Way
                      Boston, Massachusetts 02210

19                    Monday, July 14, 2025

20
                             * * * * * * * *

21

22

             REPORTER: RICHARD H. ROMANOW, RPR
23                   Official Court Reporter
                  United States District Court

24       One Courthouse Way, Room 5510, Boston, MA 02210
                      rhr3tubas@aol.com

25
```

```
 1                    A P P E A R A N C E S

 2

 3   RAMYA KRISHNAN, ESQ.
     CAROLINE DeCELL, ESQ.
 4   ALEXANDER ABDO, ESQ.
     SCOTT B. WILKENS, ESQ.
 5   ALEXANDRA CONLON, ESQ.
        Knight First Amendment Institute at Columbia
 6      University
        475 Riverside Drive, Suite 302
 7      New York, NY 10115
        (646) 745-8500
 8      E-mail: Ramya.krishnan@knightcolumbia.org
     and
 9   COURTNEY GANS, ESQ.
     NOAM BIALE, ESQ.
10      Sher Tremonte LLP
        90 Broad Street, 23rd Floor
11      New York, NY 10004
        (212) 540-0675
12      Email: Cgans@shertremonte.com
        For Plaintiffs
13

14   ETHAN B. KANTER, ESQ.
     WILLIAM KANELLIS, ESQ.
15   VICTORIA M. SANTORA, ESQ.
     JESSICA STROKUS, ESQ.
16      DOJ-Civ
        P.O. 878
17      Ben Franklin Station
        Washington, DC 20044
18      (202) 616-9123
        Email: Ethan.kanter@usdoj.gov
19   and
     SHAWNA YEN, ESQ.
20      United States Attorney's Office
        1 Courthouse Way, Suite 9200
21      Boston, MA 02210
        Email: Shawna.yen@usdoj.gov
22      For Defendants

23

24

25
```

1       P R O C E E D I N G S

2       ***EXCERPT BEGINS***

3       (Resumed, 10:55 a.m.)

4       THE COURT:  The Court takes this opportunity, on

5  the record, in the presence -- in open court, in the

6  presence of counsel, to accept gratefully the invitation

7  of the Court of Appeals to address the, um, mandamus

8  petition both generally and expressly to address the

9  issue of waiver with respect to that petition.

10      I'm going to start by, um, making a request to the

11  Court of Appeals.  I'm not going to argue in any way the

12  substance of the petition.  That's for the parties.  The

13  Court's conduct is all a matter of record.  And the

14  transcript governs and is more, um, important than

15  anything I say now.  But I'm going to start with the

16  request, simply as a matter of case management, that I

17  would make of the Court of Appeals.  And it is this.

18      I request the Court of Appeals to lift the stay,

19  though I express no opinion on the disposition of the

20  petition for mandamus, and it might well, um -- it's

21  entirely up to the Court of Appeals, it might well make

22  sense to let the petition survive so that it may have

23  the benefit of further proceedings in this court.

24      But I would ask the Court of Appeals to lift the

25  stay so that the evidentiary portion of this first phase

1  of this jury-waived trial might complete.

2       We are in the, um, second week of a two-week --

3  9-day trial, and once that trial is over, or the

4  evidentiary portion is over, it's appropriate for this

5  Court to sketch what I anticipate will be the necessary

6  further proceedings.

7       This is a case -- and I know the Court of Appeals

8  appreciates this, but this is a case where intent and

9  motive play a significant role, and once the evidence is

10  fully before the Court, it's the Court's intention to

11  take the matter under advisement.  This is not a case

12  where even as to a portion of the case the Court expects

13  that, because of the evidence, to be in a position to

14  make any ruling from the bench, rather the Court expects

15  to take the case under advisement, seek, um, requested

16  findings and rulings from all parties, carefully review

17  the record, and then issue a full written opinion.

18       The actual likelihood of that opinion emerging

19  before September is unlikely.  So the urgency to fully

20  decide the, um, petition is, um, not grave.  Given the

21  fact that what's done is done, the plaintiffs have

22  access to the material which the Court deemed

23  appropriate to subject to cross-examination during the

24  trial, and I adhere to that decision and expect to

25  adhere to it, subject to a proper, um, a claim of

1   privilege during the course of the remaining

2   proceedings.  And I'll speak to that in a moment.

3          And one can anticipate, of course, that as this is

4   only the first phase of this case, if the case were to

5   resolve in favor of the defendant public officials, then

6   of course the plaintiffs would have the right to a

7   plenary appeal.  Contrary-wise, if the case were, at

8   least on what I'll call the "liability phase," resolved

9   against one or more, and I treat them separately, of the

10  defendant public officials, um, that would afford an

11  opinion -- that would afford a place for an

12  interlocutory appeal, should the Court of Appeals wish

13  to evaluate the propriety of that decision while this

14  Court wrestled with the very real problem, even if

15  that's how it were to play out, of redressability,

16  something this Court has not addressed in the -- its

17  hearings thus far.  So that's the Court's approach to

18  the management of this case.

19         Let me then, without arguing the point, um,

20  explain the Court's position with respect to matters to

21  be considered on the petition for mandamus.  And I think

22  it's important to understand that the Court, and I

23  believe the parties, place the documents in question,

24  because at bottom, this is an issue over evidentiary

25  rulings mid trial as to certain documents produced.

1          I separate the documents into three buckets.  What

2     I've called the "core documents," these documents are

3     documents that evidence the transmission of materials

4     about certain target subjects, which I've required the

5     plaintiffs to designate, which they are arguing are

6     exemplars of their so-called "ideological deportation

7     policy."  The Court of Appeals will understand that the

8     defense asserts there is no such policy and that the

9     proceedings of the government agencies were lawful in

10    every relevant part.

11         So the core documents are the "ROAs," so-called,

12    and transmittal letters, um, e-mails commenting thereon,

13    that were transmitted from the Department of Homeland

14    Security to the Department of State, specifically to the

15    Bureau of Consular Affairs, and certain of those, the

16    transmittal letters that so transmitted them, and, um,

17    thereafter the "decision memos," so-called by this

18    Court, that the Director of the Bureau of Consular

19    Affairs transmitted most, but not all, of the packet to

20    the Secretary of State for decision, as required under

21    the law.

22         The actual interplay is -- and the standard

23    procedure is best illustrated in a chalk that the Court

24    has marked HN, and will attach to the cover letter sent

25    to the Court of Appeals, which, um, so far as this Court

1    can see, accurately describes the standing procedure of

2    both executive departments in handling matters.  It of

3    course does not answer the key question which concerns

4    the content of the materials so transmitted.  So those

5    core materials are the materials that I understand the

6    petition to center upon, and I'll come back to them.

7         There are two other packets of materials that I

8    transmitted in bulk to the Court all together, but I've

9    broken them out for this discussion.  As to one

10    document, which I'll call Exhibit A, the government has

11    properly, and the Court recognizes the proper --

12    "proper" in the sense that I recognize that it's been

13    properly asserted and not waived, the government has

14    asserted an Executive Privilege.  That's a, in this

15    Court's eyes, a difficult issue and one the Court has

16    not resolved and which the Court understands it is free

17    to resolve as the case goes on.  So it's appropriate to

18    indicate to the Court of Appeals what I've told the

19    parties about how it will be resolved.

20         It seems to this Court that there are three

21    possible resolutions.  First, that the Court resolves

22    that the specific document in question is subject to an

23    Executive Privilege.  If it is, whenever the Court makes

24    that determination, it physically forthwith will return

25    the document to defense counsel and make a notation on

1    the record.

2         The second possibility is that, without deciding

3    whether the document is, um, subject to an Executive

4    Privilege, the Court, as it comes to analyze the case --

5    I've read the document and I largely understand it, um,

6    it makes no difference to the decision and the Court

7    needs not cite it.  If that is, um, decided, the Court

8    will immediately return it to the defense counsel and

9    again make a notation on the record.

10        The third possibility is that the Court, um,

11   rejects, overrules the assertion of an Executive

12   Privilege and also decides that the document, which the

13   Court has thus far characterized as "peripherally

14   relevant," is in fact relevant to some conclusion the

15   Court determines to make.  In that case, if the -- if

16   this present petition were, um, still pending, a dispute

17   over this document might be beholden to that petition.

18   And I've told counsel, if I make that decision, I will

19   stay it for 7 days so that they may take action with

20   respect to that document.

21        The third packet of documents are documents as to

22   which I have now allowed privileges to be asserted, and

23   they have been, but which will not figure in the, um,

24   oral testimony as no further documents are going to be

25   produced to the plaintiff -- the plaintiffs by the

1    Court, but which all parties agree the Court may look
2    at, determine privileges, as it goes forward, and I
3    shall do so.
4         Again, if I decide to rely upon and cite a
5    document, implicitly or explicitly, it will be clear
6    that I have overruled the privilege.  If I don't cite
7    the document, it, um -- no ruling is necessary and those
8    documents no longer figure in the case.
9         The written -- were a decision on the petition of
10   mandamus -- for mandamus to await either appeal or allow
11   an interlocutory appeal, again that could all be
12   reviewed in the ordinary course, and evidentiary error
13   will be reviewed, and of course it is, as to whether it
14   makes a substantial difference in the outcome.  And I
15   would have the liberty of, on a full record, to make the
16   findings and rulings that, um, I believe either have or
17   have not been proved by a fair preponderance of the
18   evidence.
19        So let me conclude simply by focusing on the core
20   documents and reiterate -- which do seem central to the
21   issues raised by the petition for mandamus, and, um,
22   respond directly to the Court's use of the word
23   "waiver," which the invitation expressly sought the
24   Court's further explanation.
25        The use of the word "waiver," upon reflection, was

1    infelicitous, so, um, it caused no prejudice to anyone,

2    because the Court followed it up with an explanation.

3    Here is the Court's view of what has happened.

4         The -- during a discussion on the plaintiffs'

5    motion to compel certain documents for, um, which the

6    plaintiffs claim were part of the record of decision of

7    its so-called "ideological deportation policy," the

8    Court declined to, um -- the Court denied the

9    plaintiffs' motion.  But did say -- and again the

10   transcript of what I actually said at the time governs,

11   but I'll characterize it, said, "But I would receive

12   documents as to which the law-enforcement privilege was

13   asserted and I would honor it."

14        Now again the transcript governs.  What happened

15   happened, was that ultimately over 300 documents were

16   submitted to the Court where the defense asserted not

17   only the law-enforcement privilege, but various

18   privileges, and, um, took, with respect to -- when you

19   look at these documents, a very aggressive, um,

20   position.  The Court's -- the Court's review of the

21   documents became more, um, thorough as trial approached

22   and as the acting trial became to the front burner and

23   trial commenced, and the Court, as to these core

24   documents, um, came to the conclusion that the

25   law-enforcement privilege was inapplicable and was

1    asserted extraordinarily overbroadly.  The Court

2    therefore was in a quandary.

3         Should, having overruled the -- that privilege,

4    should the documents be disclosed to the defense?  And

5    the Court determined, to have the fairest possible

6    trial, that such disclosure was in the interests of

7    justice, and I did disclose it.  Disclose them.

8         Various minor issues with respect to the -- I

9    shouldn't call them "minor," but with respect to

10   those -- to that disclosure have been worked out, I

11   believe, to the satisfaction of the parties.  The

12   documents in their raw form I anticipated and expected

13   redaction of e-mails and telephone numbers.  The defense

14   wants more.  The, um -- there was indeed one reference

15   to something that, in all fairness, in fact bore on the

16   law-enforcement privilege, despite the Court's ruling.

17   That was corrected by full cooperation between all

18   parties, and the proper redaction made.

19        I say the use of the word "waiver" was

20   infelicitous because the Court did ask the defense to

21   submit the documents with respect to which it claimed a

22   law-enforcement privilege.  The government now says that

23   they were -- they don't say this expressly, but their

24   position is they were snookered, and I got the documents

25   just to disclose them.  Well that's not so.  I certainly

1    never conceived that anything I said could be thought to
2    estop the Court from making proper rulings with respect
3    to the documents.  And again, the transcript will
4    govern.  But it's the Court's position that proper
5    rulings have been made.
6         One last point which, um, I state again simply to
7    be of assistance to the Court of Appeals.  Today the
8    parties and the Court have had a very productive
9    discussion, the full transcript is of course available
10   to the Court of Appeals, and I recite only
11   determinations that I believe I am still authorized to
12   make with respect to these core documents.  And I have
13   made the following.
14        Actually I've made the following with respect to
15   the assertion of the attorney-client privilege.  Having
16   reviewed the documents and the arguments, I do rule that
17   the attorney-client privilege has been waived.  It
18   simply is inapplicable in a situation where counsel has
19   provided documents to the factfinder, um, on the theory
20   that these documents are relative -- are relevant to the
21   decision, as certainly the core documents are.  That
22   constitutes a waiver of the attorney-client privilege,
23   and the Court, less there be any doubt about it, so
24   rules.
25        In one respect the Court sustains the, um, claim

1    of deliberative process privilege and I have sustained

2    it as to, um, certain provision of legal advice by

3    attorneys in certain e-mails that form a portion of the

4    core documents.  Beyond that sustaining, after

5    discussion with counsel, I make no further rulings as to

6    the deliberative process privilege, or any other

7    privilege, as to the core documents.  And, um, I won't

8    say it's by agreement, but we've worked out that if

9    permitted to continue the trial, I will make what the

10   Court considers appropriate rulings on a

11   question-by-question basis.

12        Essentially the issues relate to the Director of

13   the Bureau of Consular Affairs, Mr. Armstrong, whose

14   testimony had just commenced cross-examination when the

15   stay, um, was transmitted, and a Mr. Watson, who wrote,

16   um, the transmittal letters from the Department of

17   Homeland Security to the State Department.

18        One other thing is significant and I will state

19   it.  I understand that whatever ruling the Court makes

20   as to cross-examination in the course of the trial, the

21   Court is empowered, without objection by the government,

22   to review all the records in its possession, make proper

23   privilege rulings, and rely upon those which it rules

24   the privilege or qualified privilege does not apply.

25        With those explanations, which I truly hope are

1    helpful, the Court will respectfully submit this

2    transcript, just as soon as I get my hands on it, to the

3    Court of Appeals, respectfully and with appreciation for

4    being given the opportunity to comment on these

5    proceedings.

6            *EXCERPT ENDS*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                   C E R T I F I C A T E

 2

 3

 4        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

 5    hereby certify that the forgoing transcript of the

 6    record is a true and accurate transcription of my

 7    stenographic notes, before Judge William G. Young, on

 8    Monday, July 14, 2025, to the best of my skill and

 9    ability.

10

11

12

13
      /s/ Richard H. Romanow 07-14-25
14    _____
      RICHARD H. ROMANOW   Date
15

16

17

18

19

20

21

22

23

24

25
```