UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF UNIVERSITY
PROFESSORS, ET AL.,

                Plaintiffs,

    v.

MARCO RUBIO, ET AL.,

                Defendants.

Case No. 1:25-cv-10685 (WGY)

**PLAINTIFFS' MOTION TO COMPEL
OR FOR AN ADVERSE INFERENCE**

Plaintiffs respectfully move to compel the government to identify and make available for testimony one or more witnesses who are knowledgeable about a central issue in this case—why Defendants decided to arrest the Targeted Noncitizens and transfer them out of the districts where they were arrested.[1] Months before trial began, the Court directed that Defendants identify the government officials with such knowledge. Dkt. 98. It is now apparent, after the testimony of the agents Defendants identified in response to Plaintiffs' interrogatories, that Defendants' selection of these witnesses deprived Plaintiffs and the Court of this critical information. As is now abundantly clear from their testimony, the ICE officials Defendants identified and called to testify were unaware of the decision-making process for arresting and transferring the Targeted Noncitizens and unfamiliar with the procedures for arresting non-criminal noncitizens whose immigration status has been revoked. Moreover, their involvement ended before the Targeted

---

[1] "Targeted Noncitizens" include Mahmoud Khalil, Mohsen Mahdawi, Rümeysa Öztürk, Yunseo Chung, and Badar Khan Suri, as limited by the Court's May 22, 2025 Order. Dkt. 98.

Noncitizens were transferred to Louisiana. Accordingly, Plaintiffs move—regretfully at this stage of the trial—for an order directing Defendants to do what they should have done months ago: identify at least one witness who has direct knowledge and can explain why the Targeted Noncitizens were arrested and transferred in the manner they were. In the alternative, Plaintiffs move for an adverse inference regarding Defendants' decision to arrest and transfer the Targeted Noncitizens.

Since the beginning of this case, this Court has been properly focused on the question of why Defendants decided to arrest the Targeted Noncitizens and swiftly transfer them to a far-flung detention facility in Louisiana. The evidence introduced to date makes clear that Defendants decided to revoke the visas of these individuals, or determine them to be deportable, based on their pro-Palestinian expression. But the government does not have the resources to arrest every person who is deportable or whose visa is revoked. And so, it must prioritize. The four supervisory officers each testified as to their understanding that a decision was made at the highest levels of government to prioritize the arrests of the Targeted Noncitizens, but not a single one of them knew *why*. *See, e.g.*, July 15, 2025 Trial Tr. 107:15–18 (Q: "You're not sure why it was that [the arrest of Mr. Khalil] got assigned to HSI when it was a civil enforcement action[,] as opposed to ERO, correct?" A: "No, I'm not sure why."). That question is a critical one, because its answer goes directly to the question of intent—*i.e.*, why were officers who normally focused on arresting persons for serious crimes suddenly tasked with arresting these student protesters? And it would also go to the question of the policy's existence—*i.e.*, was the decision to arrest these individuals part of the broader policy of targeting students and faculty engaged in pro-Palestinian expression? Similarly, none of the witnesses knew why the Targeted Noncitizens were transferred immediately after their arrest (other than ASAC Cunningham who testified that he understood that Ms. Öztürk was transferred

to Vermont due to a lack of bedspace in Massachusetts but knew nothing about why she was subsequently transferred to Louisiana). *See, e.g.*, July 15, 2025 Trial Tr. 30:23–31:3 (ASAC Crogan testifying that he does not know why Mr. Mahdawi was transferred, because he does not have "any involvement with custody location or determination"). This unusual practice is also relevant to the foregoing questions of why these individuals were targeted.

The obvious relevance of these questions to the case is why Plaintiffs asked Defendants in discovery for the identities of the individuals who proposed to arrest and transfer the Targeted Noncitizens. Dkt. 155-11 (Defs. Resp. to Pls.' Interrog. No. 1) at 6–7 ("Identify the persons who are or were involved in proposing or taking adverse action against any of the Targeted Noncitizen[s]"); *id.* at 3 (defining "adverse action" to include "arresting, detaining, . . . or transferring to a detention facility in Louisiana"). Based on the testimony elicited in depositions and in the trial proceedings, however, the only individuals Defendants identified who have any knowledge of the arrest decisions are the four officers who testified on Tuesday. And again, not a single one of them—it is now apparent—knows *why* those decisions were made, or who specifically made them.

Indeed, *only after* the four officers testified on Tuesday, the government belatedly produced yet another set of documents to the Plaintiffs that identify *new* individuals higher up the command chain who have been directly involved in "proposing or taking adverse action" against Mahmoud Khalil and Yunseo Chung. Ex. 1. These documents also make clear that there are other government officials who are directly responsible for the decision to arrest and detain the Targeted Noncitizens who have yet to be disclosed. *Id*. The record thus reflects the government's repeated obfuscation of the facts that go to the core of this trial: the government's intent in taking adverse actions against the Targeted Noncitizens.

3

To remedy Defendants' failure, Plaintiffs respectfully move the Court for an order requiring Defendants to immediately identify individuals who can appear promptly to testify based on personal knowledge about why the government selected the Targeted Noncitizens for arrest, detention, and transfer. Plaintiffs also move the Court for sufficient time to adequately cross-examine these individuals. Plaintiffs recognize that there are only two trial days left in the schedule the Court set, but to allow Defendants to run out the clock and shield the testimony of these witnesses from scrutiny would effectively reward their obfuscation.

In the alternative, given the late hour, Plaintiffs respectfully request the Court draw an adverse inference as to Defendants' unexplained failure to identify and produce the relevant witnesses. It is settled law that "a party's failure to produce evidence," including the decision to not call a witness, "may justify an inference that the evidence would have been unfavorable to the non-producing party." *United States v. Santana-Perez*, 619 F.3d 117, 124 (1st Cir. 2010). "Although far more common in criminal cases, a missing witness [adverse inference] may be [drawn] in a civil case as well." *Latin Am. Music Co. v. ASCAP*, 593 F.3d 95, 101 (1st Cir. 2010); *see Grajales–Romero v. Am. Airlines*, 194 F.3d 288, 297–98 (1st Cir. 1999) (upholding adverse inference instruction in medical malpractice case).

The First Circuit has established three circumstances in which a missing-witness adverse inference is proper. *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597 (1st Cir. 1989). All three circumstances apply here. First, an adverse inference may be drawn against "a party toward whom the missing witness is 'favorably disposed,' because the party would normally be expected to produce such a witness." *Id.* Second, an adverse inference may be drawn when "a party fails to produce a material witness who is peculiarly available to that party." *Id.* Finally, an adverse

4

inference is proper where a party having *exclusive* control over a witness who could provide relevant, noncumulative testimony fails to produce the witness." *Id.* (emphasis in original).

Here, an adverse inference is warranted if the Defendants fail to identify and produce the relevant witnesses, because the witness(es) at issue are "actually unavailable" to Plaintiffs—Defendants have repeatedly refused to identify those individuals in discovery and throughout trial. *United States v. Pérez*, 299 F.3d 1, 3 (1st Cir. 2002). As a result, the identity of the government officials who *do* have knowledge about why the Targeted Noncitizens were prioritized remain unknown and "actually unavailable" to Plaintiffs and to the Court, unless and until the government identifies them. *Id.* And Defendants have yet to offer any explanation as to why they cannot identify these individuals, despite ample opportunity to do so, especially when such information is available only to them. *See United States v. Díaz-Nieves*, Crim. No. 24-00087 (GMM), 2025 WL 1235492, at *2 (D.P.R. Apr. 29, 2025) ("if . . . the Government 'controls or has peculiar access to a witness and in the circumstances, it may be reasonable to suppose that the [Government] would produce the witness unless the testimony was unfavorable'") (quoting *United States v. Pagán-Santini*, 451 F.3d 258, 267 (1st Cir. 2006)). The Court accordingly should infer that the testimony of witnesses with relevant knowledge would be harmful to Defendants' case.

Finally, because Plaintiffs were forced to expend trial time cross-examining the four witnesses Defendants called—to establish, in part, their *lack* of relevant knowledge—that time should be credited back to Plaintiffs' case and charged instead to Defendants.

July 16, 2025                                    Respectfully submitted,

                                                  /s/ Ramya Krishnan
Edwina Clarke (BBO 699702)                        Ramya Krishnan
David Zimmer (BBO 692715)                         Carrie DeCell
Zimmer, Citron & Clarke, LLP                      Xiangnong Wang

130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com

Noam Biale
Michael Tremonte
Alexandra Conlon
Courtney Gans
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

Talya Nevins
Jackson Busch
Stephany Kim*
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnanknightcolumbia.org
*application for pro hac vice forthcoming

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

    I, the undersigned counsel, certify that on July 16, 2025, I electronically filed the foregoing motion in the United States District Court for the District of Massachusetts using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 16, 2025                                          /s/ Ramya Krishnan
                                                                                 Ramya Krishnan