UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, ET AL., <br><br> Defendants. | Case No. 25-10658-WG |

**DEFENDANTS' MOTION TO STRIKE**

Pursuant to Federal Rules of Evidence 103, 105, 802 and 611, the Defendants respectfully request that the Court strike references to evidence not admitted at trial that are contained in Plaintiffs' Proposed Findings of Fact and Requested Rulings of Law (Plaintiffs' PFRL). Dkt. #252, 254. On multiple occasions, Plaintiffs' PFRL references and relies upon hearsay contained in documents which were not admitted into evidence for their truth. This hearsay includes alleged "facts," textual content, and factual inferences that are contained in documents which, at trial, were subject to a hearsay objection. In each instance, the Court admitted the proffered exhibit into evidence under the limiting condition that the document was not admitted for the truth of its contents – thus precluding the introduction of inadmissible hearsay into the record. *See, e.g., O'Hagan v. M & T Marine Grp., LLC*, 424 F. App'x 811, 817 (11th Cir. 2011) (district court could not consider evidence not introduced at trial in its factual findings and conclusions of law).

Accordingly, the PFRL's references to the substance of these documents, as set forth below, should be stricken. The Defendants respectfully request that the Court disregard and not rely upon them when rendering its judgment in this case.

PFRL Paragraph 46 includes multiple references to the content of Exhibit 229, a document purported to be a mission statement of Canary Mission. This document was not admitted into evidence for its truth. July 9, 2025 Tr. 32:19-23 (Plaintiffs' statement that the offered the document "[n]ot for the truth," and the Court's ruling that, "[s]ince it's not [offered] for the truth . . . [the document] will be admitted, as limited"). However, Paragraph 46 of Plaintiffs' PFRL states:

> *46. Canary Mission publishes a website that blacklists people it deems to be anti-American, anti-Israel, or antisemitic. Its website states that the organization "documents individuals and organizations that promote hatred of the USA, Israel, and Jews on North American college campuses and beyond." Ex. 229. The website contains profiles on individual students and faculty and allows users to search these profiles by name. Id.*

But this paragraph describes the content of Exhibit 229 expressly for its truth: *i.e.*, to show the purported purpose of Canary Mission. It should therefore be stricken in its entirety.

PFRL Paragraph 53 also relies upon Exhibit 229, stating:

> *53. The list of people on Canary Mission's website includes many U.S. citizens. July 10, Tr. Vol. 1, 10:17–18 (Hatch); July 10, Tr., Vol. 2, 108:19–23 (Hatch). It also includes people who were neither students nor faculty, such as "professional[s]." July 10, Tr. Vol. 1, 10:19–11:1 (Hatch); Ex. 229.*

This sentence should be stricken, as it too relies upon Exhibit 229 for its truth – *i.e.*, to show the content and purported purpose of Canary Mission's website. Nor is there a basis for this statement in the testimony of Mr. Hatch. He did not testify that others listed on Canary Mission's website were "professionals." Rather, he responded to questions about "professionals" by explaining that he did recall details about who was on the website. July 10, 2025 Tr.10:11-11:9.

PFRL Paragraph 184 should be stricken because it quotes statements contained in Exhibit 231, a purported Canary Mission profile on Mahmoud Khalil ("Mr. Khalil"). As discussed above, the Court admitted Exhibit 229, another document purportedly found on Canary Mission's website, with the limitation that it was not to be relied upon for the truth of its contents. July 9, 2025 Tr. 34:14-15 (referencing discussion at July 9, 2025 Tr. 32:3-33:25). The Court likewise admitted

Exhibit 231 for a limited purpose: "not for the truth but for the fact of [the profile] being [on the webpage]." *See* July 9, 2025 Tr. 33:1-13, 34:5-15 (limiting the admission of Exhibits 230 and 231, Canary Mission profiles of Mohsen Mahdawi ("Mr. Mahdawi") and Mr. Khalil, respectively). But, as with Plaintiffs' other references to Canary Mission's website in their PFRL, here they make assertions about hearsay found on the website to argue that the Government was targeting Mr. Khalil for his pro-Palestinian speech. Specifically, Paragraph 184 states:

> *184. Canary Mission's website has a profile on Mahmoud Khalil. Ex. 231. The profile asserts that Mr. Khalil led "anti-Israel protests at Columbia," including "a rally where activists chanted 'From the river to the sea'"; that Khalil "justified Hamas terrorism"; that the New York Post reported that a group he associates with "seeks the 'total eradication of Western civilization'"; and that he participated in the "[t]he Pro-Hamas Encampment at Columbia[.]" Ex. 231 at 1–3.*

Because Paragraph 184 is offered for the truth of statements in Exhibit 231, it should be stricken in its entirety.

PFRL Paragraphs 209, 210 and 211 extensively cite to Ex. 226, an Op-Ed co-authored by Rumesya Oztürk ("Ms. Oztürk"), which was not admitted into evidence for its truth. July 8, 2025 Tr.125:5-12 (Plaintiffs' affirmation that the document was not offered for its truth, only the fact of its existence). Specifically, these paragraphs state:

> *209. On March 26, 2024, Ms. Oztürk co-authored an op-ed in the Tufts Daily, titled "Try Again, President Kumar: Renewing Calls for Tufts to Adopt March 4 TCU Senate Resolutions." Ex. 226; July 8 Tr., Vol. 2, 124:16–125:18 (Johnson).*
>
> *210. In that op-ed, Ms. Oztürk and her co-authors criticized Tufts University President Kumar's "automatic rejection, dismissive nature and condescending tone" with respect to three resolutions passed by the Tufts Community Union ("TCU") Senate on March 4, which "demand[ed] that the University acknowledge the Palestinian genocide, apologize for University President Sunil Kumar's statements, [and] disclose its investments and divest from companies with direct or indirect ties to Israel." Ex. 226 at 1. The op-ed stated: "Graduate Students for Palestine joins Tufts Students for Justice in Palestine, the Tufts Faculty and Staff Coalition for Ceasefire and Fletcher Students for Palestine to reject the University's response" to the resolutions. Ex. 226 at 1.*

3

> *211. Ms. Oztürk and her co-authors argued that "[t]he open and free debate demonstrated by the Senate process . . . , together with the serious organizing efforts of students, warrant credible self-reflection by the Office of the President and the University." Ex. 226 at 1. They "affirm[ed] the equal dignity and humanity of all people[,]" and "urge[d] President Kumar and the Tufts administration to meaningfully engage with and actualize the resolutions passed by the Senate." Ex. 226 at 1–2.*

In these paragraphs, Plaintiffs rely on the substance of these hearsay statements made in the Op-Ed to support their claim that the Government targeted Ms. Oztürk for her political speech. These paragraphs should therefore be stricken in their entirety.

Paragraphs 213 and 214 impermissibly include and rely upon the contents of Exhibit 227, a purported Canary Mission profile of Ms. Oztürk, which was admitted into evidence, but not for its content. July 8, 2025 Tr. 129:3-18 ("He's offering it not for the truth but for the fact of its existence"). These paragraphs state:

> *213. Canary Mission's website has a profile on Ms.Oztürk. Ex. 227; July 8, Tr., Vol. 2, 127:25–129:11. In the profile, Canary Mission alleges that Ms. Oztürk "engaged in anti-Israel activism in March 2024," and that she "is a supporter of the Boycott, Divestment, Sanctions (BDS) movement" Ex. 227 at 1. The only evidence in the profile of Ms. Oztürk's alleged anti-Israel activities or political beliefs is the March 26, 2024 Tufts Daily op-ed. Ex. 227 at 2.*
>
> *214. Canary Mission's profile on Ms. Oztürk also lists two courses that Ms. Oztürk teaches at Tufts University. Ex. 227 at 1.*

In these paragraphs, Plaintiffs rely upon the substance of Exhibit 227 to support their theory that Ms. Oztürk's student visa was revoked because of political views expressed in her Op-Ed. As with the PFRL's reliance upon hearsay in Exhibit 226, PFRL Paragraphs 213 and 214, relying upon hearsay in Exhibit 227, should be stricken in their entirety.

Similarly, PFRL Paragraph 251's description of statements on Canary Mission's website should be stricken because it relies extensively on statements made in Exhibit 230, a purported Canary Mission profile of Mr. Mahdawi, which was not admitted into evidence for its truth. July 9, 2025 Tr. 33:5-10 ("Not for the truth but for the fact of it being there."). Paragraph 251 states:

4

> *251. Canary Mission's website has a profile on Mr. Mahdawi. July 9, Tr. 33:1–4; Ex. 230. In the profile, Canary Mission alleges that Mahdawi has "called for Israel's destruction and justified Hamas terrorism[.]" Ex. 230. As evidence, Canary Mission cites to the same November 2023 event at Columbia described above, see supra ¶¶ 246, 248, where Mahdawi led the crowd in chanting "from the river to the sea, Palestine will be free." Ex. 230 at 3. The profile also alleges that Mahdawi "showed support for the pro-Hamas encampment at Columbia[.]" Ex. 230 at 2. The profile notes that Mahdawi is a supporter of the Boycott, Divestment, Sanctions (BDS) movement. Id. at 2. It also states that in December 2023 he served as the co-president of Columbia's Palestinian student union DAR Palestine, that he was affiliated with "the pro-terror activist group Within our Lifetime (WOL) in 2023," and that he was "reportedly a member of Student for Justice in Palestine (SJP) that same year." Id.*

Here again, Plaintiffs rely upon Exhibit 230 to support their claim that the Government targeted Mr. Mahdawi for his political beliefs. Paragraph 251 should therefore be stricken in its entirety.

Paragraph 393 relies upon the contents of Exhibit 224, a November 2023 letter drafted by Brown University faculty, which was not admitted for the truth of its contents. July 8, 2025 Tr. 17:4-24. Paragraph 393 states:

> *393. Prof. Al-Ali also signed onto a November 7, 2023 open letter from Brown University faculty to the university president asking the university president to issue a public statement in support of a ceasefire in Gaza. Ex. 224; July 8, Tr., Vol. 1, 17:7–11, 16–17.*

The entire paragraph should be stricken because it relies upon the substance of the letter in Exhibit 224 – a statement calling for a ceasefire in Gaza. Specifically, Plaintiffs impermissibly rely upon the substance of this letter to contend that Professor Al-Ali, a signatory to the letter, could be targeted by the Government for the pro-Palestinian views expressed in the statement.

PFRL Paragraph 444 cites to the contents of Exhibit 66, an Op-Ed Megan Hyska drafted, which was not admitted into evidence for its truth. July 7, 2025 Tr.58:2-60:6. Paragraph 444 states:

> *444. Prof. Hyska has also refrained from publishing an op-ed she had drafted for fear that she may be arrested like Ms. Oztürk for expressing a viewpoint contrary to that of the Trump Administration. Around the time Prof. Hyska learned of Ms. Oztürk's arrest, Prof. Hyska had drafted an op-ed criticizing the rising authoritarianism of the Trump administration and addressing what effective political resistance might look like. See Ex. 66 (draft op-ed).*

5

The second sentence of this paragraph references the substance of Professor Hyska's political viewpoints expressed in Exhibit 66 – the truth of which Plaintiffs rely upon to support their claim that she believed the Government would target her for her political expression. Accordingly, this second sentence should be stricken.

For the foregoing reasons, the Defendants respectfully request that the Court strike these references from Plaintiffs' PFRL, and not rely upon these citations when rendering its judgment in this case.

Date: August 29, 2025

Respectfully Submitted,

By:  /s/ *William Kanellis*
WILLIAM KANELLIS
ETHAN B. KANTER
Assistant Director
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. 878, Ben Franklin Station
Washington, DC. 20044
(202) 616-9123
ethan.kanter@usdoj.gov

*Counsel for Defendants*

## L.R. 7.1(a)(2) CERTIFICATION

I, William Kanellis, hereby certify that Government counsel conferred with Plainitffs' counsel regarding this motion on August 28, 2025. Plaintiffs' counsel did not consent to the filing of this motion.

*Date: August 29, 2025*                                       By: */s/ William Kanellis*
                                                              WILLIAM KANELLIS
                                                              U.S. Department of Justice

## CERTIFICATE OF SERVICE

I, William Kanellis, hereby certify that on this August 29, 2025, I served this document upon all registered parties via the ECF Notice of Electronic Filing (NEF) system.

| | |
|---|---|
| *Date: August 29, 2025* | By: /*s*/ *William Kanellis* <br> WILLIAM KANELLIS <br> U.S. Department of Justice |