UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 1:25-cv-10685-WGY |

**PROPOSED INTERVENER BOSTON GLOBE MEDIA PARTNERS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND FOR ACCESS TO TRIAL EXHIBITS AND PROVISIONALLY SEALED PLEADINGS**

Proposed Intervener Boston Globe Media Partners, LLC, publisher of *The Boston Globe*

(the "Globe"), respectfully submits this memorandum in support of its motion to intervene and

for the Court to grant public access to all trial exhibits and provisionally sealed pleadings relied

on by this Court in its Findings of Fact and Rulings of Law ("Decision"), ECF No. 261.[1]

---

[1] These include but are not limited to the documents listed below, previously requested by *The New York Times* and *The Intercept*, *see* ECF No. 266, 267:

  i. Memoranda from the U.S. Department of State ("DOS") to the U.S. Department of Homeland Security ("DHS"): Ex. 8 (*see* ECF No. 261 at 36), Ex. 12 (*see* ECF No. 261 at p. 57), Ex. 19 (*see* ECF No. 261 at 36), and Ex. 21 (*see* ECF No. 261 at 58);

  ii. Notification from DOS to DHS regarding the Armstrong determination: Ex. 16;

  iii. Reports of Analysis: Ex. 232 (*see* ECF No. 261 at 63), Ex. 233 (*see* ECF No. 261 at 30), Ex. 234 (*see* ECF No. 261 at 42), Ex. 235 (*see* ECF No. 261 at 45), and Ex. 236 (*see* ECF No. 261 at 28);

  iv. DHS letters to DOS: Ex. 242 (*see* ECF No. 261 at 30), Ex. 243 (*see* ECF No. 261 at 28), Ex. 244 (*see* ECF No. 261 at 49), Ex. 245 (*see* ECF No. 261 at 64) and Ex. 246 (*see* ECF No. 261 at 51);

  v. Action memos: Ex. 247 (*see* ECF No. 261 at 32), Ex. 248 (*see* ECF No. 261 at 52), Ex. 249 (*see* ECF No. 261 at 55), and Ex. 250 (*see* ECF No. 261 at 66); and

  vi. the "chalk" exhibit used at trial to illustrate the steps in ICE's review process: Exhibit HP.

## ARGUMENT

The public has common law and First Amendment rights to access the record relied on by the Court in its Decision, and the strength of these rights are at their highest ebb because the government is a party in this action. *See infra* Sections A and B. The Court previously indicated that it agrees with the spirit of the Globe's request: "The court in its decision will make reference to those things upon which the court has relied. . . . [T]hose things upon which the court has relied . . . unless classified, are then public so the decision may be thoroughly reviewed by . . . anyone who wants to analyze the court's reasoning." ECF No. 239, Trial Tr. Vol. II, 131:11-25 (July 10, 2025). On September 11, 2025, the Court indicated that the provisional seal on exhibits and trial material "shall be lifted upon filing of this Court's findings and rulings." *See* ECF No. 260 (Electronic Order, Sept. 11, 2025).

The Decision, issued on September 30, 2025, did not expressly state whether these provisionally sealed materials remain protected from disclosure. Requests by the press and public indicate that this Court has not yet made the requested materials available, and the Clerk's Office reinforced that position, indicating that "Sealed Exhibits will not be accessible unless by Court Order." *See* ECF No. 267 at 3. The Globe respectfully submits that in light of the public's common law and First Amendment rights of access to these materials and, consistent with the Court's stated intent to make these materials available to the public, *see supra* ECF No. 239, the Court should enter an order unsealing these materials.

### A. The Public Has a Common Law Right of Access to the Record Relied on by the Court.

"The common law presumes a right of public access to judicial records." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9 (1st Cir. 1998). "This presumption of access 'helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public agencies.'" *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (citation omitted). The right "extends to records of civil proceedings." *Siedle*, 147 F.3d at 9-10 (internal quotations and citation omitted). *See generally Nixon v. Warner*

*Commc'ns, Inc.*, 435 U.S. 589, 599 (1978) (recognizing common law right of access to inspect and copy trial exhibits).

"[R]elevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the [common law] presumption of public access applies." *Federal Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987). *See generally In re Providence Journal Co., Inc.*, 293 F.3d 1, 16 (1st Cir. 2002); *Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988) (public right of access to summary judgment documents even if such documents had been subject to protective order entered to facilitate pretrial discovery).

"The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Standard Fin. Mgmt.*, 830 F.2d at 410. "[O]nly the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access . . . ." *Providence Journal*, 293 F.3d at 10 (internal quotations and citation omitted); *see also Standard Fin. Mgmt.*, 830 F.2d at 412 ("exceptional circumstances"); *Siedle*, 147 F.3d at 10 ("[i]mportant countervailing interests"). Conclusory assertions of the need for closure are not accepted as surrogates for hard facts, and doubts are to be resolved in favor of public access. *Continental Illinois Secs. Litig.*, 732 F.2d at 1313; *Standard Fin. Mgmt.*, 830 F.2d at 412; *Siedle*, 147 F.3d at 10. Further, "[t]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access." *Siedle*, 147 F.3d at 10.

The Court has found that the executive branch violated the First Amendment by targeting noncitizen students and faculty for deportation, punishing political speech, and chilling associational rights. The record relied on by the Court in its Decision falls within the public's right of access, a right accentuated by the public's attendant right to "know what the executive branch is about." *Standard Fin. Mgmt.*, 830 F.2d at 410. No compelling, exceptional, or

countervailing interests have been identified to justify keeping the documents sealed, and neither the reputational nor privacy interests of public officials implicated by the unlawful targeting of these noncitizens can reasonably outweigh the public interest in the trial record. *See generally Attorney General v. Pelletier*, 240 Mass. 264, 295, 134 N.E. 407, 414 (1922) (office of district attorney is "purely a public trust to be administered solely for the interest of all the people"); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971) (as matter of constitutional law, a charge of public misconduct can never be irrelevant to an official's or a candidate's fitness for office); *George W. Prescott Publ'g Co. v. Register of Probate for Norfolk Cnty.*, 395 Mass. 274, 277-80 & n.6, 479 N.E.2d 658, 662-63 & n.6 (1985) (vacating impoundment order that prohibited dissemination of deposition of public official accused of misconduct in office). Consistent with the public's common law right of access, the Court should enter an order unsealing the record relied on by the Court in its Decision.

**B.    The Public Has a First Amendment Right of Access to the Record Relied on by the Court.**

The First Amendment independently supports public access to these materials. The First Circuit has held that the public has a First Amendment right of access to court records in criminal cases. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir.1989); *Providence Journal*, 293 F.3d at 10. Although it has not yet decided whether the same constitutional right attaches to the records of civil cases, the rationale employed by the First Circuit and decisions from other Circuits demonstrate that the public's constitutional right of access applies in full force to the records of civil cases. As the First Circuit has recognized, "[a]lthough the [common law and constitutional] rights of access are not coterminous, courts have employed much the same type of screen in evaluating their applicability to particular claims." *Providence Journal*, 293 F.3d at 10. "This overlap is understandable because the jurisprudence discussing the First Amendment right of access to criminal proceedings has been derived in large measure from the jurisprudence that has shaped the common-law right of access." *Id.*

In determining whether the First Amendment right of access applies to a particular judicial proceeding, the Supreme Court has examined two factors: (a) whether there is a historical tradition of openness to the proceedings at issue; and (b) whether public access plays a positive role in the functioning of the governmental process at issue, by, for example, enhancing the quality and safeguarding the integrity of the system, fostering an appearance of fairness, and permitting the public to participate in and serve as a check upon the judicial process. *See generally Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986). The First Circuit has applied the same test to determine whether the public has a constitutional right of access to judicial records in criminal cases. *See Pokaski*, 868 F.2d 497. *See also Providence Journal*, 293 F.3d at 11-13 (First Amendment right of access applies to legal memoranda filed in criminal cases; practice of keeping memoranda inaccessible to the public until reviewed by a judge unconstitutionally reversed the presumption of access).

As to the first question, the public's common law right of access establishes beyond dispute that there is a historical tradition of access to court records of civil cases. *See generally Nixon*, 435 U.S. at 597 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents.").

The public policy principles that underlie the common law right of access to judicial documents in civil cases demonstrate that public access serves a positive role in the functioning of the civil justice system, the second requirement for the constitutional right of access to attach. *See generally Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 387 n. 15 (1979) ("in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases"); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) (First Amendment protects public's right of access to records of civil proceedings); *NBC Subsidiary (KNBC-TV), Inc. v. The Superior Court*, 20 Cal. 4th 1178, 980 P.2d 337, 86 Cal. Rptr. 2d 778 (Cal. 1999) (First Amendment right of access applies to civil

proceedings); *The Boston Herald v. Sharpe*, 432 Mass. 593, 606-07, 737 N.E.2d 859, 869 (2000) (constitutional right of access applies to documents filed in civil domestic violence proceedings).

In sum, the historical tradition of access to the records of civil proceedings, and the positive role that public access plays in the functioning of the judicial system, compel the conclusion that the public has a First Amendment right of access to court records of civil proceedings, at the very least where, as here, the documents are part of the record relied on by the Court in making its Decision. *See Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("an adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny"); *Rushford*, 846 F.2d at 252 ("Because summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now."). *See also Sharpe*, 432 Mass. at 607, 737 N.E.2d at 869 ("it is equally important that the public's understanding of and confidence in the judiciary be facilitated by knowing the basis on which a judge acted in a particular case").

This First Amendment right may be overcome only "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Providence Journal*, 293 F.3d at 10-11 (citation omitted). "This last requirement adds a new dimension and makes the First Amendment standard even more stringent than the common-law standard." *Id.* at 11. This makes the constitutional right of access even more expansive than the common law right, and far more rigorous than the good cause standard of Rule 26(c).[2]

---

[2] Rule 26(c) governs the issuance of protective orders restricting pretrial disclosure of discovery materials. The Rule does not govern the public's presumptive common law and constitutional right of access to records considered by a court in adjudicating the claims and defenses of the parties. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993) (recognizing an "abiding presumption of access to trial records" and "ample reason to distinguish materials submitted into evidence from the raw fruits of discovery") (internal quotations and citation omitted). The Court has recognized that "the ordinary showing of good cause which is adequate to protect discovery material from disclosure cannot alone justify protecting such material after it has been introduced at trial." *Id.*; *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)

The record relied on by the Court in its Decision falls within the public's First Amendment right of access. First, there is a historical tradition of access to records in civil proceedings, especially those relied on by the Court while adjudicating the merits of the dispute. *See supra* pp. 5-6. Second, public access to the record relied on by the Court in its Decision will play a positive role by not only enhancing the quality and safeguarding the integrity of the judicial system, but also by fostering an appearance of fairness, and permitting "the public to participate in and serve as a check upon the judicial process," *Globe Newspaper Co. v. Superior Court*, 457 U.S. at 606. This has been underscored by the Court's recognition of the importance of allowing access to the record upon which it relied in reaching the Decision so the Decision can be "thoroughly reviewed by . . . anyone who wants to analyze the court's reasoning." ECF No. 239, Trial Tr. Vol. II, 131: 11-25 (July 10, 2025).  Finally, there have been no findings that overriding interests demonstrate that "closure is essential to preserve higher values" or that narrow tailoring to access is necessary to serve such interests. *Providence Journal*, 293 F.3d at 10-11.  In the absence of such findings, and consistent with the Court's recognition of the record's importance for the Decision to be "thoroughly reviewed by . . . anyone who wants to analyze the court's reasoning," ECF No. 239, Trial Tr. Vol. II, 131: 11-25 (July 10, 2025), and the public's First Amendment right to access, the Court should enter an order unsealing the record relied on by the Court in its Decision.

## CONCLUSION

For the foregoing reasons, the Globe respectfully requests that the Court grant its motion to intervene and lift any order sealing any portion of the record relied on by the Court in its Decision.

---

("Protective discovery orders are subject to first amendment scrutiny, but that scrutiny must be made within the framework of Rule 26(c)'s requirement of good cause.").

GLOBE NEWSPAPER COMPANY,
INC.,

By its attorneys,


*/s/ Samuel D. Thomas*
**MORGAN, LEWIS & BOCKIUS LLP**
Jonathan M. Albano, BBO #013850
jonathan.albano@morganlewis.com
Samuel D. Thomas, BBO #707801
samuel.thomas@morganlewis.com
One Federal Street
Boston, MA  02110-1726
617-341-7700

Case Smith, BBO #716490
case.smith@morganlewis.com
1111 Pennsylvania Ave NW
Washington, DC 20004
202-739-3000

Dated: November 10, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 10, 2025.

*/s/ Samuel D. Thomas*
Samuel D. Thomas