# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, | |
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-HARVARD FACULTY CHAPTER, | Civil Action No. 1:25-cv-10685-WGY |
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT NEW YORK UNIVERSITY, | |
| RUTGERS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-AMERICAN FEDERATION OF TEACHERS, and | **PLAINTIFFS' MOTION FOR REMEDIES AGAINST DEFENDANTS** |
| MIDDLE EAST STUDIES ASSOCIATION, | |
| Plaintiffs, | |
| v. | |
| MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and the DEPARTMENT OF HOMELAND SECURITY, | |
| TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, and | |
| DONALD J. TRUMP, in his official capacity as President of the United States, | |
| Defendants. | |

## Table of Contents

Table of Authorities ...................................................................................................... ii

Introduction ..................................................................................................................... 1

Argument .......................................................................................................................... 2

    I.    The relief sought is necessary and appropriate. ................................................. 2

        A.    Declaratory relief is warranted because it would resolve substantial and important issues dividing the parties. .......................................... 2

        B.    Vacatur is warranted because Plaintiffs have established violations of the APA. ............................................................................................. 4

        C.    Injunctive relief is warranted because it is necessary to fully remedy Plaintiffs' injuries. ................................................................................... 5

        D.    The remaining relief sought is warranted because it is necessary to address chill and to ensure Defendants' ongoing compliance with the Court's Order. ................................................................................... 8

    II.    The Court has the authority to grant the requested relief. ............................... 10

        A.    Section 1252(f)(1) does not bar the relief sought. ........................... 10

            1.    Declaratory relief is not barred. ........................................... 11

            2.    Vacatur under the APA is not barred. ................................... 13

            3.    The specific injunctive relief sought is not barred. ............................. 14

        B.    The requested relief is consistent with *Trump v. CASA*. ................................ 16

            1.    *CASA* does not alter the availability of declaratory or APA relief. ................................................................................... 17

            2.    The requested injunctive relief is necessary to afford Plaintiffs and their members complete relief. ..................................... 17

Conclusion and Request for Oral Argument ................................................................. 20

Local Rule 7.1(2) Certification ..................................................................................... 22

Certificate of Service ..................................................................................................... 22

## Table of Authorities

**Cases**

*Al Otro Lado v. EOIR*, 120 F.4th 606 (9th Cir. 2024) ................................................. 15

*Al Otro Lado v. EOIR*, 138 F.4th 1102 (9th Cir. 2025) ............................................... 12

*Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029 (S.D. Cal. 2022) ...................... 6

*Am. Fed. of Tchrs. v. DOE*, 2025 WL 2374697 (D. Md. Aug. 14, 2025) .................................. 17

*Asociación de Educación Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1 (1st Cir. 2007) ............................................................................................... 6

*Ass'n of Am. Univs. v. DOD*, 2025 WL 2899765 (D. Mass. Oct. 10, 2025) ............... 4, 13, 14, 17

*Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106 (D. Mass. 2025) ......................... 7

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) ............................................. 7

*Biden v. Texas*, 597 U.S. 785 (2022) ............................................................... 10, 12, 16

*Bos.'s Child. First v. Bos. Sch. Comm.*, 183 F. Supp. 2d 382 (D. Mass. 2002) ............................ 2

*Bridgeport Hosp. v. Becerra*, 108 F.4th 882 (D.C. Cir. 2024) ...................................... 4

*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) ............................................................ 11, 12

*CASA, Inc. v. Noem*, 2025 WL 1907378 (D. Md. July 10, 2025) .................................... 13

*Castañon Nava v. DHS*, 2025 WL 2842146 (N.D. Ill. Oct. 7, 2025) ...................... 9, 10

*Coal. for Humane Immigrant Rts. v. Noem*, 2025 WL 2192986 (D.D.C. Aug. 1, 2025) .......................................................................................................... 13

*Coniglio v. Garland*, 556 F. Supp. 3d 187 (E.D.N.Y. 2021) .......................................... 2

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024) ...................... 4, 17

*D.V.D. v. DHS*, 778 F. Supp. 3d 355 (D. Mass. 2025) ............................................. 12, 15

*DHS v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020) ...................................................... 13

*Doe v. Trump*, 2025 WL 2814730 (1st Cir. Oct. 3, 2025) ............................................... 18

*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) ............................ 20

*Easyriders Freedom FIGHT v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996) ..................... 19

*FCC v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293 (2003) ................................................ 4

*Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022) ................................................................................ 15

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ...................................................................................... 7

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) .............................................................. 11, 14

*Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1 (2023) ....................................................................... 14

*Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018) ..................................................................... 11

*HIAS, Inc. v. Trump*, 985 F.3d 309 (4th Cir. 2021) ..................................................................... 20

*Illinois v. FEMA*, 2025 WL 2716277 (D.R.I. Sept. 24, 2025) ..................................................... 17

*Immigrant Defs. L. Ctr. v. Mayorkas*, 2023 WL 3149243 (C.D. Cal. Mar. 15, 2023) .................................................................................................................................................... 12

*Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972 (9th Cir. 2025) ..................................... 13, 14

*Joyce v. Town of Dennis*, 720 F.3d 12 (1st Cir. 2013) .................................................................... 5

*Kidd v. Mayorkas*, 734 F. Supp. 3d 967 (C.D. Cal. 2024) ...................................................... 2, 13

*L.A. Press Club v. Noem*, 2025 WL 2658327 (C.D. Cal. Sept. 10, 2025) ................................. 19

*Make the Rd. New York v. Noem*, 2025 WL 2576701 (D.D.C. Sept. 5, 2025) ......................... 19

*Massachusetts v. NIH*, 770 F. Supp. 3d 277 (D. Mass. 2025) ...................................................... 4

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ...................................................... 6

*N.S. v. Dixon*, 141 F.4th 279 (D.C. Cir. 2025) ............................................................................. 12

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ...................................................... 19

*New Jersey v. Trump*, 2025 WL 2816889 (D. Mass. July 25, 2025) .......................................... 20

*NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ................................................................ 4

*North Carolina v. Covington*, 581 U.S. 486 (2017) ..................................................................... 18

*NRA v. Vullo*, 602 U.S. 175 (2024) ................................................................................................... 7

*Orr v. Trump*, 778 F. Supp. 3d 394 (D. Mass. 2025) .................................................................... 5

*President & Fellows of Harvard Coll. v. HHS*, 2025 WL 2528380 (D. Mass. Sept. 3, 2025) ............................................................................................................................................ 6

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500 (D.C. Cir. 2016) ........................................................................................... 7

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 2025 WL 1825431 (D.D.C. July 2, 2025) ................................................. 6, 13, 14, 17

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ......................................... 11

*Salinas v. United States R.R. Ret. Bd.*, 592 U.S. 188 (2021) ......................................... 14

*Shaik v. Noem*, 2025 WL 2307619 (D. Minn. Aug. 11, 2025) ................................. 15

*Steffel v. Thompson*, 415 U.S. 452 (1974) ................................................ 11

*Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15 (D.D.C. 2025) ........................................................................................... 9

*Texas v. DHS*, 123 F.4th 186 (5th Cir. 2024) ............................................. 15

*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022) ................................... 13

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ................................. 20

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ........................................ 16, 17

*United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279 (D.C. Cir. 2019) ............................ 5

*Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025) .......................... 18, 20

*Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98 (D. Mass. 2003) ................................................................................... 8

*Young v. Town of Conway*, 783 F. Supp. 3d 588 (D.N.H. 2025) ...................... 8

**Statutes**

28 U.S.C. § 2201 ........................................................................................ 17

5 U.S.C. § 706 ........................................................................................ 4, 17

8 U.S.C. § 1101 ......................................................................................... 16

8 U.S.C. § 1227 ......................................................................................... 16

8 U.S.C. § 1229a ....................................................................................... 16

8 U.S.C. § 1252 .................................................................................... 12, 15

Emergency Supplemental Appropriations Act for Defense, The Global War on
  Terror, and Tsunami Relief, 2005, Pub. L. No. 109–13, § 103, 119 Stat 231,
  307 (2005) ........................................................................................................... 16

Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458,
  § 5304, 118 Stat 3638, 3736 (2004)................................................................... 15

**Other Authorities**

Final J. and Perm. Inj., *Ramirez v. ICE*, No. 1:18-cv-508, ECF No. 368 (D.D.C.
  Sept. 21, 2021) .................................................................................................... 10

Memorandum from Secretary of Homeland Security Mayorkas to Tae Johnson,
  Acting Director of ICE, *Guidelines for the Enforcement of Civil Immigration
  Law* (Sept. 30, 2021), https://perma.cc/Z7CL-NV5D............................................ 5

Prelim. Inj. Order, *Chicago Headline Club v. Noem*, No. 1:25-cv-12173, ECF No.
  250 (N.D. Ill. Nov. 6, 2025)................................................................................. 10

Settlement Agreement and Release, *Mendez Rojas v. Wolf*, No. 2:16-cv-01024-
  RSM, ECF No. 79-1 (W.D. Wash. July 28, 2020), https://perma.cc/A4G9-
  2CLE ..................................................................................................................... 9

Settlement Agreement, *Ms. L. v. ICE*, No. 3:18-cv-428-DMS, ECF No. 721-1
  (S.D. Cal. Dec. 1, 2023)................................................................................... 9, 10

Stipulated Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-RJK (Px)
  (C.D. Cal. Jan. 17, 1997, *as amended* Dec. 7, 2001), https://perma.cc/QW5M-
  F5A9 ..................................................................................................................... 9

## Introduction

Following a trial on the merits, this Court found as fact that Defendants and their subordinates acted intentionally and in concert "to misuse the sweeping powers of their respective offices" to target noncitizens based on their constitutionally protected advocacy. Op. 147. The Court found that the defendant officials did so by "implement[ing] Executive Orders [] 14161 and 14188 [in] a viewpoint-discriminatory way," Op. 101—that is, by adopting an enforcement policy of revoking the visas of noncitizens, and of arresting, detaining, and deporting them, based on their pro-Palestinian or anti-Israel speech or association ("Policy"), *id.* 95, 106. The Court also found that the intent and effect of this Policy have been to suppress lawful protest and to terrorize Plaintiffs' noncitizen members and other similarly situated noncitizens into silence. *Id.* 95, 147. Based on this "clear and convincing evidence," the Court concluded as a matter of law that the Policy violated the First Amendment because it was impermissibly viewpoint discriminatory and that it violated the Administrative Procedure Act ("APA") because it was contrary to constitutional right, arbitrary and capricious, and without clear statutory authorization. *Id.* 101.

Defendants' conduct warrants effective and complete relief. As this Court has already recognized: "[I]t will not do simply to order [Defendants] to cease and desist in the future. The harm here and the deprivation suffered runs far deeper." Op. 157. Plaintiffs therefore seek not only a declaration that Defendants' conduct violates the First Amendment and APA, but also a declaration clarifying that it is unlawful for Defendants to revoke the visas of noncitizens, and to arrest, detain, and deport them, based on certain specific classes of constitutionally protected speech and association that government officials testified at trial—and have maintained since the Court's ruling—are grounds for immigration enforcement. Plaintiffs seek vacatur of the Policy under § 706 of the APA, injunctive relief against Defendants' further implementation of the Policy

1

and against their campaign of coercive threats, and other measures—including notice, training, and transparency requirements—that are calculated to end the chill created by Defendants' actions and to ensure compliance with this Court's ruling.

As explained at length below, the Court has the authority to grant this relief. A proposed order is attached to this motion for the Court's consideration.

## Argument

**I. The relief sought is necessary and appropriate.**

### A. Declaratory relief is warranted because it would resolve substantial and important issues dividing the parties.

A declaratory judgment is appropriate when it "will serve a useful purpose in clarifying and settling the legal relations in issue," and "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bos.'s Child. First v. Bos. Sch. Comm.*, 183 F. Supp. 2d 382, 396 (D. Mass. 2002) (quoting 10B Wright, Miller & Kane, Fed. Prac. & Proc. § 2759 (3d ed. 1998)); *see also, e.g.*, *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 987 (C.D. Cal. 2024) (declaring ICE policy unlawful); *Coniglio v. Garland*, 556 F. Supp. 3d 187, 203 (E.D.N.Y. 2021) (similar). That is precisely what the declaratory relief sought here would do, by making clear that the Policy violates the First Amendment and APA, and further that Defendants may not revoke the visas of noncitizens, or arrest, detain, and deport them, on the basis of constitutionally protected speech and association, including certain specific classes of speech and association that Defendants testified at trial could be the basis for immigration enforcement. Proposed Order 4–7 ¶ 1–3.

This clarification of legal rights is especially important here for several reasons. First, Defendants have vigorously maintained their authority to deport noncitizens based on constitutionally protected expression since the beginning of the case—and they have doubled

down on this legal claim following the Court's ruling.[1] Second, they have asserted the power to wield this authority irrespective of the Policy. *See infra* Part I.C at 6. Third, the record reveals considerable confusion and "apparent indifference" among government officials as to whether pro-Palestinian and anti-Israel speech and association is constitutionally protected and may serve as a proper basis for immigration enforcement. *See, e.g.*, Op. 131–33 (describing Defendant officials' "apparent indifference" as to "whether pure political speech in support of Palestine or against Israel could be construed as support for terrorism, whether support for terrorism[, as opposed to material support,] could be grounds for the adverse actions that were contemplated, or whether any targeted individual had met any circumscribed, ascertainable standard of speech or conduct that might be grounds for these actions"); *id.* 69 (describing Senior Bureau Official Armstrong's "misunderstanding of the contours of speech in the Constitutional sense" in deciding to revoke Ms. Öztürk's visa); *see also* July 18, Tr., Vol. 1, 34:2–35:16, 42:12–43:11 (Armstrong testifying that a broad range of pro-Palestinian and anti-Israel speech could be grounds for deportation). Fourth, Plaintiffs' members have been forced to self-censor in part because they are uncertain of which pro-Palestinian or anti-Israel viewpoints they may express without fear of retaliation. Op. 136–137; *see also id.* 23, 32, 108–11, 132.

---

[1] On October 16, a State Department spokesperson stated that "[t]he Supreme Court has repeatedly made clear that aliens do not have the same First Amendment rights as American citizens," that "[t]he United States is under no obligation to allow foreign aliens to . . . commit acts of anti-American, pro-terrorist, and antisemitic hate," and that it would "continue to revoke the visas of those who put the safety of our citizens at risk." Krishnan Decl. Ex. A at 3. And on October 26, after revoking the visa of British journalist Sami Hamdi (apparently in retaliation for his criticism of Israel while on a speaking tour in the United States), the State Department posted to X: "We continue to revoke the visas of" "foreigners who support terrorism." *Id.* Ex. B; *see also id.* Ex. C (similar post by DHS spokesperson); *id.* Ex. D (State Department posts confirming that it has revoked the visas of at least six individuals who allegedly "celebrated" Charlie Kirk's murder).

**B.      Vacatur is warranted because Plaintiffs have established violations of the APA.**

The text of the APA is mandatory: it provides that "the reviewing court *shall* hold unlawful and set aside" unlawful agency action. 5 U.S.C. § 706(2) (emphasis added). The Supreme Court has accordingly held that the APA "requires federal courts to set aside federal agency action that is 'not in accordance with law,'" *FCC v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (quoting 5 U.S.C. § 706(2)(A)), and courts have recognized that "[t]he normal remedy for a successful APA challenge is vacatur of the rule and its applicability to all who would have been subject to it." *Massachusetts v. NIH*, 770 F. Supp. 3d 277, 329 (D. Mass. 2025) (citing *Victim Rts. L. Ctr. v. Cardona*, 2021 WL 3516475, at *1 (D. Mass. Aug. 10, 2021) (Young, J.)); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." (quoting *Harman v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989))). The Supreme Court recently "confirm[ed]" the propriety of vacatur under the APA when it granted a partial stay of this Court's judgment in *National Institutes of Health v. American Public Health Association* ("*APHA*"), while leaving intact the Court's vacatur of internal agency guidance. *Ass'n of Am. Univs. v. DOD*, 2025 WL 2899765, at *1 (D. Mass. Oct. 10, 2025) (citing *APHA*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring)); *see also APHA*, 145 S. Ct. at 2663 (Roberts, C.J., concurring in part and dissenting in part) (vacatur "falls well within the scope of the District Court's jurisdiction under the [APA]").[2]

---

[2] Although a court may sometimes remand without vacatur, that course is unavailable when, as here, the challenged action is "contrary to law," because an agency cannot cure the fact that it lacked authority to take that action. *See Ass'n of Am. Univs.*, 2025 WL 2899765, at *30; *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024).

Plaintiffs are entitled to vacatur because they have established that the Policy is a final agency action that is contrary to constitutional right, arbitrary and capricious, and without statutory authorization, in violation of the APA. Op. 138–47. Vacatur of the Policy will have the effect of resurrecting the provision made in the 2021 DHS Guidelines for the protection of noncitizens' First Amendment rights, to the extent that the Policy rescinded it. *See* Memorandum from Secretary of Homeland Security Mayorkas to Tae Johnson, Acting Director of ICE, *Guidelines for the Enforcement of Civil Immigration Law* at 5 (Sept. 30, 2021), https://perma.cc/Z7CL-NV5D ("A noncitizen's exercise of their First Amendment rights . . . should never be a factor in deciding to take enforcement action"); *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (the effect of vacatur is to "automatically resurrec[t]" the prior standard); *accord Orr v. Trump*, 778 F. Supp. 3d 394 (D. Mass. 2025).

### C.    Injunctive relief is warranted because it is necessary to fully remedy Plaintiffs' injuries.

A permanent injunction against further implementation of the Policy and against defendant officials' coercive threats is necessary to effectively remedy Plaintiffs' injuries. The Court may order injunctive relief where: "(1) the plaintiff has prevailed on the merits, (2) the plaintiff would suffer irreparable injury in the absence of injunctive relief, (3) the harm to the plaintiff would outweigh the harm to the defendants from an injunction, and (4) the injunction would not adversely affect the public interest." *Joyce v. Town of Dennis*, 720 F.3d 12, 25 (1st Cir. 2013). Plaintiffs easily satisfy this standard.

This Court has already held that Plaintiffs have prevailed on the merits. *See* Op. 101.

Plaintiffs have also demonstrated that they will suffer irreparable harm absent injunctive relief. The First Circuit has recognized, in deciding whether to grant a permanent injunction, that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury." *Asociación de Educación Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 21 (1st Cir. 2007) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). And the Court's opinion confirms the far-reaching and ongoing chill caused by the Policy and Defendants' coercive threats. Op. 147; *see also id.* 108–11 (describing the self-censorship of Plaintiffs' members); 113 (describing the effect of self-censorship on MESA's core mission).

Declaratory and APA relief are also insufficient to fully remedy this chill, because it is far from clear that Defendants will be deterred by a declaration of law and a vacatur of the Policy. From the beginning, Defendants have insisted that there is no Policy, and that they are merely relying on *existing* statutory authority to advance the President's agenda. *See* Defs.' Post-Trial Br., ECF No. 255, 1–2, 90–92, 130–31; Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 65, 3, 10. They have implied, moreover, that they could carry on their campaign of retribution even in the face of an adverse ruling. Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. 10; *see also supra* at 3 n.1 (discussing the revocation of Mr. Hamdi's visa following this Court's rulings). For these reasons, injunctive relief is necessary to give effect to this Court's rulings, and it would "have [a] meaningful practical effect independent of [] vacatur." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *see also Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 2025 WL 1825431, at *54 (D.D.C. July 2, 2025) (granting injunction where "Defendants have themselves expressed doubt that an order merely setting aside the guidance would be effective"); *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1045 (S.D. Cal. 2022) (noting that injunction prevents "defendants from pursuing other courses of action to reach the same or a similar result as the vacated agency action"); *cf. President & Fellows of Harvard Coll. v. HHS*, 2025 WL 2528380, at *36 (D. Mass. Sept. 3, 2025) (granting permanent injunction in addition to vacatur to prevent defendants from "reimposing any unconstitutional conditions imposed to date").

Injunctive relief against Defendant officials' coercive threats is also both appropriate and necessary because Plaintiffs' noncitizen members will continue to be chilled unless those threats cease. *See* Op. 112–13. At various points, this Court has questioned whether it may enjoin coercive government speech. Respectfully, there is no question that the Court may do so. As the Supreme Court reaffirmed last year, a government official "can rely on the merits and force of her ideas, the strength of her convictions, and her ability to inspire others," but she may not "convey a threat of adverse government action in order to punish or suppress . . . speech." *NRA v. Vullo*, 602 U.S. 175, 188, 191 (2024). That is precisely what this Court found Defendant officials have done—they have repeatedly threatened to punish noncitizens for their political speech, and they have done so for the very purpose of silencing that speech. *See, e.g.*, Op. 130–31, 136–37. Enjoining these threats would not implicate any legitimate government speech; it would merely hold the First Amendment line. *See, e.g.*, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 239 (7th Cir. 2015) (enjoining a sheriff's campaign of coercive threats targeting Backpage.com).[3]

The balance of equities and public interest also strongly favor injunctive relief. These factors "merge when the government is the opposing party," *Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106, 140 (D. Mass. 2025), because "the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016). The requested injunctive relief would promote the public interest because the Policy intentionally chills lawful expression, it lacks a facially legitimate or bona fide purpose, Op. 121–22, 125, and "[p]rotecting rights to free speech is *ipso facto* in the interest of the general public." *Westfield High*

---

[3] An injunction against Defendants' coercive threats also would not implicate the free speech rights of federal employees. While public employees have their own First Amendment right to speak as citizens on matters of public concern, this protection does not extend to speech undertaken pursuant to their official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). And the threats at issue here were made (and continue to be made) by officials in their official capacities.

*Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98, 128 (D. Mass. 2003); *accord Young v. Town of Conway*, 783 F. Supp. 3d 588, 612 (D.N.H. 2025). It also bears emphasis that injunctive relief against the Policy would not bar Defendants from enforcing the INA's inadmissibility or removal provisions—including those relating to foreign policy or terrorism—on grounds other than protected speech and association. The requested injunctive relief is tailored to the constitutional violation the Court has already recognized—the deportation of noncitizens on the basis of speech and association protected by the First Amendment.

> **D.** **The remaining relief sought is warranted because it is necessary to address chill and to ensure Defendants' ongoing compliance with the Court's Order.**

Notice to affected individuals and institutions: The proposed order would require the State Department to notify any noncitizen determined to be removable under the INA's foreign policy provisions or endorse or espouse provisions, and any noncitizen whose visa has been revoked pursuant to 8 U.S.C. § 1201(i), of the basis for that decision, if the decision relies in whole or in part on the noncitizen's speech, association, or protest activity. Proposed Order 10 ¶ 10. It would also require Defendants to notify universities and noncitizen students that the First Amendment prohibits the U.S. government from revoking the visas of noncitizens, and from arresting, detaining, and deporting them, on the basis of political speech and association. *Id.* 8 ¶ 8. These notices are necessary to counteract the chilling effect of the Policy and to ensure that any noncitizens subjected to the Policy in violation of the Court's Order may seek immediate relief.

The notice requirements are minimally burdensome, because they simply require Defendants to post information on websites they already maintain and to send communications through established channels to educational institutions, student visa applicants and grantees, and two narrow classes of noncitizens whose lawful presence in the United States is directly affected by the Policy. These notice requirements are also well within this Court's equitable powers.

Similar notice provisions appear in permanent injunctions and consent decrees issued in other litigation against DHS, ICE, and other agencies. *See, e.g.*, Settlement Agreement, *Ms. L. v. ICE*, No. 3:18-cv-428-DMS, ECF No. 721-1 (S.D. Cal. Dec. 1, 2023) (consent decree requiring federal agencies to post notices of the settlement agreement on their websites, and requiring ICE to provide several types of notices to separated parents and children); Settlement Agreement and Release, *Mendez Rojas v. Wolf*, No. 2:16-cv-01024-RSM, ECF No. 79-1 (W.D. Wash. July 28, 2020), https://perma.cc/A4G9-2CLE (consent decree requiring DHS to provide several types of notice to certain classes of noncitizens); Stipulated Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-RJK (Px) (C.D. Cal. Jan. 17, 1997, *as amended* Dec. 7, 2001), https://perma.cc/QW5M-F5A9 (consent decree requiring INS to provide several types of notice to minors in its custody).

<u>Directives to and training of agency personnel</u>: The proposed order requires Defendants to take the steps necessary to ensure their employees' compliance with this Court's rulings, including by: providing employees a copy of the order, directing them to comply with it, and developing relevant training. Proposed Order 10–11 ¶¶ 11, 13 It also requires Defendants to rescind any contrary order, directive, or guidance (formal or informal) implementing the Policy. *Id.* 11 ¶ 12.

These requirements are necessary to ensure that the defendant agencies comply with the Court's order. They are also well within this Court's equitable powers. Similar provisions can be found in permanent injunctions and consent decrees issued in other litigation against the federal government. *See, e.g.*, *Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15, 58 (D.D.C. 2025) (requiring Defendants to rescind prior guidance implementing the Executive Order); *Castañon Nava v. DHS*, 2025 WL 2842146, at *4–5 (N.D. Ill. Oct. 7, 2025) (describing consent decree entered by the court requiring ICE to issue a "broadcast" informing all employees of the standards for conducting warrantless arrests, and requiring ICE to "adopt, or to amend,

current training materials to ensure compliance"); Settlement Agreement, *Ms. L.*, ECF No. 721-1 at 19 (similar); Final J. and Perm. Inj., *Ramirez v. ICE*, No. 1:18-cv-508, ECF No. 368 (D.D.C. Sept. 21, 2021) (requiring ICE to provide training); *see also* Prelim. Inj. Order, *Chicago Headline Club v. Noem*, No. 1:25-cv-12173, ECF No. 250 at 7 (N.D. Ill. Nov. 6, 2025) (ordering DHS, ICE, and other agencies to "issue guidance to officers and agents to implement this Order").

Periodic reporting obligations: The proposed order requires periodic reporting to Plaintiffs of information regarding visa revocations and removability determinations based on speech-related grounds. Proposed Order 8–10 ¶ 9. These reporting requirements are essential to provide complete relief, because they will make it possible to verify Defendants' compliance with the injunction. In addition, these provisions will ensure accountability and have a deterrent effect. Knowing that their actions will be reported creates an incentive for agency personnel to comply with the injunction. And if violations occur, the reporting will bring them to light promptly rather than allowing unconstitutional conduct to continue undetected. The provisions are similar to provisions in other relevant permanent injunctions and consent decrees. *See, e.g.*, Final J. and Perm. Inj., *Ramirez*, ECF No. 368 (requiring ICE to provide on a monthly basis a copy of all completed worksheets and SharePoint materials for each "age-out" immigrant, together with spreadsheet summaries providing statistical information); *Castañon Nava*, 2025 WL 2842146, at *4–5 (consent decree requiring ICE to provide "plaintiffs' counsel (on a monthly basis) copies of all I-213 [forms] related to warrantless arrests" of noncitizens).

**II. The Court has the authority to grant the requested relief.**

    **A.    Section 1252(f)(1) does not bar the relief sought.**

The Supreme Court has emphasized "the narrowness of [§ 1252(f)(1)'s] scope," *Biden v. Texas*, 597 U.S. 785, 798 (2022), and has held only that it prohibits "injunctions that order federal

officials to take or refrain from taking actions to enforce, implement, or otherwise carry out" covered parts of the INA, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). None of the relief Plaintiffs seek falls within this prohibition.

### 1.    Declaratory relief is not barred.

Section 1252(f)(1) does not bar declaratory relief, as the First Circuit and every other court of appeals to decide the issue has held, *Brito v. Garland*, 22 F.4th 240, 252 (1st Cir. 2021); *see also id.* at 250 n.7 (collecting cases); *but see Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018).

In *Brito*, the First Circuit addressed at length the question of whether § 1252(f)(1) bars declaratory relief, emphasizing the statutory text. As the First Circuit observed, § 1252(f)(1) deprives courts other than the Supreme Court of the power to "enjoin or restrain the operation of" the relevant sections of the INA, and its title is "[l]imit on injunctive relief." *Brito*, 22 F.4th at 251. The provision's text and title therefore make clear that it applies only to injunctive relief. *See id.* (citing *Arevalo v. Ashcroft*, 344 F.3d 1, 7 (2003)) (interpreting "the word 'enjoin' [in § 1252(f)(1)] as referring to permanent injunctions and the word 'restrain' as referring to temporary injunctive relief (such as a stay)"); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) ("By its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief."). Moreover, as the Court acknowledged, declaratory and injunctive relief are distinct remedies. Although a declaratory judgment and injunctive relief "can sometimes have much the same practical effect," the former is a "milder remedy" because it "does not, in itself, coerce any party or enjoin any future action." *Brito*, 22 F.4th at 251 (quoting *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987)); *accord Steffel v. Thompson*, 415 U.S. 452, 466 (1974). The Court also recognized that "Congress knows how to prohibit declaratory relief when it so chooses." *Brito*, 22 F.4th at 251. For example, the preceding subpart in § 1252 prohibits

courts from granting "*declaratory*, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)." 8 U.S.C. § 1252(e)(1)(A) (emphasis added). Congress's choice to expressly prohibit declaratory relief there, but not in § 1252(f)(1), is presumed to be intentional. 22 F.4th at 251.

Although the First Circuit's decision in *Brito* predates *Aleman Gonzalez*, nothing in the Supreme Court's decision in that case undermines its holding. *See, e.g.*, *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378–79 (D. Mass. 2025) (applying *Brito*); *see also N.S. v. Dixon*, 141 F.4th 279 n.7 (D.C. Cir. 2025) (recognizing continued availability of declaratory relief after *Aleman Gonzalez*); *Al Otro Lado v. EOIR*, 138 F.4th 1102, 1124 (9th Cir. 2025) (same). The district court order in *Aleman Gonzalez* had awarded injunctive relief, and the Court had no occasion to address whether declaratory relief was permissible. Moreover, the Supreme Court's decision in *Biden v. Texas*, which postdates *Aleman Gonzalez*, supports *Brito*. In *Biden v. Texas*, the Court held that it had jurisdiction to reach the merits of an appeal notwithstanding the district court's entry of an injunction barred by § 1252(f)(1), citing with approval the Court's plurality opinion in *Preap*, which recognized that "[w]hether the [district] [c]ourt had jurisdiction to enter such an injunction is irrelevant because the [district] [c]ourt had jurisdiction to entertain the plaintiffs' [class-wide] request for declaratory relief." 597 U.S. at 800 (quoting *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (plurality opinion)). Although the Court formally reserved the question of whether § 1252(f)(1) bars declaratory relief, *id.* at 801 n.4, the "best reading" of its decision, and its reliance on the plurality opinion in *Preap*, is that district courts retain jurisdiction to award such relief in cases such as this one. *Immigrant Defs. L. Ctr. v. Mayorkas*, 2023 WL 3149243, at *13 (C.D. Cal. Mar. 15, 2023); *see also Brito*, 22 F.4th at 250 n.7.

### 2.    Vacatur under the APA is not barred.

Section 1252(f)(1) also does not bar vacaturs under § 706 of the APA, as every lower court to have considered the question has held. *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 219–20 (5th Cir. 2022); *Coal. for Humane Immigrant Rts. v. Noem*, 2025 WL 2192986, at *13 (D.D.C. Aug. 1, 2025); *CASA, Inc. v. Noem*, 2025 WL 1907378, at *13 (D. Md. July 10, 2025); *Refugee & Immigrant Ctr. for Educ. & Legal Servs.*, 2025 WL 1825431, at *17–20; *Kidd*, 734 F. Supp. 3d at 986; *see also Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 990 (9th Cir. 2025) (holding that § 1252(f)(1) does not prohibit § 705 stays). And although the Supreme Court has not squarely addressed this question, in *DHS v. Regents of University of California*, it assumed that § 1252(f)(1) does not bar vacatur, when it affirmed the vacatur of DHS's recission of the Deferred Action for Childhood Arrivals program, after finding the recission arbitrary and capricious in violation of the APA. 591 U.S. 1, 35–36 (2020); *see also Texas v. United States*, 40 F.4th at 220 n.8.

This Court should find that vacatur is available for largely the same reasons that declaratory relief is. First, the Supreme Court has said that courts must interpret § 1252(f)(1) narrowly, and the provision's text limits only injunctive relief. It says nothing about vacaturs under the APA. *See, e.g.*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs.*, 2025 WL 1825431, at *20 (rejecting argument that the word "restrain" means to "inhibit," but holding that "even if so broadly construed, ['restrain'] cannot plausibly be read to encompass a judicial order that affects future agency action only by vacating some past action").

Second, vacatur is a "less drastic remedy" than an injunction. *Texas v. United States*, 40 F.4th at 220 (quoting *Monsanto*, 561 U.S. at 165). Whereas an injunction "operate[s] *in personam*," "directing the conduct of a particular actor, [vacatur] operates upon the [agency action] itself." *Ass'n of Am. Univs.*, 2025 WL 2899765, at *29 (quoting *Nken v. Holder*, 556 U.S. 418,

428 (2009)). It is "not 'a coercive order against the Government, but rather . . . [a] setting aside of the source of the Government's authority' to act." *Id.* (quoting *Nken*, 556 U.S. at 429); *see also Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J.) (statement on denial of stay application) (explaining that § 706 empowers courts "to 'strike down' an agency's work, [such that] the . . . agency action is treated as though it had never happened." (internal citation omitted)).[4]

Third, Congress has expressly limited APA relief in other statutory schemes such as the Magnuson-Stevens Act and the Clean Air Act. *See Immigrant Defs. L. Ctr.*, 145 F.4th at 990. Its decision not to do so here should be presumed deliberate and given effect, especially since the alternative would be contrary to the "strong presumption favoring judicial review of administrative action." *Salinas v. United States R.R. Ret. Bd.*, 592 U.S. 188, 197 (2021) (cleaned up); *see also Refugee & Immigrant Ctr. for Educ. & Legal Servs.*, 2025 WL 1825431, at *20.

### 3.    The specific injunctive relief sought is not barred.

Section 1252(f)(1) does not bar an injunction against the Policy because such an injunction would not prohibit Defendants from carrying out any covered provision, but rather from carrying out the Policy—i.e., implementing the Executive Orders in a viewpoint-discriminatory way to chill speech. Op. 101. While this injunction may have *downstream* effects on Defendants' operation of covered provisions, these effects are not sufficient to bring it within § 1252(f)(1)'s scope. As the Supreme Court stated in *Aleman Gonzalez*, "a court may enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision." 596 U.S. at 553 n.4 (emphasis in original); *accord Al Otro*

---

[4] Although *Nken* addressed a stay of a removal order, a stay is simply a "temporary form of vacatur." *Ass'n of Am. Univs.*, 2025 WL 2899765, at *29 n.122 (quoting *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 254 (5th Cir. 2023), *rev'd and remanded on other grounds sub nom. FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)).

*Lado v. EOIR*, 120 F.4th 606, 627 (9th Cir. 2024); *Texas v. DHS*, 123 F.4th 186, 209–10 (5th Cir. 2024); *D.V.D. v. DHS*, 778 F. Supp. 3d at 379. That is precisely what an injunction against the Policy would do. It would enjoin the Policy, which reflects an effort to implement the Executive Orders, but it would not enjoin the operation of any covered provision of the INA.[5]

    To ensure that Defendants do not circumvent this injunction by continuing to deny the existence of the Policy, the Court should also *directly* enjoin Defendants from taking certain enforcement actions based on constitutionally protected speech. The Court has the authority to do this because, although some enforcement actions implicate covered provisions—i.e., provisions contained in "[P]art IV of [the INA], as amended by Illegal Immigration Reform and Immigrant Responsibility Act of 1996," *see* 8 U.S.C. § 1252(f)(1)—others plainly do not. Defendants' authority to revoke visas, for instance, lies in § 1201(i), which is in Part III of the INA. Section 1201(i) is also not covered for the independent reason that the cross-reference to it in § 1227(a)(1)(B)—the provision authorizing deportation based on the revocation of an individual's visa—was added *after* § 1252(f)(1)'s enactment in 1996. *See* Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458, § 5304, 118 Stat 3638, 3736 (2004); *see also Galvez v. Jaddou*, 52 F.4th 821, 830–31 (9th Cir. 2022) (explaining that § 1252(f)(1) cannot cover provisions that were enacted after its passage); *accord D.V.D.*, 778 F. Supp. 3d at 379 n.31. The same is true for the endorse or espouse provisions, which were added to the INA in 2005. *See* Emergency Supplemental Appropriations Act for Defense, The Global War on Terror, and

---

[5] Defendants also cannot argue that an enforcement policy of implementing Executive Orders in an intentionally viewpoint-discriminatory manner is central to their operation of any covered provision. *See Shaik v. Noem*, 2025 WL 2307619, at *5 (D. Minn. Aug. 11, 2025) (enjoining DHS from "detaining or removing F-1status students solely because of improper SEVIS terminations" where injunction would have only a collateral effect on a covered provision, by "disrupt[ing] a ripple effect that would otherwise flow from Defendants' conduct").

Tsunami Relief, 2005, Pub. L. No. 109–13, § 103, 119 Stat 231, 307 (2005). It follows that the Court may enjoin Defendants from revoking the visas of noncitizens under § 1201(i); and from charging them with removability under either § 1227(a)(1)(B) (to the extent the basis for doing so is a visa revocation under § 1201(i)) or § 1227(a)(4)(B) (to the extent the basis for doing so is the endorse or espouse provisions).[6]

Finally, § 1252(f)(1) does not bar an injunction against Defendants' coercive threats. Such an injunction would have no effect—collateral or not—on the covered provisions.[7] The same is true of the notice, training, and transparency requirements Plaintiffs seek.

### B.        The requested relief is consistent with *Trump v. CASA*.

The requested relief is also consistent with *Trump v. CASA, Inc.*, which held that the Judiciary Act of 1789 does not authorize federal courts to issue universal injunctions unless necessary to provide complete relief to the plaintiffs. 606 U.S. 831 (2025). As explained below, *CASA* does not affect the Court's authority to award the requested declaratory or APA relief because they are not injunctive in nature. The requested injunctive relief also comports with *CASA* because it is necessary to afford Plaintiffs and their members complete relief.

---

[6] To the extent the Court determines that any of the requested injunctive relief is warranted but barred by § 1252(f)(1), it should say as much, so that the Supreme Court may award that relief, because whatever this Court's authority to issue injunctive relief under § 1252(f)(1), there is no question that the Supreme Court has that authority. *See Biden v. Texas*, 597 U.S. at 799. Similarly, if the Court would, but for § 1252(f)(1), also enjoin Defendants from arresting, detaining, and deporting noncitizens based on protected speech or association, it should so indicate. Plaintiffs have not asked this Court for this injunction only because they recognize that § 1252(f)(1) forecloses the Court from granting it.

[7] DHS has no authority to "revoke" a green card because the "sole and exclusive" mechanism under law for stripping lawful permanent residents of their status is through removal proceedings where the government must prove the green card holder has engaged in deportable activity. 8 U.S.C. § 1229a(a)(3); *see also* 8 U.S.C. § 1101(a)(20) (defining lawful permanent residence); 8 U.S.C. § 1227 (describing grounds of deportability). Nonetheless, because Defendants have repeatedly threatened to "revoke" green cards, and because the Court has found that such threats have chilled lawful expression, injunctive relief against such threats is warranted.

1.   *CASA* **does not alter the availability of declaratory or APA relief.**

*CASA* addressed whether district courts possess equitable authority under the Judiciary Act to issue "universal injunctions" that "prohibit enforcement of a law or policy against *anyone*," not just the plaintiffs. 606 U.S. at 837. The decision says nothing at all, however, about federal courts' authority to award declaratory or APA relief, authority that is expressly granted by statute, 28 U.S.C. § 2201(a); 5 U.S.C. § 706(2).

In fact, the *CASA* majority explicitly distinguished injunctions from vacaturs under § 706, emphasizing that its holding did not reach the latter. 606 U.S. at 847 n.10. And Justice Kavanaugh's concurrence treated as uncontroversial that, after *CASA*, "plaintiffs may ask a court to . . . 'set aside' a new agency rule" under the APA. *Id.* at 869; *see also Corner Post*, 603 U.S. at 838 (Kavanaugh, J., concurring) (explaining that "[u]nlike judicial review of statutes, in which courts enter judgments and decrees only against litigants, the APA . . . go[es] further by empowering the judiciary to act directly against the challenged agency action" (internal citation omitted)).

Courts including in this district have therefore been in agreement: *CASA* does not alter the availability of declaratory or APA relief. *See Ass'n of Am. Univs.*, 2025 WL 2899765, at *29–30 (noting that "courts are in overwhelming consensus on this issue"); *see also, e.g.*, *Illinois v. FEMA*, 2025 WL 2716277, at *15 (D.R.I. Sept. 24, 2025); *Am. Fed. of Tchrs. v. DOE*, 2025 WL 2374697, at *32 (D. Md. Aug. 14, 2025); *Refugee & Immigrant Ctr. for Edu. & Legal Servs.*, 2025 WL 1825431, at *50–51.

2.   **The requested injunctive relief is necessary to afford Plaintiffs and their members complete relief.**

Under *CASA*, district courts may still issue universal injunctions where they are necessary to provide complete relief to the plaintiffs. 606 U.S. at 851 ("[C]ourts generally may administer

complete relief between the parties." (cleaned up)); *see also Doe v. Trump*, 2025 WL 2814730, at *34 (1st Cir. Oct. 3, 2025). In applying the complete-relief principle, a court must take account of "what is necessary, what is fair, and what is workable," in accordance with "well-known principles of equity." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (cleaned up).

The requested injunctive relief is necessary to provide Plaintiffs and their members complete relief in this case for several reasons. First, narrow relief focused only on Plaintiffs would be unworkable. Plaintiffs are nationwide associations with over 52,000 members dispersed throughout the country.[8] They do not track their members' immigration statuses. July 18, Tr., Vol. 2, 90:5–17. Their membership lists are also constantly updating because they are adding new members and losing others. July 18, Tr., Vol. 1., 69:20–23 (AAUP's membership includes non-tenured and adjunct faculty as well as graduate students); Ex. 134 at 1–2 (MESA's membership includes individuals who have "received a Doctorate related to Middle East studies" or who have "taught in" or "made a scholarly contribution" to that subject as well as undergraduate and graduate students interested in the field of study). Thus, to guarantee any relief, an injunction limited to the Plaintiffs would require Plaintiffs to provide Defendants with a continuously updating roster of their members, and to track new, sensitive information about its members that it does not currently collect—namely, their immigration statuses. Doing so would be logistically burdensome. *See Doe*, 2025 WL 2814730, at *35 (affirming universal injunction where any narrower relief would "impos[e] material administrative or financial burdens"); *Washington v. Trump*, 145 F.4th 1013, 1039 (9th Cir. 2025) (similar). It would also increase the risk that Defendants will inadvertently fail to comply with the Court's injunction because—short of Plaintiffs being able to provide a live

---

[8] The AAUP has approximately 50,000 members and hundreds of local chapters spread across 47 states, D.C., and the U.S. Virgin Islands. July 18, Tr., Vol. 2, 89:24–90:4; July 18, Tr., Vol. 1., 70:24–25. MESA has over 2,000 individual members. Ex. 191 at 1.

roster—Defendants cannot know with certainty whether an individual is a noncitizen member of a Plaintiff organization before taking action that has been enjoined by the Court. *See L.A. Press Club v. Noem*, 2025 WL 2658327, at *22 (C.D. Cal. Sept. 10, 2025) (granting districtwide injunction where "Defendants . . . are unlikely to be able to determine whether an individual is a Plaintiff" before a constitutional violation occurs); *Easyriders Freedom FIGHT v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996) (similar). Importantly, requiring Plaintiffs to turn over their membership lists to Defendants would also cause additional First Amendment harms, by impermissibly burdening Plaintiffs' and their members' associational rights. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *see also Make the Rd. New York v. Noem*, 2025 WL 2576701, at *2 (D.D.C. Sept. 5, 2025) (rejecting narrower alternative on this basis). It would effectively condition Plaintiffs' members' right to be protected from unconstitutional, viewpoint-discriminatory targeting on their willingness to subject themselves to additional government scrutiny of their exercise of associational freedoms.

Second, broader relief is necessary because a Plaintiff-limited injunction would not effectively remedy the chill caused by the Policy. In fact, an injunction limited to the Plaintiffs would likely intensify rather than relieve the Policy's chill because it would require Plaintiffs to identify their members, which in turn would "put[] those members at risk of retaliation." *Make the Rd. New York*, 2025 WL 2576701, at *2 (cleaned up). Limiting relief to Plaintiffs' members would also be ineffective because members may reasonably choose not to resume their expressive and associational activities if their protection from the Policy is contingent on retaining their membership. This is particularly true for students (who may no longer be eligible for membership once they complete their course of studies) and non-tenured faculty (who may no longer be eligible for membership if they lose their jobs). Members who wish to resume expressive activities that

require the participation of nonmember noncitizens will also likely not be able to since those noncitizens will almost certainly still be chilled. *Cf. New Jersey v. Trump*, 2025 WL 2816889, at *6 (D. Mass. July 25, 2025) (concluding that "patchwork" approach of limited injunction "would generate understandable confusion" and "chill enrollment in critical programs").

Narrower relief would also not address the organizational injury to MESA or the listener harms to Plaintiffs' citizen members. As this Court found, MESA's core activity is to promote academic discourse and scholarship about issues impacting the Middle East. *See* Op. 113. This mission will continue to be seriously impeded if nonmember, noncitizen scholars who also do work in Middle East studies are pressured to self-censor and decline to contribute the scholarship and perspectives they would otherwise share. Nor would a narrower injunction remedy the harms felt by the AAUP's and MESA's citizen members, who would continue to be deprived of the insights of nonmember, noncitizen colleagues and students. *Cf. Washington*, 145 F.4th at 1038.

Lastly, narrower relief would undermine the "very national consistency" that immigration laws are "designed to protect." *HIAS, Inc. v. Trump*, 985 F.3d 309, 326–27 (4th Cir. 2021); *see also Texas v. United States*, 809 F.3d 134, 187–88 (5th Cir. 2015), *as revised* (Nov. 25, 2015). Permitting implementation of the Policy against nonmembers would create a patchwork system where two faculty members teaching in the *same* department may fare differently under this Court's order based only on their respective membership statuses. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021).

**Conclusion and Request for Oral Argument**

The Court should grant Plaintiffs' Motion for Remedies Against Defendants and enter the Proposed Order. Plaintiffs respectfully request oral argument on this motion.

November 10, 2025

Respectfully submitted,

/s/ Ramya Krishnan
_____

Edwina Clarke (BBO 699702)
David Zimmer (BBO 692715)
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com

Noam Biale
Michael Tremonte
Alexandra Conlon
Courtney Gans
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

Ramya Krishnan
Xiangnong Wang
Stephany Kim
Raya Koreh
Carrie DeCell
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

*Counsel for Plaintiffs*

**Local Rule 7.1(2) Certification**

In accordance with Local Rule 7.1(2), I certify that the parties previously met and conferred regarding the foregoing motion and were unable to resolve or narrow the issues.

**Certificate of Service**

I, the undersigned counsel, certify that on November 10, 2025, I electronically filed the foregoing motion in the United States District Court for the District of Massachusetts using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 10, 2025

/s/ Ramya Krishnan
Ramya Krishnan