UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF UNIVERSITY
PROFESSORS, ET AL.,

                Plaintiffs,

    v.

MARCO RUBIO, ET AL.

                Defendants.

Case No. 1:25-cv-10685 (WGY)

**[PROPOSED] ORDER**

Following a trial on the merits, this Court found as fact that the Secretary of Homeland Security Kristi Noem and the Secretary of State Marco Rubio, together with their subordinate officials and agents, have "intentionally and in concert implemented Executive Orders [] 14161 and 14188 [in] a viewpoint-discriminatory way to chill protected speech." Op. 101. Specifically, the Court found that Secretaries Noem and Rubio and their subordinates and agents adopted an enforcement policy of revoking the visas of noncitizens, and of arresting, detaining, and deporting them, based on their anti-Israel or pro-Palestinian speech or association ("Policy"), in order to suppress lawful pro-Palestinian protest and to terrorize Plaintiffs' noncitizen members and other similarly situated noncitizens into silence. *See* Op. 95; *see also id.* 106 ("For clarity's sake, this Court believes that the contours of the alleged speech regulation may be briefly stated: Lawful Permanent Residents' green cards and student visa-holders' visas may be revoked, and these persons may be detained and deported, based on any public anti-Israel or pro-Palestine speech or association."). The Court found that, "at every step of the [Policy's] implementation," Secretaries Noem and Rubio and their subordinates interpreted "support for terrorism" and "antisemitism"—

activities that they construed as possible grounds for visa revocation and deportation—to "encompass" and indeed "center[] on" "core First Amendment speech and expressive conduct, such as attending public protests, leading such protests, or even publishing op-eds." *Id.* 131–32. The Court also found that, in doing so, Secretaries Noem and Rubio and their subordinates intentionally discriminated against anti-Israel and pro-Palestinian viewpoints. *Id.* 128; *see also id.* 131.

The Court concluded as a matter of law that the Policy violates the First Amendment because it is impermissibly viewpoint discriminatory, and that it violates the Administrative Procedure Act ("APA") because it is contrary to constitutional right, arbitrary and capricious, and without clear statutory authorization. Op. 101.

The Court also concluded that Plaintiffs American Association of University Professors ("AAUP") and Middle East Studies Association of North America ("MESA") have standing to sue. Op. 111. AAUP and MESA are nationwide associations of scholars and students dedicated to advancing academic freedom and scholarship. *Id.* 5–7. The Court concluded that AAUP and MESA have associational standing to challenge the Policy because the Policy "objectively chills" the speech and association of their noncitizen members. *Id.* 111. It also concluded that MESA has organizational standing to sue because the Policy has "significantly harmed its core activity of facilitating academic discourse and scholarship about issues impacting the Middle East, including by reducing membership numbers and so membership dues," "reduc[ing] anticipated participation in its flagship annual meeting in November," and "pressuring members to self-censor." *Id.* 113.

After briefing by the parties and a hearing on the final remedy, the Court orders the relief specified in detail below. The Court concludes that 8 U.S.C. § 1252(f)(1) does not bar declaratory relief or vacatur under the APA. *See Brito v. Garland*, 22 F.4th 240, 252 (1st Cir. 2021); *see also*

*Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 990 (9th Cir. 2025); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82. It concludes that § 1252(f)(1) does not bar injunctive relief prohibiting officials from carrying out the Policy by implementing the Executive Orders in a viewpoint-discriminatory way to chill speech—because this injunctive relief would not enjoin Defendants from "enforc[ing], implement[ing], or otherwise carry[ing] out" any covered provisions of the INA. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). It also concludes that § 1252(f)(1) does not bar injunctive relief prohibiting officials from taking any action, formal or informal, to threaten to revoke the visas and green cards of, or to arrest, detain, and deport, noncitizens based on their protected speech or association.

      The Court also concludes that the requested injunctive relief is necessary to afford Plaintiffs and their members complete relief. To begin, narrower relief would not be workable. Plaintiffs are nationwide associations with over fifty thousand members dispersed throughout the country. They do not track the immigration statuses of their members, and their membership is not static because they are constantly adding new members and losing others (e.g., students who have completed their course of study, and contingent faculty who have lost their employment). Requiring Plaintiffs to disclose the identities of their members to Defendants on an ongoing basis so that Defendants can avoid unconstitutionally targeting those members would impose substantial ongoing logistical and administrative burdens on Plaintiffs as well as the government. It would also impose an independent burden on Plaintiffs' and their members' First Amendment rights. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958). It would effectively condition Plaintiffs' members' right to be protected from unconstitutional, viewpoint-discriminatory targeting on their willingness to subject themselves to additional government scrutiny of their exercise of associational freedoms.

Second, limiting relief to Plaintiffs' members would not fully address the injuries established at trial. It would risk intensifying rather than relieving the Policy's chill because noncitizen members whose identities were shared with the government would reasonably fear immigration-related retaliation. Some of Plaintiffs' members would be fearful of resuming their protected expressive and associational activities if their entitlement to legal protection were contingent on their continued membership in the Plaintiff organizations—particularly if that membership depended on them remaining a student or maintaining their academic employment. Limiting relief to Plaintiffs' members would also mean that Plaintiffs and their members would continue to be deprived of the insights and engagement of noncitizen students and colleagues who are *not* members of the Plaintiff organizations. Members who wished to resume expression requiring the participation of noncitizens not covered by the Order would likely not be able to, and MESA would continue to be impeded in pursuing its mission of fostering scholarship about the Middle East if nonmember noncitizen scholars continued to self-censor.

Finally, narrower relief focused only on the Plaintiffs would undermine the national consistency that the immigration laws are designed to protect.

It is hereby:

(1) DECLARED that it is unlawful for Defendants to revoke the visas of, or to arrest, detain, or deport, noncitizens on the basis of constitutionally protected expression, including the following classes of speech and association, which Defendants testified could be the basis for adverse immigration enforcement:

   a. Speech that is in support of Palestine or critical of Israel, including but not limited to:

      i. Statements criticizing Israel's actions in Gaza;

4

    ii. Statements criticizing or opposing Zionism;

    iii. Calls for an arms embargo on or limiting military aid to Israel;

    iv. The phrase "from the river to the sea, Palestine will be free";

    v. Statements describing Israel as an apartheid state;

    vi. Statements comparing the Israeli government's policies or actions to those of Nazi Germany;

    vii. Statements criticizing Israel as a racist endeavor;

    viii. Calls for boycotts of, divestments from, and sanctions on Israel;

whether or not this speech is deemed to be antisemitic, anti-Israel, or anti-American, or to express support or sympathy for terrorism or a designated foreign terrorist organization such as Hamas;

b. Speech that is critical of the Administration's policies or actions towards Israel, whether or not this speech is deemed to be antisemitic, anti-Israel, or anti-American, or to express support or sympathy for terrorism or a designated foreign terrorist organization such as Hamas;

c. Engaging in peaceful political protest that is in support of Palestine or critical of Israel, including but not limited to:

    i. Organizing, leading, participating in, attending, or associating with a protest;

    ii. Authoring or publishing scholarship or public writing such as an op-ed or social media post; and

    iii. Supporting or participating in the Boycott, Divestment, Sanctions ("BDS") movement;

      whether or not this protest is deemed to be antisemitic, anti-Israel, or anti-American, or to express support or sympathy for terrorism or a designated foreign terrorist organization such as Hamas;

    d. Associating with or joining an organization that expresses views on Israel or Palestine including a banned or suspended student or faculty organization, whether or not such organization is deemed to be antisemitic, anti-Israel, or anti-American, or to express support or sympathy for terrorism or a designated foreign terrorist organization such as Hamas;

unless the speech and association falls within one of the narrow categories of unprotected speech and association, such as: (i) incitement, i.e., advocacy that is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action," *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); and (ii) speech that constitutes "material support" to a designated terrorist organization, i.e., speech described in 18 U.S.C. §§ 2339A(b) or 2339B that is "performed in coordination with, or at the direction of" such an organization, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 24 (2010).

(2) DECLARED that the Policy violates the First Amendment because it is impermissibly viewpoint discriminatory;

(3) DECLARED that the Policy violates the APA because it is contrary to constitutional right, arbitrary and capricious, and without clear statutory authorization;

(4) ORDERED that the Policy is vacated and set aside under the APA, and therefore that the provision made in the 2021 DHS Guidelines for the Enforcement of Civil Immigration Law for the protection of noncitizens' First Amendment rights is (to the extent the Policy

rescinded it) reinstated by operation of law, *see* Memorandum from Secretary of Homeland Security Mayorkas to Tae Johnson, Acting Director of ICE, *Guidelines for the Enforcement of Civil Immigration Law* at 5 (Sept. 30, 2021), https://perma.cc/Z7CL-NV5D ("A noncitizen's exercise of their First Amendment rights . . . should never be a factor in deciding to take enforcement action.");

(5) ORDERED that Secretaries Noem and Rubio and Acting Director Lyons, the defendant agencies, as well as their officers, agents, servants, employees, and attorneys, are PERMANENTLY ENJOINED from implementing the Policy;

(6) ORDERED that Secretaries Noem and Rubio and Acting Director Lyons, the defendant agencies, as well as their officers, agents, servants, employees, and attorneys, are PERMANENTLY ENJOINED from taking any of the following actions on the basis of constitutionally protected speech or association, including the speech and association described in paragraph 1 above: (i) revoking the visas of noncitizens under 8 U.S.C. § 1201(i); (ii) charging them with removability under 8 U.S.C. § 1227(a)(1)(B) (to the extent the basis for doing so is a visa revocation under § 1201(i)); and (iii) charging them with removability under 8 U.S.C. § 1227(a)(4)(B) (to the extent the basis for doing so is the endorse or espouse provisions);

(7) ORDERED that Secretaries Noem and Rubio and Acting Director Lyons, the defendant agencies, as well as their officers, agents, servants, employees, and attorneys, are PERMANENTLY ENJOINED from taking any action, formal or informal, to threaten to revoke the visas or green cards of noncitizens, or to arrest, detain, and deport them, on the basis of constitutionally protected speech or association, including the speech and association described in paragraph 1 above;

(8) ORDERED that:

    a. The defendant agencies must, within 14 days of this Order, prominently post to their websites, and communicate to all Student and Exchange Visitor Program ("SEVP") certified schools and institutions designated by the Department of State as authorized exchange program sponsors, the following notice: "The First Amendment protects the freedoms of speech, association, and assembly. Noncitizens lawfully present in the United States enjoy the protection of the First Amendment, just as U.S. citizens do, including the right to participate in political protests and other forms of political advocacy. The First Amendment prohibits the U.S. government and its employees from revoking the visas of noncitizens, and from arresting, detaining, or deporting them, on the basis of constitutionally protected speech and association."; and

    b. The State Department must, within 14 days of this Order, provide to any student applying for or granted an F, M, or J visa the same notice;

(9) ORDERED that the defendant agencies shall, every 30 days, provide to Plaintiffs the following information while Executive Orders 14,161 and 14,188 remain in effect or until the Court orders otherwise:

    a. The total number of noncitizens against whom the Secretary of State has made a determination of removability under the foreign policy provisions, 8 U.S.C. §§ 1182(a)(3)(C), 1227(a)(4)(C), or endorse or espouse provisions, 8 U.S.C. §§ 1182(a)(3)(B), 1227(a)(4)(B), that relies in whole or in part on the noncitizen's speech, association, or protest activity (whether or not Defendants deem that speech, association, or protest activity to be constitutionally protected);

    b. The total number of noncitizens whose visas have been revoked pursuant to 8 U.S.C. § 1201(i) relying in whole or in part on the noncitizen's speech, association, or protest activity (whether or not Defendants deem that speech, association, or protest activity to be constitutionally protected); and

    c. For each individual included in the aggregate statistics described above, the following information, with the identity of the individual redacted:

        i. The specific provision or provisions relied on;

        ii. The noncitizen's immigration status (specifically, whether they are a green card holder or, if they are a visa holder, the class of visa they hold);

        iii. Whether Homeland Security Investigations' Office of Intelligence prepared a report of analysis or other similar analysis on the noncitizen;

        iv. Whether the noncitizen was referred by the HSI's National Security Division to the Department of State;

        v. Whether an action memo was generated by the Department of State recommending that a determination of removability be made or, in the case of a visa revocation, that the visa be revoked; and

        vi. A copy of the removability determination or visa revocation decision redacted for personally identifying information or law-enforcement privileged information, together with a privilege log;

(10) ORDERED that Secretary Rubio and the Department of State provide notice to:

    a. Any noncitizen against whom the Secretary of State has made a determination of removability under the foreign policy provisions, 8 U.S.C. §§ 1182(a)(3)(C), 1227(a)(4)(C), or endorse or espouse provisions, 8 U.S.C. §§ 1182(a)(3)(B),

   1227(a)(4)(B), relying in whole or in part on the noncitizen's speech, association, or protest activity (whether or not Defendants deem that speech, association, or protest activity to be constitutionally protected); and

  b. Any noncitizen whose visa the Secretary of State or consular office has revoked pursuant to 8 U.S.C. § 1201(i) relying in whole or in part on the noncitizen's speech, association, or protest activity (whether or not Defendants deem that speech, association, or protest activity to be constitutionally protected);

that the determination or visa revocation decision was based in whole or part on the noncitizen's speech, association, or protest activity, together with a description of the speech, association, or protest activity on which the determination was based;

(11) ORDERED that Secretaries Noem and Rubio and Acting Director Lyons, and the defendant agencies, are DIRECTED to:

  a. Provide a copy of this Order to their respective officers, staff, employees, and independent contractors;

  b. Direct the recipients to comply with the terms of the order;

  c. Notify all recipients that they are bound by the court's order; and

  d. Provide counsel for Plaintiffs with a copy of such communication(s);

(12) ORDERED that Secretaries Noem and Rubio and Acting Director Lyons, the defendant agencies, as well as their officers, agents, servants, employees, and attorneys, are DIRECTED to rescind any formal or informal guidance or other direction provided to officers, staff, employees, or contractors of the federal government to implement the Policy;

(13)  ORDERED that, within 60 days, the defendant agencies shall develop the trainings and practices necessary to ensure consistent and effective compliance with the Court's Order, and provide copies of those trainings and practices to Plaintiffs and to the Court for the Court's review;

(14)  ORDERED that Defendants are DIRECTED to file a status report within 30 days of this Order describing the steps taken to ensure compliance with this Order and certifying compliance with its requirements, including by providing copies of any and all memoranda, directives, written guidance, notices, forms, and other communications made to effectuate this Order, except that, in the case of guidance or communications provided to many schools, Defendants need only provide exemplar correspondence, rather than copies of guidance or communication to each school;

(15)  ORDERED that Defendants are DIRECTED to file a status report every 30 days thereafter describing any additional steps taken to ensure compliance with the Order and certifying ongoing compliance with its requirements, while Executive Orders 14,161 and 14,188 remain in effect or until the Court orders otherwise;

(16)  ORDERED that judgment shall enter in favor of Plaintiffs and against Defendants on Count I and Count IV; and it is further

(17)  ORDERED that this Court retains jurisdiction to enforce or modify this Order.

SO ORDERED

Dated:  _____          _____
        Boston, Massachusetts          THE HONORABLE WILLIAM J. YOUNG
                                       UNITED STATES DISTRICT JUDGE