# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS, ET AL.,

                    *Plaintiffs*,

    v.

MARCO RUBIO, in his official capacity as
Secretary of State, and the
DEPARTMENT OF STATE, ET AL.,

                    *Defendants*.

CIVIL ACTION
CASE NO. 1:25-cv-10685-WGY

**PROPOSED INTERVENORS THE INTERCEPT & THE CENTER FOR
INVESTIGATIVE REPORTING'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO INTERVENE AND FOR ACCESS TO JUDICIAL RECORDS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

ARGUMENT ..................................................................................................... 7

    I.      The motion to intervene should be granted. ....................................... 7

    II.    The Exhibits should be unsealed. ...................................................... 8

        A.   The First Amendment right of access attaches to the Exhibits. ......................... 9

        B.   The common-law right of access attaches to the Exhibits. ............................... 12

        C.   The First Amendment and common-law rights of access to the Exhibits have not been and cannot be overcome by a governmental purpose. ...................... 13

        D.   To the extent any continued sealing of the Exhibits is necessary, such sealing must be narrowly tailored and supported by specific, on-the-record findings that have not been provided here. .................................................. 18

CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) ........................................................................... 19

*Bradford & Bigelow, Inc. v. Richardson*,
  109 F. Supp. 3d 445 (D. Mass. 2015) ....................................................... passim

*Brown & Williamson Tobacco Corp. v. FTC*,
  710 F.2d 1165 (6th Cir. 1983) ......................................................................... 12

*Cole v. Maine*,
  No. 1:17-CV-00071-JAW, 2018 WL 276682 (D. Me. Jan. 3, 2018)........................ 21

*Comm'r v. Advance Local Media LLC*,
  918 F.3d 1161 (11th Cir. 2019) ......................................................................... 9

*Courthouse News Serv. v. Planet*,
  750 F.3d 776 (9th Cir. 2014)...................................................................... 12, 14

*Courthouse News Serv. v. Quinlan*,
  32 F.4th 15 (1st Cir. 2022) .............................................................................. 12

*Doe v. Massachusetts Inst. of Tech.*,
  46 F.4th 61 (1st Cir. 2022) .............................................................................. 12

*F.T.C. v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987) ...................................................................... passim

*Globe Newspaper Co. v. Pokaski*,
  868 F.2d 497 (1st Cir. 1989) ....................................................................... 13, 15

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982)......................................................................................... 8

*In re Boston Herald, Inc.*,
  321 F.3d 174 (1st Cir. 2003) ....................................................................... 13, 14

*In re Cont'l Ill. Sec. Litig.*,
  732 F.2d 1302 (7th Cir. 1984) ......................................................................... 12

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  406 F. Supp. 3d 180 (D.P.R. 2019) .................................................................. 20

*In re Iowa Freedom of Info. Council*,
  724 F.2d 658 (8th Cir. 1983) ........................................................................... 12

*In re Providence Journal Co., Inc.*,
  293 F.3d 1 (1st Cir. 2002) ................................................................................ passim

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ............................................................................. 21

*Khalil v. Joyce*,
  No. 1:25-cv-01935, ECF No. 29 (S.D.N.Y. Mar. 12, 2025) .................................... 22

*Lipman v. Budish*,
  974 F.3d 726 (6th Cir. 2020) ............................................................................... 19

*Littlejohn v. Bic Corp.*,
  851 F.2d 673 (3d Cir. 1988) ................................................................................ 14

*Mahdawi v. Trump*,
  No. 2:25-cv-00389, ECF No. 73 (D.Vt. May 23, 2025) ......................................... 22

*Mahdawi v. Trump*,
  No. 25-1113, ECF No. 88 (2nd Cir. May 9, 2025) ................................................. 22

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
  684 F.3d 286 (2d Cir. 2012) ................................................................................. 11

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ........................................................................................ 2, 16

*Öztürk v. Hyde*,
  No. 25-1019, ECF No. 80 (2d. Cir. May 9, 2025) .................................................. 22

*Planet Fitness Int'l Franchise v. JEG-United, LLC*,
  No. 20-cv-693, 2022 WL 20053903 (D.N.H. Dec. 20, 2022) ................................. 14

*Poliquin v. Garden Way, Inc.*,
  989 F.2d 527 (1st Cir. 1993) .............................................................. 14, 15, 16, 19

*Press-Enter. Co. v. Superior Ct. of Cal.* (*Press-Enterprise I*),
  464 U.S. 501 (1984) ......................................................................... 11, 17, 18, 23

*Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*),
  478 U.S. 1 (1986) ......................................................................................... 13, 15

*Pub. Citizen Grp. v. Liggett Grp., Inc.*,
  858 F.2d 775 (1st Cir. 1988) ............................................................................ 9, 10

*Publicker Indus., Inc. v. Cohen*,
  733 F.2d 1059 (3d Cir. 1984) ............................................................................... 11

*R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*,
    584 F.3d 1 (1st Cir. 2009) ............................................................................ 9, 18

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ........................................................................................ 11

*Rushford v. New Yorker Mag., Inc.*,
    846 F.2d 249 (4th Cir. 1988) ...................................................................... 11, 14

*Siedle v. Putnam Investments, Inc.*,
    147 F.3d 7 (1st Cir. 1998) .......................................................................... 15, 16

*Suri v. Trump*,
    No. 25-1560, ECF No. 26 (4th Cir. June 26, 2025) ........................................ 22

*United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980) ........................................................................ 19

*United States v. Kravetz*,
    706 F.3d 47 (1st Cir. 2013) ............................................................................. 10

*United States v. Lilly*,
    185 F.R.D. 113 (D. Mass. 1999) ..................................................................... 21

**Statutes**

Fed. R. Civ. P. 24(b) .............................................................................................. 7

Fed. R. Civ. P. 5.2(c) ............................................................................................ 17

**Other Authorities**

Isabela Dias & Noah Lanard, *Trump's Deportation Black Hole*, Reveal (April 12, 2025),
    https://bit.ly/48MK91i ................................................................................... 3

Jonah Valdez, *In Trump's America, You Can Be Disappeared for Writing an Op-Ed*, The Intercept
    (March 30, 2025, 4:00 AM), https://perma.cc/PJ3D-8TF9 .............................. 3

Jonah Valdez, *Trump Appears to Be Targeting Muslim and "Non-White" Students for
    Deportation*, The Intercept (April 8, 2025, 9:03 AM), https://perma.cc/NVZ4-NB2V ............. 3

Julianne McShane, *Mahmoud Khalil, Finally Free, Speaks Out*, Mother Jones (June 22, 2025),
    https://perma.cc/QL8A-BHZD .......................................................................... 4

Natasha Lennard, *If Trump Can Deport Mahmoud Khalil, Freedom of Speech Is Dead*, The
    Intercept (March 10, 2025, 10:39 AM), https://perma.cc/S5T5-LZDT ........................ 3

Noah Lanard, *Tufts PhD Student Released From ICE Detention After Chilling Arrest*, Mother
    Jones (May 10, 2025), https://perma.cc/68HZ-U9X4 ................................. 3

iv

Shaina Shealy & Najib Aminy, *Gaza: A War of Weapons and Words*, Reveal (Dec. 16, 2023),
    http://bit.ly/49VhI2s.................................................................................................................... 4

Sophie Hurwitz, *Trump Asks Schools to Report Activist Students for Deportation*, Mother Jones
    (Jan. 30, 2025), https://perma.cc/FLZ8-J5E8 ........................................................................... 3

## INTRODUCTION

Non-parties Intercept Media, Inc. ("The Intercept") and The Center for Investigative Reporting ("CIR") (collectively, "Proposed Intervenors") respectfully request that the Court permit them to intervene for the limited purpose of obtaining access to judicial records that relate to the federal government's policy of arresting, detaining, and deporting noncitizen students and faculty who participated in pro-Palestinian speech—a matter this Court has called "perhaps the most important ever to fall within [its] jurisdiction." ECF No. 261 at 3. Despite the public interest in this case, much of the evidence the Court heard in open court and relied on in its September 30 merits ruling, *see* ECF. No. 261, remains inaccessible to the press and public. Such secrecy cannot be reconciled with the "presumptively paramount right of the public to know." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

Proposed Intervenors seek access to certain exhibits that the Court admitted during or prior to trial and considered as evidence in its merits decision (collectively, the "Exhibits"). Specifically, The Intercept and CIR seek access to the "Reports of Analysis" ("ROAs") prepared by U.S. Immigration and Customs Enforcement's Homeland Security Investigations ("HSI"), *see* Exs. 232–36; HSI's referral letters to the State Department (the "Referral Letters"), *see* Exs. 242–246; the State Department "Action Memos," *see* Exs. 247–50; two State Department diplomatic cables, *see* ECF No. 186-2 Ex. 13 (Ex. 50) (the "Caught and Revoked Cable"); ECF No. 186-2 Ex. 11 (Ex. 51) (the "Catch and Revoke Cable"); and a presentation on vetting processes introduced through the Enhanced Screening Cable (the "Enhanced Screening Presentation"), *see* ECF No.

186-1 Ex. 3 (Ex. 49).[1]  Proposed Intervenors believe these materials provide important insight into the government's immigration enforcement actions and policies that affect critical First Amendment freedoms.  Indeed, the Court cited the Exhibits repeatedly in its opinion finding that Defendants had violated the First Amendment.  *See* ECF No. 261 at 19, 20, 28, 30, 32, 42, 45, 49, 51, 52, 55, 63, 64, 66.

The Court provisionally sealed the Exhibits admitted at trial, *see* Trial Tr. vol. II, 131:15–25, July 10, 2025 (Court explaining that trial exhibits will remain sealed "during the trial or until the court is done with its decision"), and the Exhibits filed on the docket pretrial were significantly redacted, *see* ECF Nos. 189-1, 189-2.  On October 8, 2025, The Intercept submitted a letter asking the Court to clarify what, if any, restrictions remain on the public's right to access these records and the parties' ability to share them.  *See* ECF No. 266.  The Intercept and CIR now supplement that letter and move this Court to lift any such restrictions.

These records go to the heart of "the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies,'" as well as the role of news organizations like The Intercept and CIR in "publish[ing] information concerning the operation of government."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  Both the First Amendment and the common law presume public access to these judicial records, and the Government cannot meet its heavy burden to justify secrecy in light of these "strong and sturdy" presumptions.  *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410.

---

[1]    The Court noted in its ruling that "[a]ll of the agreed-to Exhibits 1–231 were admitted as a matter of course.  As for the balance of the numbered exhibits [including Exhibits 232–250], those were admitted during the trial."  ECF No. 261 at 4 n.2.

For the reasons herein, Proposed Intervenors respectfully request that the Court grant their motion to intervene and direct that the Exhibits be unsealed or, at a minimum, make clear that no order currently restricts public access to the Exhibits and counsel for the parties are free to share the Exhibits.

**BACKGROUND**

<u>Identity of Proposed Intervenors</u>

The Intercept is a nonprofit digital news organization. Its reporters regularly cover national politics and immigration, including the government policies and deportations at issue in this case. *See, e.g.,* Jonah Valdez, *Trump Appears to Be Targeting Muslim and "Non-White" Students for Deportation*, The Intercept (April 8, 2025, 9:03 AM), https://perma.cc/NVZ4-NB2V; Natasha Lennard, *If Trump Can Deport Mahmoud Khalil, Freedom of Speech Is Dead*, The Intercept (March 10, 2025, 10:39 AM), https://perma.cc/S5T5-LZDT; Jonah Valdez, *In Trump's America, You Can Be Disappeared for Writing an Op-Ed*, The Intercept (March 30, 2025, 4:00 AM), https://perma.cc/PJ3D-8TF9.

CIR is a nonprofit news organization that produces the investigative radio show and podcast *Reveal*, as well as the investigative magazine *Mother Jones*. CIR reporters at both outlets have covered the current administration's immigration policies, including deportations of student activists. *See, e.g.*, Isabela Dias & Noah Lanard, *Trump's Deportation Black Hole*, Reveal (April 12, 2025), https://bit.ly/48MK91i; Sophie Hurwitz, *Trump Asks Schools to Report Activist Students for Deportation*, Mother Jones (Jan. 30, 2025), https://perma.cc/FLZ8-J5E8; Noah Lanard, *Tufts PhD Student Released From ICE Detention After Chilling Arrest*, Mother Jones (May 10, 2025), https://perma.cc/68HZ-U9X4; Julianne McShane, *Mahmoud Khalil, Finally Free, Speaks Out*,

Mother Jones (June 22, 2025), https://perma.cc/QL8A-BHZD; Shaina Shealy & Najib Aminy, *Gaza: A War of Weapons and Words*, Reveal (Dec. 16, 2023), http://bit.ly/49VhI2s.

<u>Proceedings in this Case</u>

On March 25, 2025, the American Association of University Professors ("AAUP"), several local AAUP chapters, and the Middle East Studies Association (collectively "Plaintiffs") filed a complaint alleging that the current administration of President Donald J. Trump (the "Trump Administration") has maintained a policy of arresting, detaining, and deporting noncitizen students and faculty who participate in pro-Palestinian activism. ECF No. 1 at 2. Plaintiffs challenged this "ideological-deportation policy," *id.*, under the First and Fifth Amendments and the Administrative Procedures Act, *id.* at 46–47.

On May 29, 2025, Defendants moved to provisionally file portions of the administrative record under seal as the parties negotiated a stipulated protective order. ECF No. 105. The Court granted the motion, *see* ECF No. 112 ("Administrative record has been filed under seal."), and on June 23 entered a protective order governing the exchange of confidential information during the discovery process, *see* ECF No. 147. The Court subsequently entered an amended protective order on July 1, 2025. *See* ECF No. 178. Both orders specify that their protections do "not cover information that is properly in the public domain or becomes part of the public domain through trial or otherwise, except as limited by other agreement of the parties or order of the Court in this action." ECF No. 147 at 2; ECF No. 178 at 2.

On June 27, Plaintiffs moved to file under seal portions of their Pretrial Brief on the grounds that the brief and accompanying exhibits contained excerpts from the provisionally sealed administrative record, ECF No. 106, and from discovery materials subject to the protective order. *See* ECF No. 169. Attached as exhibits to Plaintiffs' Pretrial Brief, ECF No. 186, were three of the

records that Proposed Intervenors now seek to access: the Enhanced Screening Presentation, ECF
No. 186-1 (Ex. 3); the Catch and Revoke Cable, ECF No. 186-2 (Ex. 11); and the Caught and
Revoked Cable, ECF No. 186-2 (Ex. 13). Each of these exhibits was heavily redacted.[2] The
motion to seal did not include any particularized support justifying the redactions. *See* ECF No.
169.[3]

The bench trial began on July 7, 2025. Over the course of the trial, the Court admitted the
remainder of the records that Proposed Intervenors seek, as follows:

- On July 10, the court admitted the five ROAs. *See* Trial Tr. vol. I, 29:18–21, July 10, 2025
  (Ex. 232); *id.* at 47:8–11 (Ex. 233); *id.* at 53:4–8 (Ex. 234); *id.* at 60:7–10 (Ex. 235); *id.* at
  66:12–16 (Ex. 236).

- On July 17, the Court admitted the five Referral Letters. *See* Trial Tr., 80:4–6, July 17,
  2025 (Ex. 242); *id.* at 97:10–13 (Ex. 243); *id.* at 97:23–25 (Ex. 244); *id.* at 98:24–99:1 (Ex.
  245); *id.* at 99:12–14 (Ex. 246).

- On July 18, the Court admitted the four Action Memos. *See* Trial Tr. vol. II, 101:20–102:1,
  July 18, 2025 (Exs. 247, 248, 249, 250).

When asked by Plaintiffs' counsel whether the ROAs were part of the public record, the Court
explained its protocol regarding provisionally sealed exhibits:

> They're sealed. . . . This court's protocol is not to share those during
> the trial or until the court is done with its decision. The court in its
> decision will make reference to those things upon which the court
> has relied. I've always taken the position that those things . . . *are*

---

[2]     Plaintiffs previously filed a version of the Pretrial Brief with even more extensive
redactions on July 1, 2025. *See* ECF 179.

[3]     The Court later denied as moot Plaintiffs' motion to seal, *see* ECF No. 184, but the
redactions remain on the docketed version.

*then public so the decision may be thoroughly reviewed* by obviously higher courts but anyone who wants to analyze the court's reasoning.

Trial Tr. vol. II, 131:15–25, July 10, 2025 (emphasis added).

On September 30, 2025, the Court issued its Findings of Fact and Rulings of Law. *See* ECF No. 261. As a procedural matter, the Court noted that "[a]ll of the agreed-to Exhibits 1–231," which would include Exhibits 49–51 filed earlier on the docket, "were admitted as matter of course. As for the balance of the numbered exhibits," including Exhibits 232–250, "those were admitted during the trial." ECF No. 261 at 4 n.2. Thus, all Exhibits sought in this Motion were admitted into evidence and considered by the Court in its ruling. In its ensuing factual recitation and analysis of the critical First Amendment issue here, the Court cited to each of the above-listed trial exhibits, *see id.* at 28 (citing Exs. 236, 243); *id.* at 30 (citing Exs. 233, 242); *id.* at 32 (citing Ex. 247); *id.* at 42 (citing Ex. 234); *id.* at 45 (citing Ex. 235); *id.* at 49 (citing Ex. 244); *id.* at 51 (citing Ex. 246); *id.* at 52 (citing Ex. 244)[4]; *id.* at 55 (citing Ex. 249); *id.* at 64 (citing Ex. 245); *id.* at 63 (citing Ex. 232); *id.* at 66 (citing Ex. 250), as well as the Catch and Revoke Cable, *see id.* at 19 (citing Ex. 51), and the Caught and Revoked Cable, *id.* at 20 (citing Ex. 50). The Court's ruling did not, however, address whether those records remained sealed.

<u>Proposed Intervenors' Efforts to Seek Access to the Exhibits</u>

On September 30, 2025, after the Court issued its ruling, counsel for The Intercept reached out to the Clerk's Office and Plaintiffs' counsel to request access to certain records cited in the opinion. *See* ECF No. 266 at 2. The Clerk's Office replied, "If you are seeking any trial

---

[4]    The Court refers here to Exhibit 244 as the Action Memo concerning Mohsen Mahdawi, but the trial transcript indicates that Exhibit 244 is in fact the Referral Letter concerning Mr. Mahdawi. Trial Tr., 97:23–25, July 17, 2025. The transcript further indicates that the Mahdawi Action Memo is Exhibit 248.

exhibits that were produced to the Court, you will have to obtain those admitted exhibits from Counsel. The Clerk's Office does not store exhibits. Sealed Exhibits will not be accessible unless by Court Order." *Id.* at 2–3. Plaintiffs' counsel, meanwhile, responded that although the Court "quotes these exhibits at length," since the Court "hasn't taken the additional step of unsealing" them, the "press could write to chambers to request access." *Id.* at 3. On October 8, 2025, The Intercept submitted a letter to the Court asking the Court to clarify whether any restrictions remain on the public's right to access these records and the parties' ability to share them. ECF No. 266. This Motion elaborates on and supplements that letter.

Plaintiffs' counsel consented to this Motion to the extent it does not seek disclosure of noncitizens' personally identifiable information that has not already been disclosed (such as social security numbers, A-numbers, passport numbers, home addresses, phone numbers, email addresses, social media handles, license plate numbers, and travel history). Counsel for Defendants did not respond to a request for their position on this Motion.

## ARGUMENT

### I.    The motion to intervene should be granted.

When access to judicial records is at stake, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (citation and internal quotation marks omitted). In the First Circuit, "permissive intervention is the procedurally correct vehicle" for non-parties to challenge such exclusion, *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009), and Federal Rule of Civil Procedure 24(b) allows for such intervention by anyone who files a "timely motion" and "has a claim or defense that shares with the main action

a common question of law or fact." Fed. R. Civ. P. 24(b)(1), (b)(1)(B).  Each of these requirements is satisfied here.

For one, Proposed Intervenors have reported extensively on the government policies and deportations at issue in this case, but their ability to do so fully and accurately is impaired by their inability to access judicial records at the center of the case.  That continued sealing provides the common question of law or fact that Rule 24(b) requires.  *See Comm'r v. Advance Local Media LLC*, 918 F.3d 1161, 1173 n.12 (11th Cir. 2019) (collecting cases).  This motion is also timely: Where the First Amendment and common-law rights attach, they attach "today for the records of cases decided a hundred years ago as surely as [they] do[] for lawsuits now in the early stages of motions litigation," *Pub. Citizen Grp. v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) (internal citation omitted).  Proposed Intervenors attempted to raise their concerns as soon as they "became aware that [their] interest in the case would no longer be adequately protected by the parties," *id.* at 785—namely, when it became clear that the parties still understood the records to be sealed after this Court's merits ruling.  Finally, no party could be prejudiced by a full airing of the arguments in favor of transparency, *see* Fed. R. Civ. P. 24(b)(3), which "will not disrupt the resolution of the merits," *Pub. Citizen Grp.*, 858 F.2d at 786.

Proposed Intervenors are therefore entitled to assert their First Amendment and common-law rights to access these records, and their motion to intervene should be granted.

## II.    The Exhibits should be unsealed.

"Courts long have recognized that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system."  *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002) (citation and internal quotation marks omitted).  "This recognition is embodied in two related but distinct presumptions of public access to judicial

proceedings and records," under the First Amendment and under the common law. *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013). In determining whether judicial records should be sealed, courts consider first whether the constitutional and common-law presumptions of access attach to the contested documents, *id.*, and second, if so, whether the party seeking to seal those records has overcome the "presumptively paramount right of the public to know" on the facts of the particular case, *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410.

Because both presumptions attach to the judicial records here, and because no party has met or can meet its burden to overcome these "strong and sturdy" presumptions, *id.*, the Exhibits should be unsealed.

### A.    The First Amendment right of access attaches to the Exhibits.

Recognizing that public proceedings "enhance[] both the basic fairness" of our judicial system "and the appearance of fairness so essential to public confidence in the system," *see Press-Enter. Co. v. Superior Ct. of Cal.* (*Press-Enterprise I*), 464 U.S. 501, 508 (1984), the Supreme Court has held that the First Amendment provides a presumption of access to certain judicial proceedings and documents, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980). *Richmond Newspapers* addressed criminal trials in particular, but "historically both civil and criminal trials have been presumptively open," *id.* at 580 n.17, and every circuit to address the question has concluded that the same presumption extends to certain civil proceedings and records, *see, e.g., N.Y. C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983); *Courthouse News Serv. v. Planet*, 750 F.3d

776, 786 (9th Cir. 2014).  The First Circuit, for its part, has acknowledged this body of cases and held that there is at least "a qualified First Amendment right in the public to access newly filed complaints" in civil matters.  *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 n.8, 21 (1st Cir. 2022); *see also Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 67 (1st Cir. 2022) ("The courts of appeals have recognized a qualified First Amendment right of public access to certain documents filed in civil litigation.").

Foundational principles of First Amendment law support the conclusion that the public has a qualified right of access to civil trial materials.  In deciding whether a constitutional presumption of access attaches to particular records, courts look to the "complementary considerations" of "experience and logic"—that is, "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question."  *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 8 (1986); *see also In re Boston Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003) (applying *Press–Enterprise II* to judicial records); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502–04 (1st Cir. 1989) (same).

Here, both experience and logic counsel that the constitutional presumption attaches to the Exhibits.  As to experience, there is a robust tradition of public access to civil judicial records that form "the record on which a judge actually decides the central issues in a case."  *In re Boston Herald,* 321 F.3d at 189; *accord Standard Fin. Mgmt. Corp.*, 830 F.2d at 408 (recognizing tradition of access "to materials on which a court relies in determining the litigants' substantive rights").  That "longstanding tradition of public access to trials and pre-trial motions" encompasses not just the trial proceeding itself but also "materials filed in connection with non-discovery motions, like motions for summary judgment, *Daubert* motions, or motions in limine," *Bradford & Bigelow,*

*Inc. v. Richardson*, 109 F. Supp. 3d 445, 448 (D. Mass. 2015); *see also Planet Fitness Int'l Franchise v. JEG-United, LLC*, No. 20-cv-693-LM, 2022 WL 20053903, at *1 (D.N.H. Dec. 20, 2022), and evidence admitted at trial, *see Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993).[5]

The Exhibits fall squarely within this tradition. Each was properly submitted to the Court, either in connection with Plaintiffs' Pretrial Brief, *see* ECF 186-1 (Ex. 49); ECF 186-2 (Exs. 50, 51), or at trial, *see* Trial Tr. vol. I, 29:18–21, July 10, 2025 (Ex. 232); *id.* at 47:8–11 (Ex. 233); *id.* at 53:4–8 (Ex. 234); *id.* at 60:7–10 (Ex. 235); *id.* at 66:12–16 (Ex. 236); Trial Tr., 80:4–6, July 17, 2025 (Ex. 242); *id.* at 97:10–13 (Ex. 243); *id.* at 97:23–25 (Ex. 244); *id.* at 98:24–99:1 (Ex. 245); *id.* at 99:12–14 (Ex. 246); Trial Tr. vol. II, 101:20–102:1, July 18, 2025 (Exs. 247, 248, 249, 250). And all but one were cited by the Court in its opinion. *See* ECF No. 261 at 19 (Ex. 51); *id.* at 20 (Ex. 50); *id.* 28 (Exs. 236, 243); *id.* at 30 (Exs. 233, 242); *id.* at 32 (Ex. 247); *id.* at 42 (Ex. 234); *id.* at 45 (Ex. 235); *id.* at 49 (Ex. 244); *id.* at 51 (Ex. 246); *id.* at 52 (Ex. 244); *id.* at 55 (Ex. 249); *id.* at 64 (Ex. 245); *id.* at 63 (Ex. 232); *id.* at 66 (Ex. 250). The Exhibits are, in short, "the record on which a judge actually decide[d] the central issues in a case." *In re Boston Herald,* 321 F.3d at 189.

As to logic, there is also no doubt that public access to civil judicial records "plays a significant positive role in the functioning" of the civil justice system and, indeed, democracy more broadly. *See Press-Enterprise II*, 478 U.S. at 8. The First Amendment right of access protects

---

[5]    Other circuits have similarly recognized a tradition of public access to civil judicial records, including civil complaints, *see Courthouse News Serv. v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014); documents submitted in support of motions for summary judgment, *see Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); and material introduced into evidence at trial, *see Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988).

both "the free discussion of governmental affairs" and "the confidence of the public that justice is being done by its courts in all matters, civil as well as criminal." *Poliquin*, 989 F.2d at 533. Allowing the public to access civil judicial records—and, accordingly, to understand the basis on which courts determine parties' substantive rights—enables informed public discussion of civil proceedings and permits the public and press to "serve as an effective check on the system." *Globe Newspaper Co.*, 868 F.2d at 502. This Court has already recognized as much in this particular case, explaining during trial that any previously sealed materials incorporated into its ruling would need to become "public so the decision may be thoroughly reviewed by . . . anyone who wants to analyze the court's reasoning." *See* Trial Tr. vol. II, 131:23–25, July 10, 2025.

Given the "significant positive role" of public access to civil judicial records, *see Press-Enterprise II*, 478 U.S. at 8, and the robust tradition of protecting such access, the Exhibits are presumptively public under the First Amendment.

**B.    The common-law right of access attaches to the Exhibits.**

Like the First Amendment, "[t]he common law presumes a right of public access to judicial records." *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 9 (1st Cir. 1998); *see also Nixon*, 435 U.S. at 597 ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). The common-law presumption extends, in both civil and criminal cases, *see Siedle*, 147 F.3d at 9, to "judicial records," or "materials on which a court relies in determining the litigants' substantive rights," *Standard Fin. Mgmt. Corp.*, 830 F.2d at 408; *accord In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002) ("This presumptive right of access attaches to those materials which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication.").

Courts in this Circuit have routinely found that the common-law right attaches to documents admitted at trial, *see, e.g., Poliquin*, 989 F.2d at 533 ("[O]nly the most compelling showing can justify post-trial restriction on disclosure of testimony or documents actually introduced at trial."); *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 447–48 (explaining that the common-law presumption of access "is strongest (and the burden to overcome it the highest) for documents introduced at trial"), or submitted in connection with a non-discovery pretrial motions, *see Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 448.

The Exhibits are quintessential "judicial records" in that analysis and thus fall squarely within the common-law presumption. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 408. Each of these documents was properly submitted to the Court to assist the Court in resolving the factual and legal questions at the core of this case, including Plaintiffs' claims that the Government's alleged policy violates the First Amendment, *see* ECF No. 1 at 46–47. These documents form the record on which the court adjudicated the parties' substantive rights and are thus presumptively public under the common law. *See Standard Fin. Mgmt. Corp.*, 830 F.2d at 408.

### C. The First Amendment and common-law rights of access to the Exhibits have not been and cannot be overcome by a governmental purpose.

Where, as here, the First Amendment right of access attaches to a judicial record, it can only be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Providence J. Co., Inc.*, 293 F.3d at 11 (quoting *Press-Enterprise I*, 464 U.S. at 510). Similarly, "only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-

law right of access." *Id.* at 10 (quoting *Standard Fin. Mgmt.*, 830 F.2d at 410).[6]  In both analyses, the burden to prove that sealing is necessary falls on "those seeking to keep the [materials] hidden from view," *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410–11, who "must explain, on a document-by-document basis, why sealing is required and how their request satisfies the applicable legal standard," *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 447.  Likewise, any court order sealing presumptively public records must contain on-the-record factual findings "specific enough that a reviewing court can determine whether the closure order was properly entered." *See Press-Enterprise I*, 464 U.S. at 510; *In re Providence J.*, 293 F.3d at 15–16 (requiring district court to "enter specific findings as to the need for [any] restriction and the impracticality of redaction as an alternative to sealing").

No such showings have been made here.  At no point in the record of this case did the parties make particularized, substantive arguments to support sealing any of the records at issue, nor is there any sealing order that makes "specific findings as to the need for [any] restriction and the impracticality of redaction as an alternative to sealing."  *In re Providence J.*, 293 F.3d at 15–16.  On the contrary, the documents appear to have been sealed wholly on the basis of the parties' agreement and their stipulated protective order.  *See* ECF No. 112 (minute order provisionally sealing administrative record on the basis of the parties' agreement); ECF No. 178 (order granting stipulated protective order).[7]  But "[s]ealing orders are not like party favors, available upon

---

[6]    When both the First Amendment and common-law rights attach, courts (including the First Circuit) generally apply the more stringent First Amendment test. *See Providence J. Co.*, 293 F.3d at 11.

[7]    Notably, however, the Amended Protective Order on its face governs only "the pre-trial phase" of the litigation, not trial itself, ECF No. 178 at 1, and specifies that it does "not cover information that . . . becomes part of the public domain through trial or otherwise," *id.* at 2.

request." *R.&G. Mortg. Corp.*, 584 F.3d at 12.  The agreement of the parties is not an adequate

basis for overcoming the presumptions of access.  *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d

410, 418–21 (5th Cir. 2021) (explaining that "[p]arty-agreed secrecy" at the discovery stage cannot

satisfy the "arduous" standard for sealing records "at the *adjudicative* stage, when materials enter

the court record"); *Lipman v. Budish*, 974 F.3d 726, 754 (6th Cir. 2020) ("Even under the terms of

the protective order itself (which has no power to bind this Court or to affect what documents are

available to the public), court approval is still required for documents to be maintained under seal,

regardless of whether a party has designated them as confidential.").  By the same token, "parties

[] may not rely solely on their designations under a discovery protective order to support sealing

motions; they must show that each document they seek to seal should be sealed under the

appropriate standard." *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 448; *see also Poliquin*, 989

F.2d at 533 ("[T]he ordinary showing of good cause which is adequate to protect *discovery*

*material* from disclosure cannot alone justify protecting such material after it has been introduced

at trial.").  The parties here have made no such showing.

       Even if the parties attempted to justify sealing the Exhibits now, they could not do so.  As

an initial matter, most of the Exhibits were shown in open court and quoted extensively in this

Court's ruling, and the Court itself indicated that they would become public following issuance of

its decision relying on them.  *See* Trial Tr. vol. II, 131:15–25, July 10, 2025; *see also United States*

*v. Hubbard*, 650 F.2d 293, 318 (D.C. Cir. 1980) (explaining that previous public access to sealed

records "is a factor which may weigh in favor of subsequent access"); *In re Fin. Oversight &*

*Mgmt. Bd. for Puerto Rico*, 406 F. Supp. 3d 180, 187 (D.P.R. 2019) ("[I]nsofar as the material . . .

is merely factual information which already is of public record, obviously there is nothing to be

gained nor is anyone to be protected by its closure." (cleaned up)).  There is, simply put, no compelling secrecy interest in materials that have already been made public.

On the other side of the ledger, the public's interest in understanding what remains secret could not be higher.  As a matter of law, "the public interest is strongest (and the burden to overcome it the highest) for documents introduced at trial."  *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 448 (D. Mass. 2015).  And the particular documents sought here go to a critical issue of constitutional rights and may provide important information about what the government is doing in the realm of immigration enforcement.  Specifically, the Exhibits include details and statistics about the government's visa revocation policies and enforcement, *see, e.g.*, ECF No. 261 at 20 (Ex. 50), 75 (Ex. 64), as well as reports and letters reflecting the government's basis for high-profile efforts to target specific noncitizens, *see, e.g., id.* at 24 (Exs. 236 & 243), 30 (Exs. 233 & 242), 49 (Ex. 244), 64–66 (Exs. 245 & 250), among other things.  In light of the tremendous public interest in the Exhibits, only the most overriding interest and narrowest tailoring could even come close to justifying their sealing.

Of course, here, there is no such interest because the parties never made a particularized motion to seal.  And none of the justifications (thinly) previewed in the parties' stipulated protective order would suffice to justify the Exhibits' blanket sealing, for that matter.  For instance, information may not be sealed simply because it implicates "federal law enforcement activities and operations" or was "compiled for law enforcement purposes."  *See* ECF No. 178 (Am. Protective Order) ¶¶ 2(i), 2(j).  Courts in this Circuit have recognized a valid sealing interest for law enforcement records only "in two limited circumstances": if "disclosure might reveal the location of electronic surveillance equipment or the identity of a Government informant."  *United States v. Lilly*, 185 F.R.D. 113, 115 (D. Mass. 1999); *see also Kamakana v. City & Cnty. of*

*Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006) ("Simply invoking a blanket claim, such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access.").  There is no basis in the record to believe such a showing could be made here.

Likewise, the mere fact that Federal Rule of Civil Procedure 5.2(c) may prevent records from being electronically accessible to the public in other litigation, *see* ECF No. 178 (Am. Protective Order) at ¶ 2(k), has no bearing on whether judicial records should be *sealed* in *this* case.  *See Kamakana*, 447 F.3d at 1185 (noting that FOIA provisions protecting materials from disclosure did not suffice to demonstrate need for sealing of judicial records); *Cole v. Maine*, No. 1:17-CV-00071-JAW, 2018 WL 276682, at *2-4 (D. Me. Jan. 3, 2018) (declining to wholly seal personnel records based on confidentiality requirements in Maine Civil Service Law).  Further, Rule 5.2(c) explicitly provides that courts may "order[] otherwise" and make records publicly accessible, Fed. R. Civ. P. 5.2(c), as courts in many cases relevant here have done.  *See Suri v. Trump*, No. 25-1560, ECF No. 26 (4th Cir. June 26, 2025) (lifting Rule 5.2(c) restrictions in Badar Khan Suri's appeal); *Mahdawi v. Trump*, No. 25-1113, ECF No. 88 (2nd Cir. May 9, 2025) (same in Mohsen Mahdawi's appeal); *Öztürk v. Hyde*, No. 25-1019, ECF No. 80 (2d. Cir. May 9, 2025) (same in Rümeysa Öztürk's appeal); *Mahdawi v. Trump*, No. 2:25-cv-00389, ECF No. 73 (D.Vt. May 23, 2025) (same in Mohsen Mahdawi's district court case); *Khalil v. Joyce*, No. 1:25-cv-01935, ECF No. 29 (S.D.N.Y. Mar. 12, 2025) (same in Mahmoud Khalil's district court case).

This backdrop makes the analysis here simple: the public's interest in access is extremely high, and the interest in continued sealing has not been established.  The First Amendment and common-law presumptions of public access to the Exhibits have not been and cannot be overcome.

**D.    To the extent any continued sealing of the Exhibits is necessary, such sealing must be narrowly tailored and supported by specific, on-the-record findings that have not been provided here.**

If in response to this Motion the parties put forth a compelling interest that could justify continued sealing of some portion of the Exhibits, any such restrictions must be no greater than necessary to serve that interest.  *See Press-Enterprise I*, 464 U.S. at 510.  The Court should at that point consider and employ less restrictive alternatives, including targeted redaction in lieu of wholesale sealing.  *See id.*; *In re Providence J.*, 293 F.3d at 15 ("[T]he district court's refusal to consider redaction on a document-by-document basis is insupportable.  Courts have an obligation to consider all reasonable alternatives to foreclosing the constitutional right of access.").  Redaction is plainly feasible here, where significant portions of the material at issue were either discussed in open court or incorporated into this Court's public opinion.  Further, any degree of continued sealing would need to be supported by specific, on-the-record factual findings sufficient to allow a reviewing court to determine whether the sealing was proper.  *See Press-Enterprise I*, 464 U.S. at 510; *In re Providence J.*, 293 F.3d at 15–16.  Such findings have not been made in this case and would be required to the extent the Court permits any continuing restrictions on public access to the Exhibits.

## CONCLUSION

For the reasons set forth above, The Intercept and CIR respectfully request that the Court grant their motion to intervene and direct that the Exhibits be unsealed and/or clarify that no order restricts public access to the Exhibits, such that the parties are free to disseminate the Exhibits.

Respectfully submitted,

Date:   December 3, 2025

*/s/ Robert A. Bertsche*
Robert A. Bertsche (BBO #554333)
KLARIS LAW PLLC
6 Liberty Square #2752

Boston, MA 02109
Telephone: 857-303-6938
rob.bertsche@klarislaw.com

Renee M. Griffin*
rgriffin@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Telephone: (202) 795-9300
rgriffin@rcfp.org
*Pro Hac Vice appl. forthcoming

Counsel for Proposed Intervenors The Intercept and The
Center for Investigative Reporting