UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

AMERICAN ASSOCIATIONS OF
UNIVERSITY PROFESSORS, ET AL.,

*Plaintiffs*,

v.

No. 1:25-cv-10685-WGY

MARCO RUBIO, in his official capacity as
Secretary of State, and the DEPARTMENT OF
STATE, ET AL.,

*Defendants.*

---

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR REMEDIES**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.     Injunctive Relief Is Barred............................................................................... 2

       A. 8 U.S.C. § 1252(f)(1) and Separation of Powers Principles Preclude the
          Injunctive Relief Plaintiffs Seek. ...................................................... 2

       B. The Injunctions Plaintiffs Seek Exceed the Court's Equitable Authority. ......... 4

       C.  The Public Interest is Served by Denying Plaintiffs Broad Injunctive Relief
           that has No Basis in Law or Equity................................................... 6

II.    Declaratory Relief Should Also be Denied........................................................ 7

III.   Any Injunctive or Declaratory Relief the Court Does Grant Must be Specific and Limited.
       9

IV.    Any Remedy Under the APA Should Be Limited to Remand Without Vacatur.
       Alternatively, Vacatur, Appropriately Limited, Should Be the Sole Remedy. .................. 13

       A.  The Court Should Remand Without Vacatur in Light of the Court's Decisio. 14

       B.  Should the Court Vacate the "Policy" To Any Extent, It Should Deny All
           Other Relief as Duplicative and Unnecessary................................................. 16

V.     Plaintiffs' Enumerated Injunctive Remedies Are Inappropriate. ...................................... 18

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Castañon Nava v. DHS,*
  --- F. Supp. 3d ---, 2025 WL 2842146 (N.D. Ill. Oct. 7, 2025) .............................................. 20

*Brito v. Garland,*
  22 F.4th 240 (1st Cir. 2021) ............................................................................................... 8

*Am. Ass'n. Univ. Prof. v. Rubio,*
  780 F.Supp. 3d 350 (D.Mass. 2025) .................................................................................... 9

*Al Otro Lado, Inc. v. Mayorkas,*
  619 F. Supp. 3d 1029 (S.D. Cal. 2022) ............................................................................... 3

*Am. Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974) ......................................................................................................... 11

*Am. Red Cross v. Palm Beach Blood Bank, Inc.,*
  143 F.3d 1407 (11th Cir. 1998) ........................................................................................ 10

*American Federation of Teachers v. Dept. of Education,*
  --- F. Supp. 3d ---, 2025 WL 2374697 (D. Md. Aug. 14, 2025) ............................................. 17

*Arizona v. United States,*
  567 U.S. 387 (2012) ......................................................................................................... 16

*Ass'n of Am.Univs. v. Dep't of Defense,*
  --- F. Supp. 3d ---, 2025 WL 2899765 (D. Mass. Oct. 10, 2025) ....................................... 17, 18

*Axia NetMedia Corp. v. Mass. Tech. Park Corp.,*
  889 F.3d 1 (1st Cir. 2018) ................................................................................................. 10

*Am. Hop. Assoc. v. Azar,*
  385 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................................ 14

*Biden v. Texas,*
  597 U.S. 785 (2022) .................................................................................................. 15, 16, 20

*Brito v. Barr,*
  415 F. Supp. 3d 258 (D. Mass 2019) ................................................................................... 8

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) ........................................................................ 11

*California v. Grace Brethren Church,*
  457 U.S. 393 (1982) .......................................................................... 8

*Cent. Maine Power Co. v. FERC,*
  252 F.3d 34 (1st Cir. 2001) ............................................................. 15

*Commc'ns Test Design, Inc. v. Contec, LLC,*
  952 F.3d 1356 (Fed. Cir. 2020) ........................................................ 7

*Creative LLC v. Elenis,*
  300 U.S. 570 (2023) ........................................................................ 18

*Doe v. Trump,*
  157 F.4th 36 (1st Cir. 2025) .............................................................. 5

*E.W. Bliss Co. v. Struthers-Dunn, Inc.,*
  408 F.2d 1108 (8th Cir. 1969) ......................................................... 10

*Energy Mgmt. Corp. v. City of Shreveport,*
  397 F.3d 297 (5th Cir. 2005) ........................................................... 10

*F.H. Cann & Assoc., Inc. v. Moorman,*
  605 F. Supp. 3d 232 (D. Mass. 2022) .............................................. 20

*Fed. Power Comm'n v. Idaho Power Co.,*
  344 U.S. 17 (1952) .......................................................................... 16

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) .......................................................................... 9

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022) ...................................................................... 2, 3

*Goldstein v. Galvin,*
  719 F.3d 16 (1st Cir. 2013) ............................................................... 9

*Hamama v. Adducci,*
  912 F.3d 869 (6th Cir. 2018) ............................................................ 8

*Hunt v. Wash. St. Apple Adver. Comm'n,*
  432 U.S. 333 (1977) ........................................................................ 11

*I.N.S. v. Orlando Ventura*,
    537 U.S. 13 (2002) ............................................................................ 15-, 16, 20

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
    110 F.4th 295 (1st Cir. 2024) ........................................................................... 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 10

*Marbury v. Madison*,
    1 Cranch 137, 2 L.Ed. 60 (1803) ...................................................................... 7

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ................................................................................... 2, 17

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ......................................................................................... 11

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ....................................................................................... 13

*NBA Props. v. Gold*,
    895 F.2d 30 (1st Cir. 1990) ............................................................................ 10

*New Jersey Conservation Found. v. FERC*,
    111 F.4th 42 (D.C. Cir. 2024) ....................................................................... 15

*NLRB v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers*,
    419 F.2d 1282 (6th Cir. 1970) ...................................................................... 10

*Palisades Gen. Hosp. Inc. v. Leavitt*,
    426 F.3d 400 (D.C. Cir. 2005) ...................................................................... 15

*Ramirez v. ICE*,
    568 F. Supp. 3d 10 (D.D.C. 2021) ........................................................... 14, 20

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ......................................................................................... 3

*Regents of Univ. of Cal.*,
    591 U.S. 1 (2020) ..................................................................................... 15, 18

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .............................................................................. 2, 3, 16

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ................................................................................ 4

*Stand Up for California! v. U.S. Dep't of Interior*,
   879 F.3d 1177 (D.C. Cir. 2018) ............................................................. 15

*Susman Godfrey LLP v. Exec. Ofc. Of the President*,
   780 F. Supp. 3d  (D.D.C. 2025) ............................................................. 20

*Trump v. CASA*,
   606 U.S. 831 (2025) ...................................................................... 1, *passim*

*United States v. Rylander*,
   460 U.S. 752 (1983) ............................................................................... 11

*United States v. Texas*,
   599 U.S. 670 (2023) ............................................................... 3, 13, 14, 16

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
   576 U.S. 200 (2015) ................................................................................. 9

*Washington v. Trump*,
   145 F.4th 1013 (9th Cir. 2025) .............................................................. 12

*Wayte v. United States*,
   470 U.S. 598 (1985) ............................................................................... 16

## <u>Statutes</u>

5 U.S.C. § 703 ....................................................................................................... 14

5 U.S.C. § 706(2)(A) ........................................................................................... 14

8 U.S.C. § 1201(i) .............................................................................................. 3, 7

8 U.S.C. § 1227(a)(1)(B) ............................................................................. 2, 7, 19

8 U.S.C. § 1252(f)(1) ..................................................................................... 2, 19

8 U.S.C. § 1252(g) .................................................................................................. 2

8 U.S.C. § 1401 ....................................................................................................... 6

8 U.S.C. §§ 1221-1232 ........................................................................................... 2

28 U.S.C. § 2201(a) ................................................................................................ 7

8 U.S.C. § 1252(f)(1) ................................................................................... 2, 3, 7, 8, 19,

§ 1227(a)(4)(C) ............................................................................................ 2, 7, 19

## **<u>Regulations</u>**

22 C.F.R. § 41.122(c) ........................................................................................ 19

**INTRODUCTION**

This Court acknowledged the difficulty of crafting a remedy here: it must not restrict the First Amendment rights of public officials or hinder the lawful investigative and enforcement authority of the defendant agencies, even as it addresses the violations it found. That challenge calls for care and restraint. Plaintiffs seek neither. Their remedy request is not merely overbroad—it is wholly untethered to both the record and governing law. After the Court found Plaintiffs cleared Article III's standing thresholds without identifying any of their 52,000 members who faced actual enforcement, they now demand a universal injunction and expansive APA and declaratory relief that would hinder legitimate enforcement actions and require this Court to police the speech of government officials including cabinet secretaries. This is the kind of boundless remedy the Supreme Court rejected in *Trump v. CASA*, which confined injunctive power to its historic equitable limits and permitted reach beyond the parties only when indispensable to providing complete relief. Plaintiffs have not nearly made that showing, yet they ask for the most intrusive, system-wide relief a federal court can issue. The Court has expressed its intention *not* to interfere with the implementation of immigration law. This matters because the relief requested would force agencies charged with applying the INA to reallocate resources to cumbersome compliance efforts rather than implementing lawful presidential priorities.

Thus, no remedy is justified here. But if the Court concludes that relief must be granted, Defendants oppose Plaintiffs' requested relief as overbroad and impermissible under the Immigration and Nationality Act ("INA"), Administrative Procedure Act ("APA"), and Supreme Court caselaw.[1]

---

[1] This opposition does not concede the correctness of the Court's factual and legal findings (Dkt. 261), but endeavors to assist in determining which, if any, remedies may be possible and appropriate given those findings, assuming no appeal.

# ARGUMENT

## I.    Injunctive Relief Is Barred.

The INA bars the injunctive relief Plaintiffs request here. *See* 8 U.S.C. § 1252(f)(1). But even assuming no such bar, a plaintiff requesting a permanent injunction must show not only irreparable injury and the inadequacy of remedies at law but also "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and . . . that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57, (2010). Plaintiffs' failure to meet those criteria, in addition to the INA bar, compels denial of their motion.

### A.    8 U.S.C. § 1252(f)(1) and Separation of Powers Principles Preclude the Injunctive Relief Plaintiffs Seek.

"[N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [certain] provisions of [the INA] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1). This includes provisions governing "the inspection, apprehension, examination and removal of aliens" under 8 U.S.C. §§ 1221-1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022); *id.* at 544 ("[1252(f)(1)] generally prohibits . . . injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the . . . provisions."). Thus, the INA forecloses Plaintiffs' effort to enjoin Defendants from charging noncitizens with removability under 8 U.S.C. § 1227(a)(1)(B) or § 1227(a)(4)(C).[2] *See* Mot. at 7-8, 15; Proposed Or. at 7 ¶ 6; *see also Aleman*

---

[2] As the motion to dismiss explained (dkt. 65 at 6-7), 8 U.S.C. § 1252(g) likewise prohibits such injunctions where, as here, they would have the effect of prohibiting the commencement of proceedings. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) ("AADC") (holding that decisions to commence proceedings cannot be challenged on constitutional grounds except in those proceedings),

*Gonzalez*, 596 U.S. at 551 ("injunctive relief on behalf of an entire class of aliens is not allowed" it is "limited to remedying the unlawful 'application' . . . to 'an individual alien').[3]

Plaintiffs' effort to enjoin Defendants' use of 8 U.S.C. § 1201(i) (providing for the revocation of visas by the Secretary of State or a consular officer), is similarly impermissible. *See* Mot. at 8, 15; Proposed Or. at 4 ¶ 1, 7 ¶ 6. The revocation statute can be the basis for an alien's removal under § 1227(a)(1)(B), a covered provision. *See* 8 U.S.C. § 1201(i). So, enjoining Defendants, in any manner, from revoking visas as authorized by § 1201(i) would hinder the operation of a covered removal provision, which § 1252(f)(1) prohibits this Court from doing. *Aleman Gonzalez*, 596 U.S. at 544. The Court should reject Plaintiffs' requests for injunctive relief against the operation of the INA provisions at issue.

Moreover, separation of powers principles counsel against granting the broad injunctive relief Plaintiffs seek. *Cf.* Dkt. 261 at 158 (recognizing such principles to constrain any injunction against the President's speech). Plaintiffs' requests that the Court restrict the operation of the relevant INA provisions put the Court in the untenable position of micromanaging day-to-day immigration enforcement operations. *See United States v. Texas*, 599 U.S. 670, 679 (2023) ("The principle of enforcement discretion over arrests and prosecutions extends to the immigration context, where the Court has stressed that the Executive's enforcement discretion implicates not only normal domestic law enforcement priorities, but also foreign-policy objectives.") (citing *AADC*, 525 U.S. at 490-91) (internal quotations omitted). It is the role of the Executive, not the courts, to oversee the execution of the laws as courts "do not possess a roving commission" to "exercise general legal oversight of the . . . Executive Branch[]." *TransUnion LLC v. Ramirez*,

---

[3] Plaintiffs' reliance on *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1045 (S.D. Cal. 2022), undermines their remedies request because that court held that § 1252(f)(1) prohibited it from entering an injunction. *Id.* at 1047 (subsequent history omitted).

594 U.S. 413, 424-25 (2021); *see also Rizzo v. Goode*, 423 U.S. 362 (1976). But that is precisely what Plaintiffs' requested injunctions invite the Court to do. The Court should decline.

### B.  The Injunctions Plaintiffs Seek Exceed the Court's Equitable Authority.

Plaintiffs seek injunctive relief as to the Executive Branch's implementation of "the policy,"[4] which would prevent the government from taking certain actions with respect to *all* "noncitizens," and require the government to report on certain actions taken with respect to the same. Proposed Or. at 7 ¶¶ 5-7, 9-11. In *Trump v. CASA*, 606 U.S. 831, 837 (2025), the Supreme Court held that such "universal injunctions"—those involving the district courts' assertion of "the power to prohibit enforcement of a law or policy against anyone"—"likely exceed the equitable authority that Congress has granted federal courts." Relying on the types of remedies available historically under the Judiciary Act of 1789, the Supreme Court determined that "[n]either declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs" involved in a lawsuit. *Id.* at 844 (internal quotations omitted). Accordingly, the Court must deny the requested injunctive relief.

Plaintiffs' attempts to distinguish their requested remedies from the universal injunctions barred by the Supreme Court are unavailing. *See* Mot. at 16-20. Plaintiffs claim their "requested injunctive relief . . . comports with *CASA* because it is necessary to afford Plaintiffs and their members complete relief."  Mot. at 16.  However, in *CASA*, the Supreme Court explained, "[t]he equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties*," *CASA*, 606 U.S. at 851 (internal quotations omitted) (emphasis in

---

[4] The parameters of the policy the Court found are unclear given that the "policy" is unwritten and unofficial.

original), and the appropriate question is "whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 852 (internal quotations omitted) (emphasis in original). And even then, "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *Id.* at 854. Relief should extend no further than the "necessities of a particular case." *See id.*

In *Doe v. Trump*, 157 F.4th 36, 81 (1st Cir. 2025), while the court found a universal injunction permissible to provide "complete relief," the court explained that, "[a]s to the injunction in the State-Plaintiffs' case, the District Court did not order relief to any purported non-party." *Id.* at 80. Instead, it granted universal relief because it was the only way to give complete relief to the State-Plaintiffs. *See id.* Here, the injuries Plaintiffs claim—chilling of their members' protected speech and resultant organizational harms—would be fully remedied by relief limited to Plaintiffs' members, and not universally to non-parties.

Disregarding this fundamental limitation, Plaintiffs assert that a universal injunction is necessary to provide the organizations and their members "complete relief." *See* Mot. at 18-20. Their arguments fail because the Court found the organizational harms to MESA were based primarily on effects of the "policy" on its *members*. *See* Dkt. 261 at 113 (noting "a reduced anticipated participation in [MESA's] flagship annual meeting," and the self-censorship of "members").[5] Accordingly, MESA's organizational harms do not justify the universal injunctions Plaintiffs seek and the Court should limit any relief to its members and the members of AAUP.[6]

Plaintiffs argue that relief "narrower" than a universal injunction "would be unworkable" because "Plaintiffs are nationwide associations with 52,000 members dispersed throughout the

---

[5] To the extent the Court found organizational harm from "reduced projected membership numbers" Dkt. 261 at 113, granting relief beyond MESA's members would not translate to increased membership. Thus, a universal injunction would not address this harm.

[6]  Plaintiffs appear to also base their argument on alleged harms to AAUP as an organization, but the Court ruled that AAUP does not have organizational standing. Dkt. 261 at 114.

country." Mot. at 18. They complain about the burden of having to identify and disclose their membership to the government. Mot. at 18-20. But the associational plaintiffs in *CASA* made the same arguments, and the Supreme Court rejected them. *See* 606 U.S. at 865 (Thomas, J., concurring) ("the Court today readily dispatches with the individual and associational respondents' position that they require a universal injunction, notwithstanding their argument that a 'plaintiff-specific injunction' would be difficult to administer"). The Court must therefore reject Plaintiffs' argument.

Plaintiffs also argue that relief narrower than a universal injunction will "undermine the very national consistency that immigration laws are designed to protect." *See* Mot. at 20 (internal quotations omitted). This argument is unpersuasive because *CASA* itself, like this case, involved a challenge to the Executive Branch's enforcement of an Executive Order concerning the operation of a provision in the INA. *See CASA*, 606 U.S. at 838-39; *see also* Executive Order 14160, *Protecting the Meaning and Value of American Citizenship*, Sec. 1 (discussing 8 U.S.C. § 1401). As the Court indicated in *CASA*, if a noncitizen who is not party to this lawsuit wants to challenge the "policy" at issue here, "she must file her own suit." *See CASA*, 606 U.S. at 852.

In sum, in *CASA*, "[t]he individual and associational respondents [were] wrong to characterize the universal injunction as simply an application of the complete relief principle." *Id.* at 852. So too are Plaintiffs here. The Court should therefore deny Plaintiffs' requests to issue universal injunctions against Defendants.

## C. The Public Interest is Served by Denying Plaintiffs Broad Injunctive Relief that has No Basis in Law or Equity.

Where the broad injunctive remedies Plaintiffs seek are precluded under the law and are not warranted in equity, the public interest is not served by nevertheless granting Plaintiffs requested relief. Instead, the public interest is served here by "[o]bserving the limits on judicial

authority—including, as relevant here, the boundaries of the Judiciary Act of 1789." *See CASA*, 606 U.S. at 858. Respecting judicial limits serves the public interest because the rule of law requires courts to honor not only what the law permits, but also what the Constitution, through separation of powers, forbids them to do. *See id.* at 858 (citing *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803), as "concluding that James Madison had violated the law but holding that the Court lacked jurisdiction to issue a writ of mandamus ordering him to follow it"). This case, where Plaintiffs seek broad universal injunctive relief, is such an instance. The public interest therefore lies in denying Plaintiffs the injunctive relief they seek.

## II.    Declaratory Relief Should Also be Denied.

The Declaratory Judgment Act authorizes that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "As long as the district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, it has broad discretion to refuse to entertain a declaratory judgment action." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361–62 (Fed. Cir. 2020).

To the extent that Plaintiffs also seek a declaratory judgment holding it unlawful to apply 8 U.S.C. § 1227(a)(1)(B) or § 1227(a)(4)(C) (provisions explicitly covered by § 1252(f)(1)) and 8 U.S.C. § 1201(i) (a provision antecedent to a removability charge under § 1227(a)(1)(B) to certain noncitizens) (Mot. at 2-3; Proposed Or. at 4-6 ¶ 1), such a remedy would be functionally equivalent to a universal injunction, and the Court should likewise deem it impermissible under § 1252(f)(1) and contrary to *CASA*. *See CASA*, 606 U.S. at 844 ("[n]either declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances

except with respect to the particular federal plaintiffs") (internal quotations omitted); *see also California v. Grace Brethren Church*, 457 U.S. 393, 408-10 (1982) (holding that the Tax Injunction Act prohibits district courts from issuing declaratory judgments, despite the absence of express language from the statute stating so, in part "because there is little practical difference between injunctive and declaratory relief" and permitting declaratory relief would defeat the purpose of prohibiting district courts from issuing injunctions); *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) (expressing skepticism that a declaratory judgment under 1252(f)(1) would be appropriate where it would be the functional equivalent of an injunction). While the First Circuit observed in *Brito v. Garland* that declaratory relief remains available under 1252(f)(1), the declaratory judgment issued there was not equivalent to an injunction as it did not prohibit the enforcement of a statute, as it would here. 22 F.4th 240, 250-51 (1st Cir. 2021); *see also Brito v. Barr*, 415 F. Supp. 3d 258, 271 (D. Mass 2019). The declaration in *Brito* merely recognized the legal burdens to be satisfied and conditions to be considered for bond hearings to comport with due process, it did not prohibit the government from applying a provision. *Brito*, 415 F. Supp. 3d at 271. By contrast, Plaintiffs ask this Court to declare that the government is enjoined from invoking certain removal provisions 1252(f)(1) covers. *See Brito*, 22 F.4th 240, 250-51; *compare* Mot. at 4-5 (proposed remedy that the Court "DECLARE[] that it is unlawful for Defendants to revoke the visas of, or to arrest, detain, or deport, noncitizens on the basis of constitutionally protected expression) *with* 8 U.S.C. § 1227(a)(4)(C)(ii) (covered provision cross-referencing § 1182(a)(3)(C)(iii), permitting the removal of aliens on the basis of protected speech), § 1227(a)(4)(B) (covered provision cross-referencing § 1182(a)(3)(B) subsections (IV)(bb) and (i)(VII) of which render inadmissible those who endorse or espouse terrorist

activity or represent groups that do so) .[7] Their requested declaratory judgment clearly is injunctive in nature and Plaintiffs provide no explanation to support their assertion otherwise. *See* Mot. at 16.

### III.    Any Injunctive or Declaratory Relief the Court Does Grant Must be Specific and Limited.

Without conceding any remedy is appropriate, the injunctive and declaratory remedies Plaintiffs seek are overbroad. To the extent that the Court grants any declaratory or injunctive relief, it must be tailored to specific violations found by the Court and limited to Plaintiffs and their members. But their requests make no effort at such tailoring. For example, although the Court clearly stated that an alleged "campaign of threats" by public officials, "does not separately violate the Constitution," Dkt. 261 at 101, Plaintiffs seek an injunction against the alleged threats. Mot. at 7; Proposed Or. at 7 ¶ 7.  The Court should deny this remedy, as there should be no remedy where there is no violation especially since it would involve the Court in policing the speech of cabinet level officials.[8]

Furthermore, "[e]very order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—

---

[7] The Court made no findings concerning the endorse or espouse provisions (§§ 1182(a)(3)(B)(i)(IV)(bb), (VII)), so including them in any injunction, declaratory judgment, or other relief is inappropriate.

[8] Plaintiffs cite *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006), for the proposition that the First Amendment right to speak as citizens does not extend to speech undertaken pursuant to their official duties. *See id.* at 424. However, that case did not involve high level appointed officials speaking publicly on matters of importance. *See Am. Ass'n. Univ. Prof. v. Rubio*, 780 F. Supp. 3d 350, 384 n.11 (D. Mass. 2025) (citing *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013) ("Not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern")); *see also Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (holding that the electoral process provides a check on government speech).

the act or acts restrained or required." Fed. R. Civ. P. 65(d).[9] So an injunction must "be framed so

that those enjoined will know what conduct the court has prohibited." *Axia NetMedia Corp. v.*

*Mass. Tech. Park Corp.*, 889 F.3d 1, 12 (1st Cir. 2018) (citation omitted). The specificity

requirements are necessary to "prevent uncertainty and confusion" and "avoid basing a contempt

citation on a decree too vague to be understood." *NBA Props. v. Gold*, 895 F.2d 30, 32 (1st Cir.

1990) (internal quotation and citation omitted). This serves to protect "the elementary due

process requirement of notice." *Axia NetMedia Corp.*, 889 F.3d at 12. Injunctions are vague

when they fail to provide notice to individuals or entities against whom conduct is enjoined. *See,*

*e.g., Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998)

(holding too vague an injunction involving individuals on a secret list); *NLRB v. Teamsters,*

*Chauffeurs, Helpers & Taxicab Drivers*, 419 F.2d 1282, 1283 (6th Cir. 1970) (holding too vague

an injunction not defining "jurisdictional territory" so relevant employees were unidentifiable);

*E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1116 (8th Cir. 1969) (holding too vague an

injunction involving unidentified customers).

   As the trial evidence established, Defendants do not know the identity of any noncitizen

members of the organizational Plaintiffs (other than the few who testified at trial), where such

information is wholly within the possession and control of the associational Plaintiffs.

Accordingly, the government's obligations under any remedy order must be contingent upon

Plaintiffs' provision of a list of their members. The list must be limited to those who were

members at the time the suit was filed. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992);

*Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 301 n.3 (5th Cir. 2005). Had Plaintiffs

---

[9] Rule 65, on its face, does not apply to declaratory relief. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 110 F.4th 295, 322 (1st Cir. 2024). But because Plaintiffs' request is the functional equivalent of an injunction, Rule 65(d)'s specificity requirements still apply.

wanted to secure broader relief, they could have sought to add more organizations as Plaintiffs or certify a class action. A remedy request here may not circumvent those stringent requirements. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (equity eschews litigants "await[ing] developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests.").

Moreover, Article III and equitable principles require that the judgment be limited to individuals who were members of one of the associational Plaintiffs, and an organization has associational standing to bring suit on behalf of its members only if, its members would otherwise have standing to sue in their own right. *See Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). A court may only grant relief to plaintiffs who have standing to sue, *CASA*, 606 U.S. at 851-53, 860-61; *see Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973) (confining courts to "adjudicating rights in particular cases between the litigants brought before the Court"), and because "standing is not dispensed in gross," any permanent relief must be tailored only to those specific plaintiffs who have established standing "for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted). The fact that the Court found MESA to have organizational standing, *see* Dkt. 261 at 113, does not alter the analysis. The Court found the organizational harms to MESA based primarily on the effects of the "policy" on its *members*. *See id.* (noting "a reduced anticipated participation in [MESA's] flagship annual meeting," which is presumably attended by MESA members; and the self-censorship of "members"). In short, an injunction must match Plaintiffs' membership because it can *only reach* those with standing.

Equally problematic is that injunctions are unenforceable when compliance is "factually impossible." *See United States v. Rylander*, 460 U.S. 752, 757 (1983). An injunction that would

apply to individuals unknown to Defendants make compliance a practical impossibility. Thus, to avoid the constant risk of contempt, the government would have to prohibit the application of the challenged policy nationwide, as Plaintiffs advocate. *See* Mot. at 17-20. But such a result would create a backdoor to universal injunctive relief, which undercuts the Supreme Court's recent holding that universal injunctions are impermissible where they grant relief "broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA*, 606 U.S. at 851-53, 860-61. Organizations with large memberships could easily evade *CASA*'s holding by suing and then withholding their members' names, forcing the government to choose between halting enforcement everywhere or being at constant risk of contempt. To comply with the mandate of *CASA*, this Court's judgment should only protect disclosed and verified members. *See id.* at 867 (Thomas, J., concurring) ("[l]eft unchecked, the practice of reflexive . . . third-party standing will undermine today's decision as a practical matter"); *Washington v. Trump*, 145 F.4th 1013, 1040 (9th Cir. 2025) (Bumatay, J., concurring and dissenting in part) (stating that courts should not award relief that would result in Plaintiffs obtaining a "backdoor to [a] universal injunction[]").

The lack of information about Plaintiffs' members is especially problematic where Plaintiffs seek to enjoin Defendants from "taking any action, formal or informal" that threatens to revoke visas of noncitizens, or to arrest, detain, or remove them, on the basis of constitutionally protected speech or association. *See* Proposed Or. at 7, ¶ 7. Enforcement of the immigration laws requires a variety of antecedent investigatory steps short of a formal visa revocation, arrest and detention, or removal. But under the conditions Plaintiffs request, absent member information, Defendants would not (and could not possibly) know who is protected by the judgment before initiating an investigation. Thus, even the mere act of asking whether

- 12 -

someone is a member of an organizational Plaintiff might be determined to run afoul of the injunction. Such a situation would place Defendants in an impossible position concerning compliance with any injunction.

Even if an individual were to represent that he or she is a member of one of the associational Plaintiffs, the government has no way of verifying the accuracy of that representation. Thus, the process would be easily exploited: anyone seeking to avoid lawful immigration enforcement could engage in overt political expression and claim membership in one of the plaintiff organizations as a shield. The Court should obviously not craft a remedy so readily manipulated for unlawful ends.

Defendants appreciate that organizations have confidentiality interests in their membership information that are protected by the First Amendment. *See, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 466 (1958). But the flipside of maintaining that confidentiality is that the associational Plaintiffs cannot secure broad permanent relief for all their unknown members.[10]

## IV. Any Remedy Under the APA Should Be Limited to Remand Without Vacatur. Alternatively, Vacatur, Appropriately Limited, Should Be the Sole Remedy.

Based on the APA violations found by the Court, Plaintiffs ask the Court to "vacate the Policy." Proposed Or. at 6 ¶ 4. It is questionable whether vacatur is a permissible APA remedy. *See Texas*, 599 U.S. at 693-703 (Gorsuch, Thomas, & Barrett, JJ., concurring). Even if it is, because the agency can cure defects identified by the Court, and because vacatur would be disruptive to the essential investigative and enforcement functions of various agencies, it is

---

[10] The government, as a general policy, does not seek to compel disclosure of private organizations' membership and does not ask the Court to do so here. The government asks that any remedy apply only to identified members while still leaving Plaintiffs with the choice to disclose their membership entirely, partially, or not at all.

unwarranted. Instead, the Court should remand the unwritten policy to the relevant agencies to take action consistent with the Court's opinion. This is appropriate where, as here, the agencies retain discretion over the actions deemed to violate the APA. *See Ramirez v. ICE*, 568 F. Supp. 3d 10, 24 (D.D.C. 2021) (citing *Am. Hop. Assoc. v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019)).[11] Alternatively, should the Court vacate the "policy," vacatur should not be universal. Rather, it should operate only with respect to the specific parties involved in the lawsuit and be the sole remedy ordered as it would render all other remedies duplicative and unnecessary.

### A. The Court Should Remand Without Vacatur in Light of the Court's Decision.

In APA cases, the typical remedy is for the court to "hold unlawful and set aside agency action, findings, and conclusions." 5 U.S.C. § 706(2)(A). This is commonly termed "vacatur." *Texas*, 599 U.S. at 695 (concurrence). But the APA "does not say anything about 'vacating' an agency action ('wholesale' or otherwise)," and accordingly, a plurality of the Supreme Court has said that section 702(2)(A)'s terms, "set aside," do not mean "vacate," but rather to "disregard." *See id.*; *see also* 5 U.S.C. § 703 (APA remedies). As such, while courts may order an agency action to be "disregarded" for purposes of the parties, they may not vacate an agency action for non-parties. *See Texas*, 599 U.S. at 693 (noting when a court "finds a remedy merited, it provides party-specific relief"). Because Plaintiffs seek vacatur for non-parties, *see* Proposed Or. at 6-7 ¶ 4, under the plurality's reasoning, their request should be denied.

In any event, at most remand without vacatur or set aside is the appropriate remedy for the APA violation found here because vacatur could produce "disruptive consequences" to the Executive's operation of foreign policy and the implementation of immigration laws. Vacatur is

---

[11] This case contrasts with the ultimate holding in *Ramirez* because there the issue was a failure to comply with the statutes, whereas here, the Court found no statutory violations, even as it suggested the statutes were being applied in an unprecedented way. *See* Dkt. 261 at 116-147.

not a required remedy for unlawful agency action. *See Stand Up for California! v. U.S. Dep't of Interior*, 879 F.3d 1177, 1190 (D.C. Cir. 2018) ("the district court acted well within its discretion in finding vacatur unnecessary to address any harm the defect had caused"); *Cent. Maine Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001) ("[a] reviewing court that perceives flaws in an agency's explanation is not required automatically to set aside the . . . order"). Instead, the question is (1) "the likelihood that deficiencies in an order can be redressed on remand and (2) the disruptive consequences of vacatur." *New Jersey Conservation Found. v. FERC*, 111 F.4th 42, 64 (D.C. Cir. 2024). The cases Plaintiffs cite generally stand unremarkably for the proposition that vacatur is the standard remedy, but do not prohibit remand without vacating.

On remand, the agency can fix its process in line with the Court's decision. *Cf. I.N.S. v. Orlando Ventura*, 537 U.S. 13, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands"). Specifically, it can take "new agency action" in line with the Court's findings and conclusions. *See Biden v. Texas ("Biden")*, 597 U.S. 785, 807-08 (2022) (discussing *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 20-21 (2020)). So, here too—the Court should remand without vacatur to the agencies "for further action consistent with [the Court's] opinion." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005).

Further, given the multidimensional nature of the unwritten "policy" found by the Court, the disruptive consequences of vacatur are indisputable because the wide-reaching decision potentially encompasses a breadth of investigative and enforcement functions necessary to implement Executive Orders 14161 and 14188 and carry out the immigration laws. *See*, *e.g.*, Dkt. 261 at 101 (referring to the policy found to be unconstitutional as a "mode of enforcement policy"); 131 (criticizing the "review process" allegedly employed by the policy); 134

(describing the policy as a "process"). Implementation of the Executive Orders involves not just "'normal domestic law enforcement priorities' but also 'foreign-policy objectives." *Texas*, 599 U.S. at 679-680 (quoting *AADC*, 525 U.S. at 490-491). The implementation of the Orders also implicates the Executive's authority to prioritize its immigration enforcement efforts. *See id.* (citing *Wayte v. United States*, 470 U.S. 598, 607-608 (1985)). Given the foreign-policy and law enforcement interests at stake, the Executive charged with implementing the immigration laws should have an opportunity to conform enforcement priorities to the Court's findings on remand without the interference of vacatur. *Cf.* at 679 (quoting *Arizona v. United States*, 567 U.S. 387, 396 (2012) ("[f]ederal officials, as an initial matter, must decide whether it makes sense to pursue removal at all")).

To the extent that Plaintiffs argue that the Court should go a step beyond vacatur, and order a 2021 policy memorandum reinstated, *see* Proposed Or. at 6-7 ¶ 4, this too is inappropriate. Based on the principles outlined above, it is for the agency to decide on remand to make policy decisions consistent with the Court's opinion, including verification of whether ICE rescinded its 2021 policy. *See Biden*, 597 U.S. at 807-08; *cf. Orlando Ventura*, 537 U.S. at 16. The function of a reviewing court ends when "an error of law is laid bare." *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952). In short, were the Court to consider vacating the challenged "policy," it should remand without vacatur to avoid disrupting agency enforcement functions.

### B. Should the Court Vacate the "Policy" To Any Extent, It Should Deny All Other Relief as Duplicative and Unnecessary.

If the Court vacates the "policy" to any extent, no further relief, including injunctive and declaratory relief, is necessary to afford complete relief to Plaintiffs. This is because it is the unwritten policy that Plaintiffs' claim has caused them harm by chilling their speech, and without

the policy, there is no harm. An "injunction is a drastic and extraordinary remedy, which should not be granted where a less drastic remedy . . . [is] sufficient to address a party's harm." *Ass'n of Am. Univs. v. Dep't of Defense*, --- F. Supp. 3d ---, 2025 WL 2899765, *30, No. 25-11740-BEM (D. Mass. Oct. 10, 2025) (quoting *Monsanto Co.*, 561 U.S. at 165) (internal quotations omitted). Accordingly, "a district court vacating an agency action under the APA[] should not issue an injunction unless doing so would have a meaningful practical effect independent of its vacatur." *Id.* (quoting *Monsanto*, 561 U.S. at 165) (internal quotations omitted). Neither an injunction, nor a declaratory judgment, nor any other proposed remedy would have any meaningful practical effect here, where vacating the policy challenged by Plaintiffs would "fully resolve the parties' dispute and prevent injury to Plaintiffs." *See id.*

Indeed, Plaintiffs' own citations make this point.  In *American Federation of Teachers v. Dept. of Education*, --- F. Supp. 3d ---, 2025 WL 2374697, No. SAG-25-628, *32-*33 (D. Md. Aug. 14, 2025) (*"Federation"*), the court vacated the agencies' policies after finding that they violated the APA and the Constitution. But the court denied plaintiffs' requests for declaratory and injunctive relief, finding that, following vacatur, "[no] further relief [was] necessary to afford complete relief to the Plaintiffs." *Id.* at *34. Like the *AAUP* Plaintiffs, the *Federation* plaintiffs sought declaratory judgments that certain actions and practices of the agency were unlawful, as well as injunctions forbidding the government from enforcing the policies found to be unlawful. *Id.* But the court explained that it did "not need to independently enter a declaratory judgment to find the [policies at issue] unlawful; it has already held that they [are]." *Id.*; *cf. Ass'n of Am.Univs*, 2025 WL 2899765, at *30 (issuing a declaratory judgment declaring an agency policy "invalid, arbitrary and capricious, and contrary to law," in addition to vacating the policy, where defendants "offer[ed] no specific objection to declaratory judgment as an available or appropriate

- 17 -

form of relief"). And regarding injunctions, the court explained, "[t]he principle that an agency should not continue to use a vacated rule is the natural outflow of vacatur," ruling that therefore, "an affirmative injunction is not necessary to implement [the court's] ruling." *Id*.; *see Ass'n of Am.Univs*, 2025 WL 2899765, at *30 (finding a permanent injunction "not necessary . . . given the availability of vacatur and declaratory relief," the latter of which the government did not specifically oppose). This Court should likewise deny these forms of relief here.

**V.    Plaintiffs' Other Enumerated Injunctive Remedies Are Inappropriate.**

Plaintiffs seek various other remedies that suffer from a host of defects individually and collectively. Plaintiffs' request that the Court prohibit the cabinet level officers from speaking out obviously contravenes the First Amendment. *See, supra*, at 9 & n.5. It puts the Court in the business of policing government speech, which is especially inappropriate where this Court already held that the statements from high-ranking officials did not violate the Constitution. *See* Dkt. 261 at 13-94, 101. Plaintiffs also demand that Defendants publish a specific statement of their choosing on government websites, Proposed Or. at 8 ¶ 8(a) and provide specific notice to certain visa applicants and recipients, *id.* at 8 ¶ 8(b). Such an order would also unlawfully abridge the Secretaries' speech rights by compelling speech.  *See* Dkt. 261 at 157-58 (recognizing, as a "constraint" on the remedies available in this case, the First Amendment rights of Public Officials); *see also 303 Creative LLC v. Elenis*, 300 U.S. 570, 586 (2023) (noting that, "generally," the First Amendment prohibits "compel[ling] a person to speak . . . preferred messages").

Plaintiffs ask for reports concerning individual visa revocations and removability determinations, *see* Proposed Or. 8-9 ¶ 9. This request should also be denied because it interferes with the agencies' investigative and enforcement functions and policy-making prerogatives, and

because it restrains the lawful operation of 8 U.S.C. § 1227(a)(1)(B) and 8 U.S.C.

§ 1227(a)(4)(C), which, as discussed above, is precluded by 8 U.S.C. § 1252(f)(1). *See* Dkt. 261

at 159 (the Court's recognition that "no order entered by this Court shall materially interfere with

[Defendants'] abilities to enforce the laws passed by Congress"). Additionally, Plaintiffs demand

to know when agency decisions are made "in part" on a noncitizen's speech. *See* Draft Or. at 8-9.

This will require the government determine what "in part" means, and if the government gets it

wrong it risks contempt charges. Plaintiffs' request clearly raises confidentiality and privilege

concerns as well. Finally, the reporting requirements are wildly overbroad as they go beyond the

members of the Plaintiff organizations and those who protested Israel or supported Palestine.

There is no proposed limitation. For example, the government would be required to disclose

detailed enforcement decisions for anyone who may have spoken in support of terrorist

organizations like ISIS or the Taliban and provided them material support. *See* 8 U.S.C.

§ 1182(a)(3)(B)(iv)(VI). Additionally, given the breathtaking scope of the proposed injunction,

the reporting requirement of every 30 days will be especially onerous because it will require

rededication of DHS and State Department scarce resources to preparing expansive reports. The

flaws of these groundless requests are innumerable.

Plaintiffs request that the State Department provide notice to noncitizens of removability

determinations and visa revocations, *see* Proposed Or. at 9-10 ¶ 10, is likewise an attempt to

impermissibly interfere with the agencies' investigative and enforcement functions, and to

restrain the lawful operation of 8 U.S.C. § 1227(a)(1)(B) and 8 U.S.C. § 1227(a)(4)(C), which

8 U.S.C. § 1252(f)(1) precludes.  *See supra* at 18-19; *see also* 22 C.F.R. § 41.122(c) (indicating

that notice of a visa revocation lies within the discretion of the State Department).

Demanding Defendants rescind "guidance" to implement an unwritten "policy" is unworkable given the Court did not identify such guidance. *See* Proposed Or. at 10 ¶ 12. Also, this request, along with Plaintiffs' request that 2021 guidance be reinstated, *see* Proposed Or. at 6-7 ¶ 4, and that the agencies develop and provide training, *see* Proposed Or. at 11 ¶ 13, runs afoul of the principles that it is the agencies that should decide how to proceed consistent with the Court's opinion.[12] *See Orlando Ventura*, 537 U.S. at 16; *see also Biden*, 597 U.S. at 807-08.

Lastly, the foregoing requests for "mandatory" injunctions, *see F.H. Cann & Assoc., Inc. v. Moorman*, 605 F. Supp. 3d 232, 240 n.2 (D. Mass. 2022) ("[r]equiring affirmative action results in characterization of the injunction as mandatory"), fail for the same reasons discussed above that the prohibitionary injunctions Plaintiffs seek are precluded.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Remedies Against Defendants in full. In the alternative, to the extent any remedy is granted it should only be a remand pursuant to the APA with narrowly tailored instructions specific to the members of Plaintiffs' organizations.

---

[12] Plaintiffs cite *Castañon Nava v. DHS*, --- F. Supp. 3d ---, 2025 WL 2842146 (N.D. Ill. Oct. 7, 2025), to support their demand that Defendants give notice of the Court's decision to their employees and provide additional training. There, the consent decree was based on what the parties agreed did not interfere with ICE's obligation to enforce the immigration laws and the order was geographically limited to the judicial district in which the suit was filed, unlike here where Plaintiffs seek universal, nationwide relief. The same geographical limitation is true in *Chicago Headline Club v. Noem*, 1:25-cv-12173, ECF No. 250 at 7 (N.D. Ill. Nov. 6, 2025) (limiting to N.D. Ill.) In *Ramirez*, 568 F. Supp. 3d at 36, where the parties reached agreement on most relief which resulted in workable terms, and it was a class action so relief could apply class wide. Finally, the relief ordered in *Susman Godfrey LLP v. Exec. Ofc. Of the President*, 780 F. Supp. 3d 15 (D.D.C. 2025) has no application here because there the court ordered recission of all EO implementing guidance because it determined the EO could in no way be implemented lawfully.

Respectfully Submitted,

BRETT A. SHUMATE                                  WILLIAM KANELLIS
Assistant Attorney General

DREW C. ENSIGN                                    *Ethan B. Kanter*
*Deputy Assistant Attorney General*              ETHAN B. KANTER
                                                 *Chief, National Security Unit*
                                                 *Office of Immigration Litigation*
                                                 *Civil Division, U.S. Department of Justice*
                                                 *P.O. Box 878, Ben Franklin Station*
                                                 *Washington, D.C. 20001*

                                                 PAUL F. STONE
                                                 *Deputy Chief, National Security Unit*
                                                 *Office of Immigration Litigation*

Dated: December 5, 2025                           *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date: December 5, 2025

By: *Ethan B. Kanter*
ETHAN B. KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*
*P.O. Box 878, Ben Franklin Station*
*Washington, D.C. 20001*