**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, ET AL.,<br><br>                        Plaintiffs,<br><br>            v.<br><br>MARCO RUBIO, ET AL.,<br><br>                        Defendants. | Case No. 1:25-cv-10685 (WGY) |

**PLAINTIFFS' NOTICE CONCERNING PROPOSED JUDGMENT ON REMEDIES**

Plaintiffs respectfully reiterate their request that the Court enter the Proposed Order attached to their Motion for Remedies Against Defendants, filed on November 10, 2025. *See* ECF No. 277. Plaintiffs maintain (and hereby preserve for possible appeal) their position that the remedies set forth in that proposed order are necessary to give Plaintiffs and their noncitizen members effective and complete relief. Plaintiffs submit the attached proposed order to comply with the Court's direction that they submit a proposed judgment to implement the proposal outlined by the Court at the hearing held on January 15, 2026. ECF No. 306. Plaintiffs respectfully object, however, to the Court's entry of any final judgment that does not grant the proposed remedies set forth in their remedies motion. ECF No. 277.

In its September 30, 2025 findings of fact and conclusions of law, the Court ruled that Plaintiffs American Association of University Professors ("AAUP") and Middle East Studies Association ("MESA") "have shown by clear and convincing evidence that Secretaries Noem and Rubio have intentionally and in concert implemented Executive Orders [] 14161 and 14188 [in] a viewpoint-discriminatory way to chill protected speech." Op. 101. The Court ruled that this "enforcement policy" violates the First Amendment and Administrative Procedure Act ("APA").

1

Op. 135, 138–39. The Court also ruled that the AAUP and MESA had associational standing to sue because "the enforcement policy . . . objectively chills the[] speech" of their noncitizen members, Op. 111, and that MESA had organizational standing to sue because the policy "significantly harmed its core activity of facilitating academic discourse and scholarship about issues impacting the Middle East," Op. 113.

In light of these findings and conclusions, the remedies sought in Plaintiffs' remedies motion (ECF No. 277) are necessary to provide Plaintiffs with "complete relief." *See Trump v. CASA, Inc.*, 606 U.S. 831, 850–51 (2025). Plaintiffs respectfully urge that the following remedies in particular are indispensable to addressing their injuries:

(1) a declaratory judgment that the "enforcement policy" identified by the Court violates the First Amendment and the APA, because (a) speech or association in support of Palestine or critical of Israel is constitutionally protected whether or not it is deemed to be antisemitic, anti-Israel, or anti-American, or to express support or sympathy for terrorism or a designated terrorist organization such as Hamas, unless it falls within one of the narrow categories of unprotected expression, and (b) the policy intentionally discriminates against such speech and association based on viewpoint, *see* ECF No. 277 at 2–3;

(2) an order vacating the policy under Section 706(2) of the APA, *see id.* at 4–5;[1]

(3) a permanent injunction enjoining Defendants from further implementing the policy against noncitizen students and faculty, *see id.* at 5–8; and

---

[1] As the D.C. Circuit recently reaffirmed post-*CASA*, "[w]hen an agency's action is unlawful, vacatur is the normal remedy." *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *17 (D.C. Cir. Nov. 22, 2025) (quoting *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024)); *accord Massachusetts v. NIH*, 770 F. Supp. 3d 277, 329 (D. Mass. 2025), *aff'd*, No. 25-1343, 2026 WL 26059 (1st Cir. Jan. 5, 2026).

(4) a permanent injunction enjoining Defendants from taking any of the following

actions—none of which is even plausibly covered by the restrictions in 8 U.S.C.

§ 1252(f)(1)—against noncitizen students and faculty on the basis of constitutionally

protected speech or association: (i) revoking their visa under 8 U.S.C. § 1201(i); and

(ii) charging them with removability under 8 U.S.C. § 1227(a)(1)(B) (to the extent the

basis for doing so is a visa revocation under § 1201(i)) or under 8 U.S.C.

§ 1227(a)(4)(B) (to the extent the basis for doing so is the endorse or espouse

provisions), *see id.* at 15–16.[2]

At the hearing on January 15, 2026, the Court proposed an alternative remedy. To vindicate

Plaintiffs' First Amendment rights, the Court proposed issuing a declaration stating that, in any

proceeding concerning the immigration status of a Plaintiff member, any adverse immigration

action taken by the United States with respect to that individual shall be presumed to have been

taken on the basis of and in retaliation for that individual's constitutionally protected expression,

unless the United States demonstrates otherwise by clear and convincing evidence.

Plaintiffs do not oppose the Court's granting this remedy *in addition to* the remedies they

have already proposed. On its own, however, the Court's proposed remedy would fall far short of

addressing Plaintiffs' injuries. As the Court itself recognized in its findings of fact, Plaintiffs'

noncitizen members were objectively chilled by Defendants' arrest and detention of Mahmoud

Khalil and Rumeysa Özturk in retribution for their constitutionally protected speech and

---

[2] As Plaintiffs explained in their remedies motion, none of these actions implicates the statutory provisions specified in 8 U.S.C. § 1252(f)(1) because the authority to take these actions does not arise from part IV of the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. ECF No. 277 at 15–16. Moreover, an injunction barring Defendants from taking these actions on the basis of constitutionally protected speech or association would provide meaningful relief. *Id.* at 15.

association. Op. 39–42, 75–79, 108–112. But under the Court's proposal, Defendants would be free to continue arresting and detaining Plaintiffs' noncitizen members on the basis of speech—without fear of sanctions including a finding of contempt—because there will be no order prohibiting Defendants from implementing the enforcement policy, or setting aside their authority to so act. Further, any relief members could obtain after the fact would be uncertain and come too late to remedy their chill. Even if targeted members could seek relief in district court through a habeas action, they would almost certainly languish in a detention facility for weeks, if not months, while the court considered threshold arguments about whether and how to apply this Court's declaration.[3] The government's position—reiterated at the January 15 hearing in this case—is that the INA strips district-court jurisdiction over such cases.[4] Members against whom removal proceedings are initiated would fare no better since the immigration courts are unlikely to give effect to this court's declaration in those proceedings. After another district court recently entered a declaratory judgment in a nationwide class action against the government, immigration judges were directed not to comply on the ground that such orders are not injunctive.[5] So long as members continue to face a real prospect of prolonged detention, they will be chilled from engaging in protected speech even if there is a possibility that detention will ultimately be held unlawful.

---

[3] That is precisely what occurred in the cases of Mr. Khalil, Ms. Öztürk, Mr. Suri, and Mr. Mahdawi. Mr. Khalil was released on bail only after more than three months in detention, Ms. Öztürk after one and a half months, Mr. Suri after two months, and Mr. Mahdawi after more than two weeks.

[4] Indeed, a panel of the Third Circuit recently agreed with the government that 8 U.S.C. § 1252(b)(9) strips district-court jurisdiction over Mr. Khalil's habeas case. *Khalil v. President, United States of Am.*, No. 25-2162, 2026 WL 111933, at *1 (3d Cir. Jan. 15, 2026).

[5] *See* Nate Raymond, *Top US Immigration Judge Says Bond Hearings Should Be Denied Despite Court Rulings, Documents Show*, Reuters (Jan. 16, 2026), www.reuters.com/legal/government/top-us-immigration-judge-says-bond-hearings-should-be-denied-despite-court-2026-01-16/ [https://perma.cc/9M4K-3ACC]; *see also Guerrero Orellana v. Moniz*, No. 25-cv-12664, ECF No. 134 (D. Mass. Jan. 16, 2026).

To comply with the Court's order of January 16, 2026, Plaintiffs attach a proposed judgment that seeks to capture the Court's proposal, with two modifications. First, the proposed judgment would extend protection to Plaintiffs' current and future members, and not only to individuals who were members as of September 30, 2025. When limiting injunctive relief to an organizational plaintiff's members, courts have routinely afforded relief to current and future members on the ground that limiting relief to current members would result in "continuous litigation and . . . a waste of judicial resources." *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1153 (D.N.D. 2021), *aff'd in part*, *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022); *see also, e.g.*, *Kansas v. Dep't of Educ.*, No. 24-cv-4041-JWB, 2024 WL 3471331, at *3–4 (D. Kan. July 19, 2024). Indeed, the government itself recently proposed limiting a preliminary relief ruling to "current and future" clients of a plaintiff organization—a proposal which the Ninth Circuit adopted. *Immigrant Defs.' L. Ctr. v. Noem*, 145 F.4th 972, 986 (9th Cir. 2025). Here, it would be particularly unfair to impose a rigid cut-off date because many of the people who could targeted under this policy are students who are eligible for membership in the AAUP and MESA now, but who would not have been before the cut-off date.

Second, the proposed judgment would make clear that in cases where the government seeks to carry its burden by pointing to the expiration date of a member's immigration status, it should also be required to show, by clear and convincing evidence, that any decision not to renew the member's status was based on legitimate reasons and not connected to the individual's constitutionally protected expression. This is necessary to ensure that the government does not use the expiration of status as a pretext for retaliation in circumstances where renewal would occur as a matter of course.

January 20, 2026

Edwina Clarke (BBO 699702)
David Zimmer (BBO 692715)
Zimmer, Citron & Clarke, LLP
130 Bishop Allen Drive
Cambridge, MA 02139
(617) 676-9423
edwina@zimmercitronclarke.com

Noam Biale
Michael Tremonte
Alexandra Conlon
Courtney Gans
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2603
mtremonte@shertremonte.com
nbiale@shertremonte.com

Respectfully submitted,

 /s/ Ramya Krishnan
Ramya Krishnan
Xiangnong Wang
Stephany Kim
Raya Koreh
Carrie DeCell
Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

Ahilan T. Arulanantham (SBN 237841)
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
(310) 825-1029
arulanantham@law.ucla.edu

*Counsel for Plaintiffs*