## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATIONS OF UNIVERSITY PROFESSORS, ET AL., <br><br> *Plaintiffs,* <br><br> v. <br><br> MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, ET AL., <br><br> *Defendants.* | No. 1:25-cv-10685-WGY |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE CONCERNING PROPOSED JUDGMENT ON REMEDIES

The government objects to the order proposed by Plaintiffs as inconsistent with, and much broader than, the order described by the Court at the January 15, 2026, remedies hearing ("remedies hearing"). Plaintiffs' proposed order alters that order in both stated and unstated ways, all of which are unwarranted.[1] While the government includes a draft order that it believes more faithfully adheres to what the Court outlined at the hearing, it also maintains its previous objections to relief, including both proposed orders, some of which are reemphasized below.

---

[1] A transcript of the January 15, 2026, hearing is not yet available. To the extent Defendants characterize here the Court's statements at that hearing and explanation of its intended order, Defendants' characterization is to the best of their recollection.

## I.    Discussion of the Draft Order on Remedies

Plaintiffs acknowledge departing from the order outlined by the Court in two ways. First, their proposed order impermissibly contemplates extending the Court's ordered remedy to "Plaintiffs' current and future members." Dkt. 308, Pls' Notice Concerning Proposed Judgment on Remedies, at 5. But the Court squarely rejected such a broad application during the remedies hearing and indicated that its order would be limited to alien members in good standing of AAUP and MESA up to the date the Court issued its findings of fact and conclusions of law in the case, September 30, 2025. The Court reasoned that such a limitation was consistent with *Trump v. CASA*, 606 U.S. 831, 837 (2025). As the Court explained, in the analogous context of class action lawsuits, membership is deemed final at the time a final judgment issues. *See* Fed. R. Civ. P. 23(c)(1)(C) (providing that a class certification order may be altered or amended before final judgment). The cases Plaintiffs cite to the contrary are not binding on this Court. *See* Dkt. 308 at 5. Two of those cases involve injunctions, which the Court was clear it would not issue here. *See Religious Sisters of Mercy v. Azar*, 513 F. Supp.3d 1113, 1153 (D.N.D. 2021); *Kansas v. Dep't of Educ.*, No. 24-cv-4041-JWB, 2024 WL3471331, at *3-4 (D. Kan. July 19, 2024). The other involves the grant of a government motion to limit a district court's stay order. *See Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 996 (9th Cir. 2025). As such, Plaintiffs fail to provide sufficient justification for, contrary to the Court's stated intention, extending the Court's remedy beyond those who were members of their organizations on September 30, 2025.

Second, Plaintiffs assert that "in cases where the government seeks to carry its burden by pointing to the expiration date of a member's immigration status, it should also be required to show, by clear and convincing evidence, that any decision not to renew the member's status was based on legitimate reasons and not connected to the individual's constitutionally protected expression." Dkt. 308 at 5; *see* Dkt. 308-1, [Proposed] Judgment as Discussed by the Court, at 2 (subparagraph (2)(b)(i)'s reference to an immigration status that "has not been renewed"). This expansion of the order, described by the Court, to the immigration benefits-granting functions of the government is not appropriate because it extends the remedy beyond the scope of this case. Here, Plaintiffs claim their members' speech was chilled by the threat of arrest, detention, and deportation of certain individuals—enforcement functions generally carried out by U.S. Immigration and Customs Enforcement ("ICE"). *See generally* Dkt. 1, Complaint; *see also* Dkt. 261, Findings of Fact and Conclusions of Law, at 101, 107 (referring to detaining, revoking the visas of, and deporting individuals based on their speech). By contrast, the benefits-granting functions of the government typically involve components (such as U.S. Citizenship and Immigration Services ("USCIS")) not party to this lawsuit and involve legal standards different from those considered by the Court with respect to arrest, detention, visa revocation, and removal. For these reasons, the Court should reject Plaintiffs' attempt to expand the remedy in this case to include any obligation on the government when it makes the discretionary determination not to renew a

particular individual's status that has come to an end or terminated by its own terms.

Plaintiffs' proposed order reflects additional changes to the terms outlined by the Court at the remedies hearing, which Plaintiffs do not discuss or acknowledge in their filing. First, Plaintiffs indicate in Paragraphs (2) and (2)(c) of their proposed order that the burdens outlined by the Court can be met "in any legal or administrative proceeding," whether "initiated by the United States or by the noncitizen." Dkt. 308-1 at 1-2. The Court was clear at the remedies hearing that the process outlined would occur in United States district courts upon actions brought by AAUP and MESA members. To the extent Plaintiffs' proposed order indicates that they might occur elsewhere, or in some other form, this is an inaccurate characterization of the Court's intended order.

Second, Paragraph (2)(a) of Plaintiffs' proposed order inaccurately states a presumption of retaliation for constitutionally protected speech. Dkt. 308-1 at 1-2. Notably, the Court said it envisioned a presumption of retaliation for *participation in this lawsuit*, which is a different standard. Moreover, Plaintiffs' change is particularly relevant given Plaintiffs' proposed Paragraph (2)(b)(iii), which includes their definition of "constitutionally protected speech or association." Dkt. 308-1 at 2. The Court's recitation of its proposed order included no such language or limitation, and it gave no indication that such claims would come under the review process sought to be created by the Court. In any event, even if the Court did intend for there to be a presumption of retaliation for constitutionally protected speech under

4

the district court review process it described, what constitutes "constitutionally protected speech or association" should fall within the competent jurisdiction of the district judge hearing a particular challenge to determine in the first instance. Therefore, in its final order, the Court should decline to include Plaintiffs' addition.

Third, in Paragraph (2)(a), Plaintiffs state that "any adverse immigration action taken by the United States" against an alien member shall be presumed unconstitutional. Likewise, subparagraph (2)(b)(ii) references a crime rendering an individual "ineligible for [an] immigration benefit sought," and subparagraph (2)(b)(iii) references immigration status alteration, which is not limited to the provisions litigated in this proceeding, such as including the endorse or espouse terrorist activity provisions at 8 U.S.C. § 1182(a)(3)(B)(i)(IV)(bb) & (VII), 8 U.S.C. § 1227(a)(4)(B). *See* Plaintiffs' Notice at 3. As with Plaintiffs' second acknowledged change, discussed above, these proposed provisions go beyond the remedy the Court outlined for the parties, as well as the scope of this case. "Adverse immigration actions" include a wide variety of government actions, many of which are not within the purview of the Defendant agencies in this case and most of which are entirely discretionary. Benefit ineligibility and status alteration are much broader than the discrete immigration consequences the Court considered in this case, and to which the Court, in Defendants' view, sought to tailor its remedy. Specifically, the Court's September 30, 2025 opinion, along with the Court's description at the remedies hearing of a district court review process that should occur before an individual is "removed," establish that the Court did not seek to apply its remedy to every

potentially adverse immigration action. Rather, it should apply only when (or more accurately, before) a qualifying member of AAUP or MESA faces removal. The Court's order, therefore, should also observe that limitation.

Fourth, Paragraph (3) of Plaintiffs' proposed order states that judgment is entered in their favor on Counts I and IV. Dkt. 308-1 at 3. At the remedies hearing, the Court made no reference to such a provision. Particularly in light of the Court's September 30, 2025, detailed opinion, it is unnecessary.

Fifth, and finally, Paragraph (4) of Plaintiffs' proposed order states that "this Court retains jurisdiction to enforce or modify its order." Dkt. 308-1 at 3. This is directly contrary to the Court's indications at the remedies hearing that its remedy would be self-executing, and the Court's role following its issuance of an order in the case on January 22, 2026, would conclude. The Court indicated the possibility that it, like any other district court in the country, could hear an individual case arising from the Court's contemplated order. However, the Court was clear that its jurisdiction over the instant case would cease upon the issuance of its January 22, 2026, order. The Court should accordingly reject Plaintiffs' Paragraph (4).

To aid the Court, Defendants have provided a proposed order memorializing their understanding of the Court's contemplated order. Defendants' provision of this order in no way endorses the proposed content, nor the content of any order the Court may issue; Defendants reserve all rights to appeal any part of any order the Court issues.

## II.    The Government Maintains its Objections

Mindful that the Court made clear at the remedies hearing that Defendants' objections are preserved, Defendants reiterate certain objections to Plaintiffs' proposed relief and jurisdiction in general. Defendants maintain that the Court lacked jurisdiction over this action ab initio and lacks jurisdiction to enter the proposed, or any, relief pursuant to 8 U.S.C. §§ 1252(b)(9), 1252(f)(1), 1252(g). Section 1252(f)(1) precludes jurisdiction to enter injunctive relief in this case. *See Garland v. Aleman-Gonzalez*, 596 U.S. 543, 551 (2022) (noting that injunctive relief on behalf of an entire class of aliens is impermissible). That Plaintiffs characterize their proposed order as declaratory relief does not bring it outside of § 1252(f)(1)'s strictures because it has the same effect as an injunction as it requires the government to take certain actions. *See Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) (expressing skepticism that a declaratory judgment under 1252(f)(1) would be appropriate where it would be the functional equivalent of an injunction). The First Circuit's decision in *Brito v. Garland*, 22 F.4th 240, 250-51 (1st Cir. 2021) held that 1252(f)(1) does not categorically bar declaratory relief, but it did not decide a case where declaratory relief was equivalent to an injunction.

More significantly, sections 1252(g) and 1252(b)(9) deprive the Court of jurisdiction over the action itself—as well as entering the requested relief—because it challenges decisions to initiate removal proceedings. Section 1252(b)(9), also referred to as the zipper clause, provides that judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory

provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order [of removal]." 8 U.S.C. § 1252(b)(9). So, Congress made clear that challenges to removal proceedings and other actions taken related to removal are beyond the courts' jurisdiction. Instead, as provided in § 1252(a)(5), those challenges may be brought in the U.S. Circuit Courts of Appeals only after the completion of removal proceedings. The recent *Khalil* decision held that § 1252(b)(9) deprived the court of jurisdiction to consider similar challenges to his detention and removal proceedings. *See Khalil v. President*, -- F.4th --, 2026 WL 111933, *8-9 (3d Cir. Jan. 15, 2026). The standard, the *Khalil* court explained, is whether a claim raises legal or factual questions that a court of appeals will not later be able to review meaningfully on petition for review of removal proceedings. *Id.* at *9. Plaintiffs' proposed remedy from their prior Motion for Remedies Against Defendants, Dkt. 277, and the present proposed remedy, both run afoul of section 1252(b)(9), because they require the Court to review actions and proceedings brought to remove an alien from the United States that could be raised on petition for review. That actions have not been taken toward Plaintiffs' members does not overcome 1252(b)(9), because, if it did, then it would undermine Congress's goal of directing all constitutional issues to removal proceedings and turn every removal proceeding into a race to the courthouse between a group of aliens seeking review in a district court and the government initiating removal proceedings.

Section 1252(g) also bars jurisdiction. It provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Because the relief Plaintiffs sought and now seek would bar the initiation of removal proceedings or circumscribe them, the Court lacked jurisdiction and lacks jurisdiction to enter the proposed order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) ("AADC") (holding that decisions to commence proceedings cannot be challenged on constitutional grounds except in those proceedings).

Respectfully Submitted,

BRETT A. SHUMATE
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

*Ethan B. Kanter*
ETHAN B. KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*
*P.O. Box 878, Ben Franklin Station*
*Washington, D.C. 20001*

PAUL F. STONE
*Deputy Chief, National Security Unit*
*Office of Immigration Litigation*

VICTORIA M. SANTORA
Counsel for National Security

*Dated: January 21, 2026*

*Counsel for Defendants*

9

**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN ASSOCIATIONS OF
UNIVERSITY PROFESSORS, ET AL.,

*Plaintiffs*,

v.

MARCO RUBIO, in his official capacity as
Secretary of State, and the DEPARTMENT OF
STATE, ET AL.,

*Defendants*.

No. 1:25-cv-10685-WGY

**IN CONTRAST TO PLAINTIFFS' PROPOSED ORDER: REMEDY ORDER MORE ACCURATELY REFLECTING THE TERMS DESCRIBED BY THE COURT ON JANUARY 15, 2026**

It is hereby:

(1) DECLARED that noncitizens who prove by a preponderance of evidence that they were as of September 30, 2025, members in good standing of AAUP or MESA; and who are placed in removal proceedings shall be granted a conclusive presumption that such proceedings were initiated in retribution for their participation in *AAUP v. Rubio*, No. 1:25-cv-10685 (D. Mass.), unless:

  (a) The government proves by clear and convincing evidence that the immigration status of the noncitizen as it stood on January 20, 2025 (including any expansion thereafter), has terminated;

  (b) The government proves by clear and convincing evidence that the noncitizen was convicted of a crime as to which trial by jury was their right; or

      (c) The government proves by clear and convincing evidence that there exists an

          appropriate reason under the governing immigration laws for the initiation of

          removal proceedings; and

(2) ORDERED that the above showings must be made in a proceeding in a United States

      District Court, with the noncitizen commencing the action against the government

SO ORDERED.

Dated:_____                          _____

                                              William G. Young
                                              United States District Judge

**CERTIFICATE OF SERVICE**

I, Ethan B. Kanter, hereby certify that on January 21, 2026, I served this document upon all registered parties via the ECF Notice of Electronic Filing (NEF) system.

*Date: January 21, 2026*                    By: */s/ Ethan B. Kanter*
                                            ETHAN B. KANTER
                                            U.S. Department of Justice