REC1|Approve|3-8-2025|MR
REC2|Approve|3-8-2025|MR
REC3|Approve|3-8-2025|MR

AAUP v. RUBIO - ATTORNEYS EYES ONLY

2025001959



United States Department of State

Washington, DC   20520



SENSITIVE BUT UNCLASSIFIED//
LAW ENFORCEMENT SENSITIVE

March 8, 2025

**Action Memo for the Secretary**

FROM:    CA – John Armstrong, SBO

SUBJECT:    (SBU) Removal of Yunseo Chung and Mahmoud Khalil, both U.S. LPRs, under Section 237(a)(4)(C) of the Immigration and Nationality Act (INA)

**(SBU) Recommendation 1:** That you determine the presence and activities of Yunseo Chung (█████████████████████) have potentially serious adverse foreign policy consequences for the United States and would compromise a compelling U.S. foreign policy interest, rendering her deportable under Section 237(a)(4)(C) of the INA.
**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**(SBU) Recommendation 2:** That you determine the presence and activities of █████████████████████████████), have potentially serious adverse foreign policy consequences for the United States and would compromise a compelling U.S. foreign policy interest, rendering him deportable under Section 237(a)(4)(C) of the INA.
**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**(SBU) Recommendation 3:** That you authorize the transmission of the attached notification to the secretary of Homeland Security of the determination(s) as a basis for the removal(s).
**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

**Background**

(SBU) On March 7, DHS/ICE requested that CA seek your determination that Chung and Khalil are deportable under INA section 237(a)(4)(C) in order to initiate removal charges against them. Under INA section 237(a)(4)(C)(i), an alien is deportable from the United States if the Secretary of State has reasonable ground to believe that the alien's presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States. Under INA section 237(a)(4)(C)(ii), for cases in which the basis for this determination is the alien's past, current, or expected beliefs, statements, or associations that are otherwise lawful, the Secretary of State must personally determine that the alien's presence or activities would compromise a compelling U.S. foreign policy interest.

(SBU) Yunseo Chung is an LPR of the United States and a current undergraduate student at Columbia University. Press reporting and social media identify Chung as a participant in protests on March 5 at Barnard College, and specifically as a participant in the occupation of the Barnard's Millstein Library. According to a DHS/ICE summary of Chung, she received three charges of unlawful conduct stemming from the March protests, including charges related to obstructing governmental administration, disorderly conduct, and trespass. On March 7, DHS/ICE provided a summary of Chung's actions to CA, reporting that "Hamas-authored flyers" were distributed at the protests, and that Chung's involvement in the protests "created a hostile environment for Jewish students, meeting Title VI criteria."

(SBU) Mahmoud Khalil is a U.S. LPR and a former graduate student at Columbia University. According to social media and open-source articles, Khalil has been involved in numerous pro-Palestinian protests, including serving as the lead negotiator of an encampment at Columbia in April 2024, and also a key figure in the March 6 Barnard College library occupation, where protestors distributed Hamas-authored flyers. On March 7, DHS/ICE provided a summary of Khalil's actions to CA, reporting that "Hamas-authored flyers" were distributed at the March 6 protests, and that Khalil's leadership in the protests "created a hostile environment for Jewish

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

students, meeting Title VI criteria." Unlike Chung, we are not aware of any prior arrests or citations for Khalil regarding unlawful activity.

(SBU) The activities and presence of Chung and Khalil in the United States have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest, because their participation and roles in antisemitic protests and disruptive activities fosters a hostile environment for Jewish students in the United States, and the public actions undermine U.S. policy to combat anti-Semitism around the world. Under E.O. 14188, *Additional Measures to Combat Anti-Semitism*, it is the policy of the United States to combat anti-Semitism, using all available and appropriate legal tools to hold to account the perpetrators of unlawful anti-Semitic harassment and violence. Allowing Chung and Khalil to remain in the United States undermines the U.S. policy to combat anti-Semitism and efforts to protect Jewish students from harassment and violence in the United States. Consistent with E.O. 14150, *America First Policy Directive to the Secretary of State*, the foreign policy of the United States champions core American interests and U.S. citizens, and condoning anti-Semitic conduct and disruptive protests in the United States would severely undermine that significant foreign policy objective.

(SBU) DHS has not identified any alternative grounds of removability that would be applicable to Chung and Khalil, including the ground of removability for aliens who have provided material support to a foreign terrorist organization or terrorist activity. We are not aware of any prior exercises of the Secretary's removal authority in INA section 237(a)(4)(C), and given their LPR status, Chung and Khalil are likely to challenge their removal under this authority, and courts may scrutinize the basis for these determinations.

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE
AAUP v. RUBIO - ATTORNEYS EYES ONLY
-4-

**Attachments**
  Tab 1 – DHS Letter on Chung
  Tab 2 – HSI Subject Profile of Chung
  Tab 3 – DHS Letter on Khalil
  Tab 4 – HSI Subject Profile of Khalil
  Tab 5 – State Notification Letter to DHS
  Tab 6 – 8 USC 1227(a)(4)(C)

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE
AAUP v. RUBIO - ATTORNEYS EYES ONLY

-5-

Approved:  CA – John L. Armstrong, Senior Bureau Official [JLA]
**I confirm** the drafter received guidance on this paper's intent, objectives, topics, scope, and structure.  ☒ **Yes** ☐ **No**

Drafted:    CA - Various Drafters

Cleared:

| Bureau | Name | Clearance Status |
|---|---|---|
| CA/VO |  | (ok) |
| CA/VO |  | (ok) |
| CA/VO/F |  | (ok) |
| L/CA |  | (ok) |
| S/P |  | (ok) |
| C |  | (ok) |
| M |  | (info) |
| D |  | (info) |
| P |  | (info by request) |
| NEA/FO |  | (info) |
| EAP/FO |  | (info) |

SENSITIVE BUT UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

REC1|Approve|3-15-2025|MR
REC2|Approve|3-15-2025|MR

AAUP v. RUBIO - ATTORNEYS EYES ONLY

2025002362

United States Department of State

Washington, DC  20520





SENSITIVE BUT UNCLASSIFIED//         March 15, 2025
LAW ENFORCEMENT SENSITIVE

**Action Memo for the Secretary**

FROM:    CA – John Armstrong, SBO

SUBJECT:  (SBU) Determination of Deportability of Mohsen Mahdawi, a U.S. Lawful Permanent Resident (LPR), under Section 237(a)(4)(C) of the Immigration and Nationality Act (INA)

**(SBU) Recommendation 1:** That you determine the presence and activities of Mohsen MAHDAW█████████████████ have potentially serious adverse foreign policy consequences for the United States and would compromise a compelling U.S. foreign policy interest, rendering him deportable under Section 237(a)(4)(C) ("4C") of the INA.
**Decision: ☐ Approve ☐ Disapprove ☐ Discuss**

**(SBU) Recommendation 2:** That you authorize the transmission of a notification to the Secretary of Homeland Security of the determination as a basis for the removal and authorize use of that notification by DHS in immigration court.
**Decision: ☐ Approve ☐ Disapprove ☐ Discuss**

**Background**
(SBU) On March 14, the Assistant Director of the National Security Division of DHS/ICE's Homeland Security Investigations referred to CA information on three aliens in the United States, Momodou Taal, Badar Khan Suri, and Mohsen Mahdawi, for your determination that they are deportable under INA section 237(a)(4)(C), in order to initiate removal charges against them. CA will transmit an action memo to you regarding a 4C determination for

Suri under separate cover, and CA has revoked the nonimmigrant visa of Taal, allowing DHS/ICE to pursue removal on that basis.

(SBU) Under INA section 237(a)(4)(C)(i), an alien is deportable from the United States if the Secretary of State has reasonable ground to believe that the alien's presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States. Under INA section 237(a)(4)(C)(ii), for cases in which the basis for this determination is the alien's past, current, or expected beliefs, statements, or associations that are otherwise lawful, <u>the Secretary of State must personally determine</u> that the alien's presence or activities would compromise a compelling U.S. foreign policy interest.

(SBU) Mohsen Mahdawi is a LPR of the United States and according to information provided by DHS/ICE/HSI, is "identified as a student of Columbia University and a prominent pro-Palestinian activist involved in pro-Hamas rhetoric and events."

(SBU) DHS/ICE/HSI reports that Mahdawi, through his leadership and involvement in disruptive protests at Columbia University, has engaged in anti-Semitic conduct through leading pro-Palestinian protests and calling for Israel's destruction. While DHS/ICE/HSI reporting provided only several screenshots of social media activity as evidence of Mahdawi's involvement in anti-Semitic activity, additional open-source reporting indicates that Mahdawi played an active role in fall 2024 student protests at Columbia University, instructing protestors to physically push a small group of pro-Israel students, events that university officials later acknowledged as threatening rhetoric and intimidation. Open-source reporting also identifies Mahdawi as behind anti-Semitic rhetoric in the fall 2024 protests, referring to Israeli Defense Force solders as terrorists and shouting through a megaphone at Jewish bystanders and Israel supporters.

(SBU) The activities and presence of Mahdawi in the United States have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest, because his

participation and roles in anti-semitic protests and reported intimidating and harassment of Jewish students during fall 2024 protests at Columbia University undermine U.S. policy to combat anti-Semitism around the world and in the United States. Under E.O. 14188, *Additional Measures to Combat Anti-Semitism*, it is the policy of the United States to combat anti-Semitism, using all available and appropriate legal tools to hold to account the perpetrators of unlawful anti-Semitic harassment and violence. Allowing Mahdawi to remain in the United States undermines the U.S. policy to combat anti-Semitism and efforts to protect Jewish students from harassment and violence in the United States. Consistent with E.O. 14150, *America First Policy Directive to the Secretary of State*, the foreign policy of the United States champions core American interests and American citizens, and condoning antisemitic conduct and disruptive protests in the United States would severely undermine that significant foreign policy objective. Moreover, protests of the type led by Mahdawi potentially undermine the peace process underway in the Middle East by reinforcing anti-Semitic sentiment in the regional and thereby threatening the U.S. foreign policy goal of peacefully resolving the Gaza conflict.

(SBU) DHS/ICE/HSI has not identified any alternative grounds of removability applicable to Mahdawi, including any indication that Mahdawi has provided material support to a foreign terrorist organization or terrorist activity; however, in September 2015, CA revoked Mahdawi's B1/B2 nonimmigrant visa at the request of CBP's National Targeting Center (NTC) based on derogatory information in reporting in USG interagency holdings that was identified after visa issuance. At that time, NTC concluded Mahdawi would be inadmissible pursuant to INA section 212(a)(3)(B)(i)(I) for having engaged in terrorist activity, as defined in the INA. At the time of the visa revocation, Mahdawi was already in the United States and had adjusted status to a conditional Lawful Permanent Resident. A CA search of interagency databases on March 14, did not reveal any record indicating that the interagency currently assesses that Mahdawi has links to terrorism. In February 2024, Mahdawi filed an application to naturalize, although DHS has not indicated whether that it will deny his application upon pursuing removal.

(SBU) Like the legal challenge brought by Mahmoud Khalil with respect to your March 8, 2025, 4C determination regarding him, as an LPR, Mahdawi is likely to challenge his removal under the 4C authority, including whether the Department in fact has a compelling basis for determination. Given the potential that a court may consider his actions inextricably tied to speech protected under the First Amendment, it is likely that courts will closely scrutinize the basis for this determination. We understand that Khalil intends to seek an injunction of the determination in his case, and we could anticipate Mahdawi to do the same.

(SBU) While State is required to report visa denials under the similar authority in INA section 212(a)(3)(C) to certain congressional committees, we have identified no such requirement to report 4C determinations.

## Attachments

Tab 1 – State Notification Letter to DHS
Tab 1a – DHS Letter on Mohsen Mahdawi
Tab 1b – HSI Subject Profile of Mohsen Mahdawi
Tab 1c – 8 USC 1227(a)(4)(C)

Approved:  CA – John L. Armstrong, Senior Bureau Official [JLA]
**I confirm** the drafter received guidance on this paper's intent, objectives, topics, scope, and structure.  ☒ **Yes**  ☐ **No**

Drafted:    CA - Various Drafters

Cleared:

| Bureau | Name | Clearance Status |
|---|---|---|
| CA | ███████, Acting | ok |
| CA/VO | ███████, Acting | ok |
| CA/VO/SAC | ███████ | info |
| CA/VO/F | ███████, Acting | info |
| L/FO | ███████ | ok |
| L/CA | ███████ | ok |
| L/CA | ███████ | ok |
| S/P | ███████ | ok |
| C | ███████ | ok |
| M | ███████ | ok |
| D | ███████ | info |
| P | ███████ | ok |
| NEA/FO | ███████ | info |

AAUP v. RUBIO - ATTORNEYS EYES ONLY

2025002363



United States Department of State

Washington, DC 20520



SENSITIVE BUT UNCLASSIFIED//
LAW ENFORCEMENT SENSITIVE

March 15, 2025

**Action Memo for the Secretary**

FROM:     CA – John Armstrong, SBO

SUBJECT:  (SBU) Determination of Deportability of Badar Khan Suri under Section 237(a)(4)(C) of the Immigration and Nationality Act (INA)

**(SBU) Recommendation 1:** That you determine the presence and activities of Badar Khan Suri ▬▬▬▬▬▬▬▬▬▬ have potentially serious adverse foreign policy consequences for the United States and would compromise a compelling U.S. foreign policy interest, rendering him deportable under Section 237(a)(4)(C) ("4C") of the INA.
**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**(SBU) Recommendation 2:** That you authorize the transmission of a notification to the Secretary of Homeland Security of the determination as a basis for the removal and authorize use of that notification by DHS in immigration court.
**Decision:** ☐ **Approve** ☐ **Disapprove** ☐ **Discuss**

**Background**
(SBU) On March 14, the Assistant Director of the National Security Division of DHS/ICE's Homeland Security Investigations referred to CA information on three aliens in the United States, Momodou Taal, Badar Khan Suri, and Mohsen Mahdawi, for your determination that they are deportable under INA section 237(a)(4)(C), in order to initiate removal charges against them. CA will transmit an action memo to you regarding a 4C determination for

SENSITIVE BUT UNCLASSIFIED // LAW ENFORCEMENT SENSITIVE

Mahdawi under separate cover, and CA has revoked the nonimmigrant visa of Taal, allowing DHS/ICE to pursue removal on that basis.

(SBU) Under INA section 237(a)(4)(C)(i), an alien is deportable from the United States if the Secretary of State has reasonable ground to believe that the alien's presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States. Under INA section 237(a)(4)(C)(ii), for cases in which the basis for this determination is the alien's past, current, or expected beliefs, statements, or associations that are otherwise lawful, <u>the Secretary of State must personally determine</u> that the alien's presence or activities would compromise a compelling U.S. foreign policy interest.

(SBU) Badar Khan Suri is an Indian national, currently in J1 nonimmigrant status in the United States as a Postdoctoral Associate at Georgetown University's School of Foreign Service, where he is currently teaching a course on "Majoritarianism and Minority Rights in South Asia." His J1 visa was issued November 15, 2022, and expired October 31, 2023, but he remains in valid nonimmigrant status. Suri is married to a U.S. citizen who is the daughter of Ahmed Yousef, a senior Hamas figure in Gaza and a senior advisor to Hamas leadership.

(SBU) According to the assessment provided by DHS/ICE, Suri is "actively supporting Hamas terrorism" and "actively spreads its propaganda and promotes antisemitism on social media." Evidence cited by DHS/ICE includes a post by the "Middle East Forum" think tank referencing two Facebook posts by Suri in fall 2023 that denied certain reports regarding Hamas actions in the October 7 attack, and one expressing support for Hamas founder Ahmed Yassin. DHS/ICE also notes a 2018 article authorized by Suri in the Middle East Monitor labeling Israel as apartheid, in additional to Instagram photos by Suri that DHS/ICE assesses as "pro-Palestine content." We have not independently uncovered additional open-source information regarding Suri's involvement in antisemitic conduct or intimidation of Jewish students.

SENSITIVE BUT UNCLASSIFIED // LAW ENFORCEMENT SENSITIVE

-3-

(SBU) CA did not identify any particularized information on Suri in relevant interagency databases, and Suri's most recent visa application in November 2022 was reviewed by the Department's interagency vetting partners through the National Vetting Center, none of whom returned any derogatory information. DHS/ICE/HSI has not provided CA with an assessment of any alternative grounds of removability that would be applicable to Suri, including whether Suri may be removable under the terrorism-related grounds based on his relationship with Ahmed Yousef.

(SBU) The activities and presence of Suri in the United States has potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest. This conclusion is based on the assessment by DHS/ICE/HSI, to which we defer as ICE is the principal investigative unit of DHS, that "Suri's direct connection to Hamas leadership and involvement in antisemitic activities ... [creates] a hostile environment for Jewish students and [indicates] support for a designated terrorist organization." Under E.O. 14188, *Additional Measures to Combat Anti-Semitism*, it is the policy of the United States to combat antisemitism, using all available and appropriate legal tools to hold to account the perpetrators of unlawful anti-Semitic harassment and intimidation. Allowing Suri to remain in the United States undermines the U.S. policy to combat anti-Semitism and efforts to protect Jewish students from intimidation in the United States. Consistent with E.O. 14150, *America First Policy Directive to the Secretary of State*, the foreign policy of the United States champions core American interests and American citizens, and condoning anti-Semitic conduct and intimidation of Jewish students in the United States would severely undermine that significant foreign policy objective. Moreover, the type of intimidation and incitement attributable Suri potentially undermines the peace process underway in the Middle East by reinforcing anti-Semitic sentiment in the regional and thereby threatening the U.S. foreign policy goal of peacefully resolving the Gaza conflict.

(SBU) Like the legal challenge brought by Mahmoud Khalil with respect to your March 8 determination regarding him, Suri is likely to challenge his removal under the 4C authority. Such a challenge would likely question

SENSITIVE BUT UNCLASSIFIED // LAW ENFORCEMENT SENSITIVE

whether the Department in fact has a compelling basis for determination. Given the reliance on Suri's public statements as an academic, and the potential that a court may consider his actions inextricably tied to speech protected under the First Amendment, it is likely that courts will closely scrutinize the basis for this determination. We understand that Khalil intends to seek an injunction of the determination in his case, and we could anticipate Suri to do the same.

(SBU) State also requests the opportunity to consult with the DHS on any public statements regarding this determination.

(SBU) While State is required to report visa denials under the similar authority in INA section 212(a)(3)(C) to certain congressional committees, we have identified no such requirement to report 4C determinations.

## Attachments

Tab 1 – State Notification Letter to DHS
Tab 1a – DHS Letter on Badar Khan Suri
Tab 1b – HSI Subject Profile of Badar Khan Suri
Tab 1c – 8 USC 1227(a)(4)(C)

AAUP v. RUBIO - ATTORNEYS EYES ONLY

2025002363

SENSITIVE BUT UNCLASSIFIED // LAW ENFORCEMENT SENSITIVE

-5-

Approved:  CA – John L. Armstrong, Senior Bureau Official [JLA]
**I confirm** the drafter received guidance on this paper's intent, objectives, topics, scope, and structure.  ☒ **Yes**  ☐ **No**

Drafted:    CA – Various Drafters

Cleared:

| Bureau | Name | Clearance Status |
|---|---|---|
| CA | ███████, Acting | ok |
| CA/VO | ███████, Acting | ok |
| CA/VO/SAC | ███████ | info |
| CA/VO/F | ███████████, Acting | info |
| L/FO | ██████████████ | ok |
| L/CA | ████████ | ok |
| L/CA | ██████████ | ok |
| S/P | █████████ | ok |
| C | ████████ | ok |
| M | ██████ | ok |
| D | ████████ | info |
| P | ██████ | ok |
| SCA/FO | ████████ | info |



AAUP v. RUBIO - ATTORNEYS EYES ONLY

United States Department of State

Washington, DC 20520



EXHIBIT 250

## SENSITIVE BUT UNCLASSIFIED – LAW ENFORCEMENT SENSITIVE

March 21, 2025

**Action Memo for Senior Bureau Official John Armstrong**

FROM:        CA/VO – Stuart Wilson, Deputy Assistant Secretary

SUBJECT:    (SBU) Revocation of F1 Visa for Rumeysa OZTURK

**(SBU) Recommendation 1:** That you approve the revocation of the F1 visa, effective immediately, for ████████████████████████████ ████████) under section 221(i) of the Immigration and Nationality Act (INA). Due to ongoing ICE operational security, this revocation will be silent; the Department will not notify the subject. (Approve/Disapprove by 03/21/25)

**Decision:** ☒ Approve ☐ Disapprove ☐ Discuss

*JA 3/21/25*

**(SBU) Recommendation 2:** That you authorize the transmission of the attached notification to the Department of Homeland Security noting the immediate revocation of OZTURK's visa. (Approve/Disapprove by 03/21/25)

**Decision:** ☒ Approve ☐ Disapprove ☐ Discuss

*JA 3/21/25*

**Background**

(SBU) On March 21, 2025, the Assistant Director of the National Security Division of DHS/ICE's Homeland Security Investigations referred to CA information regarding Rumeysa OZTURK, a Turkish national, for a possible determination by the Secretary that the alien is deportable under INA section 237(a)(4)(C). As a nonimmigrant visa holder, such a determination is not necessary for DHS/ICE to pursue removal of OZTURK from the United States, as INA section 237(a)(1)(B) provides that an alien is deportable if their nonimmigrant visa has been revoked under INA section 221(i).

(SBU) Under INA section 221(i), the Secretary of State may at any time, in his discretion, revoke a visa. This authority is delegated to you pursuant to Delegation of Authority 367-4. Department policy reflected in 9 FAM 403.11-5(B) provides that a visa may be revoked in cases of a suspected ineligibility, when an individual would not meet requirements for admission, or "in other situations where warranted."

*[handwritten: Has valid visa]*

(SBU) OZTURK was issued an F-1 visa on December 14, 2020, valid until December 9, 2025. According to information provided by DHS/ICE/HSI, OZTURK is a post doctorate degree candidate in Child Studies and Human Development at Tufts University. On March 21, 2025, DHS/ICE/HSI referred information to CA indicating that OZTURK co-authored an op-ed in Tufts' student newspaper. In this article, the authors wrote, "Graduate Students for Palestine joins Tufts Students for Justice in Palestine (TSJP), the Tufts Faculty and Staff Coalition for Ceasefire, and Fletcher Students for Palestine to reject the University's response" (to a student government resolution). According to DHS/ICE/HSI, Tufts Students for Justice in Palestine was placed on interim suspension "after it used images of weapons to promote a protest rally and urged members of the Tufts community to 'join the student intifada.'" DHS/ICE/HSI referral concluded that "OZTURK's involvement in these activities and associations with these groups may undermine U.S. foreign policy by creating a hostile environment for Jewish students and indicating support for a designated terrorist organization."

*[handwritten: actions, not words]*

(SBU) While OZTURK has been involved with actions protesting Tufts' relationship with Israel, DHS/ICE/HSI has not, however, provided any evidence showing that OZTURK has engaged in any antisemitic activity or made any public statements indicating support for a terrorist organization or antisemitism generally. While the report implies a connection between OZTURK and the now-banned Tufts Student for Justice in Palestine (TJSP), the report presents no evidence other than OZTURK's membership in Graduate Students for Palestine which supported proposals to Tufts which were also supported by TSJP. Nor has DHS/ICE/HSI shown any evidence that

OZTURK was involved in any of the activities which resulted in TJSP being suspended from Tufts.

(SBU) Through a search on March 21, 2025, on available USG interagency databases, CA/VO identified no reporting specific to OZTURK, and interagency vetting partners did not provide any response to OZTURK's 2024 visa application indicating the existence of derogatory terrorism-related information.

(SBU) DHS did not identify any alternative grounds of removability that would be applicable to OZTURK, including the ground of removability for aliens who have provided material support to a foreign terrorist organization or terrorist activity, and have not indicated whether it plans to consider termination of OZTURK's SEVIS registration. Although information provided by DHS/HSI/ICE does not establish any potential ineligibility for OZTURK, you may, in your discretion and in accordance with Department policy in 9 FAM 403.11-5(B), approve revocation of her F-1 visa effective immediately based on the totality of the circumstances presented indicating that revocation may be warranted.

## Attachments

    Tab 1 – DHS Letter on OZTURK
    Tab 2 – HSI Subject Profile of OZTURK
    Tab 3 – State Notification Memo to DHS

AAUP v. RUBIO - ATTORNEYS EYES ONLY
SENSITIVE BUT UNCLASSIFIED // LAW ENFORCEMENT SENSITIVE

-4-

Approved:  CA/VO – Stuart Wilson, Deputy Assistant Secretary [SRW]
**I confirm** the drafter received guidance on this paper's intent, objectives, topics, scope, and structure.  ☒ **Yes**  ☐ **No**

Drafted:     CA - Various Drafters

Cleared:

| Bureau | Name | Clearance Status |
|---|---|---|
| CA | ██████ | ok |
| CA/VO | ████████ | Info |
| CA/VO/F | ████████ | info |
| CA/VO/SAC | ███████ | ok |
| CA/P | ██████ | info |
| L/CA | █████████ | ok |