UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS -- HARVARD FACULTY CHAPTER, AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS AT NEW YORK UNIVERSITY, RUTGERS AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS-AMERICAN FEDERATION OF TEACHERS, and MIDDLE EAST STUDIES ASSOCIATION, | CIVIL ACTION NO. 25-10685-WGY |
| Plaintiffs, | |
| v. | |
| MARCO RUBIO, in his official capacity as Secretary of State, and the DEPARTMENT OF STATE, KRISTI NOEM¹, in her official capacity as Secretary of Homeland Security, and the DEPARTMENT OF HOMELAND SECURITY, TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, DONALD J. TRUMP, in his official Capacity as President of the United States, and UNITED STATES OF AMERICA, | |
| Defendants. | |

---

¹ Ms. Noem is no longer the Secretary of Homeland Security. While this Court found that Ms. Noem personally participated in the misconduct in this action, she was sued in her official capacity. As such, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Acting Secretary is "automatically substituted" in her place by operation of law.

YOUNG, D.J.                                    March 11, 2026

MEMORANDUM AND ORDER

At first blush, the Public Officials' unopposed[2] Motion for a Partial Stay Pending Appeal ("Defs.' Mem."), ECF No. 317, which is now pending before the Court seems less than ripe, nothing more than an inconsequential sideshow.  After all, no one to date has asserted any rights under the procedural remedy the Court decreed, the Plaintiffs doubt that anyone ever will, and with every passing day the kaleidoscopic cacophony of unfolding events drives all but the legal issues into long past history.  Even so, contrary to its normal practice, the Court here afforded the parties a lengthy oral hearing on this motion.[3]

What's really going on?

Part I of this Memorandum and Order attempts to answer this question and Part III provides the rationale for largely denying this unopposed motion.

## I.    THE PRIMACY OF PROCEDURE

For over forty years I taught trial advocacy and related courses to generations of law students.  A Holmes realist, I always stressed the advisability of forum shopping and, wherever

---

[2] See Pls.' Resp. Defs.' Mot. Partial Stay 1, ECF No. 322 ("Plaintiffs do not oppose a stay of this sanction. They note for the record, however, that a stay is not warranted.")

[3] See Elec. Clerk's Notes, ECF No. 327; Tr Mot. Hr'g ("Hr'g. Tr."), ECF No. 328.

[2]

appropriate, judge shopping.  In REFLECTIONS OF A TRIAL JUDGE, I devote an entire section to forum shopping.  That section begins, "[t]he law permits forum shopping as between certain of the trial courts . . . . Forum shopping is something that you [lawyers] should do and we [judges] all should try to prevent." William G. Young, REFLECTIONS OF A TRIAL JUDGE 49-53 (Massachusetts Continuing Legal Education, Inc., 1st ed. 1998) (sentences reversed).  As a judicial officer, of course, I am assiduous in striving to curb forum and judge shopping through court rules establishing the blind draw of cases and relatedness rules that promote efficiency without assembling a pile of cases before any one judge.  Whether teaching or judging, throughout my years of service these reflections bore on which **trial** court (limited or general jurisdiction, state or federal, which court in which jurisdiction, which assigned judge) would preside over a jury case drawn from that vicinage.[4]

---

[4] Multidistrict litigation practice, 28 U.S.C. § 1407 now a behemoth among the 94 district courts (at least 65% of pending civil cases in our federal district courts are presently caught up in MDL practice) poses a special wrinkle since, like the Roach Motel, cases go in but they don't come out.  See In re TJX Companies Retail Sec. Breach Litig., 584 F. Supp. 2d 395, 405 n.16 (D. Mass. 2008); Amanda Bronstad, MDLs Make Up More Than Half of U.S. Cases, Whether It's 65% or 71%, LAW.COM (June 25, 2024, 1:36 PM), https://www.law.com/2024/06/25/mdls-make-up-more-than-half-of-u-s-cases-whether-its-65-or-71.  Or at least they do so rarely after long delay.

Over the past year, in cases with an equitable component, the federal government has added a **vertical** aspect to the analysis as it sometimes seeks to vault the Circuit Courts to obtain what it considers more congenial Supreme Court review on its Emergency Docket.[5] So it is here.

For their part, the Plaintiffs – as is their undoubted right – have cross-appealed. Notice of Cross Appeal, ECF No. 324. Evidently, they consider the remedy decreed by this Court to be pallid and woefully ineffective and seek more aggressive measures on appeal. While the Plaintiffs point out there is no reason for a partial stay, they do not oppose it.

---

[5] This strategy has been largely successful. See Trump v. Orr, 146 S. Ct. 44 (2025); Noem v. Natl. TPS All., 146 S. Ct. 23 (2025); Department of State v. Aids Vaccine Advoc. Coalition, 146 S. Ct. 19 (2025); Trump v. Slaughter, 146 S. Ct. 18 (2025); Noem v. Vasquez Perdomo, 146 S. Ct. 1 (2025); Noem v. Natl. TPS All., 145 S. Ct. 2728; National Inst. of Health v. American Pub. Health Assn., 145 S. Ct. 2658 (2025); Trump v. Boyle, 145 S. Ct. 2653 (2025); McMahon v. New York, 145 S. Ct. 2643 (2025); United States v. Shilling, 145 S. Ct. 2695 (2025); Trump v. Am. Fedn. of Govt. Employees, 145 S. Ct. 2635 (2025); Trump v. CASA, Inc., 145 S. Ct. 2540 (2025); Department of Homeland Sec. v. D.V.D., 145 S. Ct. 2153 (2025); United States Doge Serv. v. Citizens for Resp. and Ethics in Washington, 145 S. Ct. 1981 (2025); Office of Personnel Mgt. v. Am. Fedn. of Govt. Employees, 145 S. Ct. 1914 (2025); Social Sec. Administration v. Am. Fedn. of State, Cnty., and Mun. Employees, 145 S. Ct. 1626 (2025); Noem v. Doe, 145 S. Ct. 1524 (2025); Trump v. Wilcox, 145 S. Ct. 1415 (2025); Noem v. Abrego Garcia, 145 S. Ct. 1017 (2025); Trump v. J. G. G., 145 S. Ct. 1003 (2025); Department of Educ. v. California, 145 S. Ct. 966 (2025); see also https://www.scotusblog.com/case-files/emergency/emergency-docket-2025; https://www.scotusblog.com/case-files/emergency/emergency-docket-2024.

"Why?" asked this Court.

With commendable candor, Plaintiffs' counsel explained that granting the motion for this limited stay moots the issue and allows the cross appeals to be fully briefed and argued together before the Court of Appeals – the forum they apparently consider most congenial – which will result in an authoritative precedential decision from which any party may then petition for certiorari.

The parties here are forum shopping, pure and simple. This Court will have none of it.  This Court is, and must be, "deaf as an adder" to litigants' procedural machinations.  See 3 LEGAL PAPERS OF JOHN ADAMS 269-270 (Wroth & Zobel eds., Belknap 1965).

Accordingly, after full hearing and careful consideration, this Court proceeds to address this motion on its merits.

## II.  BACKGROUND

### A.  The Findings and Rulings that the Public Officials violated the Non-citizen Members' First Amendment Rights of Free Speech

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (citations omitted). At the trial of this action, the Plaintiffs proved a profoundly un-American betrayal by the Public Officials' of their oaths of office to the Constitution -- ultimately to the People and to the rule of law itself.  As this Court wrote:

[5]

> [T]his Court finds as fact and concludes as matter of
> law that Secretaries Noem and Rubio and their several
> agents and subordinates acted in concert to misuse the
> sweeping powers of their respective offices to target
> non-citizen pro-Palestinians for deportation primarily
> on account of their First Amendment protected political
> speech. They did so in order to strike fear into
> similarly situated non-citizen pro-Palestinian
> individuals, pro-actively (and effectively) curbing
> lawful pro-Palestinian speech and intentionally denying
> such individuals (including the plaintiffs here) the
> freedom of speech that is their right. Moreover, the
> effect of these targeted deportation proceedings
> continues unconstitutionally to chill freedom of speech
> to this day.

American Ass'n of Univ. Professors v. Rubio, 802 F. Supp. 3d

120, 194 (D. Mass. 2025) ("AAUP").[6]

**B.    Remedies Hearing and Entry of Annotated Judgment**

As this Court wrote during the liability phase of its

concerns about an appropriate remedy, indeed, "[i]t is not

enough for the Court simply to determine that the plaintiffs'

First Amendment constitutional rights have been violated." Id.

at 194. That is because "[t]he Constitution is not self-

effectuating." Id. Otherwise, in this Court's view, the case

becomes "no more than a divisive scold." Id. The Court was

transparent in its concerns about the retributive actions of the

Public Officials guided by a unitary theory of the Executive.

The Court sought further briefing and held a hearing on

remedies on January 15, 2026. See Elec. Clerk's Notes, ECF No.

---

[6] The evidence upon which this Court relied is publicly
available on the docket. See Trial Exs., ECF No. 315.

306.  Judgment entered.  Annotated Judgement ("Ann. J."), ECF

No. 313.  The Annotated Judgment, as pertinent here, provided a

sanction under this Court's broad equitable powers of

remediation.  Ann. J. 3 ("The Sanction Provision").  The

Sanction Provision is the only part of the Annotated Judgment

for which the Public Officials seek a stay.[7]

The Sanction Provision provides without annotations:

> A.[8]  Any non-citizen member of the plaintiffs AAUP or
> MESA, who was a member on or after March 25, 2025 and
> continued as a member through September 30, 2025 ("Sanction
> Plaintiff"), shall have a right to institute a proceeding
> ("Sanction Action") in the United States District Court in
> which the Sanction Plaintiff resided at the time such Sanction
> Plaintiff suffered an adverse immigration action changing
> such Sanction Plaintiff's immigration status from what it was
> on January 20, 2025.

> B.    In such action, the Sanction Plaintiff shall prove
> by a fair preponderance of the evidence that said Sanction
> Plaintiff was a member of AAUP or MESA . . . .  Upon such
> proof, it shall be presumed that the alteration in immigration
> status is in retribution for the exercise during the course
> of the present case of their First Amendment rights.

> C.    Such proof is conclusive and voids the alteration
> in immigration status unless the government proves by clear
> and convincing evidence that:

>> 1.    the Sanction Plaintiff's immigration status has
>> expired by its own terms or any expansion thereof;

---

[7] This Court addresses only the argument directed toward the
Sanction Provision, and not the standing and final agency action
arguments which have previously been addressed by the Court in
AAUP.

[8] The numbering of the Sanction Provision appears as it does
in the annotated Judgment.  The footnotes and emphases are
omitted.

2.    the    Sanction    Plaintiff    was    convicted    after
September 30, 2025 of any crime as to which trial by
jury was their right under federal or state law;
or

3.    there is an APPROPRIATE reason under governing
immigration law that the Sanction Plaintiff's
immigration status should be altered.

D.    Upon the moment of commencement of any Sanction
Action by the filing a complaint, the Sanction Plaintiff's
removal from the United States is automatically STAYED during
the pendency of the Sanction Action.  The United States bears
the burden affirmatively to ascertain and determine whether
such person has filed a Sanction Action in the United States
District Courts.

E.    The Court recommends that an advisory jury be
empaneled to assist the court in deciding factual issues.

Ann. J. 4-6.  The Court retained jurisdiction to modify the

Order.  Id. at 7.

The Public Officials appealed.  Notices of Appeal, ECF Nos.

316, 318.  The Plaintiffs have cross-appealed.  Notice of Cross-

Appeal, ECF No. 324.

The Public Officials now move to stay only the Sanction

portion of the Annotated Judgement.[9]  See generally, Mot. Stay. 1

("[The Public Officials] move the Court to stay its remedy order

---

[9] The Court rejects the Public Officials' counsel's most
recent apparent attempt orally to move to stay any other aspects
of the judgment at the status conference that were not submitted
in its briefing, see Hr'g. Tr., 16:25-17:6, and a request for a
stay of any other portion of the Annotated Judgment is hereby
DENIED.  The Public Officials were on notice of the Plaintiffs'
reliance upon the Public Officials' representation that the
Public Officials were seeking a partial stay only as to Part IV
of the Annotated Judgment.

[8]

pending appeal"). This Court held a hearing on the motion on February 26, 2026, and took the matter under advisement. See Elec. Clerk's Notes, ECF No. 327; Hr'g Tr. 35.

To date, the Court is unaware of any Sanction Action having been filed since the imposition of the Annotated Judgment over a month ago. The parties confirmed this understanding at the hearing.

## III. ANALYSIS

There is simply no urgency here with respect to the Public Officials' request for a stay pending the appeal of this matter. As demonstrated below, a stay pending appeal is extraordinary relief and it is unwarranted.

### A. Standard of Review

Pursuant to Fed. R. App. P. 8(a)(1), as the Public Officials have done here, a "party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." Id. As stated above, though the Plaintiffs expressed concern at the hearing about the use of stay procedures to tee this matter up to the Supreme Court's Emergency Docket, this Court does not concern itself with such matters. The Public Officials' decision to seek a stay is lawful and presents a legal question for this Court to decide in the first instance.

"A stay pending appeal is an 'intrusion into the ordinary processes of administration and judicial review' and relief is not granted as 'a matter of right.'" Rhode Island v. Trump, 155 F.4th 35, 41 (1st Cir. 2025) (quoting New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025)). The Public Officials "bear the burden of demonstrating that they are entitled to the 'extraordinary' relief that they seek." Id. (quoting Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 68 (1st Cir. 2025)). Indeed, even where, as here, the Plaintiffs do not oppose the relief sought, the Public Officials must still meet their burden under the familiar Nken factor analysis and must:

> (1) make a strong showing that they are likely to succeed on the merits on appeal;
>
> (2) show that they will be irreparably injured absent a stay;
>
> (3) show that a stay will not substantially injure the other parties interested in the proceeding; and
>
> (4) show that the stay would be in the public interest.

Id. (cleaned up). Likelihood of success and irreparable injury are "the most critical" factors. Id. (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)). As set forth below, the Public Officials fail to meet their burden.

[10]

**B.**      __Nken__ **Factor Analysis**

### 1. The Public Officials Fail to Make a Strong Showing of Likelihood of Success

The Public Officials argue that this Court lacks jurisdiction and exceeds its equitable authority with respect to the Sanction.  This Sanction does neither.

With respect to its jurisdiction, this Court recognizes that "[f]ederal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Nevertheless, "[a]s the common refrain goes, 'federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them."'" Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd., 633 F.3d 20, 29 (1st Cir. 2011) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992)).  This Court also recognizes, and is bound by, "the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." Id. (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI), 491 U.S. 350, 359 (1989).

The Public Officials argue this Court lacks jurisdiction to impose the Sanction under certain parts of the Immigration Nationality Act ("INA"), specifically, 8 U.S.C. § 1252(b)(9), (f)(1), and (g) ("Section 1259(b)(9)", "Section 1252(f)(1)" and "Section 1252(g)").  Each of these arguments fail.

[11]

Whatever Congress may have intended when it stripped large
swaths of immigration jurisdiction from the United States
District Courts, and channeled many functions to Article II
immigration hearing officers, it is inconceivable that Congress
envisioned or intended the situation proven by clear and
convincing evidence in this case: an Executive using its narrow,
but deep, statutory immigration authority as a sword
unconstitutionally to chill lawfully-present non-citizens'
protected speech under the First Amendment, and simultaneously
use that delegation as a shield to evade judicial review of its
unconstitutional conduct.

### (a)    Section 1252(b)(9)'s Administrative Channeling Provision is Inapplicable

The Public Officials' first argument mischaracterizes
Section 1252(b)(9) as a jurisdictional event horizon, beyond
which everything that might touch upon deportation is swept into
the INA's statutory black hole.  They are wrong.

Starting with the statute, Section 1259(b)(9) provides in
pertinent part:

> Judicial review of all questions of law and fact,
> including interpretation and application of
> constitutional and statutory provisions, **arising from**
> any action taken or proceeding brought to remove an alien
> from the United States ... shall be available only in
> judicial review of a final order under this section.
> Except as otherwise provided in this section, no court
> shall have jurisdiction, by habeas corpus under Section
> 2241 of Title 28, or any other habeas corpus provision
> ... or by any other provision of law (statutory or

[12]

nonstatutory), to review such an order or such questions
of law or fact.

Id. (emphasis added). This Court recognizes the First
Circuit's holding, echoing the Supreme Court, that Section
1252(b)(9) is a "'general jurisdictional limitation' and . . .
'an unmistakable "zipper" clause.'" See Aguilar v. U.S. Immigr.
& Customs Enf't, 510 F.3d 1, 9 (1st Cir. 2007) (quoting Reno v.
Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482–83
(1999)("AADC")). As the First Circuit teaches, the provision
"was designed to consolidate and **channel** review of **all** legal and
factual questions that arise from the removal of an alien **into
the administrative process,** with judicial review of those
decisions vested exclusively in the court of appeals." Aguilar,
510 F.3d 1, 9 (emphasis added). As the First Circuit was
careful to point out, "section 1252(b)(9) is a judicial
**channeling** provision, **not a claim-barring one.**" Id. at 11
(footnote omitted).

Aguilar may be over-expansive after the Supreme Court's
decision in Jennings v. Rodriguez, 138 S. Ct. 830, 840–41 (2018)
(plurality)[10], but the First Circuit has not disturbed its
holding in Aguilar since Jennings, see Kong v. United States, 62

_____

[10] See Adam J. Garnick, Noncitizens' Access to Federal
District Courts: The Narrowing of § 1252(b)(9) Post-Jennings,
169 U. PA. L. REV. 783, 813 (2021) (arguing that post-Jennings,
Aguilar may be overly restrictive).

F.4th 608, 613 (1st Cir. 2023), and this Court is bound.  The Public Officials' argument fails under Aguiar.

While, as the Public Officials argue, it is true that the First Circuit has characterized the "expanse" of Section 1259(b)(9) as "breathtaking" in scope, -- and it is -- Congress "did not intend section 1252(b)(9) to sweep within its scope claims with only a remote or attenuated connection to the removal of an alien," requiring "more than a weak or tenuous connection to a triggering event." Aguilar, 510 F.3d at 9, 10 (citation omitted).  Thus constitutional claims concerning the detention of non-citizens continue routinely to be heard before the district courts, but the First Circuit is clear that the statutory administrative channeling command is applicable to actions and removal proceedings which "are confined to determining whether a particular alien should be deported." Id. at 11 (citing § 1229a(c)(1)(A)).

In particular, the First Circuit was careful not to interpret Section 1252(b)(9) as urged broadly by the Public Officials.  Instead, the First Circuit held that Section 1252(b)(9) "**where applicable, only requires exhaustion of administrative procedures** and the consolidation of claims for judicial review." Id. emphasis added).  That phrase is important, as the First Circuit fully explained:

[14]

We say "where applicable" because removal proceedings are confined to determining whether a particular alien should be deported. <u>See id.</u> § 1229a(c)(1)(A). While legal and factual issues relating to that question **can** be raised in removal proceedings and eventually brought to the court of appeals for judicial review, **certain claims, by reason of the nature of the right asserted, cannot be raised efficaciously within the administrative proceedings delineated in the INA.** <u>See</u>, <u>e.g.</u>, <u>McNary</u>, 498 U.S. at 496, 111 S. Ct. 888; <u>Jupiter</u> v. <u>Ashcroft</u>, 396 F.3d 487, 492 (1st Cir. 2005). **Requiring the exhaustion of those claims would foreclose them from any meaningful judicial review.** Given Congress's clear intention to channel, rather than bar, judicial review through the mechanism of section 1252(b)(9), reading "arising from" as used in that statute to encompass those claims would be perverse.

We thus read the words "arising from" in section 1252(b)(9) to **exclude** claims that are independent of, or **wholly collateral to,** the removal process. **Among others, claims that cannot effectively be handled through the available administrative process fall within that purview.**

<u>Aguilar</u>, 510 F.3d at 11 (emphasis added). At its essence, Section 1252(b)(9) is merely an **exhaustion requirement,** not the wholesale delegation of jurisdiction to the administrative hearing officers concerned with the nuts and bolts of deportations. The First Circuit is clear that "courts have been most willing to deem claims 'collateral' when requiring exhaustion would 'foreclose all meaningful judicial review.'" <u>Id.</u> at 12 (citing <u>Thunder Basin Coal Co.</u> v. <u>Reich</u>, 510 U.S. 200, 212-13 (1994); <u>Leedom</u> v. <u>Kyne</u>, 358 U.S. 184, 190 (1958)). Indeed, "courts have demonstrated a particular hostility toward requiring exhaustion when adequate relief could not feasibly be

[15]

obtained through the prescribed administrative proceedings,"
especially as here, "when a party would be 'irreparably injured'
by adherence to an exhaustion requirement." Id. (citing Mathews
v. Eldridge, 424 U.S. 319, 331 (1976)).

In Aguilar, the First Circuit addressed such matters as
constitutional conditions of confinement claims, a substantive
due process claim of right to family integrity, and right to
counsel under a due process claim of the regulations requiring
counsel under the administrative procedures. The conditions of
confinement claim, though presumed as independent of removal
proceedings, was not preserved on appeal. Id. at 12. The
substantive due process claim for family integrity survived.
Id. at 19. As for the procedural due process claim, the First
Circuit readily pointed out that the petitioners could "receive
effective relief for their alleged violations of the right to
counsel simply by navigating the channels deliberately dredged
by Congress." Id. at 14.

While the First Circuit could not have foreseen what has
been proven by clear and convincing evidence here, its careful
holding in Aguilar nonetheless commands the proper result. The
Sanction Provision and any action related thereto is exactly the
type of remedy (i.e., claim) that this Court deems "collateral"
in the sense that to require administrative channeling
"forecloses all meaningful judicial review." Specifically, the

[16]

preservation of a remedy of the Plaintiffs' non-citizen members' constitutional rights through the Sanction process would be eviscerated by the very processes plaintiffs would be required to administratively exhaust in the event of actions taken or more formally, a proceeding brought for removal.[11]

The trial of this action determined that the Public Officials are using the ongoing **threat** of visa revocation and revocation of green cards, demonstrated through high-visibility immigration status changes and concomitant attempted deportations as a means to chill free speech.  Proceeding through the administrative process -- controlled by Article II administrative hearing officers -- is **exactly** the **injury** that the Public Officials intend, and exacerbates the injury.  No matter what the result, by the time it lands back in the circuit courts, the **injury** is complete and **irreparable** because the channeling of the First Amendment injury and retribution "foreclose[s] all **meaningful** judicial review" of the claims. Id. at 14 (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 212-13 (1994)); see Khalil v. Joyce, 780 F. Supp. 3d 476, 509-10 (D.N.J. 2025) ("In a nutshell, EOHC held that Section 1252(b)(9) does not take jurisdiction away from federal district

---

[11] This presumes without ruling that such actions would necessarily fall within the "actions taken or proceedings brought" language of Section 1252(b)(9).

courts when the alternative -- going the standard route, to the
immigration courts and then to a federal court of appeals --
would undermine 'meaningful' judicial review."), vacated and
remanded sub nom. Khalil v. President of the U.S., 164 F.4th 259
(3d Cir. 2026).[12]

The lone dissent on appeal in the Third Circuit got it
right, and in this Court's view likely reflects the current
state of the law in the First Circuit:

> The loss of First Amendment freedoms, for even
> minimal periods of time, unquestionably constitutes
> irreparable injury." Elrod v. Burns, 427 U.S. 347, 373;
> Schrader v. Dist. Att'y of York Cnty., 74 F.4th 120, 128
> (3d Cir. 2023); Ne. Pa. Freethought Soc'y v. Cnty. of
> Lackawanna Transit Sys., 938 F.3d 424, 442 (3d Cir.
> 2019). So when Khalil alleged the loss of his First
> Amendment freedoms while in detention, he alleged an
> irreparable injury. And when the District Court made a
> factual finding that Khalil's speech was being chilled,
> that resolved the question of irreparable harm.
>
> To halt the irreparable harm Khalil suffered during
> his detention, the District Court entered an injunction
> and authorized Khalil's release on bail. Today, we do
> not reach whether all requirements for the injunction
> and bail order were satisfied, but no one disputes the
> central basis for those orders: Khalil was being

---

[12] While Khalil was reversed by the Third Circuit on other
grounds, this Court is persuaded by Judge Fabriarz's analysis
and respectfully disagree with the Third Circuit's analysis, to
which it is not bound, and which is in any event beyond the
First Circuit's holding in Aguilar. While this Court is duty-
bound to follow the First Circuit, the Public Officials'
reliance on the Third Circuit's opinion in Khalil raises a point
that might be addressed on appeal in this action: the First
Circuit's broad interpretation of the scope to encompass not
only the review of an order of removal, but pre-removal actions.
See Khalil, 164 F.4th at 283 (Freeman, J., dissenting in part and
dissenting from the judgment).

irreparably harmed while detained. Nor does anyone
dispute that those irreparable harms will resume the
moment when Khalil's preliminary injunction and bail
order are vacated.  So Khalil sought (and fleetingly
obtained) "relief that courts cannot meaningfully
provide alongside review of a final order of removal."
E.O.H.C., 950 F.3d at 186.  His claims are now-or-never
claims.

Despite the irreparable injury from Khalil's past
detention and forthcoming re-detention, the majority
opinion says Khalil's claims are not now-or-never.  It
reasons that Khalil can seek review of the legal and
factual questions later . . . But that is not the
relevant question.  Instead, we must ask whether the
alleged harms can be remedied later.

The majority opinion contends that our E.O.H.C.
opinion "left open" whether the now-or-never analysis
turns on future ability to remedy harms or future ability
to review questions.  Maj. Op. ----, ----. It did not.
We settled that question when we held that "[§
1252(b)(9)] does not strip jurisdiction when aliens seek
relief that courts cannot meaningfully provide alongside
review of a final order of removal."  950 F.3d at 186
(emphases added).  After we announced that rule, we
proceeded to apply it.

Khalil, 164 F.4th at 287-88 (footnotes omitted); see Ozturk v.

Trump, 779 F. Supp. 3d 462, 485-86 (D. Vt. 2025) ("Consider that

the government's argument on this issue boils down to a bold

statement that no matter how egregious the type or quantity of

First Amendment or due process violations committed by the

government in detaining an individual, an Article III court

cannot consider any alleged constitutional violations until

after Article II employees, with no power to consider or address

those violations, have moved the case through their lengthy

[19]

process.  Put another way, the government argues that § 1226(a) grants practically limitless, unreviewable power to detain individuals for weeks or months, even if the detention is patently unconstitutional.").  So it is here.  The remedy is a "now-or-never" remedy because if it could not exist outside of the channeling provision, no meaningful remedy would exist at all.  The breathtaking misconduct here falls so far outside the constitutional lines that mere "lip service to the breadth and purpose of Section 1252(b)(9)," Aguilar, 510 F.3d at 9, cannot save it.  It is the profound exception under the scenario envisioned under Aguilar that puts the matter outside Section 1252(b)(9)'s channeling reach.  The motion is denied as to this ground.

### (b)  Section 1252(f)(1)

The Public Officials argue that the stay of removal contemplated denying the Sanction Action violates Section 1252(f)(1) because, among other things, the relief of an automatic stay is an injunction not limited to individuals. Mot. 7, 10-11.

Section 1252(f)(1) provides in pertinent part:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than

[20]

> with respect to the application of such provisions to an
> individual alien against whom proceedings under such
> part have been initiated.

"Section 1252(f)(1) includes one exception to this general
prohibition: The lower courts retain the authority to 'enjoin or
restrain the operation of' the relevant statutory provisions
'with respect to the application of such provisions to an
individual alien against whom proceedings under such part have
been initiated.'" Garland v. Aleman Gonzalez, 596 U.S. 543, 550
(2022). The Public Officials argue that the Sanction Plaintiff
is non-individual relief. Yet here the Court has not entered
classwide injunctive relief at all, and **this** action was not
filed as a class action. See id. at 555 ("A literal reading of
that language could rule out efforts to obtain any injunctive
relief that applies to multiple named plaintiffs (or perhaps
even rule out injunctive relief in a lawsuit brought by multiple
named plaintiffs) . . . It is sufficient to hold that the class-
wide injunctive relief awarded in these cases was unlawful.")

The Sanction Plaintiffs, though unidentified by name, are
nevertheless a closed number of individual plaintiffs in this
action. They have the burden of proving that they are a
Sanction Plaintiff. Any equitable remediation of a stay is
applicable only to a **particular** Sanction Plaintiff **only** when
**that** Sanction Plaintiff files an **individual** Sanction Action.

Ann. J. 4-7.  No stay would be entered under the Annotated Judgment unless and until one of these Sanction Plaintiffs commences an action.  As the Supreme Court has held, "[t]he lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.'" Aleman Gonzalez, 596 U.S. at 550.

   **(c)   Section 1252(g)**

   Section 1252(g) is an extremely narrow jurisdiction-stripping clause applicable only to aliens or those bringing claims on their behalf in **three** distinct phases of the removal process:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  "The Supreme Court is clear that Section 1252(g) 'applies only to three discrete actions that the Attorney General may take: her "decision or action" to "[(1)] **commence** proceedings, [(2)] **adjudicate** cases, or [(3)] **execute** removal orders."'" Am. Assn. of U. Professors v. Rubio, 780 F. Supp. 3d 350, 370 (D. Mass. 2025) (pending appeal) (citing AADC,

[22]

525 U.S. at 482) . "[Section] 1252(g) is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" C.M. v. Noem, 796 F. Supp. 3d 1198, 1224 (S.D. Fla. 2025) (quoting AADC, 525 U.S. at 487 (1999)).

Section 1252(g), unlike Section 1252(b)(9), "does not simply channel claims within its scope but entirely eliminates judicial review." Kong v. United States, 62 F.4th 608, 614-15 (1st Cir. 2023) (footnote omitted). As the First Circuit holds, "[i]n other words, §1252(b)(9), where applicable, only requires exhaustion of administrative procedures and the consolidation of claims for review. In contrast, § 1252(g) precludes any review of the administrative decisions within its scope." Id. at 615 n. 8 (citations omitted).

With respect to the stay order, courts in this district routinely issue temporary stay orders in habeas actions. See, e.g., Belloza v. Hyde, No. CV 25-13499-RGS, 2026 WL 125168, at *2 (D. Mass. Jan. 16, 2026). This Court issues them during the pendency of these actions. The Sanction Order does not directly address any of the three executive actions addressed in Section 1252(g), but rather provides time for the Sanction Court to determine whether a change in immigration status was due solely to First Amendment retaliation. The Sanction action does not challenge commencement, adjudication, or execution of removal.

[23]

Indeed, the stay of removal from the United States is temporary, similar to when this Court issues stays pending determination in habeas proceedings.  As the Court has STAYED the Sanction Order to the extent it may bar inter-district transfer, see Section III(d)(2), infra, such claims are moot.

Even if this Court's Sanction somehow intruded upon the jurisdictional excluded areas, the Supreme Court has explained in dicta that even under Section 1252(g), it "need not rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome." AADC, 525 U.S. at 491. Earlier in this case, this Court addressed the possibility that this exception could come into play, but at that stage of the proceeding considered it unnecessary to address.  American Assn. of U. Professors v. Rubio, 780 F. Supp. 3d 350, 374 (D. Mass. 2025) (pending appeal).

The Supreme Court did not identify what would constitute outrageousness.  But, as here, the alteration of immigration status **solely** in response to protected First Amendment Speech (i.e. there is no other appropriate reason for removal) **must** fit within the apparent exception to the extent it exists at all.[13]

---

[13]   Ryan Scott, Note, "Freedom Lives Hence, and Banishment Is Here": The Weaponization of Immigration Law to Punish Political Dissidents, 31 Wash. & Lee J. C. R. & Soc. Just. 391, 447 (2025) ("But should the courts follow in the footsteps of

Section 1252(g) is not a jurisdictional bar.  See Ercelik v. Hyde, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *6 (D. Mass. May 8, 2025) (granting temporary restraining order where ICE terminated SEVIS status allegedly in retaliation for protected First Amendment speech, and arresting and detaining petitioner). The determination of any Sanction Action, as it would by necessity prescind from like events, would apparently fall within the exception.

      **(d)   This Court Has Not Created A New Cause of Action**

The Public Officials argue that the Sanction exceeds this Court's authority.  As an initial matter, the Public Officials argue that the Sanction violates Federal Rule of Civil Procedure 65 as it fails to provide notice as required by that rule.  But this Court has STAYED its Annotated Judgement as to the inter-district movement of any Sanction Plaintiff so that the provision only applies as to the removal from the United States; the final step in removal.

Second, although the Public Officials claim this is a "parallel proceeding" that "undermines the Congressional purpose in streamlining removal proceedings," the process is not a

_____

the Second Circuit's Ragbir ruling and limit their vision to []
only the conduct specifically aimed at the plaintiff, then
activists fighting retaliatory deportation efforts and their
allies should take note and make strategic decisions
accordingly.")

parallel proceeding at all.  Hr'g Tr. 14:7-10.  It is "a
sanction for the proven violation of the claimant's
constitutional rights. . . . [and] a burden
that the Public Officials are going to have to bear."  Id.
29:20-25.  As this Court explained at the hearing, that is "the
sanction, because these two Secretaries, and those in league
with them, have intentionally chilled the free speech of
individuals, discrete individuals who had every right so to
speak."  Id. 15:21-25.  Nothing interferes with the
administrative processes from commencing and adjudicating
matters within their competency.

    As a fallback, the Public Officials complain about
"fairness," Defs.' Mem. 8, 13, but as proven at trial they are
well aware of those individuals upon whom they may visit
immigration action **solely** on the basis of anti-Israel or Pro-
Palestinian speech.  The record in this action is replete with
evidence of the enormous resources across the United States
Government being devoted (even diverting resources from other
important matters) to the investigation, documentation, and
approval of their actions.  See AAUP, 802 F. Supp. 3d at 137 -
172.  That documentation in this case included explicit warnings
from federal employees to the top Public Officials about
undertaking their actions.  See id. at 143, 153, 158.  Given the
inordinate resources devoted to this issue, that closed number

of individuals ought be easily identifiable, and, at this point,
ought not exist at all.[14]  Moreover, the evidence at trial
revealed very few individuals were actually targeted.  See AAUP,
802 F. Supp. 3d 120, 140 (Homeland Security Investigations
prepared reports on "less than 5%" -- less than 250 -- of the
approximately 5,000 individuals investigated).  Absent any
further evidence propounded by the Public Officials in support
of its motion, the record reflects that they already have the
ability to generate an internal list of potentially up to 250
people that have had the courage to speak in a manner the
Executive finds offensive.  Furthermore, to the extent that
Homeland Security Investigations has undertaken further
investigations, again that list ought easily be accessible to
the Public Officials.  While perhaps not encompassing all
individuals, it ought cover the majority.  In the end, any
individual that is being referred up the chain for protected
pro-Palestinian/anti-Israel speech is already within their
purview.

    As for pre-ordaining a result in other courts, or creating
a new federal cause of action, the Court rejects that premise.
This Court's Sanction is, of course, non-binding on other
federal district courts and they are free to disregard it.  They

---

[14] Indeed, the hope of this Court is that this Sanction is
unnecessary and never employed.

are also free to adopt it based upon the findings and rulings of
this Court.  Furthermore, the Court is not creating a new
private right of action or attempting to invade the province of
Congress at all.  The Court is attempting to fashion a non-
injunctive remedy in this action, for these plaintiffs.

### 2. The Public Officials Fail to Make a Showing of Irreparable Injury to the Public Officials to Focus only on Removal From the United States.

The Public Officials claim that it is unknowable who has
brought an action and that somehow complying with the need to
check PACER will "chill the government's effort to enforce duly
enacted immigration laws against aliens on indisputably lawful
grounds that do not implicate the First Amendment."  Defs.' Mem.
18.  The government's point is well taken as to one issue: it
must make the determination **only** prior to **involuntary removal
from the United States,** and the Court **STAYS** the Annotated
Judgment to the extent the Annotated Judgment is read otherwise.
**If the mandate is returned, the Court would amend the Annotated
Judgment to strike the first sentence of footnote 7.**  With this
**STAY,** the supposed parade of horribles of having to determine
whether an action has been filed in the district of residence
prior to removal from the United States by a PACER search is
simply unpersuasive.[15]  Indeed, the Public Officials' argument

_____

[15] In support of their motion, the Public Officials attach a
declaration of the Acting Deputy Assistant Director for Western

falls flat, and as this Court concluded, "there's no additional burden.  It's a keystroke."  Hr'g Tr. 11:16, Feb. 26, 2026.[16] Moreover, nothing prevents the Public Officials from asking a potential Sanction Plaintiff, who ostensibly would be in their custody if being involuntarily removed, if the Sanction Plaintiff in fact had filed **any** action in federal court.

### 3. The Public Officials Fail to make their showing of a Substantial Injury to Other Parties and Public Interest

As for the final factors, the Public Officials fail to meet their burden.  "[H]arm to the opposing party and the public interest[] merge when the Government is the opposing party." Nken, 556 U.S. at 435.  Now that it suits their interests, it is ironic to hear the Public Officials wail that they are but bit players in a fractured government, claiming that the United States Customs and Immigration Service (an agency within the Department of Homeland Security), is somehow not before the Court and unrepresented here.  Defs.' Mem. 19; Hr'g Tr. 11:15-

---

Operations with Enforcement and Removal Operations.  See Decl. of Juan Agudelo ¶¶ 8-13, ECF No. 317-1.

[16] The Public Officials' counsel was not aware of the actual procedure, as he did not litigate in that area, but stated "there are procedures."  Hr'g Tr. 11:7-11, Feb. 26, 2026.  None of the four counsel present for the Public Officials sought to correct this representation at the hearing.  Moreover, the Public Officials have not filed anything to correct this understanding, and the Court's conclusion drawn therefrom.  That is likely because before removal from the United States there is **some** process to check whether an action has been filed.

[29]

13:6.  As this Court recognizes, the entire theory of this administration is that of a unitary executive with no agency independence where every single employee within the Article II executive dances to the tune of the President.

Contrary to assertions by the Public Officials, this Court has no interest in interfering with the Executive's enforcement of the immigration laws of the United States, and does not do so by this Sanction.  What the Public Officials did in this case was unconstitutional, abhorrent to a society that cherishes free speech.  The public interest is clear.  This conduct must never happen again.

## IV.  CONCLUSION AND ORDER

With the exception of staying one portion of the Sanction as set forth above, the Public Officials have not met their burden on the Nken factors.  The Public Officials' motion, ECF No. 317, is therefore ALLOWED in part and DENIED in part as set forth above.

**SO ORDERED.**

*William G. Young*

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[17]

---

[17] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.

[30]